**Hearing Date and Time: June 23, 2020, at 11:00 am (Prevailing Eastern Time)**
**Objection Deadline: June 16, 2020, at 4:00 pm (Prevailing Eastern Time)**

Richard J. Cooper
Lisa M. Schweitzer
Luke A. Barefoot
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ———————————————— x | | |
| In re: | : | |
|  | : | Chapter 11 |
| LATAM Airlines Group S.A., *et al.*, | : | |
|  | : | Case No. 20-11254 (JLG) |
| Debtors.[1] | : | |
|  | : | Jointly Administered |
|  | : | |
| ———————————————— x | | |

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are:  LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL
ADVISOR TO DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

LATAM Airline Group S.A. ("LATAM Parent") and certain of its affiliated

debtors and debtors-in-possession (collectively, the "Debtors"),[2] hereby submit this application

(the "Application") for the entry of an order, substantially in the form attached hereto as

Exhibit A, (the "Proposed Order"), pursuant to sections 105(a), 327(a), 328(a), 329 and 330 of

title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-

1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy

Rules") (ii) authorizing the Debtors to employ and retain FTI Consulting Canada ULC

(together with its parent FTI Consulting, Inc. and its wholly owned subsidiaries, agents, and

independent contractors, "FTI"), in the above-captioned chapter 11 cases (the "Chapter 11

Cases") as their financial advisor, effective *nunc pro tunc* to the Petition Date (as defined

below) and (ii) granting such further relief as the Court deems just and proper.

In support of this Application, the Debtors rely upon and incorporate by

reference the (i) *Declaration of Ramiro Alfonsín Balza in Support of First Day Motions and

Applications in Compliance with Local Rule 1007-2* (ECF No. 3) (the "First Day Declaration"),

(ii) *Declaration of Brock Edgar, Senior Managing Director of FTI* (the "Edgar Declaration")

attached hereto as Exhibit B, and (iii) the *Declaration of Juan Carlos Mencró in Support of the

Debtors' Application for an Order Authorizing Employment and Retention of FTI as Financial

Advisor for the Debtors Effective* Nunc Pro Tunc *to the Petition Date*, attached to this

application as Exhibit C (the "Mencró Declaration").  In further support of this Application, the

Debtors respectfully represent as follows:

---

[2]    LATAM Parent, and its debtor and non-debtor subsidiaries and affiliates are collectively referred to as
"LATAM".

## BACKGROUND

1.      On May 26, 2020 (the "Petition Date"), the Debtors each filed voluntary

petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors

continue to operate their businesses and manage their properties as debtors-in-possession

pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are jointly

administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and

the *Order Authorizing Joint Administration of the Debtors' Chapter 11 Cases* (ECF No. 34)

entered by the Court in each of the Chapter 11 Cases. On June 5, 2020, the United States Trustee

for Region 2 appointed an official committee of unsecured creditors (the "UCC"). No trustee or

examiner has been appointed in these Chapter 11 Cases.

2.      LATAM is Latin America's leading airline group, with a history

extending back ninety years, and boasting one of the largest route networks in the world. Before

the onset of the COVID-19 pandemic, LATAM offered passenger transport services to 145

different destinations in twenty-six countries, including domestic flights in Argentina, Brazil,

Chile, Colombia, Ecuador and Peru, and international services within Latin America as well as to

Europe, the United States, the Caribbean, Oceania, Asia and Africa. LATAM has a total fleet of

340 aircraft,[3] and in 2019, transported more than seventy-four million passengers around the

world. While the majority of LATAM's revenues have traditionally come from its passenger

airline services, LATAM also offers cargo-related services to 151 destinations in twenty-nine

countries. In 2019, LATAM's consolidated revenues were over $10 billion, of which the

Debtors' comprised approximately $4 billion. The Debtors have substantial international

---

[3]   This number comprises both aircraft operated by LATAM and a small number that are leased to third-parties.

operations, and their ability to maintain these international operations is a critical element of the overall success of the Debtors' business.

3.     At the beginning of 2020, LATAM was financially and operationally the strongest group in Latin America and poised to continue its upward trajectory, projecting growth in all of its passenger segments, as well as its cargo business.  Unfortunately, like so many businesses around the world, the unprecedented effects of the COVID-19 global pandemic have significantly affected LATAM's operations and its business plan.  On March 11, 2020 the World Health Organization declared the widespread outbreak of the novel COVID-19 a global pandemic.  Over the intervening weeks, countries around the world, including each of those in which the Debtors have their primary operations, announced severe travel restrictions and/or outright closure of their borders.

4.     The impact on the airline industry was almost instantaneous, and by April 2020, in response to the precipitous decline in air travel, LATAM reduced its passenger routes by 95%.  LATAM's cargo operations largely have been unaffected by the COVID-19 pandemic.  Indeed, cargo operations have increased in recent months, including to provide much needed medical and other critical supplies to areas affected by the pandemic.  Although LATAM expects continued demand for its cargo operations, that demand cannot fully offset the impact of the COVID-19 pandemic on LATAM's business.

5.     Despite undertaking meaningful cost-saving and liquidity preserving measures, LATAM's liquidity position has continued to deteriorate in the wake of the COVID-19 pandemic, necessitating the commencement of the Chapter 11 Cases.  Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Ramiro Alfonsín Balza*

*in Support of First day Motions and Applications in Compliance with Local Rule 1007-1* (ECF

No. 3) (the "First Day Declaration"),[4] which is incorporated by reference herein.

      6.      On June 4, 2020, the 2nd Civil Court of Santiago, Chile issued an order

recognizing these Chapter 11 Cases under the Chilean Insolvency and Reorganization Law.

## JURISDICTION

      1.      The United States Bankruptcy Court for the Southern District of New

York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

Southern District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

The statutory predicates for the relief requested herein are sections 105(a), 327(a), 328(a), 329

and 330  of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules

2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"Local Rules").

## RELIEF REQUESTED

      2.      By this Application, the Debtors seek entry of the Proposed Order

pursuant to sections 105(a), 327(a), 328(a), 329 and 330  of the Bankruptcy Code, Rules 2014(a)

and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-1 of the Local Rules, authorizing

them to employ and retain FTI as their financial advisor, effective *nunc pro tunc* to Petition Date,

in accordance with the terms and conditions set forth in that certain engagement agreement dated

April 20, 2020, annexed hereto as Exhibit D (the "Engagement Agreement").[5]

---

[4]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

[5]    An amendment to the Engagement Agreement was signed on May 11, 2020, and is attached alongside the Engagement Agreement in Exhibit B.

## BASIS FOR REQUESTED RELIEF

3.      The Debtors seek authority to retain and employ FTI as their financial

advisor under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to

employ professional persons "that do not hold or represent an interest adverse to the estate, and

that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties

under this title." 11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon

sections 101(14) and 327(a) of the Bankruptcy Code and provides that "a person is not

disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in

possession solely because of such person's employment by or representation of the debtor before

the commencement of the case."  11 U.S.C. § 1107(b).   As discussed above and as further

detailed in the Edgar Declaration, to the best of the Debtors' knowledge, FTI is a "disinterested

person" within the meaning of section 101(14) of the Bankruptcy Code and does not hold or

represent an interest adverse to the Debtors' estates.

4.      The Debtors believe that the Fee and Expense Structure is reasonable and

market-based and should be approved under section 327 of the Bankruptcy Code.  The Fee and

Expense Structure adequately reflects: (i) the nature of the services to be provided by FTI and (ii)

the fees and expenses and indemnification provisions typically utilized by FTI and other leading

financial advisory and consulting firms.  FTI intends to apply for compensation for professional

services rendered and reimbursement of expenses incurred in connection with these cases

pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and

applicable Bankruptcy Rules, Local Bankruptcy Rules, the Fee Guidelines, and any other

applicable procedures and orders of the Court, with certain limited modifications as set forth in

the Proposed Order.

5.      In light of the foregoing, the Debtors submit that the relief requested in the Application is in the best interests of their estates and creditors and the Court should approve the retention and employment of FTI pursuant to the terms set forth herein and in the Engagement Agreement.

## FTI's Qualifications

6.      Debtors have determined, in the exercise of their business judgment, FTI should be retained and is well qualified to serve as the Debtors' restructuring financial adviser. As detailed in the Edgar Declaration, FTI has a wealth of experience providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for the services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States and Latin America, and is particularly well qualified to advise the Debtors during these Chapter 11 Cases.  Furthermore, this FTI team has extensive experience in airline restructuring in the US, South America and Europe across legacy/flag carrying, full service providers, low cost airlines , airports and associated businesses.

7.      Accordingly, on April 20, 2020, FTI was engaged to provide certain services to the Debtors pursuant to the Engagement Agreement.  FTI has become intimately familiar with the Debtors' financial affairs, business operations, assets, contractual arrangements, capital structure, key stakeholders and other related material information.  Likewise, in providing prepetition services to the Debtors, FTI's professionals have worked closely with the Debtors' management, board of directors, and other advisors.  In particular, FTI has worked closely with the Debtors to analyze the Debtors' operations and financial positions, and to assist the Debtors in preparing for a smooth entry into and operation under the protections of chapter 11.  FTI continues to assist the Debtors with the restructuring contemplated in these Chapter 11 Cases.

Accordingly, FTI has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtors' Chapter 11 Cases.

8.     With its experienced professionals, and its understanding of the Debtors' financial history and business operations, FTI fulfills a critical need that complements the services to be provided by the Debtors' other professionals.  The Debtors' retention of FTI, with its resources and capabilities, together with its prepetition experience advising the Debtors, is crucial to the success of these Chapter 11 Cases.  As such, the Debtors believe that it is in the estates' best interest to retain FTI for the purpose of providing the Debtors with restructuring support services in the Chapter 11 Cases to maximize the value of their estates and reorganize successfully.

## Scope of Services

9.     Pursuant to the terms and conditions of the Engagement Agreement, FTI has provided and will continue to provide financial consulting and advisory services as FTI and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of the Chapter 11 Cases, including the following:[6]

    (a)  Supporting the preparation of first day motions and petitions, as needed, for a potential chapter 11 filing;

    (b)  Assist management in generating the "Top Creditor List" and master mailing matrix; extract data necessary to develop critical trade analysis, foreign vendor analysis, shippers and warehousemen, as well as various exhibits for first day pleadings;

    (c)  Assisting with developing accounting and operating procedures to segregate prepetition and postpetition business transactions;

    (d)  Assisting in the identification, organization and classification of executory contracts and unexpired leases and assisting with cost/benefit evaluations with respect to the assumption or rejection of each, as needed;

---

[6]  The summary of the services and the other Engagement Agreement terms included in the Application is provided for purposes of convenience only and is qualified in its entirety by reference to the Engagement Agreement.  To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.

(e) Preparing the Debtors with respect to financial disclosures that will be required by the Court;

(f) Assisting with the review, classification, reconciliation, and quantification of claims against the estate under the plan of reorganization;

(g) Assisting with bankruptcy reporting requirements (e.g., Statements of Financial Affairs and Schedules of Assets and Liabilities, Monthly Operating Reports, etc.);

(h) Engage and coordinate with the U.S. Trustee to minimize the burden on the Debtors while fulfilling all statutory obligations;

(i) Assisting with the development or review of the Debtors' business plan;

(j) Reviewing or assisting with the development of the Debtors' 13-week cash flow forecast and regular variance reporting;

(k) Assisting with evaluating the Debtors' cash flows under a variety of scenarios;

(l) As required, assist the Debtors and their proposed counsel in support of restructuring proceedings in jurisdictions outside the U.S.;

(m) Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(n) To the extent that an unsecured creditors committee or any other group is formed, engage with and manage the committee/group to minimize the distraction to management;

(o) Assist the Debtors and proposed counsel in preparation of plan and disclosure statement documents and supporting materials;

(p) Provide testimony and other litigation support as the circumstances warrant;

(q) Attending meetings, presentations and negotiations as may be requested by the Debtors and their proposed counsel;

(r) Development of overarching messaging and communications planning;

(s) Development of materials for identified stakeholder audiences (including but not limited to employees, media, customers, loyalty members, suppliers, regulators and elevated officials, financial audiences and the general public); as well as global media relations; and

(t) Render such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding.

