WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
John K. Cunningham
Gregory M. Starner
Andrew T. Zatz
Mark Franke

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

*Attorneys for the Ad Hoc Group of LATAM Bondholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LATAM Airlines Group S.A., *et al.*,[1] | ) | Case No. 20-11254 (JLG) (Jointly Administered) |
| | ) | |
| Debtors. | ) | Chapter 11 |

**SUPPLEMENTAL OBJECTION OF THE AD HOC GROUP OF LATAM BONDHOLDERS TO DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) GRANT SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"), along with the last four digits of each Debtor's U.S. or local tax identification number (as applicable) are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corredora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street, Miami, FL 33131.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .......... 1

TABLE OF AUTHORITIES .......... 2

PRELIMINARY STATEMENT .......... 1

SUPPLEMENTAL OBJECTION .......... 3

I. The Insider Tranche C DIP Facility is a Scheme to Benefit the Company's Existing Major Shareholders, and Does Not Meet the Entire Fairness Standard .......... 3

A. The Insider Tranche C DIP Facility Was Negotiated Among Self-Interested Parties For Their Exclusive Benefit .......... 4

B. The Insider Tranche C DIP Facility Was Approved By A Two-Man Sub-Committee, With the Encouragement of The Remaining Seven Directors, and Without Independent Advice .......... 10

C. The Purported Benefits of the Shareholder Support Provisions of the Insider Tranche C DIP Facility are Entirely Illusory .......... 12

D. The Tranche C DIP Facility Was Not Properly Marketed .......... 14

CONCLUSION .......... 15

RESERVATION OF RIGHTS .......... 15

# TABLE OF AUTHORITIES

## CASES

*In re KDI Holdings, Inc.*,
277 B.R. 493 (Bankr. S.D.N.Y. 1999) ..... 4

*In re L.A. Dodgers LLC*,
457 B.R. 308 (Bankr. D. Del. 2011) ..... 4

*In re Latam Airways Group, S.A.*,
No. 20-11254 (July 17, 2020) ..... 4, 9

## STATUTES

28 U.S.C. §1746 ..... 1

Bankruptcy Code § 1129 ..... 1, 3

Bankruptcy Code § 1142 ..... 13

## OTHER AUTHORITIES

Bankruptcy Rule 2019 ..... 1

The Ad Hoc Group of LATAM Bondholders (the "Ad Hoc Group"),[2] by and through its undersigned counsel, files the following supplemental objection (the "Supplemental Objection" and together with the Initial Objection,[3] the "Objection") to the *Debtors' Motion for an Order (I) Authorizing the Debtors to (A) Obtain Post-petition Financing and (B) Grant Superpriority Administrative Expense Claims and (II) Granting Related Relief* (the "Insider Tranche C DIP Motion") [ECF No. 397], including the *Declaration of Zul Jamal Pursuant to 28 U.S.C. §1746* (the "Jamal Declaration"), and the *Declaration of Octavio Bofill Pursuant to 28 U.S.C. §1746* ("Chilean Law Declaration"), each filed substantially contemporaneously herewith.[4] In support of the Objection, the Ad Hoc Group respectfully states as follows:

**PRELIMINARY STATEMENT**

The Insider Tranche C DIP Facility[5] suffers from two fatal defects, which require that the Insider Tranche C DIP Motion be denied. *First*, the proposed equity subscription features of the Tranche C DIP Facility (the "Insider Tranche C DIP Facility") are tantamount to an unprecedented and impermissible *sub rosa* plan and seek to circumvent the confirmation requirements under section 1129 of the Bankruptcy Code by pre-wiring a preferential recovery to existing equity in violation of the absolute priority rule. *Second*, the Debtors have not shown (and cannot possibly show) that the proposed financing satisfies the entire fairness standard, which they have all but conceded is the applicable standard of review for scrutinizing insider transactions like the proposed Insider Tranche C DIP Facility.

The Debtors' major shareholders can no longer conceal the fact that they used their positions as insiders of the Debtors to structure the proposed Insider Tranche C DIP Facility to dictate the terms of a future plan of reorganization to lock in future reorganized equity of the Debtors at a massive discount to

---

[2] The composition of the of Ad Hoc Group, including the list of names and addresses of each member and the amount of their holdings as of the date of this Supplemental Objection, is set forth in the *Second Verified Statement of the Ad Hoc Group of LATAM Bondholders Pursuant to Bankruptcy Rule 2019* [ECF No. 536].

[3] The "Initial Objection" is the *Initial Objection of The Ad Hoc Group of LATAM Bondholders To Debtors' Motion For An Order (I) Authorizing The Debtors To (A) Obtain Postpetition Financing And (B) Grant Superpriority Administrative Expense Claims And (Ii) Granting Related Relief* [ECF No. 537].

[4] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Initial Objection and the Tranche C DIP Motion, as applicable.

