**EXHIBIT 1**

```
 1
 2  UNITED STATES BANKRUPTCY COURT
 3  SOUTHERN DISTRICT OF NEW YORK
 4  Case No. 20-11254-jlg
 5  - - - - - - - - - - - - - - - - - - - - - -x
 6  In the Matter of:
 7
 8  LATAM AIRLINES GROUP S.A., et al.,
 9          Debtors.
10
11  - - - - - - - - - - - - - - - - - - - - - -x
12
13              United States Bankruptcy Court
14              One Bowling Green
15              New York, New York
16
17              July 15, 2020
18              2:00 PM
19
20
21
22  B E F O R E:
23  HON. JAMES L. GARRITY, JR.
24  U.S. BANKRUPTCY JUDGE
25
```

1  we expect, that we will have some expansion of foreign
2  bankruptcy procedures in the country, but so far we do not
3  have.
4         So that's why I wrote that there's a chance for some
5  kind of creditors in Brazil that, per se, they would not comply
6  with U.S. rulings.  And that's why we run the risk of not
7  making payments to pre-petition creditors that they may go to a
8  Brazilian court in Brazil to try to enforce their rights and
9  seize bank accounts and even seeking involuntary proceedings.
10 So this is one thing.
11         THE COURT:  All right.
12         MR. XAVIER:  Another thing is that it doesn't mean
13 that any foreign decision is not enforceable in our country.
14 It is, provided that you go through a very low procedure before
15 the Brazilian Superior Court of Justice, which is the highest
16 court to decide on the matter of federal law.  So it will be
17 like the Supreme Court equivalent.
18         And so there is what we call the dequata (ph.)
19 proceeding that you need to apply for that once you have a
20 specific foreign ruling or a final award.  There's some
21 formalities to be met such as like translations and other
22 things, and provided that this ruling does not violate
23 Brazilian public policy, the dequata may be granted and then
24 this foreign ruling or award will be effective in Brazil as if
25 it had been rendered down by a Brazilian court.

1    So our expectation, Your Honor, is that once there is
2 a plan and this plan is approved by the creditors, it's very
3 likely that -- I would say at least the majority of creditors
4 will comply with that, because most of them, they have some
5 nexus with the U.S. court, because they are like vendors or
6 suppliers of the whole group, not only suppliers of the
7 Brazilian entities.  So it's likely that they're going to
8 comply with that.

9    But it's also our understanding that we might need
10 some ancillary proceedings in Brazil to try to challenge if any
11 creditor is not complying with your rulings and decides to go
12 to Brazilian court but this is something that either we go
13 through this process before the Brazilian Superior Court of
14 Justice or we need to deal with that on a case-by-case basis.

15    And that's why we -- I stated as well that for some
16 creditors, having some authority to pay pre-petition debts,
17 this is the best interest of the process, because then we avoid
18 any kind of litigation that could cause the Brazilian entities
19 to need to file any kind of bankruptcy procedure in Brazil.

20    I don't know if I answered your question, Your Honor.
21    THE COURT:  No, I think that's fine, for now.  I
22 appreciate it.  Thank you very much.
23    MR. BAREFOOT:  Your Honor, this is Luke Barefoot from
24 Clearly.  If I could just briefly add two points to what Mr.
25 Xavier said?

1           THE COURT:  Sure.

2           MR. BAREFOOT:  In terms of a plan of reorganization,
3  first, Mr. Xavier's declaration is specific to these
4  pre-petition labor claims, where the concerns about Brazilian
5  public policy are heightened, given the treatment of and
6  preference and deference towards labor and employment-type
7  claims, which we do not think would be present to the same
8  extent in the context of a plan of reorganization.

9           And second, as Mr. Xavier alluded to, many of the
10 Brazilian debtors' creditors are international financial
11 institutions and U.S.-based or U.S.-tied entities that we
12 believe would certainly respect any confirmation order.

13          We can't say the same for individual former or current
14 employees of the Brazilian entities who may never have set foot
15 in the United States.

16          THE COURT:  So --

17          MR. BAREFOOT:  We have every --

18          THE COURT:  -- they'll respect --

19          MR. BAREFOOT:  Go ahead, Your Honor.

20          THE COURT:  -- well, they'll respect it -- I'm sorry.
21 They'll respect it because you can enforce it here.

22          MR. BAREFOOT:  Correct, Your Honor.

23          THE COURT:  Right.  Okay.  No, that's fine.  Thank
24 you.

25          I interrupted you.  Was there something else you

1           MS. SCHWEITZER:  Well, I think --
2           THE COURT:  -- is it going to be the heightened --
3  excuse me.  Is it going to be the heightened standard, is it
4  going to be the business judgment standard?  And then when we
5  get to the 30th, does the standard change?  And then when I --
6  and when I have to assess whether or not to approve the various
7  parts of the deal, am I applying one standard or multiple
8  standards, from your perspective?
9           MS. SCHWEITZER:  Well, I think, Your Honor, we have a
10 basis to argue that this would be a business-judgment standard
11 that we -- the shareholders are obviously shareholders, but
12 they're not all necessarily control parties, such that you
13 could consider applying the business-judgment standard.
14          I would certainly say --
15          THE COURT:  All right.  So you -- I'm sorry to -- I'm
16 sorry to interrupt you.  So what you're saying is, you're
17 preserving -- I mean, you're preserving -- you haven't had to
18 respond yet, and so --
19          MS. SCHWEITZER:  Right.
20          THE COURT:  -- one of the arguments may be that in
21 fact it is the business-judgment standard.
22          But if I disagree with you --
23          MS. SCHWEITZER:  Um-hum.
24          THE COURT:  -- and I find that I think that the
25 heightened standard should apply, does it apply to everything?

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Penina Wolicki*

_____

Penina Wolicki (CET-569)

AAERT Certified Electronic Transcriber

eScribers

352 Seventh Ave., Suite #604

New York, NY 10001

Date:  July 16, 2020