Hearing Date: **September 14, 2020 at 3:00 pm**
Objections Due: **September 7, 2020 at 4:00 pm**

**ADAM L. ROSEN PLLC**
2-8 Haven Avenue, Ste. 220
Port Washington, NY 11050
Adam L. Rosen
516-407-3756
adam.rosen@alrcounsel.com

**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Chet B. Waldman
212-451-9624
cwaldman@wolfpopper.com

*Attorneys for Corporación Nacional de
Consumidores y Usuarios de Chile*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LATAM Airlines Group S.A., *et al.*, | Case No. 20-11254 (JLG) |
| Debtors. | Jointly Administered |

**MOTION OF CORPORACIÓN NACIONAL DE
CONSUMIDORES Y USUARIOS DE CHILE FOR ORDER (I) MODIFYING
OR ANNULLING AUTOMATIC STAY OF 11 U.S.C. §362 TO PERMIT
CONTINUATION OF CHILEAN ACTION, AND (II) SCHEDULING A
<u>JOINT HEARING WITH THE CHILEAN INSOLVENCY COURT</u>**

TO:   THE HONORABLE JAMES L. GARRITY JR.
      UNITED STATES BANKRUPTCY JUDGE:

Corporación Nacional de Consumidores y Usuarios de Chile (the "**Movant**"), as representative of certain Chilean consumers (collectively, the "**Consumers**") who purchased air travel tickets from LATAM Airlines Group S.A. (the "**LATAM Parent**") and its affiliated debtors

(collectively, the "**Debtors**"), respectfully submits this motion (the "**Motion**") for an order modifying or annulling the automatic stay of section 362 of title 11, United States Code (the "**Bankruptcy Code**"), solely to the extent necessary to permit Movant to continue to prosecute the action pending in the 23rd Civil Court of Santiago, Chile (the "**Chilean Action**"), case part C-8498-020 (the "**Chilean Civil Court**") and the related appeal, in order to determine the amount of the Consumer's claims, but not to enforce any judgment or settlement obtained by the Consumers in the Chilean Action.

In addition, Movant respectfully requests that the Court consider scheduling a joint hearing with the Chilean Insolvency Court (defined below) to consider the issues raised by this Motion, including whether this Court and the Chilean Insolvency Court should modify their respective stays to permit Movants to proceed with the Chilean Action to the extent outlined below.

In support of the Motion, Movant respectfully submits the following as well as the Declaration of Mauricio Tapia Rodríguez dated August 27, 2020 (the "**Tapia Decl.**").

## PRELIMINARY STATEMENT

1.     The purpose of this Motion is to inform this Court of the status of the Chilean Action, seek modification of the automatic stay, and suggest that this Court and the Chilean Insolvency Court conduct a joint hearing or conference to consider the fairest and most expeditious method of determining the amount of the Consumer's claims.[1] Presently, Movants are in the difficult position of being subject to two separated stays: the automatic stay in these cases and the stay imposed by the Chilean Insolvency Court which is on appeal.

---

[1] A joint hearing or conference is consistent with the "Guidelines for Communication and Cooperation Between Courts in Cross-Border Insolvency Matters" (the "**Cross-Border Guidelines**"), a copy of which is attached to the "Debtors' Motion for Entry of an Order Approving Cross-Border Court-to-Court Communications Protocol," dated June 30, 2020 (ECF 413). An order approving the motion does not appear on the docket.

2

2. Movants submit that it is in the best interests in the efficient administration of these cases for this Court and the Chilean Insolvency Court to agree on a procedure to liquidate the Consumer's claims. Movant submits that involving the Chilean Insolvency Court is necessary considering the sensitive political and economic issues in Chile related to the Covid-19 pandemic and the related economic consequences.

## BACKGROUND

### The Chapter 11 Filing

3. On May 26, 2020 (the "**Filing Date**"), certain of the Debtors (the LATAM Parent and twenty-eight (28) affiliated debtors) filed chapter 11 petitions in this Court. On July 7 and July 9, 2020, nine (9) additional Debtors filed chapter 11 petitions in this Court.

