# EXHIBIT 1



| | |
|---|---|
| <u>PROCEDIMIENTO</u> | : Juicio especial para la protección del interés colectivo de los consumidores, contenido en los artículos 51 y ss. de la Ley Nº19.496. |
| <u>MATERIA</u> | : Demanda colectiva por vulneración del interés colectivo de lo consumidores por inobservancia de la Ley Nº19.496. |

| | |
|---|---|
| **<u>DEMANDANTE</u>** | : **ASOCIACIÓN DE CONSUMIDORES Y USUARIOS DE CHILE (AGRECU)** |
| RUT | : 65.191.381-0 |
| | |
| REPRESENTANTE | : ANDRÉS PARRA VERGARA |
| RUT | : 7.450.020-K |
| PATROCINANTE | : ANDRÉS PARRA VERGARA |
| RUT | : 7.450.020-K |
| PATROCINANTE | : JORGE LUIS VALLADARES OPAZO |
| RUT | : 10.607.555-7 |
| APODERADO | : DANIEL PARRA AGUILAR |
| RUT | : 16.940.089-K |
| | |
| **<u>DEMANDADO</u>** | : **LATAM AIRLINES GROUP S.A.** |
| RUT | : 89.862.200-2 |
| REPRESENTANTE | : ENRIQUE CUETO PLAZA |
| RUT | : 6.694.239-2 |





**EN LO PRINCIPAL**: Deducen demanda; **PRIMER OTROSI:** Acompañan documentos; **SEGUNDO OTROSÍ**: Solicitan lo que indica; **TERCER OTROSÍ:** Patrocinio y poder.; **CUARTO OTROSI:** Acompaña certificados que indica.

### S.J.L. en lo Civil de Santiago

**ANDRÉS PARRA VERGARA**, abogado, cédula nacional de identidad N° 7.450.020-K, presidente de la **ASOCIACIÓN DE CONSUMIDORES Y USUARIOS DE CHILE - AGRECU**, Rol Único Tributario **N° 65.191.381-0**, en adelante "**AGRECU**", y en su representación legal, según se acredita en un otrosí de esta presentación, ambos domiciliados para estos efectos en Paseo Bulnes 79 oficina, a SS. respetuosamente digo:

Que, en virtud de los dispuesto los artículos 5, 8 y siguientes, y 51, letra b), y siguientes, de la Ley Nº 19.496, sobre Protección de los Derechos de los Consumidores (en adelante también "LPC"), y lo señalado por el artículo 30 del Decreto Ley Nº 211 sobre Defensa de la Libre Competencia (en adelante "DL 211), vengo en deducir demanda de indemnización de perjuicios por afectación al interés colectivo y difuso de los consumidores, en virtud del procedimiento especial regulado en el Párrafo 3° del Título IV de la LPC, en contra de _**LATAM Airlines Group S.A.**_[1] (en adelante, "LATAM"), sociedad del giro comercial, RUT 89.862.200-2, representada legalmente por don **Enrique Cueto Plaza**, ambos domiciliados para estos efectos en Av. Américo Vespucio 901, Renca, Santiago de Chile.

La demanda tiene por objeto demandar la publicidad engañosa en las ofertas de pasajes aéreos y su consecuencia por el incumplimiento en los contratos y devolución del dinero a pesar de no prestar el servicio y continuar haciendo ofertas sin la seguridad para el consumidor del cumplimiento en la fecha y tiempos que son de interés del que contrata. Como asimismo la reparación íntegra de todos los daños que los consumidores del país sufrieron a causa de la no informada política de devolución de

---

[1] https://www.latam.com/es_cl/conocenos/latam-airlines-group/



2



pasajes implementada por la demandada que atenta contra las normas del derecho del consumidor al no responder adecuadamente ante los usuarios de su servicio quienes tenían vuelos comprados y que se vieron afectados por las medidas sanitarias producto de la pandemia.

**Del Procedimiento y derecho a indemnización**

En primer orden de ideas debemos señalar que el derecho del consumidor, según lo ha declarado el Tribunal Constitucional, es un derecho "protector", tiene una finalidad tutelar, por cuanto apunta a normar las relaciones entre proveedores y consumidores, quienes se encuentran en una evidente relación de desequilibrio.

En efecto, en la relación oferente y consumidor debe primar el principio de "buena fe", esto es, debe ser la oferta real y no debe defraudar las reales expectativas de quien ha recibido la oferta, quien tendrá derecho a lo ofrecido tal como lo aceptó, no siéndo lícito que el oferente altere la oferta o modifique lo ofrecido, ya que es el aceptante el único que podría cambiar los términos de dicha oferta, pagando en algunos casos el mayor costo que dicha modificación pueda significar.

**La ley 19.496 dispone al respecto:**

En cuanto a los efectos de la incorporación de una cláusula abusiva en un contrato de adhesión, el encabezado del artículo 16 de la LPC dispone que "***No producirán efecto algun***o". De esta forma, de incluirse una cláusula abusiva, la misma es absolutamente nula.

El artículo 16 de la LPC, al prohibir ciertas cláusulas por ser abusivas y señalar que no producen efecto alguno, representa la aplicación de una herramienta de orden público económico, relativa a limitaciones a la autonomía de la voluntad (o privada) en consideración a razones de bienestar general de la sociedad.





El carácter de orden público que revisten las normas que regulan el contenido de los contratos de adhesión, queda de manifiesto en la historia fidedigna del establecimiento de la LPC, en que se señaló lo siguiente: "*Paulatinamente el legislador ha ido interviniendo en los contratos, alterando reiterativamente en la Ley de Protección al Consumidor el principio de la libertad contractual que impera en nuestro ordenamiento jurídico en aras del orden público, económico o social*" (Primer Informe Comisión de Economía, Cámara de Diputados, p. 40).