### No Duplication of Services

10.     The services of FTI will complement and not duplicate the services

rendered by any other professional retained in these cases.  As set forth in the Edgar Declaration,

20-11254-jlg    Doc 145    Filed 06/09/20    Entered 06/09/20 18:58:53    Main Document
Pg 10 of 86

FTI understands that the Debtors have retained and may retain additional professionals during the term of FTI's engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by all professionals on behalf of the Debtors. FTI is providing distinct and specific financial advising and consulting services as set forth in the Engagement Agreement, and such services are not expected to duplicate those to be provided by any other consultants, legal advisors or investment bankers, including, without limitation, the law firm Cleary Gottlieb Steen and Hamilton LLP ("Cleary Gottlieb"), the law firm Togut, Segal & Segal LLP ("Togut") and investment bankers PJT Partners ("PJT").[7] FTI, in consultation with the Debtors, Cleary Gottlieb, Togut and PJT, will use reasonable efforts to coordinate with the Debtors and the other professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services.

## Professional Compensation

11.     In consideration of the services to be provided by FTI, subject to this Court's approval, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable orders of the Court, and pursuant to the terms and conditions of the Engagement Agreement, the Debtors have agreed to: (a) compensate FTI for the services set forth in the Engagement Agreement on an hourly basis in accordance with FTI's ordinary and customary rates in effect on the date such services are rendered and (b) reimburse actual and necessary costs and expenses incurred by FTI in connection with the services performed on behalf of the Debtors (collectively, the "Fee and Expense Structure").

12.     The Engagement Agreement contemplates that FTI professionals will charge the following hourly rates, subject to periodic adjustments:

---

[7]     Debtors have also filed contemporaneously herewith a motion for the retention of a variety of ordinary course professionals. FTI will work with the Debtors and all professionals to ensure no duplication

| Billing Category | Hourly Billing Rate ($USD) |
|---|---|
| Senior Managing Director | $925 - $1,295 |
| Directors / Senior Directors / Managing Directors | $550 - $905 |
| Consultants/Senior Consultants | $350 - $660 |
| Administrative / Paraprofessionals | $125 - $280 |

13.     The rates set forth above reflect FTI's normal and customary billing practices for engagements of this complexity and magnitude.  FTI revises its hourly rates periodically.  Furthermore, to the extent FTI uses employees of its U.S. parent or its affiliates it will charge standard hourly rates for such employees, which fall within the above ranges.   FTI will maintain time records in conformity with the Fee Guidelines (as defined below).

14.     Over the last twelve months, the Debtors have paid FTI approximately $3,138,832 in fees and expenses excluding the $225,565 that was applied to the retainer.  In addition, on May 18, 2020, FTI received a retainer in the amount of $1,000,000, of which approximately $225,565 was applied to prepetition fees and expenses outstanding balances existing as of the Petition Date leaving a retainer balance of $777,435.  FTI's retainer is held in a segregated client trust account at The Bank of Nova Scotia in Toronto, Canada.  Some of these payments were received by FTI during the ninety days before the Petition Date.  The Debtors submit that such payments were received in the ordinary course of business and are not recoverable preferences and that the receipt of such payments does not constitute an interest adverse to the Debtors.

15.     According to FTI's books and records, during the ninety-day period prior to the Petition Date, the Debtors paid FTI $3,097,699 in aggregate for professional services performed and expenses incurred, not including the payment over the last twelve months. Including the $222,565 amount that was applied to the retainer the amount is $3,320,264.

16.     In addition to the fees outlined above, FTI will bill for reasonable and

documented direct expenses which are incurred on the Debtors' behalf during this engagement.

These direct expenses include reasonable and customary and documented out-of-pocket expenses

which are billed directly to the engagement such as internet access, telephone, overnight mail,

messenger, travel, meals, accommodations and other expenses specifically related to this

engagement.  The Debtors have been informed that FTI believes it is fairer to charge these

expenses to the clients incurring them than to increase the hourly rates and spread the expenses

among all of its clients.  The Debtors have been assured that FTI will charge the Debtors for

these expenses in a manner and at rates consistent with charges generally made to FTI's other

clients and in accordance with the terms and conditions of FTI's engagement.  The Debtors

respectfully submit that FTI's rates and policies are reasonable.

17.     To the best of FTI's information and belief, except as set forth above, the

Debtors did not make any other payments to FTI during the ninety-day period prior to the

Petition Date, and FTI is not a prepetition creditor of the Debtors.

18.     If FTI and/or any of its employees are required to testify or provide

evidence at or in connection with any judicial or administrative proceeding relating to the

engagement, the Debtors will compensate FTI at its regular hourly rates and reimburse FTI for

reasonable direct expenses (including counsel fees) with respect thereto.

19.     The Debtors understand and have agreed that FTI hereafter will apply to

the Court for allowance of compensation and reimbursement of expenses in accordance with the

General Order M-412 (*Order Establishing Procedures for Monthly Compensation and*

*Reimbursement of Expenses of Professionals*, dated December 21, 2010 (Gonzalez, C.J.)),

Administrative Order M- 447 (*Amended Guidelines for Fees and Disbursements for*

- 12 -

*Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013

(Morris, C.J.)), and make a reasonable effort to comply with the U.S. Trustee's requests for

information and additional disclosures (collectively, the "Fee Guidelines"), the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any

applicable orders of the Court, both in connection with this Application and any interim and final

fee applications to be filed by FTI in the Chapter 11 Cases.

      20.    FTI shall provide reasonable notice to the Debtors, the U.S. Trustee, and

any statutory committee appointed in the Chapter 11 Cases of any generally applicable increase

of FTI's hourly rates set forth in the Edgar Declaration.

      21.    FTI has not shared or agreed to share any of its compensation from the

Debtors or any other person, other than as permitted by section 504 of the Bankruptcy Code.  No

promises have been received by FTI as to compensation in connection with these Chapter 11

Cases, other than as set forth in the Engagement Agreement.

      22.    Pursuant to the Debtors' request, FTI has agreed to serve as financial

advisor to the Debtors on and after the Petition Date with assurances that the Debtors would seek

approval of its employment and retention *nunc pro tunc* to the Petition Date, so that FTI may be

compensated for its pre-Application services.  The Debtors believe that no party in interest will

be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application,

because FTI has provided and continues to provide valuable services to the Debtors' estates in

the interim period.  The Local Rules empower courts in this district to approve *nunc pro tunc*

employment, and the Debtors submit that such approval is justified here.[8]

---

[8]    The Debtors are aware of the recent United States Supreme Court decision *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696 (2020) that discussed, among other things, the appropriateness of certain *nunc pro tunc* relief in the unique context of competing forums and unclear jurisdiction. Viewed in this light, *Acevedo* should not be read to affect *nunc pro tunc* orders where, as here, the court plainly has

## **Indemnification Provisions**

23.      As part of the overall compensation payable to FTI under the terms of the

Engagement Agreement, the Debtors have agreed to certain indemnification and contribution

provisions described in the Engagement Agreement (the "Indemnification Provisions").  As more

fully set forth in the Engagement Agreement, the Indemnification Provisions provide that the

Debtors will indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers,

directors, principals, shareholders, agents, independent contractors and employees (collectively,

including FTI, the "Indemnified Persons") from and against any and all claims,  liabilities,

damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and

costs of investigation) arising out of or relating to the retention of FTI, the execution and

delivery of the Engagement Agreement, the provision of the services thereunder or other matters

relating to or arising from the Engagement Agreement, except to the extent that any such claim,

liability, obligation, damage, cost or expense shall have been determined to have resulted from

the gross negligence or willful misconduct of the applicable Indemnified Person(s) (an "Adverse

Determination").  The Debtors have agreed to pay damages and expenses, including reasonable

legal fees and disbursements of counsel as incurred in advance.  FTI has agreed that it  will

reimburse any amounts paid in advance to the extent they relate to an Adverse Determination.[9]

---

jurisdiction over the Chapter 11 Cases as of the Petition Date.  Moreover, as noted above, courts have continued to
routinely approve *nunc pro tunc* employment of professionals following *Acevedo*.  *See, e.g.*, Order, *In re The
McClatchy Co.*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 11, 2020), ECF No. 173; Order, *In re Fairway
Grp. Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. Mar. 03, 2020), ECF No. 245.  To the extent that
this Court or others find that *Acevedo* impacts this Court's ability to grant *nunc pro tunc relief*, this Court would
nonetheless retain power to award compensation prior to the date of entry of the order.  *See In re Hector Benitez*,
No. 8-19-70230 (REG), 2020 WL 1272258 (Bankr. E.D.N.Y. Mar. 13, 2020).

[9]      The summary of the services and the other Engagement Agreement terms included in the Application is
provided for purposes of convenience only and is qualified in its entirety by reference to the Engagement
Agreement.  To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the
terms of the Engagement Agreement shall control.

24.     The terms of the Engagement Agreement, including the Indemnification

Provisions, were negotiated between the Debtors and FTI at arm's length, and the Debtors

respectfully submit that the Indemnification Provisions, as modified by the Proposed Order, are

customary, reasonable and in the best interests of the Debtors, their estates and creditors.

Accordingly, as part of this Application, the Debtors request that this Court approve the

Indemnification Provisions as modified by the Proposed Order.

**FTI's Disinterestedness**

25.     As set forth in the Edgar Declaration, FTI has represented to the Debtors

that it has not represented and will not represent any parties other than the Debtors in the Chapter

11 Cases or in connection with any matter that would be adverse to the Debtors arising from, or

related to, the Chapter 11 Cases.  Upon review of its client database, FTI has learned that it has,

or has had in the past two years, current or recent former clients who participated in cases

involving certain creditors of the Debtors and other parties in interest as more fully discussed in

the Edgar Declaration.

26.     To the best of the Debtors' knowledge: (i) FTI is a "disinterested person"

within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of

the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates and

(ii) except to the extent disclosed in the Edgar Declaration, FTI has no connection to the Debtors,

their creditors, the U.S. Trustee, or any other party with an actual or potential interest in the

Debtors' cases or their attorneys or accountants.   FTI has agreed that, to the extent any new

relevant facts or relationships are discovered or arise, FTI will use reasonable efforts to file

promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## NOTICE

27.     The Debtors have provided notice of this Motion in accordance with the

procedures set forth in the *Order Implementing Certain Notice and Case Management*

*Procedures* (ECF No. 112).  The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be provided.

## NO PRIOR REQUEST

28.     No prior request for the relief requested herein has been made to this or

any other Court.

## CONCLUSION

WHEREFORE, for the reason set forth herein the Debtors respectfully request

that this Court (a) enter an order, substantially in the form attached hereto as Exhibit A and

(b) grant such other and further relief as is just and proper.


Dated: June 9, 2020                  LATAM Airline Group, S.A.
      Santiago, Chile                  (for itself and on behalf of its affiliates as Debtors and
                                      Debtors-in-Possession)


                                       */s/ Juan Carlos Menció*
                                       Juan Carlos Menció
                                       Senior Vice President, Legal Affairs

# EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x

In re:                                              :

                                                    :       Chapter 11

LATAM Airlines Group S.A.,                          :

                                                    :       Case No. 20-11254 (JLG)

                            Debtors.[1]             :

                                                    :       Jointly Administered

                                                    :

———————————————————— x

## ORDER AUTHORIZING DEBTORS TO
## RETAIN AND EMPLOY FTI CONSULTING, INC. AS
## FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

Upon the Application[2] of LATAM Airline Group S.A., and its affiliated debtors

and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[3] for entry

of an order (this "Order") authorizing Debtors' retention and employment of FTI Consulting,

Inc. ("FTI") as the Debtors' financial advisor, effective *nunc pro tunc* to the Petition Date, in

accordance with the terms and conditions set forth in the Engagement Agreement, all as more

fully set forth in the Application; and upon the *Declaration of Ramiro Alfonsín Balza in Support*

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are:  LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte
Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K);
LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A.
(96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-
0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo
Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts,
LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486);
Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance
Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-
9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A.
(96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines
Services Inc. (65-0623014).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500
NW 22nd Street Miami, FL 33131.

[2]     All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Application.

[3]     LATAM Parent, and its debtor and non-debtor subsidiaries and affiliates are collectively referred to as
"LATAM".

*of First Day Motions and Applications in Compliance with Local Rule 1007-2* (ECF No. 3) and

the *Declaration of Brock Edgar, Senior Managing Director of FTI* attached hereto as <u>Exhibit B</u>;

and the *Declaration of Juan Carlos Mencíó In Support of the Debtors' Application for an Order*

*Authorizing Employment and Retention of FTI as Financial Advisor for the Debtors Effective*

Nunc Pro Tunc *to the Petition Date*, attached to this application as Exhibit C (the "Mencíó

Declaration"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court

for the Southern District of New York dated January 31, 2012; and the Court having found that

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final

order consistent with Article III of the United States Constitution; and the Court having found

that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and the Court having found that the relief requested in the Application is in

the best interests of the Debtors, their estates, their creditors and other parties in interest; and the

Court having found that the Debtors' notice of the Application and opportunity for a hearing on

the Application was appropriate and no other notice need be provided; and the Court having

reviewed the Application and having heard the statements in support of the relief requested

therein at a hearing before the Court (the "<u>Hearing</u>"); and the Court having determined that the

legal and factual bases set forth in the Application and on the record of the Hearing establish just

cause for the relief granted herein; and all objections to the Application (if any) having been

withdrawn or overruled; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor;

## IT IS HEREBY ORDERED THAT:

The Application is GRANTED to the extent set forth herein.