[5] For the avoidance of doubt, the Ad Hoc Group does not object in this Objection to the Tranche A DIP Motion or the Tranche A DIP Facility and reference is made herein to the version of the Proposed DIP Credit Agreement attached to the Tranche A DIP Motion because that is the operative version of the document.

assure their future control of the Debtors upon exit from chapter 11. [redacted] . The controlling shareholders' end-game has permeated all aspects of the DIP financing negotiations and process surrounding the corporate approval of the Insider Tranche C DIP Facility, all of which was fundamentally tainted by such shareholders' self-serving interests. [redacted]

[redacted] The Ad Hoc Group wishes to be constructive and facilitate a successful reorganization of the Debtors, but this unlawful gambit cannot be condoned.

[redacted]

[redacted] Accordingly, the Insider Tranche C DIP Motion should be denied.

## SUPPLEMENTAL OBJECTION

### I. The Insider Tranche C DIP Facility is a Scheme to Benefit the Company's Existing Major Shareholders, and Does Not Meet the Entire Fairness Standard

1. The Insider Tranche C DIP Motion must be denied because the Debtors cannot demonstrate the proposed financing satisfies the entire fairness standard, which is the applicable framework for scrutinizing this insider transaction.

2. Courts will not defer to a debtor's business judgment where proposed post-petition financing benefits a party in interest at the expense of the estate. Initial Objection ¶ 18. The entire fairness standard applies to insider financing transactions, which include agreements between the company and its controlling shareholders. *Id.* ¶ 19. Transactions between the company and minority shareholders, including non-statutory insiders, must be analyzed under the entire fairness standard where the shareholder exercises influence and control over the corporation through other means, including control over board seats or through exclusive access to confidential information. *Id.* ¶ 21. The entire fairness standard also demands that debtors robustly market the terms of a proposed insider transaction to third parties before they may enter into it. *Id.* ¶ 25. A transaction does not escape scrutiny under the entire fairness standard by the mere recusal of interested directors from the vote to approve the transaction. *Id.* ¶ 22. To be relieved of this exacting burden, the transaction must be conditioned from its outset upon the approval of an independent special committee that fulfills its duty of care to negotiate a fair price and is empowered to freely select its own advisors and freely approve or not approve a proposed transaction in its discretion. *Id.* ¶ 22.

3. [redacted]

---

6 As outlined in the Initial Objection, Qatar and Costa Verde, which own 10% and 11.19% of LATAM Airlines Group S.A. ("LATAM"), respectively, are considered "major shareholders" by the Debtors. Corporate Ownership Statement [ECF No. 1]. The Cueto family holds a total of 21.46% of the stock of LATAM Parent through Costa Verde and various other affiliates (together, the "Cueto Group"). Balza Decl. [ECF No. 3] ¶ 58. [redacted]

[redacted] As set forth below, and as the evidence will show, the Debtors' [redacted] controlling shareholders (i) the Cueto Group, via its affiliate Costa Verde and the Cueto brothers who control it, (ii) Qata [redacted] used their insider positions to extract financing terms that provide such shareholders with a windfall recovery at the expense of the Debtors' estates and creditors.

**A. The Insider Tranche C DIP Facility Was Negotiated Among Self-Interested Parties For Their Exclusive Benefit**

4. The Insider Tranche C DIP Facility was negotiated by and among the Debtors' controlling shareholders and the conflicted fiduciaries they control. [redacted]

[redacted]


[11] LATAM Airlines Group S.A., Form 6-K, Ex. 99.1 (April 2, 2020) (attached as Ex. 7).



[redacted]

6. From the outset it was clear that the core objective of the Insider Tranche C DIP Facility was to ensure that LATAM's controlling shareholders' loan would later convert to reorganized equity of the Debtors. [redacted]

[redacted]

[redacted]









**B. The Insider Tranche C DIP Facility Was Approved By A Two-Man Sub-Committee, With the Encouragement of The Remaining Seven Directors, and Without Independent Advice**



[43] As set forth in the Initial Objection, the Cueto Group has three board nominees and Qatar has one. DIP Objection ¶ 2. In addition, Delta has two board nominees. *See* Delta Air Lines, Inc., Form 8-K (Sept. 26, 2019) (attached as Ex. 35).

[redacted] The record is devoid of any evidence that the independent directors were properly advised to reach any reasoned basis for overlooking the equity conversion feature or signing off on a DIP structure that handed control of the plan process to existing shareholders.[46] [redacted]

### C. The Purported Benefits of the Shareholder Support Provisions of the Insider Tranche C DIP Facility are Entirely Illusory

16. While the Debtors tout the shareholder support provisions of the Insider Tranche C DIP Facility as being essential to their ultimate restructuring, the equity conversion terms provide no real benefit to the estates. As set forth in the Initial Objection, having sought out the United States as the forum for the LATAM group's restructuring and submitting to this Court's jurisdiction, the shareholders are bound to adhere to and implement a reorganization plan ultimately confirmed by this Court, even if they did not vote

---

[redacted] *see also* Jamal Decl. ¶ [11] ("In my twenty-years' experience as a restructuring professional . . . I have never seen a Chapter 11 DIP facility that eliminates a Chapter 11 debtor's ability to repay its DIP facility at its option, let alone one that guarantees a DIP lender's option to convert its DIP claims to equity at a significant discount to a plan valuation").