### The Chilean Action

4. On May 29, 2020, Movant, as the legal representative of the Consumers under applicable Chilean law, filed a complaint (the "**Complaint**") against the LATAM Parent in the Chilean Civil Court seeking damages and other relief relating to the cancellation or rescheduling of air travel flights by the Debtors (collectively, the "**Cancelled Flights**").

5. At the time of the filing of the Complaint, the Chilean Recognition Order (defined below) had not been entered and Movant was unaware that the automatic stay under the Bankruptcy Code may have prohibited the filing of the Chilean Action. For that reason, any violation of the automatic stay was inadvertent and innocent. Movant files this Motion for an order modifying or annulling the stay to the extent necessary to permit the continued prosecution of the Chilean Action and related appeal.

3

**The Chilean Recognition Order**

6.      The Debtors' Chilean insolvency case was assigned to the 2nd Civil Court of Santiago, Chile, case part C-8553-2020 (the "**Chilean Insolvency Court**"). On June 4, 2020, *after* the Filing Date and after the commencement of the Chilean Action, the Chilean Insolvency Court entered an order (the "**Chilean Recognition Order**") which, among other relief: (i) recognized these chapter 11 cases as the main bankruptcy proceeding with respect to the Debtors; (ii) appointed the LATAM Parent as a foreign representative with respect to these chapter 11 cases; and (iii) stayed the continuation of the Chilean Action (the "**Chilean Stay Order**"); and (iv) provided that, with respect to assets located in the Chilean territory, the scope, modification, and termination of the stay shall be subject to applicable Chilean law.[2]

7.      On July 21, 2020, Movant asked the Chilean Civil Court to reverse the Chilean Stay Order and filed an appeal of the Chilean Stay Order in the Santiago appellate court. On August 3, 2020, the Chilean Civil Court denied the request to reverse the Chilean Stay Order and directed the parties to go forward with the appeal. Currently, the appeal is pending.

**The Claim**

8.      On August 31, 2020, Movant filed a proof of claim against the LATAM Parent in an unliquidated amount (the "**Claim**"). The Claim was filed by Movant, as the legal representative of the Consumers pursuant to Chilean law which allows authorized consumer advocacy groups to represent consumers as the plaintiff, and not as the representative of a class, in these types of actions. Established in 1996, Movant is a consumer advocacy group located in Santiago, Chile. It is one of the oldest consumer organizations in Chile with a network of 100 members and

---

[2]  The Chilean Recognition Order provides: "That the scope, modification and termination of the stay or suspension referred to above shall be subject to the provisions set forth in Law No. 20.720 and shall exclusively refer to those assets that are located in the Chilean territory." *See* Chilean Recognition Order at 4, para. III, a copy of which is attached as Exhibit D to the Tapia Decl.**.**

collaborators. Movant's main activities are to inform and educate consumers through its website, radio and TV programs, the handling of complaints from individual consumers, provision of legal support, and undertaking collective redress actions on behalf of consumers. Movant's website is http://www.conadecus.cl/conadecus/.

9. The Claim is for damages and other relief on behalf of the Consumers who purchased air travel tickets from the LATAM Parent, or one of the other Debtors, for flights which were rescheduled or canceled as a result of the Covid-19 pandemic, due to border closures, decisions by governmental authorities or the Debtors' business decisions, for which the Debtors did not offer any reasonable or convenient alternative or full reimbursement.

10. Movant is the authorized representative of the Consumers and is, therefore, authorized to file the proof of claim.[3] Although the Complaint seeks compensation for a large number of Chilean consumers, Chilean law does not authorize "class actions" and the Chilean Action, which neither involves a class of U.S. citizens nor any claims asserted under U.S. law, is not subject to the U.S. requirements for class actions set forth in the Federal Rules of Civil Procedure and the applicable Federal Rules of Bankruptcy Procedure.