Estas limitaciones de orden público económico, sumado al hecho que, según el artículo 4 de la LPC, los derechos de los consumidores son irrenunciables, garantizan principios básicos y elementales que deben estar presentes en la contratación masiva entre proveedores y consumidores (equivalencia de las prestaciones, beneficios mutuos, conmutatividad y reciprocidad). La importancia que las normas de la LPC sean de orden público e irrenunciables es que, conforme al inciso final del artículo 1461 del Código Civil, la inclusión de una cláusula abusiva adolece de objeto ilícito por contrariar el orden público económico. En consecuencia, y de acuerdo a lo establecido en el artículo 1682 del mismo cuerpo legal, adolece de nulidad absoluta.

La inclusión de cláusulas abusivas está prohibida por la Ley, al igual que aquellas en que el consumidor renuncia a ejercer derechos. Como S.S. conoce, cuando se está frente a una norma prohibitiva que se infringe, lo que procede es la declaración de nulidad absoluta (salvo se señalare otra sanción expresamente). Así lo establecen los artículos 10, 12 y 1.461 del Código Civil.

**Cláusulas abusivas:**

Relativo a los contratos de adhesión el artículo 16 de la LPC establece: *No producirá efecto alguno en los contratos de adhesión las cláusulas que*: a) **otorguen a una de las partes la facultad de dejar sin efecto o modificar a su sólo arbitrio el**





**contrato o de "suspender unilateralmente su ejecución", salvo cuando ellas "se concedan al comprador"** .

Aún más, el artículo 16 A de la LPC, relativo a la nulidad parcial por cláusulas abusivas, dispone que el juez "**deberá declarar nulo , el acto o contrato**". Y, el artículo 16 B,  habla de la "*declaración de nulidad de cláusulas contenidas en contratos de adhesión*". Como se aprecia, ambos imperativos son idénticos al impuesto en el artículo 1.683 del Código Civil, relativo a la nulidad absoluta.

A mayor abundamiento el artículo 16 A de la Ley de Protección al Consumidor, señala que : "*Declarada la nulidad de una o varias cláusulas o estipulaciones de un contrato de adhesión, por aplicación de alguna de las normas del artículo 16, éste subsistirá con las restantes cláusulas, a menos que por la naturaleza misma del contrato, o atendida la intención original de los contratantes, ello no fuere posible. En este último caso, el juez deberá declarar nulo, en su integridad, el acto o contrato sobre el que recae la declaración*".

A su vez su artículo 50 señala que  "*Las acciones que derivan de esta ley, se ejercerán frente a actos o conductas que afecten el ejercicio de cualquiera de los derechos de los consumidores. El incumplimiento de las normas contenidas en la presente ley dará lugar a las acciones destinadas a sancionar al proveedor que incurra en infracción, anular las cláusulas abusivas incorporadas en los contratos de adhesión, obtener la prestación de la obligación incumplida, hacer cesar el acto que afecte el ejercicio de los derechos de los consumidores, a obtener la debida indemnización de perjuicios o la reparación que corresponda*…".

**Procedimiento:**

Por su parte, el artículo 51 de la LPC  dispone : "*El procedimiento señalado en este párrafo se aplicará cuando se vea afectado el interés colectivo o difuso de los*



5



consumidores. En este procedimiento especial la prueba se apreciará de acuerdo a las reglas de la sana crítica y se sujetará a las siguientes normas:

1.- Se iniciará por demanda presentada por:

a) El Servicio Nacional del Consumidor;

b) Una Asociación de Consumidores constituida, a lo menos, con seis meses de anterioridad a la presentación de la acción, y que cuente con la debida autorización de su directorio para hacerlo, o

c) Un grupo de consumidores afectados en un mismo interés, en número no inferior a 50 personas, debidamente individualizados.

El tribunal ordenará la notificación al demandado y, para los efectos de lo señalado en el Nº 9, al Servicio Nacional del Consumidor, cuando éste no hubiera iniciado el procedimiento."

En conformidad a la norma señalada AGRECU cumple a cabalidad lo dispuesto en el literal b) del artículo 51 de la citada Ley.

A su vez el articulo 51 en su numeral 2 establece:

2.-" Sin perjuicio de los requisitos generales de la demanda, en lo que respecta a las peticiones relativas a perjuicios, bastará señalar el daño sufrido y solicitar la indemnización que el juez determine, conforme al mérito del proceso, la que deberá ser la misma para todos los consumidores que se encuentren en igual situación. Con este fin, el juez procederá de acuerdo a lo dispuesto en el artículo 53 A. No habrá lugar a la reserva prevista en el inciso segundo del artículo 173 del Código de Procedimiento Civil.

Las indemnizaciones que se determinen en este procedimiento podrán extenderse al daño moral siempre que se haya afectado la integridad física o síquica o la dignidad de los consumidores. Si los hechos invocados han provocado dicha afectación, será un hecho sustancial, pertinente y controvertido en la resolución que reciba la causa a prueba".





La norma citada permitirá en este procedimiento no solo demandar el daño causado sino además el daño moral, por cuanto los hechos denunciados ya fueron juzgados, acreditados y condenados, cuya sentencia se encuentra ejecutoriada, por lo que no es procedente en esta acción volver a discutir dichos hechos colusivos en contra de los demandados, y basta señalar el daño sufrido.