1.      The Debtors are authorized, pursuant to sections 105(a), 327(a), 328(a), 329 and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, to retain and employ FTI as their financial advisors in accordance with the terms and conditions of the Engagement Agreement, as modified herein or by the Bankruptcy Rules or Court orders, *nunc pro tunc* to the Petition Date, and to pay fees and reimburse expenses to FTI on the terms set forth in the Engagement Agreement.

2.      The terms of the Engagement Agreement, as modified by this Order, are approved in all respects except as limited or modified herein.

3.      Notwithstanding anything to the contrary in the Engagement Agreement or the Application, to the extent that the Debtors request FTI to perform any services other than those detailed in the Engagement Agreement, the Debtors shall seek further approval by the Court by an application that shall set forth the additional services to be performed and the additional fees sought to be paid.

4.      FTI shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first Order of the Court awarding fees and expenses to FTI.

5.      Notwithstanding anything to the contrary in the Engagement Agreement or the Application, to the extent that FTI seeks any termination of services, FTI shall seek further approval by the Court by an application that shall set forth the termination of services sought.

6.      Notwithstanding anything to the contrary contained herein or in the Application or Engagement Agreement, FTI shall file interim and final fee applications for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of

- 3 -

the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other Orders of the Court.

7.    Prior to any increase in FTI 's rates, FTI shall file a supplemental affidavit with the Court and provide ten (10) business days' notice to the Debtors and any official committee, which supplemental affidavit shall explain the basis for the requested rate increase in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and all rate increases are subject to review by the Court.

8.    Notwithstanding anything to the contrary in the Application or Engagement Agreement, to the extent that FTI uses the services of independent contractors or employees of foreign affiliates (collectively, the "Contractors") in these cases, FTI (i) shall pass-through the cost of such Contractors to the Debtors at the same rate that FTI pays the Contractors; (ii) shall seek reimbursement for actual out-of-pocket expenses only; and (iii) shall ensure that the Contractors are subject to the same conflict checks and disclosures as required of professionals by Bankruptcy Rule 2014.

9.    FTI shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

10.    The limitation of liability section in paragraph 6.2 of the Standard Terms and Conditions attached to the Engagement Agreement shall be of no force or effect with respect to the engagement authorized by this Order.

11.    The Indemnification Provisions are approved; provided, however, that all requests by FTI for the payment of indemnification shall be made by means of an application to

this Court and shall be subject to review by this Court to ensure that payment of such indemnity

conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of

the litigation or settlement in respect of which indemnity is sought; provided, further, however,

that in no event shall FTI be indemnified in the case of its own bad faith, self-dealing, breach of

fiduciary duty (if any), gross negligence, or willful misconduct.   In the event that FTI seeks

reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment

of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time

records for the attorneys' fees and expenses shall be included in FTI's own applications but

determined by this Court after notice and a hearing, and such invoices and time records shall be

subject to the Fee Guidelines and the approval of the Court pursuant to sections 330 and 331 of

the Bankruptcy Code without regard to whether such attorneys have been retained under section

327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy

section 330(a)(3)(C) of the Bankruptcy Code.

      12.    To the extent there may be any inconsistency between the terms of the

Application, the Engagement Agreement, and this Order, this Order shall govern.

      13.    Notice of the Application is adequate under Bankruptcy Rule 6004(a).

      14.    The Debtors are authorized to take all action necessary to effectuate the

relief granted in this Order.

      15.    This Court shall retain jurisdiction with respect to any matters, claims,

rights or disputes arising from or related to the Application or the implementation, interpretation

or enforcement of this Order.

Dated: _____, 2020

    New York, New York

HONORABLE JAMES L. GARRITY JR.
United States Bankruptcy Judge

- 5 -

**<u>Exhibit B</u>**

**Edgar Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ———————————————— x | |
| In re: | : |
| | : Chapter 11 |
| LATAM Airlines Group S.A., *et al.* | : |
| | : Case No. 20-11254 (JLG) |
| Debtors.[1] | : |
| | : Jointly Administered |
| | : |
| ———————————————— x | |

## DECLARATION OF BROCK EDGAR IN SUPPORT OF
## THE APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER
## AUTHORIZING RETENTION AND EMPLOYMENT OF FTI CONSULTING,
## INC. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

I, Brock Edgar, make this declaration pursuant to 28 U.S.C. § 1746 and state

as follows:

1.      I am a Senior Managing Director at FTI Consulting Canada ULC a

financial advisory services firm that is owned by FTI Consulting, Inc., a financial advisory

services firm with numerous offices throughout the United States and similar subsidiaries that

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are:  LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

perform similar services throughout the world (collectively "FTI"). I am duly authorized to

make this declaration (the "Declaration") on behalf of FTI and submit this Declaration in support

of the Debtors' application (the "Application"),[2] pursuant to section 327(a) of the Bankruptcy

Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, for

authority to retain and employ FTI, as financial advisors to the Debtors, *nunc pro tunc* to May

26, 2020 (the "Petition Date") upon the terms and conditions set forth in the Application and the

Engagement Agreement.

2.     Except as otherwise stated in the Application, I have personal knowledge

of the facts set forth herein and, if called as a witness, I would testify thereto. Certain of the

disclosures set forth herein are related to matters within the knowledge of other employees of

FTI and are based on information provided to me by them.

## FTI'S QUALIFICATIONS

3.     FTI has a wealth of experience in providing financial advisory services in

complex restructurings and reorganizations. FTI enjoys an excellent reputation for services it

has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout

the United States. FTI's expertise includes liquidity and capital structure assessment, debt and

equity restructuring advice, and identification of reorganization alternatives. FTI has significant

experience assisting distressed companies with day-to-day management activities, including

development of *pro forma* financial statements and business plans, cash flow management and

implementation of liquidity-enhancing and cost-saving strategies.

4.     Accordingly, on April 20, 2020, FTI was engaged to provide certain

services to the Debtors pursuant to the Engagement Agreement. FTI has become intimately

---

[2]     All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Application.

familiar with the Debtors' financial affairs, business operations, assets, contractual arrangements, capital structure, key stakeholders and other related material information.  Likewise, in providing prepetition services to the Debtors, FTI's professionals have worked closely with the Debtors' management, board of directors and other advisors, analyzing the Debtors' obligations to vendors, suppliers and service providers, preparing for the Debtors' chapter 11 filing and first day relief, developing and implementing strategies for communications with internal and external stakeholders, and preparing financial analysis and planning.  In particular, FTI has worked closely with the Debtors to analyze the Debtors' financial positions and to assist the Debtors in preparing for a smooth entry into and operation under the protections of chapter 11. FTI continues to assist the Debtors with the restructuring contemplated in these Chapter 11 Cases.  Accordingly, FTI has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtors' Chapter 11 Cases.

5.      Pursuant to the terms and conditions of the Engagement Agreement, FTI has provided and agreed to continue providing the following financial advisory and consulting services:[3]

(a) Supporting the preparation of first day motions and petitions, as needed, for a potential chapter 11 filing;

(b) Assist management in generating the "Top Creditor List" and master mailing matrix; extract data necessary to develop critical trade analysis, foreign vendor analysis, shippers and warehousemen, as well as various exhibits for first day pleadings;

(c) Assisting with developing accounting and operating procedures to segregate prepetition and postpetition business transactions;

---

[3]    The summary of the services and the other Engagement Agreement terms included in the Application is provided for purposes of convenience only and is qualified in its entirety by reference to the Engagement Agreement.  To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.

(d) Assisting in the identification, organization and classification of executory contracts and unexpired leases and assisting with cost/benefit evaluations with respect to the assumption or rejection of each, as needed;

(e) Preparing the Debtors with respect to financial disclosures that will be required by the Court;

(f) Assisting with the review, classification, reconciliation, and quantification of claims against the estate under the plan of reorganization;

(g) Assisting with bankruptcy reporting requirements (e.g., Statements of Financial Affairs and Schedules of Assets and Liabilities, Monthly Operating Reports, etc.);

(h) Engage and coordinate with the U.S. Trustee to minimize the burden on the Debtors while fulfilling all statutory obligations;

(i) Assisting with the development or review of the Debtors' business plan;

(j) Reviewing or assisting with the development of the Debtors' 13-week cash flow forecast and regular variance reporting;

(k) Assisting with evaluating the Debtors' cash flows under a variety of scenarios;

(l) As required, assist the Debtors and their proposed counsel in support of restructuring proceedings in jurisdictions outside the U.S.;

(m) Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(n) To the extent that an unsecured creditors committee or any other group is formed, engage with and manage the committee/group to minimize the distraction to management;

(o) Assist the Debtors and proposed counsel in preparation of plan and disclosure statement documents and supporting materials;

(p)  Provide testimony and other litigation support as the circumstances warrant;

(q) Attending meetings, presentations and negotiations as may be requested by the Debtors and their proposed counsel;

(r) Development of overarching messaging and communications planning;

(s) Development of materials for identified stakeholder audiences (including but not limited to employees, media, customers, loyalty members, suppliers, regulators and elevated officials, financial audiences and the general public); as well as global media relations; and

(t) Render such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding.

## NO DUPLICATION OF SERVICES

6.     FTI understands that the Debtors have retained and may retain additional

professionals during the term of the engagement and agrees to work cooperatively with such

professionals to integrate any respective work conducted by all professionals on behalf of the

Debtors.  I believe that FTI is providing distinct and specific financial advising and consulting

services, and such services are not expected to duplicate those to be provided by any other

consultants or advisors, including, without limitation, the law firm Cleary Gottlieb Steen and

Hamilton LLP ("Cleary Gottlieb"), the law firm Togut, Segal & Segal LLP ("Togut") and

investment bankers PJT Partners ("PJT").  FTI, in consultation with the Debtors, will ensure

that the scope of the work it undertakes does not overlap materially with that performed by

other professionals retained by the Debtors.

## PROFESSIONAL COMPENSATION

7.     In consideration of the services to be provided by FTI, subject to this

Court's approval, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Bankruptcy Rules, and any applicable orders of the Court, and pursuant to the terms and

conditions of the Engagement Agreement, the Debtors have agreed to: (i) compensate FTI for the

services set forth in the Engagement Agreement on an hourly basis in accordance with FTI's

ordinary and customary rates in effect on the date such services are rendered and (ii) reimburse

actual and necessary costs and expenses incurred by FTI in connection with the services

performed on behalf of the Debtors (collectively, the "Fee and Expense Structure").

| Billing Category | Hourly Billing Rate ($USD) |
|---|---|
| Senior Managing Director | $925 - $1,295 |

| Directors / Senior Directors / Managing Directors | $550 - $905 |
|---|---|
| Consultants/Senior Consultants | $350 - $660 |
| Administrative / Paraprofessionals | $125 - $280 |

8.      The rates set forth above reflect FTI's normal and customary billing practices for engagements of this complexity and magnitude.  FTI revises its hourly rates periodically.  Furthermore, to the extent FTI uses employees of its U.S. parent or its affiliates it will charge standard hourly rates for such employees, which fall within the above ranges.   FTI will maintain time records in conformity with the Fee Guidelines.

9.      Over the last twelve months, the Debtors have paid FTI approximately $3,138,832 in fees and expenses excluding the $222,565 that was applied to the retainer.  In addition, on May 18, 2020, FTI received a retainer in the amount of $1,000,000, of which approximately $222,565 was applied to prepetition fees and expenses outstanding balances existing as of the Petition Date leaving a retainer balance of $777,435.  FTI's retainer is held in a segregated client trust account at The Bank of Nova Scotia in Toronto Canada.  Some of these payments were received by FTI during the ninety days before the Petition Date.  The Debtors submit that such payments were received in the ordinary course of business and are not recoverable preferences and that the receipt of such payments does not constitute an interest adverse to the Debtors.

10.      According to FTI's books and records, during the ninety-day period prior to the Petition Date, the Debtors paid FTI $3,097,699 in aggregate for professional services performed and expenses incurred, not including the payment over the last twelve months. Including the $222,565 amount that was applied to the retainer the amount is $3,320,264.

11.     I, as Senior Managing Director, will lead and supervise the FTI engagement team, and my currently hourly rate is $985.