46 See Jamal Decl. ¶ [11]. [redacted]

in favor of it and such plan waives their pre-emptive rights. Indeed, this Court has the authority to direct them to do so in accordance of the plain terms of section 1142 of the Bankruptcy Code. Initial Objection ¶¶ 32-33. Regardless, there are structures that the Debtors could use to implement a U.S. Chapter 11 reorganization plan that would comply with Chilean law requirements,[48] or alternatively, the Debtors could obtain an order of the Chilean Court granting full force and effect to the chapter 11 plan and directing the LATAM's shareholders to approve its implementation.[49] Chilean Law Decl. ¶¶ 43-58.

17. In fact, the Debtors' proposed procedure to implement the Insider Tranche C DIP Facility in Chile actually *violates* the same Chilean laws that the Debtors argue are required to be met. Chilean Law Decl. ¶¶ 38-41.

18. As set forth in the Chilean Law Declaration, an equity capital raise where the subscription price is payable by cancellation of a loan falls within the "in kind" payment rule, and is subject to the super-majority (2/3) shareholder approval threshold, which the controlling shareholders (who hold only 51.46% of LATAM's shares) cannot meet. Chilean Law Decl. ¶ 39. [REDACTED] Thus, the Debtors' Chilean counsel [REDACTED]

---

48 For example, the plan could provide for shareholders to participate in an equity rights offering that complies with a confirmed plan of reorganization. Another example is that the Debtors could form a new intermediate holding company, to which all assets and liabilities of the parent would be contributed, the shares of which could be issued to unsecured creditors under a plan of reorganization, leaving the shares of the parent entity unimpaired. Chilean Law Decl. ¶ 32.

49 It is perplexing that the Debtors contend that they expect to enforce a Chapter 11 plan in Brazil, a jurisdiction that has not adopted the UNCITRAL Model Law, and yet they express doubts about this option in Chile, where the UNCITRAL Model Law was enacted in 2014. *See* July 15, 2020 Hr'g Tr. 28:11-30:22 (*see* Ex. 1).

[REDACTED] (*see* Ex. 30).

51 *Debtors' Application for an Order Authorizing Employment and Retention of Claro & CIA As Special Counsel for the Debtors Nunc Pro Tunc to the Petition Date* [ECF No. 147].

[REDACTED]

[redacted] By constructing the legal fiction that the Tranche C Lenders will be repaid in cash which cash will simultaneously be used to subscribe for new shares, the Debtors and their controlling shareholders seek to reduce the approval threshold to a level they are able to meet, without the participation of minority shareholders. Chilean Law Decl. ¶ 22. This is a clear attempt to sidestep minority shareholder protections, if the requirements of Chilean law that the Debtors emphasize as paramount actually applied here, their own equity conversion mechanism would violate them.[54] Chilean Law Decl. ¶ 23.

**D. The Insider Tranche C DIP Facility Was Not Properly Marketed**

19. The Debtors' have failed to undertake any reasonable efforts to market the Insider Tranche C DIP Facility. [redacted]

[redacted]

[redacted]

[54] Moreover, if addressing existing shareholders' preemptive rights were essential to a successful restructuring of the Debtors (they are not, for the reasons explained in the Initial Objection and in the Chilean Legal Declaration), preferentially offering the Insider Tranche C DIP Facility to the controlling shareholders while not doing so to other shareholders would be improper as a matter of Chilean law.

[redacted]



## CONCLUSION

23. For the reasons stated above, the Insider Tranche C DIP Motion should be denied.

## RESERVATION OF RIGHTS

24. The Ad Hoc Group reserves the right to introduce evidence at any hearing relating to the Tranche C DIP Motion and the Objection.

[57] Notwithstanding the limited information that is publicly available, members of the Ad Hoc Group continue to evaluate an alternative Tranche C DIP facility. Initial Objection at p. 5.

Dated: July 20, 2020
New York, New York

Respectfully submitted,

WHITE & CASE LLP

By: /s/ *John K. Cunningham*

John K. Cunningham
Gregory M. Starner
Andrew T. Zatz
Mark Franke
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
jcunningham@whitecase.com
gstarner@whitecase.com
azatz@whitecase.com
mark.franke@whitecase.com

Richard S. Kebrdle (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
rkebrdle@whitecase.com

*Attorneys for the Ad Hoc Group of LATAM Bondholders*