11. The basis of the Claim is the damages and other relief sought by Movant, on behalf of the Consumers, in the Chilean Action relating to the Cancelled Flights. The facts supporting the Claim and the applicable law are set forth in the Complaint. In summary, the Consumers seek

---

[3] Bankruptcy Code §501 provides that a creditor may file a proof of claim, and that such proof of claim may be executed by the creditor or the creditor's authorized agent. 11 U.S.C. §501, Fed. R. Bankr. P. 3001(b). Whether a party is an authorized agent of a creditor is a matter of applicable non-bankruptcy law. *In re Griffin Trading Co.*, 270 B.R. 883 (Bankr. N.D. Ill. 2001) (applying law of the United Kingdom to determine whether Joint Liquidators were "agents" as contemplated by Rule 3001(b)); *In re Thalmann*, 469 B.R. 677 (Bankr. S.D. Tex. 2012) (state law determines whether entity is authorized agent of creditor. Agency may be conferred by statute. COLLIER ON BANKR., 3001.06 (Alan Resnick & Henry J. Sommer eds., 16th ed.); *Nathanson v. NLRB*, 344 U.S. 25, 27 (1952) (National Labor Relations Board is a creditor within the meaning of the Bankruptcy Act with respect to back pay awards, as it is the public agent chosen by Congress to enforce the National Labor Relations Act).

compensation for the following relief related to Cancelled Flights, in amounts according to proof at trial:

    a. Damages equal to the cost of airline tickets purchased and expenses paid with respect to the Cancelled Flights;

    b. Restitution of other related expenses paid by the Consumers with respect to the Cancelled Flights;

    c. Damages equal to the cost for Consumers to obtain the same air travel service, at the time the Consumers can travel in a safe manner, without risk to their health and welfare, including the cost of food, lodging and other expenses incurred by Consumers as a result of the Cancelled Flights;

    d. Damages for lost wages and related costs incurred by the Consumers as the result of the Cancelled Flights;

    e. Damages for the illegitimate withholding of the amounts paid by the Consumers for ticket fees, baggage fees, taxes, and other charges; and

    f. Additional damages, interest, costs, and attorneys' fees as permitted by applicable Chilean law.

12. As noted in the Movant's proof of claim, the amount of damages is presently undetermined and, therefore, the Claim is filed in an unliquidated amount. Movant reserves the right to amend the proof of claim to specify the amount of damages and to seek additional damages and related relief based on the facts set forth in the Complaint.

**Determining the Amount of the Claim**

13. As set forth above, the Chilean Action has been stayed. The purpose of this Motion is to inform the Court of the status of the Chilean Action and to seek an order, to the extent

necessary, modifying the stay of section 362 to permit Movant to proceed with the Chilean Action and appeal. Movant seeks this relief because it believes that permitting the Chilean courts to determine the amount of the Claim is appropriate for several reasons including judicial efficiency, comity and the fact that the Chilean Action involves Chilean consumers and Chilean law.

14. To be clear, Movant seeks to liquidate the amount of its Claim in the Chilean courts and does not seek to enforce or collect any judgment or settlement related to the Claim, except to the extent permitted by this Court in connection with these chapter 11 cases.

## RELIEF REQUESTED

15. Movant seeks entry of an order (i) modifying or annulling the automatic stay of Bankruptcy Code §362 to permit Movant to continue the Chilean Action and pursue the related appeal, and (ii) scheduling a joint hearing or conference with the Chilean Insolvency Court to consider the most efficient and fair procedure to liquidate the Consumer's Claim. As demonstrated below, the relief requested is consistent with the standards set forth by the Second Circuit and its consistent with the principles of comity, judicial economy and the commonly accepted Cross Border Guidelines.

**Cause Exists to Modify the Automatic Stay**
**Under Bankruptcy Code §362(d)(1)**

A. **Definition of "Cause"**

16. Whether "cause" exists to modify the stay must be determined on a "case by case basis, taking into consideration the interests of the debtor, the claimants and the estate." *In re MacInnis*, 235 B.R. 255, 259 (S.D.N.Y. 1998) (citing *In re Keene Corp.,* 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)); *Manhattan King David Restaurant, Inc. v. Levine,* 163 B.R. 36, 40 (S.D.N.Y. 1993) (explaining the "term 'cause' is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis") (citing *In re Sonnax Indus., Inc.*, 907

7

F.2d 1280, 1286 (2d Cir. 1990)) ("*Sonnax*").  *See also In re Consolidated Distributors, Inc.*, Case No. 13-40350 (NHL), 2013 WL 3929851, at *12 (Bankr. E.D.N.Y. July 24, 2013) (citing *Sonnax*) (holding movant established cause to lift the automatic stay under Bankruptcy Code §362(d)(1) to pursue action in district court to final judgment).