**LEGITIMACIÓN ACTIVA DE AGRECU CHILE**

Legitimación Activa de **AGRECU** Chile para actuar en representación del interés colectivo y difuso de los consumidores afectados, se contiene en la propia LPC la que establece tal facultad en sus artículos 8, letra e), y 51, número 1, letra b).

En efecto, menciona el primero de los preceptos citados, que el objetivo de las asociaciones de consumidores es, precisamente "*representar tanto el interés individual, como el interés colectivo y difuso de los consumidores ante las autoridades jurisdiccionales o administrativas, mediante el ejercicio de las acciones y recursos que procedan. El ejercicio de esta actividad incluye la representación individual de los consumidores en las causas que ante los tribunales de justicia se inicien para la determinación de la indemnización de perjuicios*".

Asimismo, el artículo 51, número 1, letra b), de la LPC, al establecer que: "El procedimiento señalado en este párrafo se aplicará cuando se veo afectado el interés colectivo o difuso de los consumidores (...). l.- Se iniciará por demanda presentada por: (...) b) Una asociación de consumidores constituida, a lo menos, con seis meses de anterioridad a la presentación de la acción, y que cuente con la debida autorización de su directorio para hacerlo (...)", lo que consta en los documentos que se acompañan en un otrosí de esta presentación.

**ADMISIBILIDAD DE LA DEMANDA**



El actual artículo 52 de la LPC, establece los requisitos que S.S. ha de tener en cuenta para pronunciarse sobre la admisibilidad de la acción intentada. La norma citada, en su inciso primero, señala que:

 *"El Tribunal examinará la demanda, la declarará admisible y le dará tramitación, una vez que verifique la concurrencia de los siguientes elementos: a) Que la demanda ha sido deducida por uno de los legitimados activos individualizados en el artículo 51. b) Que la demanda cumpla con los requisitos establecidos en el artículo 254 del Código de Procedimiento Civil, los que sólo se verificarán por el juez, sin que puedan discutirse en esta etapa"*.

El examen de admisibilidad fue establecido en este procedimiento con el fin de controlar la concurrencia de los elementos formales que justifican ejercer la acción a través del procedimiento de interés colectivo o difuso. Los aspectos de fondo de la acción deducida y sus fundamentos, no son materia del examen de admisibilidad, éstos se revisan y acreditan, una vez ya declarada la admisibilidad y se fallan, en definitiva.

El artículo 53 A dispone:

"*Artículo 53 A.- Durante el juicio y hasta la dictación de la sentencia definitiva inclusive, el juez podrá ordenar, de acuerdo a las características que les sean comunes, la formación de grupos y, si se justificare, de subgrupos, para los efectos de lo señalado en las letras c) y d) del artículo 53 C. El juez podrá ordenar también la formación de tantos subgrupos como estime conveniente.*"

Artículo 53 C inciso segundo dispone:

"*En todo caso, el juez podrá ordenar que algunas o todas las indemnizaciones, reparaciones o devoluciones que procedan respecto de un grupo o subgrupo, se efectúen por el demandado sin necesidad de la comparecencia de los interesados establecida en el artículo 54 C, cuando el juez determine que el proveedor cuenta con la información necesaria para individualizarlos y proceder a ellas. En este último caso, la sentencia*



8



*deberá establecer un conjunto mínimo de acciones destinadas a informar a quienes resulten alcanzados por el respectivo acuerdo las acreencias que tienen a su favor, facilitar su cobro y, en definitiva, conseguir la entrega efectiva del monto correspondiente a cada consumidor, pudiendo imponer al proveedor la carga de mandatar a un tercero independiente para la ejecución de dichas acciones, a su costa y con la aprobación del tribunal. El proveedor deberá transferir la totalidad de los fondos al tercero encargado de su entrega a los consumidores. La sentencia deberá establecer, además, un plazo durante el cual las diligencias referidas en este inciso deberán ejecutarse. Transcurridos dos años desde que se cumpla dicho plazo, los remanentes que no hayan sido transferidos ni reclamados por los consumidores caducarán y se extinguirán a su respecto los derechos de los respectivos titulares, debiendo el proveedor, o el tercero a cargo de la entrega, enterar las cantidades correspondientes al fondo establecido en el artículo 11 bis*".

**Normas sobre la Infracción de la demandada**

Como establece el artículo 2° dela LPC es un derecho del consumidor:

" b) *el derecho a la información veraz y oportuna sobre los bienes y servicios ofrecidos, su precio y condiciones de contratación y otras características relevantes de los mismos*, ..."

Artículo 2°Literal "e) *El derecho a la reparación e indemnización adecuada y oportuna de todos los daños materiales e inmateriales y morales en caso de incumplimiento de cualquiera de las obligaciones contraídas por el proveedor, y el deber de accionar de accionar de acuerdo a los medios que la ley le franquea*".

A su vez ,el Párrafo 3° le la <u>LPC, Obligaciones del proveedor</u> artículo 12 señala que "*todo proveedor de bienes o servicios estará obligado a respetar los términos , condiciones y modalidades a las cuales se hubiere ofrecido o convenido con el consumidor la entrega del bien o la prestación del servicio*".





El Párrafo 5° de la LPDC "Responsabilidad por el incumplimiento",  Artículo 23 establece en relación a los derechos infringidos en la prestación de los servicios contratados, que  " *comete infracción a las disposiciones de la presente ley el proveedor que, en la venta de un bien o en la prestación de un servicio, actuando con negligencia, causa menoscabo al consumidor debido a la falla o deficiencia en la calidad, cantidad, identidad que supere la capacidad del respectivo recinto. Igual sanción se aplicará a la venta de sobrecupos en los servicios de transporte de pasajeros, con excepción del transporte aéreo*"

Así los hechos descritos, al no entregar el servicio, no devolver en forma íntegra y oportuna los valores pagados infringe las disposiciones de la Ley del Consumidor afectando gravemente a los usuarios de estos servicios de transporte de pasajeros.