12.     FTI revises its hourly rates periodically.  To the extent FTI uses employees of  its parent or affiliates during this engagement, FTI will charge standard hourly rates for each such employee which are within the above ranges of hourly rates.

13.     To the best of my information and belief, except as set forth above, the Debtors did not make any other payments to FTI during the ninety-day period prior to the Petition Date, and FTI is not a prepetition creditor of the Debtors.  A summary of payments invoiced and received by FTI in the ninety-day period prior to the Petition Date is set forth in Schedule C annexed hereto.

14.     In addition to the fees outlined above, FTI will bill for reasonable and documented direct expenses which are incurred on the Debtors' behalf during this Engagement. Direct expenses include reasonable and customary and documented out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement.  The Debtors have been informed that FTI believes it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all of its clients.

15.     If FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating this engagement, the Debtors will compensate FTI at its regular hourly rates and reimburse FTI for reasonable direct expenses (including counsel fees) with respect thereto.

16.     I believe that the Fee and Expense Structure is reasonable, market-based, and comparable to that of financial advisors and consultants of similar stature to FTI for comparable engagements, both in and out of chapter 11.  The Fee and Expense Structure is consistent with FTI's normal and customary billing practices for comparably-sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these Chapter 11 Cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by FTI and other financial advisory and consulting firms with the rendering of comparable services to clients such as the Debtors.

17.     Further, FTI shall provide reasonable notice to the Debtors, the U.S. Trustee, and any statutory committee appointed in the Chapter 11 Cases of any generally applicable increase of FTI's hourly rates as set forth herein.  FTI also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2012*, both in connection with the Application and the interim and final fee applications to be filed by FTI in these Chapter 11 Cases.

## INDEMNIFICATION PROVISIONS

18.     The Debtors have agreed to the Indemnification Provisions set forth in the Engagement Agreement, which provide that the Debtors will, except as expressly provided in the Engagement Agreement, indemnify and hold harmless FTI's Indemnified Persons from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to the retention of FTI, the execution and delivery of the Engagement Agreement, the provision of

the services or other matters relating to or arising from the Engagement Agreement.   The

Debtors have agreed to pay damages and expenses, including reasonable legal fees and

disbursements of counsel as incurred in advance.  FTI has agreed that it will reimburse any

amounts paid in advance to the extent they relate directly to any such claim, liability,

obligation, damage, cost or expense shall have been determined to have resulted from the gross

negligence or willful misconduct of the applicable Indemnified Person(s) (an "Adverse

Determination").

19.    The terms of the Engagement Agreement, including the Indemnification

Provisions, were negotiated between the Debtors and FTI at arm's length, and the Debtors

respectfully submit that the Indemnification Provisions, as modified by the Proposed Order, are

customary, reasonable and in the best interests of the Debtors, their estates and creditors.

Accordingly, as part of this Application, the Debtors request that this Court approve the

Indemnification Provisions as modified by the Proposed Order.

**FTI'S DISINTERESTEDNESS**

20.    In connection with the preparation of this Declaration, FTI conducted a

review of its contacts with the Debtors, their affiliates, and certain other parties in interest

("Potential Parties in Interest") that were made reasonably known to FTI.  The Debtors

organized the Potential Parties in Interest by category, and the categories are listed on Schedule

A attached hereto.[4]  A search was performed for connections to the Potential Parties in Interest

as to FTI and its affiliates.  FTI's review, completed under my supervision, consisted of a query

of the Schedule A parties within an internal computer database containing names of individuals

---

[4]    Given the size of LATAM' s operations, the number of vendors that may have an interest in any of the
individual Debtors numbers in the tens of thousands.  Accordingly, FTI only included on the Potential
Parties-in-Interest List those vendors that the Debtors paid more than $5 million in 2019 and have an open accounts
payable balance of more than $1 million.

and entities that are involved in open cases in which FTI's current or recent former clients are

also involved.  While this review remains underway, a summary of the relationships that FTI

has identified thus far during this process is set forth on <u>Schedule B</u> to this Declaration.  Upon

completion of our review, FTI will supplement this Declaration for any additional relationships

identified.

21.     Based on the results of its review thus far, FTI represents that, to the best

of its situation that knowledge, FTI knows of no fact or would represent a conflict of interest for

FTI with regard to the Debtors.  FTI wishes to disclose that:

22.     Prior to the Petition Date, FTI's Economic Consulting business segment

was engaged by LATAM Airlines Group S.A. to provide economic analysis relating to a joint

venture.

23.     Prior to the Petition Date, FTI's Economic Consulting business segment

was engaged by Delta Air Lines, Inc. to provide economic analysis relating to a transaction

involving LATAM Airlines Group S.A.

24.     Prior to the Petition Date, FTI's Strategic Communications business

segment was engaged by LATAM Airlines Group S.A. Colombian subsidiary to provide

monitoring of the media with respect to the group.

25.     Prior to the Petition Date, FTI's Forensic Litigation & Consulting business

segment was engaged to provide assistance with the production of enterprise datasets and data

analysis for a litigation in which LATAM Airlines Group S.A. is a defendant.

26.     Prior to the Petition Date, FTI's Forensic Litigation & Consulting business

segment was engaged by LATAM Airlines Group S.A. to provide advisory services, data

analytics and process mapping relating to litigation involving potential FCPA violations.

27.     FTI has provided and could reasonably be expected to continue to provide

services unrelated to the Chapter 11 Cases to its current clients in matters involving the

individuals and entities listed on Schedule B.[5]    FTI's assistance to its clients in the cases

involving these parties has been related to providing various financial restructuring, strategic

communications, litigation support and/or engineering and scientific investigation consulting

services.  To the best of my knowledge, FTI has not provided, does not provide, and will not

provide services to any of its clients, other than the Debtors, in matters directly related to the

Debtors or these cases, nor does FTI's involvement in these cases compromise its ability to

continue providing such consulting services.

28.     In addition, as part of its diverse practice, FTI appears in numerous

cases, proceedings and transactions that involve many different professionals, including

attorneys, accountants and financial consultants, who may represent claimants and other

parties-in-interest in these cases.  Also, FTI has performed in the past, and may perform in the

future, advisory consulting services for various attorneys and law firms, and has been

represented by several attorneys and law firms, some of whom may be involved in these cases.

In addition, FTI has in the past, may currently, and will likely in the future, be working with or

against other professionals involved in these cases in matters unrelated to the Debtors and these

cases.  Based on my current knowledge of the professionals involved, and to the best of my

knowledge, none of these relationships create interests materially adverse to the Debtors and

none are in connection with these cases.

29.     It is FTI's policy and intent to update and expand its ongoing relationship

search for additional parties in interest in an expedient manner.  If any new material relevant

---

[5]     None of FTI's current clients represent over 1% of FTI's annual gross revenue for 2019.

facts or relationships are discovered or arise, FTI will promptly file a supplemental affidavit as required by Bankruptcy Rule 2014(a).

30.     To the best of my knowledge, (i) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and (ii) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these cases.

31.     I have read the Application and, to the best of my knowledge, information and belief, the contents of the Application are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 9, 2020

FTI CONSULTING, INC.

By:     _/s/ Brock Edgar_____
Name:  Brock Edgar
Title:    Senior Managing Director

**LATAM Airlines Group S.A**
<u>Schedule A</u>

**Potential Parties-in-Interest**

<u>**Debtor Entities**</u>
Aerovías de Integración Regional S.A.
Cargo Handling Airport Services, LLC
Connecta Corporation
Fast Air Almacenes de Carga S.A.
Holdco Colombia I SpA
Holdco Colombia II SpA
Holdco Ecuador S.A.
Inversiones Aéreas S.A.
Inversiones Lan S.A.
Lan Cargo Inversiones S.A.
Lan Cargo Overseas Ltd.
Lan Cargo Repair Station LLC
Lan Cargo S.A.
Lan Pax Group S.A.
LATAM Airlines Ecuador S.A.
LATAM Airlines Group S.A.
Latam Airlines Perú S.A.
LATAM Finance Ltd.
LATAM Travel Chile II S.A.
Línea Aérea Carguera de Colombia S.A.
Maintenance Service Experts, LLC
Mas Investment Ltd.
Peuco Finance Ltd.
Prime Airport Services Inc.
Professional Airline Cargo Services, LLC
Professional Airline Maintenance Services LLC
Professional Airlines Services Inc.
Technical Training LATAM S.A.
Transporte Aéreo S.A.

<u>**Non-Debtor Affiliates**</u>
ABSA – Aerolinhas Brasileiras S.A.
Amarillys Leasing Limited
Amendoeira Leasing Limited
Americonsult de Costa Rica SA
Americonsult de Guatemala SA
Americonsult SA de CV
Angelim Leasing Limited
Araucaria Leasing Limited
Atlantic Aviation Investments Limited LLC

Banduria Leasing Limited
Becacina Leasing LLC
Caiquen Leasing LLC
Canastero Leasing Limited
Chercan Leasing Limited
Chirihue Leasing Trust
Chucao Leasing Limited
Cisne Leasing LLC
Colibri LLC
Consorcio Fast Air Laser Cargo UTE
Consultoria Administrativa Profesional S.A. de CV
Corsair Participacoes S.A.
Cruiser
Cucillo Leasing Limited
Fidelidade Viagens e Turismo S.A.
Figueira Leasing Limited
Flamenco Leasing LLC
Fragata Leasing LLC
Gallo Finance Limited
Gaviota Leasing Limited
Golondrina Leasing LLC
Guabiroba Leasing Limited
Guanay Finance Limited
Holdco I S.A
Inversiones Heron I Limitada
Inversora Cordillera SA
Jacana Leasing Limited
Jacaranda Leasing Limited
Jarletul SA
Jatoba Leasing Limited
Jilguero Leasing LLC
Lan Argentina SA
Lan Tours de Mexico S.A. de CV
Laser Cargo SRL
LATAM Travel S.R.L. (LTBO)
LATAM Travel SA
Locia Leasing Limited
Mirlo Leasing LLC
Mogno Leasing Limited
Multiplus Corredora de Seguros Ltda.
Parina Leasing Limited
Patagon Leasing Limited
Pau Brasil Leasing Limited
Picaflor Leasing Limited
Pilar I Leasing Limited
Pilar II Leasing Limited

Piquero Leasing Limited
Platero Leasing LLC
Prismah Fidelidade Ltda.
Quetro Aircraft Leasing Trust
Rayador Leasing Limited
Sapucaia Leasing Limited
Sequoya Leasing Limited
Tagua Leasing LLC
TAM Linhas Aereas S.A.
TAM S.A.
Tarumarana Leasing Limited
Tenca Leasing Limited
Thunderbolt
Tiuque Leasing Limited
Torcaza Leasing Limited
Tordo Aircraft Leasing Trust
TP Franchising Ltda.
Transportes Aereos del Mercosur SA
Tricahue Leasing LLC
Valentine Finance Limited
Vari Leasing limited
Yeco Leasing Limited
Ype Leasing Limited
Zarapito Leasing LLC

**<u>Current Directors & Officers</u>**
Carlos Heller Solari
Eduardo Novoa Castellón
Emilio del Real
Enrique Cueto Plaza
Giles Agutter
Henri Philippe Reichstul
Hernán Pasman
Ignacio Cueto Plaza
Juan Carlos Menció
Juan José Cueto Plaza
Nicolás Eblen Hirmas
Patrick Horn
Paulo Miranda
Ramiro Alfonsín Balza
Roberto Alvo
Sonia Villalobos

**<u>Former Directors & Officers (Last 6 Years)</u>**
Andrés Osorio Hermansen
Antonio Pizarro
Armando Valdivieso Montes

Claudia Sender
Cristián Ureta Larraín
Damian Scokin
Emilio del Real Sota
Enrique Elsaca Hirmas
Francisco Luzón López
Georges de Bourguignon Arndt
Gerardo Jofré Miranda
Jerome Cadier
José María Eyzaguirre Baeza
Marco Antonio Bologna
Maria Claudia Amaro
Mauricio Rolim Amaro
Ramón Eblen Kadis
Ricardo Caballero
Roberto Alvo Milosawlewitsch

**Major Equity Holders**
Axxion S.A.
Comercial las Vertientes SpA
Costa Verde Aeronautica S.A.
Costa Verde Aeronautica SpA
Costa Verde Aeronautica Tres SpA
Delta Air Lines, Inc.
Inversiones Andes II SpA
Inversiones Andes SpA.
Inversiones HS SpA.
Inversiones Nueva Costa Verde Aeronautica Ltda.
Inversiones PIA SpA.
Qatar Airways Investments (UK) Ltd.
TEP Chile S.A.