17. Although "cause" is not defined by the Bankruptcy Code, where a claimant seeks relief from the stay to pursue a cause of action in a non-bankruptcy forum, Congress has stated:

> In addition, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."

S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836. "The Bankruptcy Court must make the following determinations in deciding if cause exists to modify the stay:

> (1) Whether the litigation causes the debtor great prejudice. *In re Johnson*, 115 B.R. 634, 636 (Bankr. D. Minn. 1989).
>
> (2) Whether a balancing of the respective hardships tips in favor of the debtor or creditor, resulting from denial or granting of the relief. *Id.*
>
> (3) Whether public policy supports the type or kind of action the movant is bringing against the debtor. *Carter v. Larkham (In re Larkham)*, 31 B.R. 273 (Bankr. D. Vt. 1983)."

*Edmonson v. America West Airlines, Inc. (In re America West Airlines),* 148 B.R. 920, 922-23 (Bankr. D. Ariz. 1993).

18. Modification of the automatic stay may be granted by a bankruptcy court under section 362(d)(1), and the legislative history provides that "a desire to permit an action to proceed to completion in another tribunal may provide . . . cause." *In re Laventhol & Horwath*, 139 B.R. 109, 116 (S.D.N.Y. 1992) (citing H.R. Rep. No. 595, 95th Cong. 2d Sess. 343-44 (1978), *reprinted*

*in* 1978 U.S. Code Cong. Admin. News 5787, 6300). *See also In re Burger Boys, Inc.,* 183 B.R. 682 (S.D.N.Y. 1994) (upholding bankruptcy court's decision to lift stay to allow timely adjudication of non-payment proceeding in civil court); *In re Diplomat Electronics Corp.*, 82 B.R. 688 (Bankr. S.D.N.Y. 1988).

19.     Additionally, because the Claim is unliquidated, modifying or annulling the stay will permit the Chilean courts to determine the amount of the Claim which is consistent with the efficient administration of these chapter 11 cases. Otherwise, this Court would likely be asked to determine the amount of the Claim or estimate the amount of the Claim. Moreover, comity considerations certainly weigh in favor of permitting the Chilean courts to determine the amount of the Claim.

20.     The burden of proof for a motion under Bankruptcy Code §362(d)(1) is a shifting one. *Sonnax* at 1285. Specifically, Bankruptcy Code §362(d)(1) "requires an initial showing of cause by the movant, while [Bankruptcy Code] §362(g) places the burden of proof on the debtor for all issues other than 'the debtors' equity in property.'" *Id.* (citing 11 U.S.C. §362(g)(1) and COLLIER ON BANKR. ¶ 362.10 at 362-76); *see also In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("Whereas [movant] has the initial burden of production of evidence that 'cause' exists . . . the Debtor has the burden of proof that stay relief is not warranted.") (internal citations omitted).

B.      **The *Sonnax* Factors**

21.     In *Sonnax*, the Second Circuit adopted a twelve-factor analysis to determine whether the stay should be vacated or modified to permit litigation to be continued in another forum. *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), first set forth the factors, which include:

9

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax* at 1286. Only the relevant factors need be considered. *See In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) (citing *Sonnax*, 907 F.2d at 1285). The court need not assign the factors equal weight. *See id.* (citing *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992)). The court is even permitted to lift the stay *sua sponte* to allow litigation to continue in another forum. *See In re Laventhol & Horwath*, 139 B.R. 109, 116 n.6 (S.D.N.Y. 1992); *Niagara Mohawk Power Corp. v. Megan Racine Assocs., Inc. (In re Megan-Racine Assos., Inc.)*, 180 B.R. 375 (Bankr. N.D.N.Y. 1995).

C.    **Cause Exists to Modify or Annul the Automatic Stay**

22.    Of the *Sonnax* factors, factors 1, 2, 4, 7, 10, and 12 are relevant here. A balancing of the *Sonnax* factors weighs decidedly in favor of allowing the Chilean Action to proceed to determine the amount of the Claim.