Asimismo la publicidad engañosa que se denuncia en la presente demanda tiene relación a la certeza jurídica que exige la Ley en la oferta. En el caso denunciado en autos la empresa ofrece pasajes para el mes de Julio a Madrid (España) en circunstancias que no existe ninguna seguridad de la oferta en las condiciones que al consumidor le pueda interesar comprarla.

Sin dicha seguridad y ofreciendo el demandado condiciones de cambio de fecha sin sanción, ya altera la oferta aceptada, y pagada por o consumidores, y en ningún momento ofrece la devolución del dinero por el evento que el cambio de fecha no sea de interés del consumidor afectado. Ello lleva al engaño y a incrementar el numero de personas que podrían demandar la devolución de su dinero por no prestar el servicio en el tiempo y forma contratada ya que el cambio de fecha debe ser prerrogativa del consumidor no del oferente, quien no tiene ninguna seguridad del cumplimiento.

El artículo  24 A de la LPDC señala que tratándose de infracciones que afecten el interés colectivo o difuso de los consumidores, el tribunal graduará la multa de acuerdo a lo señalado en el artículo precedente o al número de consumidores afectado.





Agrega el artículo 26 de la LPDC que las acciones que persigan la responsabilidad contravencional que se sanciona por la presente ley prescribirán en el plazo de dos años, contados desde que haya cesado en la infracción respectiva. Con todo las acciones civiles prescribirán conforme a las normas establecidas en el Código Civil por l que la acción indemnizatoria para el caso de autos extiende el plazo de prescripción a cuatro años según las disposiciones del Código Civil.


**<u>HECHOS</u>**

Producto de la declaración de pandemia global realizada por la Organización Mundial de la Salud con fecha 30 de enero del año en curso, se adoptaron medidas en todos los países para evitar un posible brote de la enfermedad en sus respectivas jurisdicciones. En chile el día 16 de marzo el presidente Sebastián Piñera Echeñique en la Declaración del Plan para enfrentar el Coronavirus informaba que se cerrarían las fronteras áreas, marítimas y terrestres para el tránsito de personas extranjeras. En otros países como España o Italia cerraron las fronteras para personal no esencial, viéndose fuertemente afectados los viajes por negocios o turismo. A lo largo de Europa se tomaron medidas similares impactando fuertemente el uso del avión como medio de transporte. En Estados Unidos se prohibió el ingreso de vuelos desde China y Brasil y algunos países de Europa. La tendencia es clara, la necesidad de contener el brote de Covid-19 repercutió directamente en las aerolíneas. Estas medidas han dificultado el tráfico aéreo a nivel mundial, situación que ha provocado la cancelación de vuelos, reprogramación y perdida de estos y en general el desplome completo de la industria del turismo.

En nuestro país la demandada ha optado por seguir la siguiente política debido a la declaración de pandemia disponible en la siguiente dirección de la empresa





https://www.latam.com/es_cl/experiencia/coronavirus/. Las opciones que se les entrega a los consumidores son las siguientes:

1) Para pasajes comprados desde el 20 de mayo hasta el 31 de julio de 2020, podrá el usuario cambiar la fecha de vuelo una única vez sin penalidad ni diferencia tarifaria. Esto está sujeto a la disponibilidad de la cabina y la vigencia del ticket, que corresponde a un año desde la fecha de inicio del viaje. Si desea cambiar el destino, puede hacerlo pagando la diferencia de tarifa. Si el pasaje fue adquirido antes del 20 de mayo, sí aplicará la diferencia de tarifa.

2) Si el Vuelo fue cancelado o reprogramado al usuario se le entrega la posibilidad de "cambiar la fecha de tu vuelo sin costo ni diferencia de tarifa. Esto está sujeto a la disponibilidad de la cabina y la vigencia del ticket, que corresponde a un año desde la fecha de inicio del viaje". Lo anterior aplica solo para vuelos cancelados/reprogramados desde el 14 de marzo al 31 de agosto 2020.

3) La tercera opción que se entrega es cancelar el viaje y mantener el ticket abierto y se desglosa de la siguiente manera: "Si tienes un pasaje para viajar hasta el 30 de junio de 2020, podrás cancelar tu itinerario hasta 7 días antes del vuelo y dejar tu pasaje abierto para más adelante (sin penalidades ni diferencia de tarifa). Esto está sujeto a la disponibilidad de la cabina y vigencia del ticket, que corresponde a un año desde la fecha de inicio del viaje. Ingresa a Mis Viajes para activar esta opción. Si no eliges esta alternativa y no te presentas el día tu vuelo, se aplicarán las condiciones iniciales de la tarifa que compraste."