**Debtors' Restructuring Professionals**
Brigard Urrutia Abogados S.A.S.
Evercore Group L.LC.
FTI Consulting Canada ULC
FTI Consulting Inc.
PJT Partners, Inc.
PricewaterhouseCoopers
Prime Clerk LLC
Togut, Segal & Segal LLP
Willis Towers Watson

**Significant Contract Counterparties**
Airbus
Aircastle Advisor LLC
Aircastle Holding Corporation Limited

Aircastle Limited
Avolon Aerospace (Ireland) AOE 102 Limited
Avolon Aerospace Leasing Limited
Bank of Utah
Boeing Aircraft Holding Company
DVB Bank SE
Esmax Distribuidora S.A.
GE Celma Ltda.
GE Commercial Aviation Services Limited
GE Engine Services, Inc.
GE Engine Services, LLC
IAE International Aero Engines AG
JSA Aircraft 7126, LLC
JSA Aircraft 7128, LLC
JSA Aircraft 7239, LLC
JSA Aircraft 7298, LLC
MTU Motoren-und Turbinen-Union München GmbH
PAAL Aquila Company Limited
PAAL Gemini Company Limited
Pratt & Whitney Engine Leasing LLC
Pure Biofuels del Peru S.A.C.
Rolls-Royce PLC
Sabre Global Inc.
Sky High Leasing Company Ltda
United Technologies International Corporation
Vermillion Aviation (Two) Limited

**Insurers**
10ª Vara de Execuções Fiscais Federais de São Paulo/SP.
17a Vara Cível da Comarca da Capital de João Pessoa/PB.
Procon
Tribunal de Justição de São Paulo
União Federal
Vara Civel Campinas
Vara da Fazenda Pública da Comarca do Rio de Janeiro - RJ
Vara das Execuções Fiscais Estaduais
Vara Federal da Subseção de Campinas SP

**Unions**
Asociación Colombiana de Auxiliares de Vuelo
Asociación Colombiana de Aviadores Civiles
Asociación Colombiana de Mecánicos de Aviación
Asociación de Pilotos de Líneas Aéreas
Labor Union of Workers of Easter Island
Pilots' Latam Colombia Union (ADALAC)
Sindicato Administrativo de Transporte Aéreo S.A.
Sindicato Administrativo LATAM

Sindicato Aeropuerto
Sindicato de Empresa de Pilotos de LAN Airlines S.A.
Sindicato de Empresa de Pilotos de LATAM Airlines Group S.A.
Sindicato de Empresa de Pilotos de Transporte Aéreo S.A.
Sindicato de los Trabajadores del Transporte Aéreo Colombiano
Sindicato de Pilotos de LAN Perú S.A.
Sindicato de Pilotos LATAM Airlines Chile
Sindicato de Trabajadores de la Aviación de la Empresa LAN Chile S.A.
Sindicato de Trabajadores de LANExpress S.A.
Sindicato de Trabajadores N°1 de Empresa Transporte Aéreo S.A. Lanexpress
Sindicato de Trabajadores N°1 de Transporte Aéreo S.A.
Sindicato de Tripulantes de Cabina de la Empresa Lanexpress
Sindicato de Tripulantes de Cabina de Lan Perú S.A.
Sindicato de Tripulantes de Cabina de LATAM Airlines Group S.A.
Sindicato de Tripulantes de Cabina de Transporte Aéreo S.A.
Sindicato Historico de Mantenimiento Aeronautico de Chile
Sindicato Interempresa LATAM
Sindicato Interempresa Trabajadores Mantenimiento LATAM
Sindicato Mantenimiento LACL
Sindicato Nacional das Empresas Aeroviárias
Sindicato Nacional das Empresas de Aviação Agrícola
Sindicato Nacional das Empresas de Taxi-Aéreo
Sindicato Nacional de Tripulantes de Cabina de la Empresa LATAM Airlines Group S.A.
Sindicato Nacional dos Aeronautas
Sindicato Nacional dos Aeroviários
Sindicato Nacional Interempresa de Trabajadores Aeronáuticos
Sindicato Pilotos Latam Airlines
Sindicato Único de Técnicos Aeronáuticos de Lan Perú S.A.
Sindicato Uno de Pilotos de LAN Cargo
Unión de Pilotos Aviadores de LATAM
Workers Union of LATAM Travel

**Bankruptcy Court for the Southern District of New York**
Aileen Ramia
Aldel Brown
Annie Wells
Arturo Tavarez
Brenda Robie
Chantel Barrett
Christine Azzaro
Colin Davidson
Deanna Anderson
Dorothy Li
Frances Fredericks
Frances Ha
Gilana Keller
Greg White

Hon. Cecilia G. Morris
Hon. James Garrity Jr.
Hon. Martin Glenn
Hon. Michael Wiles
Hon. Robert Drain
Hon. Robert Grossman
Hon. Sean H. Lane
Hon. Shelley Chapman
Hon. Stuart Bernstein
Jacqueline DePierola
Jamie Eisen
Jeremiah Ledwidge
Justin Imperato
Kasey Wang
Katrina Pape
Kristin Corbett
Liza Ebanks
Lorraine Echevarria
Lynda Calderon
Marc Veilleux
Matthew Bentley
Melanie Miller
Mike Paek
Nicole Herther-Spiro
Ronald Howard
Rosemary DiSalvo
Tina Milburn
Vanessa Ashmeade
Willie Rodriguez

**<u>U.S. Trustee Office, Region 2, Southern District of New York, Manhattan Division</u>**
Alaba Ogunleye
Andrea B. Schwartz
Andy Velez-Rivera
Benjamin J. Higgins
Brian S. Masumoto
Cheuk M. Ng
Danny A. Choy
Ercilia A. Mendoza
Greg M. Zipes
Ilusion Rodriguez
Linda A. Riffkin
Madeleine Vescovacci
Maria Catapano
Mary V. Moroney
Nadkarni Joseph
Paul K. Schwartzberg

Richard C. Morrissey
Serene Nakano
Shannon Scott
Susan Arbeit
Sylvester Sharp
Victor Abriano

**Taxing Authorities**
Administración Federal de Ingresos Públicos
Administración Gubernamental de Ingresos Públicos
Agencia de Recaudación de La Provincia de Buenos Aires
Agencia Estatal de Administración Tributaria (Spain)
Australian Taxation Office
Bundesministerium Der Finanzen (Germany)
Dipartimento Delle Finanze (Italy)
Dirección de Impuestos y Aduanas Nacionales (Chile)
Dirección General Impositiva (Uruguay)
Dirección Metropolitana Tributaria (Ecuador)
Direction Générale des Impôts (France)
Distrito Metropolitano De Quito (Ecudaor)
HM Revenue & Customs (England)
Inland Revenue Department (New Zealand)
Internal Revenue Service
Miami-Dade County Tax
Ministerie Van Financiën (Netherlands)
Ministerio de Hacienda y Crédito Público
Municipalidad (Chile)
Secretaría Distrital De Hacienda - Bogotá
Servicio de Impuestos Internos
Servicio de Impuestos Nacionales (Bolivia)
Servicio de Rentas Internas (Ecudaor)
Servicios de Rentas Internas del Ecuador
Subsecretaria de Estado de Tributación (Paraguay)
Superintendencia de Compañias (Ecudaor)
Superintendencia Nacional de Administración Tributaria (Peru)
Tesoreria General de La Republica (Chile)

**Debtors' Banks &Financial Service Providers**
Asesorías e Inversiones American Express Chile Limitada
Banco Bilbao Vizcaya Argentaria, S.A.
Banco Bisa
Banco Colpatria
Banco Davivienda S.A.
Banco de Bogotá
Banco de Chile
Banco de Costa Rica
Banco de Crédito del Perú

Banco de Crédito e Inversiones
Banco de la Nacion Argentina
Banco de la Nacion Perú
Banco de la Producción S.A. (Produbanco)
Banco de la República Oriental del Uruguay
Banco de Occidente
Banco de Polinesya
Banco do Brasil
Banco Estado
Banco General de Panama
Banco Guayaquil
Banco Internacional
Banco la Caixa
Banco Pacifico
Banco Pichincha
BanColombia
Bank of America
Bank of China
Black Rock
BNP Paribas
Commerzbank
Corredores Asociado
Deutsche Bank
Interbank Perú
J.P.Morgan
Sondrio
U.S. Bank National Association
Westpac

**<u>Fuel Suppliers</u>**
Air BP Copec S.A.
Asecna
Chevron Texaco
EP Petroecuador
Exxon
PBF Energy Inc.
Petrobras Distribuidora S.A.
Raizen Combustiveis S.A.
Shell
Tesoro Nacional Aerocivil
Vitol Aviation BV
World Fuel International S.R.L.
World Fuel Services Chile Ltda.

**<u>Ordinary Course Professionals</u>**
Mckinsey & Company
Norton Rose Fulbright LLP

Norton Rose Fulbright US LLP

**<u>Significant Vendors</u>**
21 Air
Accelya
Accenture
Acciona Airports Americas SpA
Administracion Nacional de Aviacion
Aena Aeropuertos S.A.
Aero Miami
AEROCALI
Aeropuerto De Cancun
Aeropuerto Internacional de La Ciudad de México
Aeropuertos Andinos Del Peru S.A.
Aeropuertos Argentina 2000
Aerotransportes Mas De Carga S.A. de C.V.
Aerovias Del Continente Americanos
Air France Industries
Air New Zealand Limited
Alliance Ground International
Allus Spain S.l Sucursal Del Peru
Almacontact S.A.S.
Amadeus España
Amadeus IT Group S.A.
American Airlines, Inc.
Amsterdam Airport Schiphol
Australia Pacific Airports
Aviam Limited Aero International
AWAS Aviation Trading Limited
Be Aerospace
Bridgestone Aircraft Tire Inc.
Celtago Funding Limited
Cencosud Retail Peru S.A.
Comando da Aeronautica
Compania de Servicios Conexos Express
Compañía Española De Petróleos, S.A.U.
Compañia Peruana De Medios de Pago
Concessionária do Aeroporto Internacional de Guarulhos S.A
Coopesa Office
Corpac
Corporación Gacela S.A.C.
Cpd Remuneraciones U.S.A.
Dcv Registros
Dester
Digecor Inc.
Direccion Aeronautica Civil Pty
Dirección General De Aeronáutica Civil

Direccion Gral de Aviacion Civil
Dnata Bv Aviapartner Cargo B.V.
Edenred Chile S.A.
Edenred Peru S.A.
Empresa Constructora Precon S.A.
Empresa Cubana de Navegación Aérea
ENAP Refinerias S.A.
Engine Lease Finance Corporation
Enterprise Services Brasil Serviços de Tecnologia Ltda.
Enterprise Services Chile
EUROCONTROL
Everfit
Facebook
Falabella S.A.
Fideicomiso
Fideicomiso Mercantil Quiport
Fideicomiso Mercantil Tagsa
Fideicomiso Pa Opain S.A.
Fraport
Global Airtech
Global Aviation Co.
Globant
Gobernacion De San Andres Providencia
Gogo LLC
Goodrich
Google
Graphene
Hamilton Sundstrand
Honeywell
Hotelbeds USA, INC.
IATA Clearing House
Iata Geneva
Iberia Lineas Aereas De Espana S.A.
IBM
Ingesmart S.A.
Innerworkings Servicios Ltda.
Instituto Nacional De Aviacion Civil
Intercargo S.A.C.
International Air Transport Association
International Air Transport Association
Israel Aerospace
Jeppesen
Johannesburg Limited
Jsa Aircraft
KLM Royal Dutch Airlines
Kuehne Nagel Inc.

Lasa Sociedad de Apoyo Aeronautico
Lima Airport Partners
Los Angeles World Airports
LSG Sky Chefs
Lufthansa Technik Aktiengesellschaft
Macquarie Aircraft Leasing
Menzies Aviation Colombia S.A.S.
Mexicana Mro S.A. de C.V.
Microsoft Chile S.A.
Ministerio De Turismo (Ecuador)
Oracle
Orbital Servicos Auxiliares De Transport Aereo Ltda.
Orix Aviation Systems Limited
Pan American Energy LLC Sucursal Argentina
Panasonic
Professional Aviation Marketing
Qantas Airways Ltd.
Recaro
Retail In Motion Latin America SpA
Rocket Travel Inc
Safran Group
Secretaría de Comunicaciones y Transportes, México
Sita Information Networking Computing
Smbc Aviation Capital
Sociedad Aeroportuaria de la Costa S.A.
Sociedad Concesionaria Nuevo Pudahu
Sociedad Operadora De Aeropuertos Centro Norte S A S.
Spafax Medios y Publicidad SpA
Swissport
Telefonica
Teradata Chile Tecnologias De Informacion Ltda.
Tesoreria General de La Republica
Thales Avionics Inc.
Thompson Aero Seating Ltd.
Thoughtworks
Tianda Chile Spa
Transaereo S.A.S.
Transbank S.A.
Transoceanica Cia Ltda.
Travel Security S.A.
Turismo Cocha S.A.
U.S. Department of Homeland Security
Unilode Aviation Solutions
United Aerospace Corp.
Wamos Air
Western Global Airlines

YPF S.A.