**Factor 1 – Complete Resolution of the Issues**

23.    Granting the Motion would result in the continued prosecution of the Chilean Action which would ultimately result in a complete resolution of the dispute between the Debtors and the Consumers with respect to the Cancelled Flights. Movant seeks only to determine the amount of the Claim. Courts in this circuit have found that Bankruptcy Code section 362(d)(1) contemplates and "frequently permits" precisely this type of relief. *In re Petition of Caldas*, 274 B.R. 583, 596 (Bankr. S.D.N.Y. 2002) ("The distinction between permitting a litigation to proceed solely for the purpose of fixing a claim in amount… is one that is readily made under U.S. bankruptcy law [which] relief is frequently permitted on requests for relief from the stay in United States bankruptcy courts, under Bankruptcy Code section 362(d)(1), particularly where liquidating the claim in the Bankruptcy Court would be impermissible, impractical, or less efficient than the alternative.") (*citing Sonnax,* 907 F.2d at 1286-1287)).

24.    Judge Gropper's decision in *In re Aerovias Nacionales De Colom. S.A. & Avianca, Inc.*, 345 B.R. 120 (Bankr. S.D.N.Y. 2006) is instructive. In *Aerovias Nacionales* the debtor filed a chapter 11 case in New York, but no insolvency proceeding was filed in the country of Columbia. Judge Gropper entered an order establishing procedures for the resolution of certain Columbian labor claims by the Columbian courts. *Id*. 122. In applying the *Sonnax* factors, Judge Gropper concluded that it was appropriate for the Columbian courts to adjudicate the labor claims because, among other reasons, Columbia had the greatest interest in the issues presented by the

11

labor claims, and the determination by the Columbian courts would provide a conclusive resolution to the disputed issues. *Id*. 125-26.

### **Factor 2 – Connection to, or Interference With, the Chapter 11 Cases**

25.     Continuing the Chilean Action will not interfere with these cases because the Chilean Action is already proceeding in the Chilean courts which have already stayed the Chilean Action. The Chilean Action has little connection to these chapter 11 cases in that the action will be adjudicated on the basis of local and regional facts and circumstances related to the COVID-19 pandemic, travel restrictions, and Debtors' acts that led to the Cancelled Flights, and require application of Chilean law, including Chilean consumer protection laws. *See Aerovias Nacionales,* 345 B.R. at 124 (finding that the second *Sonnax* factor was met because the foreign proceeding required adjudication of labor claims in Colombia, and, "[t]hus, there is little connection between the claim and the Chapter 11 case as a whole.").

12

### Factor 4 – The Chilean Civil Court
### is a Specialized Tribunal

26. Movant's claims in the Chilean Action are based upon Chilean law and the Complaint is expressed in, and the Chilean proceedings will be conducted in, the Spanish language. The Chilean Action arises out of *Chilean Law Nr. 19496 on the Protection of Consumer Rights*, dated March 7, 1997, and Articles 8, section (e), and 51 Nr. 1(b) establishing the legitimacy of consumers' associations to bring collective actions on behalf of consumers. Movant submits that the Chilean Civil Court – not this Court – is the most appropriate tribunal to hear and decide the Chilean Action. *See, e.g., Aerovias Nacionales,* 345 B.R. at 124 (finding where the foreign proceeding related to Colombian labor claims, "the Colombian tribunals have the expertise and experience to hear the issues, as this Court decidedly does not.").

27. Permitting the Chilean Action to proceed is consistent with the principle of comity which courts in the United States traditionally afford foreign tribunals. *See, e.g., Aerovias Nacionales,* 345 B.R. at 125-26. Under the principles of comity, "United States courts will ordinarily defer to foreign proceedings so long as 'the foreign court has proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy.'" *Id. (citing Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) and *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987). U.S. courts frequently grant comity in cases involving foreign insolvency proceedings, including in determining issues arising in a chapter 11 case where the underlying conduct took place abroad. *See Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.)*, 93 F.3d 1036, 1051-1053 (2d Cir. 1996*); see also Ecoban Fin. Ltd. v. Grupo Acerero del Norte, SA de CV*, 108 F.Supp.2d 349, 352-53 (S.D.N.Y. 2000), *aff'd*, 242 F.3d 364 (2d Cir. 2001), *cert.*

*denied*, 534 U.S. 814 (2001); *Finanz AG Zurich*, 192 F.3d at 246; *Cunard S.S. Co. v. Salen Reefer Servs. AB (In re Cunard)*, 773 F.2d 452, 457 (2d Cir. 1985).