Finalmente bajo la opción de "¿Aún tienes dudas? Revisa todas las opciones de flexibilidad" se puede acceder al siguiente link https://www.latam.com/es_cl/experiencia/coronavirus/flexibilidad-covid-19/ donde





se desglosan las siguientes opciones para el usuario si la fecha original de vuelo era entre el 14 de marzo y el 31 de agosto:

a) La mantención del ticket como "abierto" para que pueda ser reprogramado hasta 12 meses desde la fecha de inicio del viaje original.

b) La posibilidad de hacer un cambio de fecha sin multa ni diferencia tarifaria. Sujeto a la vigencia del ticket, que corresponde a un año desde la fecha de inicio del viaje.

d) Por último el usuario podrá hacer un cambio de origen/destino, sin multa, pero sujeto a diferencia tarifaria y vigencia del ticket.

d) Para cambios voluntarios (o sea ni cancelación ni reprogramación) por un ticket adquirido entre el 20 de mayo y el 31 de julio de 2020 se da la opción de cambio de fecha sin penalidad ni diferencia tarifaria. Esto está sujeto a la disponibilidad de la cabina y la vigencia del ticket, que corresponde a un año desde la fecha de inicio del viaje.

Siguiendo con las opciones que entrega la empresa encontramos un nuevo link https://helpdesk.latam.com/hc/es/sections/360007989593 que nos entrega las siguientes opciones:

1) Si el vuelo fue cancelado, puede ser reprogramado: Para viajes que se realicen entre el 14 de marzo y el 31 de agosto de 2020 que se vean afectados por cancelaciones, restricciones de cierre de fronteras, o estados de emergencia debido al brote de COVID-19, puedes reprogramar online la fecha sin costo para volar ida y vuelta hasta un año desde la fecha de inicio de tu viaje original.

2) La segunda opción da la opción de posponerlo incluso si el vuelo no fue alterado, sin multa ni diferencia tarifaria, si se cumplen los siguientes requisitos:





2.1 ) El pasaje fue comprado entre el 20 de mayo y el 31 de julio de 2020.

2.2 ) El cambio debe mantener el mismo origen, destino y cabina del vuelo original.

2.3 ) Solo puede realizarse una vez

2.4 ) Si el pasaje fue comprado fuera de ese rango de fechas, para realizar el cambio el usuario debe pagar la diferencia entre el pasaje nuevo y el original.


*Todo el cambio anterior debe ser realizado antes de la fecha de inicio del viaje original.

3) Ese mismo enlace nos lleva a una tercera y final opción donde en caso de que el vuelo haya sido alterado,

( https://helpdesk.latam.com/hc/es/sections/360007989593), se le da al usuario la posibilidad en caso de indecisión de:

3.1) Reprogramar a través de la página web de la empresa la fecha de vuelo sin costo alguno, al mismo destino y en la misma cabina.

3.2) Cambiar el destino de tu viaje sin multa, pagando solo la diferencia de precio si aplica.

3.3) La última opción es "solicitar la devolución" del dinero, que dependerá de las condiciones del ticket, pero se podrá obtener un "Travel Voucher" para ser canjeado por pasajes o compra de equipaje y otras opciones completa y unilateralmente dependientes de la decisión de la empresa que provee este servicio.

Lamentablemente la emergencia de salud en la que nos encontramos ha imposibilitado que los pasajeros puedan presentar reclamos presencialmente debiendo hacer estos a la distancia ya sea por teléfono o internet. Hemos recabado testimonios de usuarios que han tenido que esperar por horas para respuestas insatisfactorias y otros que dan fe que la empresa simplemente no contesta.

14





Las redes sociales se han convertido en un muro viviente de los problemas antes descritos y de la política de devolución de la empresa que explicamos anteriormente, por lo que procederemos a continuación a insertar capturas de pantalla que sirven de testimonio directo, recordando siempre que son de libre acceso para cualquiera que tenga la aplicación, una cuenta y acceso a internet.









**Daniel Reyes**
@danielreyesi

En respuesta a @dorysHarder y @LATAM_CHI

Tengo pasajes a Madrid para el nueve de Junio, compré hace tres meses, recién hoy y luego que es obvio que no podemos viajar, nos dieron 120 dias para la devolución, comprar no cuesta nada , devolver es otra historia

12:53 a. m. · 4 jun. 2020 · Twitter for Android

**1** Me gusta



**elchicoandriu**
@andree_wtf

@LATAM_CHI pedí devolución de dinero no un vouchet 😠

12:15 p. m. · 5 jun. 2020 · Twitter for Android

**LATAM Chile** ✓ @LATAM_CHI · 4h
En respuesta a @andree_wtf
Hola, la devolución a través de Travel Voucher es para las solicitudes realizadas a partir del 25 de marzo de 2020, puedes hacer uso de este por servicios LATAM o transferencia bancaria. Ante cualquier otra inquietud escríbenos. Saludos.

16









**AGRECU**



**Carolina** @Car_luc1279 · 2 jun.
En respuesta a @LATAM_CHI
Hace 2 meses que espero la **devolución** de mi dinero, por un vuelo cancelado, hasta cuándo tendré que esperar? 😠

💬 2          ⟲          ♡ 3          ⬆

**Vianka Isabel** @dorysHarder · 3 jun.
La empresa **@LATAM_CHI** me dio un plazo de 20 días hábiles para la **devolución** de mi dinero por una compra de pasaje. Esos 20 días los vengo esperando desde el 13 de marzo 🤷‍♀️ Creo que tenemos diferentes calendarios

💬 7          ⟲ 5          ♡ 7          ⬆

**Irina quédate en casa** 💚💜 @IrinaPatipela · 1 jun.
@LATAM_CHI solicite **devolución** de pasajes a través de sernac. Accedieron. 40 días dp sigo esperando la **devolución**, según su estado en pág de latam ya fue pagado, pero no he recibido nada en mi cta cte! Pague con débito! Quien se quedó con MI dinero?