## Top Unsecured Creditors

Aercap Holdings N.V.
Aerospace Turbine Services and Solutions
Air BP
American Express Travel Related Services Company, Inc
Avolon Holdings Limited
Banco BTG Pactual Chile S.A.
Banco de Credito del Perú
Banco del Estado de Chile
Banco Santander Chile
Banco Santander S.A.
BBAM Aircraft Leasing & Management
CAE Inc.
CFM International, Inc.
Collins Aerospace
Corporación Peruana de Aeropuertos y Aviación Comercial S.A.
Direccion General de Aeronautica Civil
Empresa Argentina de Navegació
Etihad Airways Engineering
Everis Chile S.A.
Gate Gourmet U.S., INC.
General Directorate for Competition of the European Commission
HSBC Bank Chile
Itaú CorpBanca
OneWorld Management Co.
Organizacion Terpel S.A.
Petróleo Brasileiro S.A.
Petróleos del Perú S.A.
Regional One Inc., Dash 24 LLC
Repsol S.A.
Scotiabank Chile
Sistemas Globales Chile Asesorias Ltda.
Talma Servicios Aeroportuarios S.A.
The Bank of New York Mellon
The Boeing Company
World Fuel Services Corp.

## Top Secured Creditors

Wilmington Trust Company
Citibank, N.A
Credit Agricole Corporate and Investment Bank
MUFG Bank, Ltd.
Natixis
Sumitomo Mitsui Banking Corporation
Wells Fargo Bank Northwest, N.A.

**Utilities**
Cliff Berry, Inc.
Florida Power & Light Company
Miami-Dade Aviation Department
Waste Management Inc. of Florida
Waste Management Reduction

**Insurance & Benefits Providers**
AIG Inc.
AXA XL
BMI Company Inc.
Chubb Limited
El Pacífico- Compañía de Seguros y Reaseguros S.A.
Grupo Sura
Kaiser Insurance
Liberty Mutual Group
Mapfre Argentina S.A.
Mapfre Brasil
Mapfre Chile
Mapfre Colombia
Mapfre Ecuador
Mapfre Peru
Meridional Insurance Broker SRL
Metlife Chile Seguros de Vida S.A.
Orion Insurance Group
Southbridge Compañía de Seguros Generales S.A.
Starr Companies
Tokio Marine Holdings, Inc.
UnitedHealthcare

**Other Parties in Interest**
Airis Miami LLC
Apple Bank
AVLA
Banco ABC Brasil SA
Banco Bice
Banco Bradesco S.A
Banco Consorcio
Banco Daycoval S.A.
Banco de Sabadell, S.A.
Banco Internacional
Banco Latinoamericano de Comercio Exterior, S.A.
Banco Pine
Bank NTT
Bank of Communications Limited
Barclays
Bladex or Banco Latinoamericano de Comercio Exterior, S.A

BTG Pactual Chile
Campania de Seguros de Vida Consorcio Nacional de Seguros S.A.
CCB Brasil or China Construction Bank (Brasil)
Chugoku Bank Ltd.
Cigna Investments Inc.
Citibank, S.A.
Credit Industriel ET Commercial
Credit Suisse
Development Bank of Japan
E.SUN Commercial Bank
Ensign Peak Advisors
Export Credit Agency Bank (Cayman)
F. Mutuos Lan
FIP TAM
GA Telesis LLC
Goldman Sachs
Helaba
Hudson Structure Capital Management
Industrial Bank of Japan
Iyo Bank
KfW IPEX-Bank
Korea Dev.
La Banque Postale
Morgan Stanley
NCM (PT-LAK)
Norinchukin
Novus
PK AirFinance
RB Capital Companhia De Securitizacao
RB Commercial Properties 49 Empreendimentos Imobiliarios LTDA.
Renta Inmobiliaria III
Safra National Bank of New York
Shinsei Bank
Societe Generale Milan
TD Bank
Telemetrix S.A.
The Bank of Fukuoka, Ltd.
The Bank of Yokohama, Ltd
The Iyo Bank, Ltd.
The Korea Development Bank
The Norinchukin Bank
The Tokyo Star Bank, Ltd.
Tokyo Century
Wacapou Leasing S.A

**<u>Aircraft Leases</u>**
Airbus Bank Gmbh

ABN AMRO Bank N.V.
Airbus Financial Services Unlimited Company
Bailarin Leasing Trust
Citibank Internationl PLC
Colibri LLC
Commonwealth Bank Of Australia, New York Branch
Dekabank Deutsche Girozentrale
Deutsche Bank AG, New York Branch
Deutsche Bank Trust Company Americas
Export-Import Bank of the United States
ING Capital LLC
Investec Bank plc
J.P Morgan Europe Limited
Landesbank Hessen-thüringen Girozentrale
Private Export Funding Corporation
TMF lnterlease Aviation 111 B.V.
Wells Fargo Trust Limited Corporation

## <u>Schedule B</u>

**Parties in Interest Noted for Court Disclosure**

**Potential Connections of Related Parties**
**LATAM Airlines Group S.A and Debtor Affiliates**


**List of Current and Past FTI Clients Since April 1, 2018 Who Are Interested Parties**


*Engagements Relating to the Debtors or Affiliates*

**Debtor Entities**
LATAM Airlines Group S.A.

**Non-Debtor Affiliates**
Ype Leasing Limited
Zarapito Leasing LLC

*Current Clients, Parents and Affiliates of Clients and Relationships Not Relating to the Debtors or Affiliates*

**Major Equity Holders**
Delta Air Lines, Inc.
**Debtors' Restructuring Professionals**
Cleary Gottlieb Steen & Hamilton LLP
PJT Partners

**Contract Counterparties (E.g., Aircraft Lessors or Managers)**
Airbus
Airbus Financial Services
Boeing Aircraft Holding Company
Pratt & Whitney Engine Leasing LLC
Rolls-Royce PLC
United Technologies International Corporation, Pratt & Whitney Division

**Government Authorities**
INTERNAL REVENUE SERVICE
AUSTRALIAN TAXATION OFFICE

**Debtors' Banks &Financial Service Providers**
Banco Bilbao Vizcaya Argentaria, S.A.
BanColombia
Bank of America
Bank of China
Black Rock
BNP Paribas
Commerzbank
Deutsche Bank
J.P.Morgan
U.S. Bank National Association
Westpac

Asesorías e Inversiones American Express Chile Limitada

**Fuel Suppliers**
World Fuel Services Chile Ltda.
World Fuel International S.R.L.
CHEVRON TEXACO
EXXON
SHELL

**Ordinary Course Professionals**
MCKINSEY & COMPANY
NORTON ROSE

**Significant Vendors**
AMADEUS IT GROUP S.A.
Acciona Airports Americas SpA
ACCENTURE
Oracle
Google
AENA AEROPUERTOS S.A.
AMERICAN AIRLINES, INC.
GOODRICH
PANASONIC
INTERNATIONAL AIR TRANSPORT ASSOCIATION
YPF S.A.
AIR NEW ZEALAND LIMITED.
IBM
INTERNATIONAL AIR TRANSPORT ASSOCIATION
AEROVIAS DEL CONTINENTE AMERICANOS
QANTAS AIRWAYS LTD
TELEFONICA
HONEYWELL
EDENRED PERU S.A.
EDENRED CHILE S.A.
THALES AVIONICS INC
Facebook
AMADEUS ESPAÑA
BRIDGESTONE AIRCRAFT TIRE INC
SMBC AVIATION CAPITAL
Top Unsecured Creditors
The Bank of New York Mellon
American Express Travel Related Services Company, Inc
Banco Santander Chile
Banco Santander S.A.
World Fuel Services Corp.
The Boeing Company
HSBC Bank Chile
Repsol S.A.
Aercap Holdings N.V.

Petróleo Brasileiro S.A
ORGANIZACION TERPEL S.A.

**Top Secured Creditors**
Wilmington Trust Company
Citibank, N.A
Credit Agricole Corporate and Investment Bank
Wells Fargo Bank Northwest, N.A.
Natixis
MUFG Bank, Ltd.
Sumitomo Mitsui Banking Corporation

**Utilities**
FLORIDA POWER & LIGHT COMPANY

**Insurance & Benefits Providers**
Chubb Limited
AIG Inc.
Liberty Mutual Group
AXA XL
Metlife Chile Seguros de Vida S.A.
UnitedHealthcare
Kaiser Insurance

**Other**
Banco Bradesco S.A
Barclays
Citibank, S.A.
Credit Suisse
Goldman Sachs
ING
Investec
Investec Bank plc
Korea Dev.
La Banque Postale
Morgan Stanley
Norinchukin
Novus
TD Bank
The Korea Development Bank
The Norinchukin Bank
Toronto-Dominion Bank
Wells Fargo

*Former Clients, Parents and Affiliates of Clients and Relationships Not Relating to the Debtors or Affiliates*

**Debtors' Restructuring Professionals**
Prime Clerk LLC

**Government Authorities**
Dirección de Impuestos y Aduanas Nacionales (Chile)

**Debtors' Banks &Financial Service Providers**
Banco Davivienda S.A.
Banco do Brasil

**Significant Vendors**
SWISSPORT

**Top Unsecured Creditors**
Banco BTG Pactual Chile S.A.
GATE GOURMET US, INC.

**Insurance & Benefits Providers**
Mapfre Argentina S.A.
Mapfre Brasil
Mapfre Chile
Mapfre Colombia
Mapfre Ecuador
Mapfre Peru

**Other**
Banco ABC Brasil SA
Banco de Sabadell, S.A.
Banco Pine
Banco Sabadell
BTG Pactual Chile

**Schedule C**

**Summary of Payments 90 Days Prior to the Petition Date**

| Invoice Date | Billing Period | Payment Amount | Date of Payment |
|---|---|---|---|
| April 30, 2020 | Retainer | $1,000,000.00 | May 18, 2020 |
| | TOTAL RETAINER RECEIVED | 1,000,000 | |
| April 30, 2020 | 4/20 to 4/30 | $569,352.00 | May 21, 2020 |
| May 11, 2020 | 5/1-5/10 | 621,662.00 | May 21, 2020 |
| May 19, 2020 | 5/11-5/17 | 377,534.50 | May 22, 2020 |
| May 19, 2020 | 5/11-5/17 | 606,758.00 | May 22, 2020 |
| May 19, 2020 | 5/18-5/25 (estimate) | 700,000.00 | May 22, 2020 |
| May 19, 2020 | 5/18-5/25 (estimate) | 211,466.00 | May 22, 2020 |
| | | | |
| | | | |
| January 23, 2020 | January | 3,641.99 | May 22, 2020 |
| February 10, 2020 | February | 3,641.99 | May 22, 2020 |
| March 18, 2020 | March | 3,641.99 | May 22, 2020 |
| | TOTAL FEES & EXPENSES COLLECTED | 3,097,698.47 | |
| May 29, 2020 | 5/18-5/25 (actual – net of Estimate, applied to retainer on May 25th) | 25,623.00 | May 25, 2020 |
| May 29, 2020 | 5/18-5/25 (actual – net of Estimate, applied to retainer on May 25th) | 196,942.00 | May 25, 2020 |

## EXHIBIT C

**Mencíó Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LATAM Airlines Group S.A., *et al.*, | Case No.:  20-11254 |
| Debtors.[1] | Jointly Administered |

### DECLARATION OF JUAN CARLOS MENCIÓ IN SUPPORT OF THE APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

I, Juan Carlos Mencíó, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.      I am the Senior Vice President, Legal Affairs of LATAM Airlines Group S.A., a company organized under the laws of the Republic of Chile, and one of the Debtors in the above captioned chapter 11 cases (the "Chapter 11 Cases").  As such, I am familiar with the Debtors' day-to-day operations, financial affairs, and books and records.  I am one of the individuals involved in supervising bankruptcy counsel for the Debtors.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

2.      I submit this declaration (the "<u>Declaration</u>") in support of the Debtors'

Application², pursuant to sections 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014, and

Local Rule 2014–1, for authority to retain and employ FTI Consulting Inc. ("<u>FTI</u>") as financial

advisor for the Debtors.