### Factor 7 – Granting Movant Relief Would Not Prejudice Other Creditors

28. Allowing Movant to proceed with the Chilean Action would not prejudice any legitimate interests of other creditors because Movant only seeks to continue the Chilean Action in order to determine the amount of the Claim. Movant will not seek to recover on the Claim with respect to any judgment or settlement realized with respect to the Claim, except to the extent authorized by this Court in these chapter 11 cases.

### Factor 10 – Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation

29. Judicial economy would best be served by lifting the automatic stay. As stated above, the Chilean Civil Court is the best and most appropriate tribunal to interpret applicable Chilean laws and determine the respective rights of the parties in the Chilean Action.[4]

### Factor 12 – Impact of the Stay and Balance of Harms

30. The impact of the automatic stay and balance of harms weighs decidedly in favor of the Movant and the Consumers it represents. If the Motion is not granted, the Consumers will be prejudiced because they will be unable to pursue their rights under Chilean law in the pending Chilean litigation.

31. The amount of the Claim must be determined by either this Court or the Chilean courts and, as set forth above, the Chilean courts are in a better position to hear and determine the Chilean Action. The Debtors are already defending the Chilean Action and this Court's automatic

---

[4] If the Chilean courts do not, or cannot, expeditiously resolve Claimant's Claim, Movant reserves the right to seek appropriate relief in this Court, including without limitation, seeking to estimate the Claim under Bankruptcy Code section 502(c).

stay is unnecessary to protect the chapter 11 estates because the Chilean Insolvency Court has already issued a stay which Movant must overcome.

32. Any burden on the chapter 11 estates of permitting the Chilean Action to proceed will be minimal. First, that action is currently stayed by the Chilean Court. Second, both LATAM and Movant already filed their appeal briefs and the hearing on the appeal will take place on September 1, 2020. Consequently, the balance of equities in lifting the automatic stay in the U.S. weighs in favor of the Movant and the Consumers.

33. For all of the above reasons, Movant submits that cause exists to modify or annul the automatic stay, and to schedule a joint hearing or conference with the Chilean Insolvency Court to determine the best procedure to determine the amount of the Claim.

**A Cross-Border Conference or Hearing is Appropriate**

34. The Cross-Border Guidelines are designed to promote, among other things, "The efficient and timely coordination and administration of 'Parallel Proceedings'" and "the avoidance or minimization of litigation costs, and inconvenience to the parties in the Parallel Proceeding." Cross-Border Guidelines, ¶C. The Cross-Border Guidelines suggest that "Courts should encourage and where necessary direct, if they have the power to do so, the parties to make the necessary application to the court to facilitate such implementation by a protocol or order derived from these Guidelines, and encourage them to act so as to promote the objectives and aims of these Guidelines wherever possible." Cross-Border Guidelines ¶ F.

35. Consistent with the objectives of the Cross-Border Guidelines, Movant requests a joint hearing or conference with the Chilean Insolvency Court in order to determine a consistent and economical method for determining the amount of the Claim, and to ensure that Claimant's rights under Chilean law are respected and protected.

## CONCLUSION

36. Notice of the Motion has been provided pursuant to this Court's *Order Implementing Certain Notice and Case Management Procedures*, dated June 5, 2020 (EFC 112). Movant submits that such notice is sufficient and appropriate under the circumstances.

**WHEREFORE**, for all of the foregoing reasons, and based upon the Declaration filed herewith, Movant respectfully requests that this Court enter an order (i) modifying or annulling the automatic stay of Bankruptcy Code §362 to permit Movant to continue to prosecute the Chilean Action to the point of judgment or settlement, (ii) scheduling a hearing or conference with the Chilean Insolvency Court, and (iii) granting the Movant such further relief as the Court deems appropriate.

Dated: Port Washington, New York
August 31, 2020

**ADAM L. ROSEN PLLC**

By: Adam L. Rosen
    Adam L. Rosen
2-8 Haven Avenue, Ste. 220
Port Washington, NY 11050
516-407-3756
adam.rosen@ALRcounsel.com

**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Chet B. Waldman
212-451-9624
cwaldman@wolfpopper.com

*Attorneys for Corporación Nacional de Consumidores y Usuarios de Chile*