💬 1          ⟲          ♡          ⬆

**elchicoandriu** @andree_wtf · 4h
**@LATAM_CHI** pedí **devolución** de dinero no un vouchet 😠

💬 1          ⟲          ♡          ⬆

**Macaoteiza** @Macaoteiza · 3 jun.
En respuesta a @LATAM_CHI
La misma respuesta que dan siempre, hace 8 meses estoy esperando! **@LATAM_CHI** dejen las excusas y háganse cargo. @SERNAC Ayuda!!

💬 1          ⟲          ♡          ⬆

**juan carlos reatiga** @juan_reatiga · 3 jun.
Deberíamos ponernos todos de acuerdo y hacer una demanda colectiva. Que nos paguen intereses también. Yo estoy esperando la **devolución** de mi pasaje.

💬 1          ⟲          ♡ 1          ⬆





**Irina quédate en casa** 💚💜 @IrinaPatipela · 1 jun.
@LATAM_CHI solicite **devolución** de pasajes a través de sernac. Accedieron.
40 días dp sigo esperando la **devolución**, según su estado en pág de latam
ya fue pagado, pero no he recibido nada en mi cta cte! Pague con débito!
Quien se quedó con MI dinero?

💬 1            ⟲            ♡            ⬆

**Victoria Holmes** @vicoholmes_ · 1 jun.
Yo igual, dos reclamos en sernac y sigo esperando **devolución** hace meses,
no hacen nada más que estafar

💬 1            ⟲ 1          ♡ 1          ⬆

**Bárbara** @withlovebarbs · 37min
@LATAM_CHI llevo esperando una **devolución** de 800USD desde el 27 de
marzo por cancelación de vuelos, me comunico por call center y sólo crean
más casos que aplazan el trámite. Carerajismo en su máxima expresión!
Devuélvame la plata que no es un monto menor.

💬 1            ⟲            ♡            ⬆

**Macaoteiza** @Macaoteiza · 3 jun.
En respuesta a @LATAM_CHI
La misma respuesta que dan siempre, hace 8 meses estoy esperando!
@LATAM_CHI dejen las excusas y háganse cargo. @SERNAC Ayuda!!

💬 1            ⟲            ♡            ⬆

**juan carlos reatiga** @juan_reatiga · 3 jun.
Deberíamos ponernos todos de acuerdo y hacer una demanda colectiva. Que
nos paguen intereses también. Yo estoy esperando la **devolución** de mi







**Marisol girasol tornasol** @MariaSunshinne · 3 jun.
**@LATAM_CHI** no fuera para vender vuelos porque ahí si envían email y
opciones. Creo que lo ideal será pedirles **devolución** y comprar con
@Aeromexico

**nelson carcamo** @nelsoncarcamob · 2 jun.
**@LATAM_CHI** , señores que esta pasando con la **devolución** de MI
DINERO... hice todo lo que pidieron, dijieron que serian 15 días, van 35 días...
y no han abonado nada::: NO ME QUIEREN DEVOLVER MI DINERO?????
♡ 1     ↻ 1     ♡ 2

**Sra. Sarcasmo** @SraSarcasmo7 · 4 jun.
**@LATAM_CHI**  son un cacho solicite una **devolución** hace rato y ahora es
menos dinero malditos sinverguenzas
♡ 1

**nicolas jesus** @nicolas25429254 · 1 jun.
**@LATAM_CHI** un mes pidiendo **devolución** de unos travel boucher, hasta
cuando! Sinvergüenzas reculiaos. Devuelvan la plata.
♡ 1

**Toloiso** @cristotobal_vp · 1 jun.
**@LATAM_CHI** hace mas de 1 mes que solicite la **devolución** de unos TV y
aún no pasa nada!!!
♡ 1





**AGRECU**









**Bernardita**
@bmpbernardita

@LATAM_CHI esa respuesta la vengo escuchando desde que se cumplieron los 15 días.... me parece una tremenda burla.

**LATAM Chile** @LATAM_CHI · 1 jun.
En respuesta a @bmpbernardita
Hola, verificando el estado de tus Travel Voucher, nos figura que se encuentra en proceso. Debido a la alta demanda de solicitudes, los procesos están tardando más del tiempo estimado, por ende una vez tengamos detalles te notificaremos. Quedamos atentos a futuras consultas.

3:41 p. m. · 1 jun. 2020 · Twitter Web App

**LATAM Chile** @LATAM_CHI · 1 jun.
En respuesta a @bmpbernardita
Hola, entendemos lo que nos indicas, por este motivo te podemos asegurar que tu devolución se realizara correctamente a la cuenta que nos brindaste, por esto te pedimos estar atenta a tus medios de comunicación. Saludos.







**juan carlos herrera**
@juan_espanogb

3 meses esperando devolucion de paquete turistico comprado en @LATAM_CHI y a la fecha no me han devuelto ni un solo $1. Con esta pandemia todos necesitamos nuestro dinero, Urgente ayuda @SERNAC por incumplimiento de devolucion de parte de @LATAM_CHI

4:37 p. m. · 30 may. 2020 · Twitter for Android

**LATAM Chile** ✔ @LATAM_CHI · 30 may.
En respuesta a @juan_espanogb
Hola Juan, aún nos encontramos trabajando en tu caso, hemos tardado más de lo habitual debido a la alta demanda por la contingencia, apenas tengamos más detalles te notificaremos de inmediato. Quedamos atentos.