3.      Except as otherwise indicated herein, the facts set forth in this Declaration

are based upon my personal knowledge, information provided to me by the Debtors' employees

or advisors, or my opinion based upon knowledge and experience as Senior Vice President of the

Debtors.  I am authorized to submit this Declaration on behalf of the Debtors.

## <u>THE DEBTORS' SELECTION OF FTI AS FINANCIAL ADVISOR</u>

4.      FTI is well qualified to serve as financial advisor to the Debtors.  The

Debtors recognize that a comprehensive review process is necessary when selecting and

managing a financial advisor to ensure that bankruptcy professionals are subject to the same

client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy

engagements.

5.      As detailed in the Edgar Declaration, FTI has a wealth of experience

providing financial advisory services in restructurings and reorganizations and enjoys an

excellent reputation for the services it has rendered in large and complex chapter 11 cases on

behalf of debtors and creditors throughout the United States, and is particularly well qualified to

advise the Debtors during these Chapter 11 Cases.

---

²     Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Applications.

6.          Prior to the commencement of the Chapter 11 Cases, the Debtors

sought FTI was engaged to provide certain services to the Debtors pursuant to the Engagement

Agreement, including advice regarding the preparation for, the recognition of the Chapter 11

Cases under chapter 11 of the Bankruptcy Code.

7.          FTI has become intimately familiar with the Debtors' financial affairs,

business operations, assets, contractual arrangements, capital structure, key stakeholders and

other related material information.  Likewise, in providing prepetition services to the Debtors,

FTI's professionals have worked closely with the Debtors' management, board of directors and

other advisors.  In particular, FTI has worked closely with the Debtors to analyze the Debtors'

financial positions and to assist the Debtors in preparing for a smooth entry into and operation

under the protections of chapter 11.  FTI continues to assist the Debtors with the restructuring

contemplated in these Chapter 11 Cases.  Accordingly, FTI has the necessary background to deal

effectively and efficiently with many financial issues and problems that may arise in the context

of the Debtors' Chapter 11 Cases.

8.          Accordingly, the Debtors now desire to employ and retain, pursuant to

section 327(a) of the Bankruptcy Code, FTI as financial advisor.  If the Debtors were required to

retain financial advisor other than FTI in connection with these Chapter 11 Cases, the Debtors,

their estates and all parties in interest would be unduly prejudiced by the time and expense

necessarily required by such new financial advisors to familiarize themselves with the intricacies

of the Chapter 11 Cases.

9.          With its experienced professionals, and its understanding of the

Debtors' financial history and business operations, FTI fulfills a critical need that complements

the services to be provided by the Debtors' other professionals.  The Debtors' retention of FTI,

- 3 -

with its resources and capabilities, together with its prepetition experience advising the Debtors, is crucial to the success of these Chapter 11 Cases.  As such, the Debtors believe that it is in the estates' best interest to retain FTI for the purpose of providing the Debtors with restructuring support services in the Chapter 11 Cases.

## RATE STRUCTURE

10.    FTI has informed the Debtors that their hourly rates for providing financial advice in these Chapter 11 Cases are comparable to the rates of other comparably skilled professionals in the national marketplace for restructuring services.  I am one of the individuals responsible for reviewing the invoices regularly submitted by FTI and I am informed that, other than periodic rate increases that occur in the ordinary course, the rates that FTI charged the Debtors in the prepetition period are the same as the rates that FTI will charge the Debtors in the postpetition period.

## COST SUPERVISION

11.    The Debtors recognize that in large chapter 11 cases such as these, it is possible that there may be unforeseen fees and expenses that will need to be addressed by the Debtors and FTI.  As is the Debtors' historical practice, the Debtors will continue to monitor the fees and expense reimbursement process during the Chapter 11 Cases and ensure that the Debtors are an active participant in that process.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Dated:   June 9, 2020                  LATAM Airlines Group S.A.

        Santiago, Chile


                                       */s/ Juan Carlos Menció*
                                       _____

                                       Juan Carlos Menció
                                       Senior Vice President of Legal Affairs

**<u>Exhibit D</u>**

**Engagement Agreement**



FTI Consulting
TD Waterhouse Tower
79 Wellington  Street West
Suite  2010
Toronto,  Ontario
Canada M5K 1G8
Tel: (416) 649-8055
Cel: (416) 723-8395

PRIVATE & CONFIDENTIAL

April 20, 2020

Cleary, Gottllieb, Steen & Hamilton
One Liberty Plaza
New York
NY 10006

Re: Latam Airlines  Group  S.A.

Dear Richard J. Cooper:

1.   **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Cleary, Gottlieb, Steen & Hamilton LLP (the "Firm"), to provide certain financial advisory and consulting services (the "Services") as set forth below in relation to your representation as legal counsel of Latam Airlines  Group S.A. and its subsidaries ("Latam" or the "Company"). This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.   **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

**Pre-filing Activities**

1)   Assistance with preparation of 13-week cash flows taking into account either an out of court or in-court bankruptcy filing.
2)   Assistance in the preparation of the DIP forecast which will be used both to size the DIP and also to be used by Evercore to obtain DIP financing, including related integration of the 13-week cash flow and the DIP budget which requires continuity of assumptions and approach between the two budgets/forecasts.
3)   Assistance with Chapter 11 Bankruptcy preparation, including but not limited to:

Cleary, Gottlieb, Steen & Hamilton LLP
April 20, 2020

    a) Creditor Matrix Development;
    b) Voluntary Petitions and Motions support including the related schedules;
    c) First Day Motion Development
    d) Second Day Motions Development (completed in post filing period).
    e) First Day Declaration;
    f) Accounting System / Invoice Cut-off; and
    g) Cash Payment / Controls Implementation.

4) Preparation for filing of other LATAM entities in local jurisdictions, as required.
5) As required, supporting Evercore/Cleary in negotiations with stakeholders and DIP lenders.
6) Other customary related services as may be requested by counsel or LATAM.

FTI will ensure with Evercore and the Company that Pre-filing activities #1 and #2 are co-ordinated to minimize any duplication of services with respect to these items.

**Post Filing Activities**

1) Statement of Financial Affairs.
2) Statement of Assets and Statement of Liabilities preparation.
3) Support for "Second Day" Motions as required.
4) Supporting Evercore/Clearly in Disclosure Statement and Plan of Reorganization
5) Tracking and implementation of first day orders.
6) We will also continue to manage liquidity and update the 13-week, do all of the required reporting (both for court and for the DIP lenders), and assist with ongoing negotiations with stakeholders including the Unsecured Creditor Committee and prepetition lenders
7) Monthly Operating Reports.
8) Interaction with suppliers.
9) Ongoing support for case management, including but not limited interaction with case constituents and key stakeholders.
10) Interaction with creditors.
11) Interaction with the various other professionals retained by the creditors.
12) Other customary related services as may be requested by counsel or LATAM.

The Services may be performed by FTI or by any subsidiary or affiliate of FTI. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary or affiliate and, subject to the prior written consent of the Company, to any such agents or independent contractors or their employees.

The Services, as outlined above, are subject to change as mutually agreed in writing between us.

FTI is engaged by you to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

Cleary, Gottlieb, Steen & Hamilton LLP
April 20, 2020

As part of the Services, FTI may be requested to assist you or the Company (and its other legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3. **Privileged and Confidential Work Product**

Written reports, memoranda or status summaries that we prepare under this Engagement Contract will be maintained in accordance with our retention procedures and shall be prominently labeled "Privileged and Confidential". Except as may be required by law, regulation or valid judicial or administrative process, we will not disclose to anyone, without your permission, the content of any oral or written confidential communication received during the course of the Engagement or any information gained from the inspection or review of any records or documents provided by you or the Company that are identified as confidential or the content of any written reports, memoranda or status summaries we prepare under this Engagement Contract.

4. **Fees**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

|  | Per Hour (USD) |
| --- | --- |
| Senior Managing Directors | $920 – 1,125 |
| Directors / Senior Directors / Managing Directors | 690 – 905 |
| Consultants/Senior Consultants | 370 – 660 |
| Administrative / Paraprofessionals | 150 – 280 |

Hourly rates are generally revised periodically. We will notify you of any changes to our rates. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable for the International divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

Cleary, Gottlieb, Steen & Hamilton LLP
April 20, 2020

In addition to the fees outlined above, FTI will bill for reasonable direct expenses that are documented and actually incurred on your or the Company's behalf during this Engagement. Direct expenses include reasonable, documented and customary out-of-pocket expenses that are actually incurred and that are billed directly to the Engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other documented expenses specifically related to this Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Company at amounts to be agreed and reimbursed for reasonable and documented allocated and direct expenses (including counsel fees) with respect thereto.

The Company is solely responsible for the fees and expenses of FTI. The Firm will have no liability for our fees and expenses whatsoever.

All fees and expenses are payable exclusive of withholding taxes, if any (i.e., the above amounts are the net amounts to be received by FTI).

FTI reserves the right to split its invoices with other affiliates providing the Services.

Initially, the Company will forward to us the amount of USD 1 million, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that it will pay FTI has earned and will be entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates

Cleary, Gottlieb, Steen & Hamilton LLP
April 20, 2020

hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1l29(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

If a dispute develops about our fees, the Company may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

Cleary, Gottlieb, Steen & Hamilton LLP
April 20, 2020

5.      **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, save for the Confidentiality Agreement, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and, save for the provisions of the Confidentiality Agreement, shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

6.      **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company. As you may be aware, FTI is regularly retained by various creditors and law firms. However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the world. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not knowingly accept an engagement that directly conflicts with this Engagement without the Company's prior written consent.

Other Services – During the term of this Engagement, the team working on this Engagement (the "LATAM Engagement Team") will not undertake any engagements for South American airlines and any and all exception shall be approved by LATAM. FTI re-affirms its obligations under the NDA that it has with LATAM. For avoidance of doubt, during the term of this Engagement, (1) the LATAM Engagement Team may undertake new engagements with creditors to other South American airlines; and (2) FTI, other than the LATAM Engagement Team, is not prohibited from taking on new engagements with South American airlines as long as the LATAM Engagement Team is put behind ethnical walls between the LATAM Engagement Team and any other parts of FTI working on any other South American airlines during the term of this Engagement.

Cleary, Gottlieb, Steen & Hamilton LLP
April 20, 2020

7.      **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing
both the confirmation below and the attached Standard Terms and Conditions and returning a
copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please
do not hesitate to contact Brock Edgar at +1-416-723-8395.

Yours faithfully,


FTI CONSULTING CANADA ULC


By:      _____
        Brock J. Edgar
        Senior Managing Director

Attachment – As stated

Cleary, Gottlieb, Steen & Hamilton LLP
April 20, 2020

<u>Confirmation of Terms of Engagement</u>

**We agree to engage FTI Consulting Canada ULC upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Cleary, Gottlieb, Steen & Hamilton LLP

By: _____
       Richard J. Cooper
       Partner

Date: <u>April 20, 2020</u>

**We agree to be solely responsible to pay the fees and expenses and any indemnification amounts due to FTI Consulting Canada ULC pursuant to this engagement letter and to the other terms and conditions herein.**

Latam Airlines Group S.A.

By: _____
       Print Name
       PrintTitle

Date: _____

Latam Airlines Group S.A.

By: _____
       Print Name
       PrintTitle

Date: _____

## FTI CONSULTING CANADA ULC

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated April 20, 2020.   The engagement letter and the Standard Terms and Conditions  (collectively the "Engagement Contract") and the Confidentiality Agreement form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1      **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of you and the Company and only in connection with the purpose in respect of which the Services are provided. Unless required by law, neither you nor the Company shall provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

1.2      **Confidential Information** – Notwithstanding the above, to the extent that any of the terms of this Clause 1 conflict with the terms of the Confidentiality Agreement, the terms of the Confidentiality Agreement shall govern in all respects.

**2.      Information and Assistance**

2.1      **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2      **Punctual and accurate information** – Subject to the terms of the Confidentiality Agreement, you and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You and the Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3      **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.  Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4      **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There

will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.    Additional Services**

3.1    **Responsibility for other parties** – The Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

**4.    Confidentiality**

4.1    **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process with a competent authority, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3    **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public through no fault of ours, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and the Company specifically agree otherwise in writing.

4.4    **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

4.6     **Confidentiality Agreement** – Notwithstanding the above, to the extent that any of the terms of this Clause 4 conflict with the terms of the Confidentiality Agreement, the terms of the Confidentiality Agreement shall govern in all respects.

## 5.   Termination

5.1     **Termination of Engagement with notice** – All parties (you, the Company and FTI) may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date that the termination notice is received.