**juan carlos herrera** @juan_espanogb · 30 may.
Mas de lo habitual encuentra 3 meses, la devolucion debiera estar lista en 2 semanas pero ustedes se estan aprovechando de la situacion, el dinero del cliente les da lo mismo. URGENTE AYUDA @SERNAC





**AGRECU**



# ¡Precio Relámpago!



**Tarifa Light**

Directo

**Santiago**

*Madrid*

PRECIO FINAL
IDA Y VUELTA + TASAS INCLUIDAS

**200 CUPOS**

🛄 Escápate solo con equipaje de mano

Desde
**US$433**

o $352.029

**Descubre más**

**Ver promoción**

Precios válidos solo para salidas desde Santiago. Vuelos operados por LATAM. Al comprar en Oficinas LATAM Travel y a través del Contact Center LATAM debes pagar un cargo por servicio. Tarifas en promoción no permite cambio ni devoluciones. Consulte por los cobros que aplican en su Agencia de Viajes. Ver condiciones de fechas y vuelos y otros términos en **www.latam.com**. Oficinas LATAM Travel y Agencias de Viaje. Compra desde las 16:00 hrs hasta las 23:59 hrs del  Martes 02 de Juniode 2020. Fechas y restricciones de vuelo varían según ruta, para conocer detalle revisar en landing promocional vigente en **www.latam.com**.







Planifica tu viaje a **Madrid con LATAM** y vuela desde el segundo semestre, con la opción de <u>cambiar tu pasaje</u> sin multa.

**Aprovecha y compra en latam.com entre 3 a 12 cuotas sin interés con tarjetas Santander (CAE de 0%).** CAE calculado en base a una compra de $1.000.000 en 12 cuotas mensuales. Monto total a pagar de $1.000.000.













**Santiago de Chile**
**Madrid**
Directo
200 cupos en Economy

Precio final desde
US$ **433**
$ **346.160**

Precio final Ida y vuelta
Viaja en
JUL  AGO

**55%** Descuento    ¡Precio Rélampago!

¡Ahorra hasta $460.230!

Condiciones    Comprar

---

**Santiago de Chile**
**Madrid**
Directo
400 cupos en Economy

Precio final desde
US$ **533**
$ **426.160**

Precio final Ida y vuelta
Viaja en
SEP  OCT  NOV  DIC

**45%** Descuento    ¡Precio Rélampago!

¡Ahorra hasta $379.320!

Condiciones    Comprar

---

**Santiago de Chile**
**Madrid**
Directo
50 cupos en Business

Precio final desde
US$ **1.883**
$ **1.506.160**

Precio final Ida y vuelta
Viaja en
JUL  AGO

**49%** Descuento    ¡Precio Rélampago!

¡Ahorra hasta $1.572.960!

Condiciones    Comprar

---

**Santiago de Chile**
**Madrid**
Directo
100 cupos en Business

Precio final desde
US$ **2.133**
$ **1.706.160**

Precio final Ida y vuelta
Viaja en
SEP  OCT  NOV  DIC

**43%** Descuento    ¡Precio Rélampago!

¡Ahorra hasta $1.398.960!

---

**8 Días / 7 Noches**
**Madrid**
Directo
10 cupos en Economy

Precio final desde
US$ **645**
$ **522.450**

Precio final
Por Persona en **Plan Doble**
Pasajes + 7 noches en hotel 4* +
desayunos
Viaja en
JUL  AGO

**49%** Descuento    ¡Precio Rélampago!

¡Ahorra hasta $507.005!

---

**8 Días / 7 Noches**
**Madrid**
Directo
10 cupos en Economy

Precio final desde
US$ **795**
$ **643.950**

Precio final
Por Persona en **Plan Doble**
Pasajes + 7 noches en hotel 4* +
desayunos
Viaja en
OCT  NOV  DIC

**38%** Descuento    ¡Precio Rélampago!

¡Ahorra hasta $390.410!





Como se puede observar en los mensajes, la empresa ha hecho un esfuerzo al intentar contactar a cada usuario, pero lo que ofrece es concordante con su política de devolución por COVID, o sea, que de forma unilateral decidió por los consumidores nacionales los términos y la forma en que respondería a sus reclamos ignorando por completo los derechos que tienen cada uno de ellos.

Se hace evidente entonces que el esfuerzo de la empresa proveedora de este servicio ha sido puesto en no restituir el valor de los pasajes a los usuarios que no accedieron a la prestación, al ofrecer en algunos casos una devolución de un porcentaje de lo pagado, en plazos totalmente unilaterales, en otros casos incluso teniendo el consumidor que costear la diferencia que se produce por el cambio que a él más le conviene y por último un VOUCHER que equivaldría a alguna prestación que ofrece la misma empresa.

En esta misma línea se adjunta en un otrosí de esta presentación un correo publicitario enviado al abogado patrocinante de esta causa don Andrés Parra ofreciendo un servicio que hoy se encuentra parcialmente funcionando por una empresa que en una jurisdicción diferente se declara en un proceso de reorganización por quiebra.

**LATAM** hace una oferta de la cual no existe certeza de cumplir, y lo justifica ofreciendo reprogramación de vuelo sin recargo. Lo que constituye publicidad engañosa puesto que el derecho a cambiar las fechas es del consumidor y no depende del hecho que no pueda cumplir, no incluyendo la devolución del dinero por su incumplimiento, sino sólo modificaciones de fecha y en consecuencia, la fecha del vuelo termina siendo la que LATAM decida y no cuando el consumidor desee viajar.

En virtud de este incumplimiento adeuda a los consumidores afectados la suma en su equivalente en moneda nacional de US 200.000.000 de dólares o a suma que en el proceso se determine.