5.2     **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, and the terms of the Confidentiality Agreement are intended to survive such termination or expiration and shall continue to bind all parties.

## 6.   Indemnification and Liability Limitation

6.1     **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2     **Limitation of liability -** You and the Company agree that no Indemnified Person shall have any liability as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

## 7.   Governing Law, Jurisdiction and WAIVER OF JURY TRIAL

7.1     **Governing Law -** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2     **Jurisdiction** - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the

Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3    **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE,  YOU,  THE COMPANY AND FTI IRREVOCABLY  AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING  OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES  OR ANY SUCH OTHER MATTER.

FTI CONSULTING CANADA ULC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting Canada ULC upon the terms set forth in these Standard Terms and Conditions as outlined above.

Cleary, Gottlieb, Steen & Hamilton LLP


By: _____
       Richard J. Cooper
       Partner

Date: April 20, 2020


**We agree to be solely responsible to pay the fees and expenses and any indemnification amounts due to FTI Consulting Canada ULC pursuant to this engagement letter and to the other terms and conditions herein.**

Latam Airline Group S.A.


By: _____
       Name
       PrintTitle

Date: _____


Latam Airlines Group S.A.


By: _____
       Print Name
       PrintTitle


Date: _____

## SCHEDULE I: ANTI-CORRUPTION LAW

### 1.1. Representations and Assurances related to the Anti-Corruption Laws and to Improper Payments

FTI Consulting, Inc. ("FTI") has knowledge of the Foreign Corrupt Practices Act of the United States of America and of its amendments ("FCPA"), of the UK Bribery Act of the United Kingdom ("UK Bribery Act"), of Law No. 20393 of Chile, which establishes the criminal liability of legal entities for the offenses of Money Laundering, Financing of Terrorism and Bribery Offenses, of Law No. 12846 of Brazil, which establishes a full system of corporate and individual liability for corruption acts against Brazilian and foreign government officials or governmental bodies, as well as any other applicable anti-corruption laws, and is aware that the LATAM Group and its advisors have a commitment to complying strictly with such laws ("Anti-Corruption Laws").

FTI further represents that it is aware of and expressly undertakes to comply with the standards and controls that the LATAM Group specifies in its Model of Prevention of Offenses of Law No. 20393 of Chile ("MPD"), and that it is committed to preventing, avoiding and detecting the commission of the illicit acts contemplated in such law. FTI hereby represents that it received a copy of LATAM Group's Code of Conduct, of LATAM Airlines Group's Global Anti-Corruption Compliance Policy, as well as LATAM Airlines Group's Gifts, Entertainment and Travel Policy, ("Policies of the LATAM Group"), and undertakes to strictly comply with their provisions.

As a consequence, FTI makes the following representations and provides the following guarantees in relation to this agreement ("Agreement").

A.    Knowledge of the Prohibitions of the FCPA: FTI hereby represents and assures on its own behalf and on behalf of its partners, directors, Board of Directors, employees, sub-contractors, service providers, suppliers, representatives and/or agents that it is aware of the FCPA and of its purposes, including the prohibition on offering payment, making payment, promising payment or authorizing payment of anything of value, including but not limited to payment in kind, cash, checks, bank transfers, tangible or intangible gifts, favors, services and entertainment and travel expenditures that are beyond what is reasonable or habitual and of modest value, to: (i) an executive, servant, employee, or agent of a department, agency or instrument of the State or of the government, (ii) an officer, servant, employee, or agent of a company or a business that is property of the State or controlled by the latter, (iii) a political party, a servant of the latter, or a candidate for a political position, or (iv) an executive, servant, employee or agent of an public international organization (indistinctively, a Government Official); if he/she knows or has a reasonable reason to believe that all or some parts shall be used with the following purposes: (x) to influence in an act, decision or lack of action of a Government Official in his/her official capacity, (y) to induce a Government Official to use his/her influence with a government or entity so as to affect any act or decision of such government or entity, or (z) ensure an undue advantage; with the purpose of obtaining, maintaining or directing a business.

B.    Compliance with all of the Anti-Corruption Laws: FTI hereby represents and assures that it complies with the laws that are applicable hereto, including the laws that are applicable to the LATAM Group in accordance with the Representations and Assurances, and that it shall continue to comply with such laws;

that it shall not authorize, offer or effect improper payments directly or indirectly to any Government Official or third party that could result in a violation of any applicable Anti-Corruption Law, and that no part of the payments that are received from the LATAM Group shall be used for any purpose that could represent a violation of the terms already mentioned. FTI shall act always guided by good faith and by high standards of ethics and honesty. FTI must immediately disclose to the LATAM Group any violation or suspicion of violation of the Anti-Corruption Laws or the terms of this clause.

**1.2. Representations and Assurances related to the Government Officials**

**A.**   FTI is not a Government Official. FTI hereby represents that it is not a Government Official, and that none of its board of directors, senior managers, partners, owners or representatives are Government Officials, or close relatives of a Government Official that in any way would run afoul of the anti-corruption laws. FTI agrees that if the latter or any of its board of directors, senior managers, partners, owners or representatives should become a Government Official that in any way would run afoul of the anti-corruption laws, it shall notify this immediately in writing to the LATAM Group. After receiving the mentioned notice, the parties shall verify jointly the issues that could represent violations of any applicable Anti-Corruption Law, and shall determine if such issues can be resolved satisfactorily. After the verification, if there are problems that cannot be resolved in good faith and following the reasonable criterion of the LATAM Group, the latter may terminate the Agreement by means of written notice to FTI and without any subsequent liability in relation to the latter, other than the obligations to pay fees and expenses incurred to date of termination would need to be compiled with.

**1.3. Additional Agreements**

In addition, FTI agrees to carry out the actions necessary to grant or enable compliance with the following measures, with the purpose of ensuring the compliance with the Policies of the LATAM Group and the Anti-Corruption Laws referenced in the Representations and Assurances related to the Anti-Corruption Laws and to Improper Payments:

A.   To accept that all payments to FTI effected by means of check, bank transfer, credit card or any other similar form of documented payment.

B.   To effect all of the payments owed by FTI related to the Agreement by means of check, bank transfer, credit card or any other similar form of documented payment, and keep on file all of the documents related to such payments for at least five (5) years.

C.   To provide a description of services provided by FTI prior to or when submitting an invoice for payment of services. Unless otherwise authorized by Compliance, such description must include, at a minimum, the type of service provided, and the date or date range when the service was provided. The sum of the value of the services provided must be the same of the total included in the invoice for the same period.

D.   To obtain prior and express written approval of the [relevant Vice-president of the LATAM Group the unit of which is the counterpart of the Third Party Intermediary] for FTI to pay expenditures related to travel

and entertainment for the benefit of the Government Officials, Clients and Suppliers of the LATAM Group, whereby such expenditures may only be reimbursed if they are evidenced with sufficient detailed records and do not infringe any applicable Anti-Corruption Law as stipulated in the Representations and Assurances related to the Anti-Corruption Laws and to Improper Payments, as well as the Policies of the LATAM Group. FTI must provide monthly written reports that specify the work carried out on behalf of the LATAM Group.

E.    To grant to the LATAM Group reasonable access to the books and records of FTI, in addition to the right of auditing them periodically or immediately if the LATAM Group has reasons to believe that FTI violated any provision of the Agreement.

F.    To refrain from designating or sub-contracting work or services contained in the Agreement without prior written approval of the relevant Vice-president of the LATAM Group the unit of which is the counterpart to FTI.

G.    Ensure its availability to receive any type of training related to the anti-corruption practices and to the LATAM Group's Code of Conduct, that the LATAM Group may reasonably require.

H.    To certify annually during the term of the Agreement that it complied with all of provisions of this Agreement and to certify annually that it has not effected any payment that is improper under the applicable Anti-Corruption laws and has otherwise complied with these laws.

**1.4. Communication and divulgement**

FTI agrees that if it should be aware or have a plausible reason to believe that a violation has occurred of the controls and standards of the MPD, the applicable Anti-Corruption Laws or the guidelines of the LATAM Group's Code of Conduct, whether due to any payment or transfer (or the offering or promise of payment or transfer) or in any other form, it shall communicate such fact immediately to the CFO of the LATAM Group. The parties shall meet immediately to identify any potential violation of the MPD, any other law that is applicable to the LATAM Group or the Policies of the LATAM Group. After the parties' review, the LATAM Group may immediately terminate the Agreement by means of written notice to FTI if any potential violation has not been reasonably remedied to the satisfaction of the LATAM Group.

The terms of the Agreement, as well as the information related to the performance of FTI in relation to the Agreement, may be informed to the government of the USA, of Chile, and/or any other pertinent government agency of any country, if the LATAM Group should consider this necessary.

**1.5. Termination of the Agreement**

Termination for due cause due to Anti Corruption issue. Irrespective of any other provision in this Agreement, the LATAM Group may suspend or terminate the Agreement, without limiting any other rights, without incurring liability, without need for prior notice, without incurring any burdens or penalties, if it becomes aware of any information that could reasonably lead it to believe that FTI (a) violated or may have caused the LATAM Group to violate any Anti-Corruption Law; (b) is or may become under investigation

related to the violation of Anti-Corruption Laws.  In the event of termination of the Agreement pursuant to this provision, The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, and the terms of the Confidentiality Agreement shall remain in effect.



FTI Consulting
TD Waterhouse Tower
79 Wellington Street West
Suite 2010
Toronto, Ontario
Canada M5K 1G8
Tel: (416) 649-8055
Cel: (416) 723-8395

PRIVATE & CONFIDENTIAL

May 11, 2020

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza,
New York
NY 10006

Re: LATAM Airlines Group S.A.

Dear Richard J. Cooper

1.    **Introduction**

This letter supplements our engagement letter dated April 20, 2020 (the "Engagement
Letter") with respect to FTI Consulting Canada ULC retention by Cleary Gottlieb Steen
& Hamilton LLP (the "Firm"), in relation to your representation of LATAM Airlines Group
S.A. and its subsidiaries ("LATAM" or the "Company").

This letter modifies adds strategic communication services to our Scope of Services
Section and also the compensation for the strategic communications services to the fee
section of the Engagement Letter.

2.    **Scope of Services**

The following modifications will be made to the Scope section of our engagement letter:

**Pre-Filing Activities**

Cleary Gottlieb Steen & Hamilton LLP
May 11, 2020

- Development of overarching messaging and communications rollout planning
- Global media relations
- Leak mitigation and scenario planning
- Development of materials for identified stakeholder audiences (including but not limited to employees, media, customers/loyalty members, suppliers, regulators and elected officials, financial audiences, and the general public)
- Creation of microsite to house stakeholder-facing materials
- Design and development of creative collateral (infographics, video)
- Coordination of filing day engagement of media, elected officials, and third parties in Chile, Brazil, Argentina, Colombia, Ecuador, and Peru

**Post-Filing Activities**

- Global media relations
- Development of communications materials (and refreshed collateral) around key milestones in the case for identified stakeholder audiences
- Monitoring and tracking of media, government, and public sentiment

The full Strategic Communication Scope of Services are set out in Annex A to this Addendum

3.    Fees

The following are the hourly rates for the compensation for Strategic Communications professionals that will deliver the strategic communications services:

FTI Strategic Communications Standard Hourly Charge-Out Rates

| | |
|---|---|
| Sr. Managing Director | $925/hour |
| Managing Director | $760/hour |
| Sr. Director | $650/hour |
| Director | $550/hour |
| Sr. Consultant | $450/hour |
| Consultant | $350/hour |
| Administration | $125/hour |

4.    **Remaining Terms of the Engagement Letter**

All other terms of the Engagement Letter remain in effect and fully apply to the strategic communications professionals that will deliver the strategic communication services.

5.    **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the amendment by signing the confirmation below and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Brock Edgar at +1-416-723-8395.

Cleary Gottlieb Steen & Hamilton LLP
May 11, 2020

Yours faithfully,

**FTI CONSULTING CANADA ULC**

By: _____

Brock J. Edgar
Senior Managing Director

Cleary Gottlieb Steen & Hamilton LLP
May 11, 2020

Confirmation of Terms of Engagement.

**We agree to amend FTI Consulting Canada ULC April 20, 2020 Engagement Letter as set out in this amendment.**

**Cleary Gottlieb Steen & Hamilton LLP**

By: _____

Richard J. Cooper
Partner

Date: _____

**We agree to the amendment to FTI Consulting Canada ULC Fees as set out in this amendment.**

**LATAM Airlines Group S.A.**

By: _____

Name: Juan José Tohá
Title: Director Corporate Affairs

Date:  14/05/2020

**LATAM Airlines Group S.A.**

By: _____

Name:
Title:

Date: _____