A su vez la última modificación a la Ley Nº19.496 introducida por la Ley Nº21.081 introduce el concepto del "daño moral" en las demandas colectivas, como señala el artículo 51 inc. 2° LPC al señalar "*La indemnización que se determine en este procedimiento podrá extenderse al daño moral siempre que se haya afectado la integridad física o síquica o la "dignidad de los consumidores*". En efecto, en el caso de autos se ha afectado la dignidad de los consumidores quienes han sido defraudados en sus expectativas y han visto frustrada su necesidad de viajar y de recuperar su dinero en forma íntegra y oportuna, lo que ha significado un perjuicio reparable y traducido en una indemnización, que estimamos en $500.000.- pesos por cada usuario afectado sin perjuicio de la cifra que S.S. en conformidad a la facultad que le da la Ley determine un monto distinto.

**POR TANTO**, en mérito de los antecedentes de hecho y consideraciones de derecho expuestos, de lo dispuesto en las disposiciones legales invocadas, de la Ley N' 19.496 y demás disposiciones legales aplicables, a S.S. solicitamos, se sirva tener por interpuesta demanda colectiva para protección del interés colectivo de los consumidores en contra de **_LATAM Airlines Group S.A._**[2] (en adelante, "LATAM"), sociedad del giro comercial, RUT 89.862.200-2, representada legalmente por don **Enrique Cueto Plaza**, ambos domiciliados para estos efectos en Av. Américo Vespucio 901, Renca, Santiago de Chile, ambos ya individualizados, o bien representada en conformidad a lo dispuesto en el inciso tercero del artículo 50 C en relación al artículo 50 D, ambos de la Ley N° 19.496, sobre Protección de los Derechos de los Consumidores, admitirla a tramitación y, en definitiva:

a) Declarar admisible la demanda colectiva, por cumplir con los requisitos establecidos en el artículo 52 de la Ley N° 19.496 y, en consecuencia, conferirle traslado

---

[2] https://www.latam.com/es_cl/conocenos/latam-airlines-group/





a la demandada por el plazo de diez días fatales para contestar la demanda, conforme a lo dispuesto en el inciso segundo del citado artículo.

b) Declarar abusiva la cláusula de oferta de compras que lleva a engaño en la oportunidad de vuelo y forma de devolución al  no contienen cláusula explícita que permita retractarse y devolución del pasaje en forma íntegra y oportuna si no se ha podido prestar el servicio en la forma y tiempo contratada

y, además de lo anterior,

1) Declarar la procedencia y monto de las  indemnizaciones o reparaciones, materiales y morales solicitadas en la presente demanda, a favor de los consumidores que fueron afectados por las conductas de las demandadas, pertenecientes tanto al interés colectivo y difuso, todo lo anterior, conforme artículo a  los artículos 51 y siguientes, 53 A y 53 C letra c), todos de la LPC;

2) Ordenar las publicaciones indicadas en la letra e) del artículo 53 C de la Ley Nº19.496.

3) Condenar en costas a la demandada

**_PRIMER OTROSI_**: Sírvase S.S.  tener por acompañados los siguientes documentos, con citación:

1.- ACUERDO Nº2 de la SESION EXTRAORDINARIA DE DIRECTORIO Nº02 de la "ASOCIACION DE CONSUMIDORES Y USUARIOS DE CHILE AGRECU", de fecha 3 de junio de 2020, en la cual consta la autorización,  de conformidad a lo dispuesto en el artículo 51, Nº1, letra c), de la Ley 19.496,  para la interposicion de la demanda colectiva a favor de los consumidores, por verse afectado el interés colectivo o difuso, por parte de la "**ASOCIACION DE CONSUMIDORES Y USUARIOS DE CHILE AGRECU",**  para requerir y obtener la indemnización a que haya lugar, en contra de  **_LATAM Airlines Group S.A.._**





2.- Certificado Nº558062, de fecha 11 de junio de 2020, emitido por la  Unidad de Asociaciones Gremiales y de Consumidores del Ministerio de Economía, Fomento y Turismo, donde consta la vigencia de la personalidad jurídica Nº61 AC  de la ASOCIACION DE CONSUMIDORES Y USUARIOS DE CHILE-AGRECU – AGRECU – AGRECU CHILE  y de su directorio.

***SEGUNDO OTROSÍ***: Solicitamos a ese TDLC se sirva oficiar a **SERNAC** a fin que informe si existe otra demanda de la misma naturaleza para el evento que proceda acumulación en conformidad a lo dispuesto en la LPC

**TERCER OTROSÍ**: Sírvase S.S. tener presente que en mi calidad de abogado habilitado patrocinaré y actuaré personalmente esta demanda, sin perjuicio de ello confiero poder al abogado habilitado don **JORGE LUIS VALLADARES OPAZO**, RUN° 10.607.555-7, y al habilitado de derecho don **DANIEL PARRA AGUILAR**, licenciado en ciencias jurídicas, RUN N° 16.940.089-K, a quienes confiero poder para actuar en forma conjunta o indistintamente en estos autos, todos domiciliados para estos efectos en Paseo Bulnes N°79, oficina 125,  Santiago.

Asimismo, para los efectos de eventuales notificaciones señalo las siguientes direcciones de correo electrónico : parra.abogado@hotmail.com y jorge@valladaresyasociados.cl y agrecu@gmail.com.

**CUARTO OTROSÍ**: Sírvase S.S. tener por acompañado certificado de egreso y de licenciatura que acredita la calidad de habilitado de derecho de DANIEL PARRA AGUILAR.

Jorge Luis
Valladares
Opazo

Firmado digitalmente
por Jorge Luis
Valladares Opazo
Fecha: 2020.06.12
12:27:14 -04'00'

