# EXHIBIT 3

**Tribunal**: 25° Juzgado de Letras en lo Civil de Santiago
**Rol**: C-8.903-2020
**Carátula**: "*AGRECU con LATAM Airlines Group S.A.*"
**Cuaderno**: Principal
_____

**En lo principal**, deducen recurso de reposición en contra de la resolución que rechazó dar cumplimiento a la suspensión del procedimiento decretada por el 2° Juzgado Civil de Santiago; **en el otrosí**, en subsidio, apelan.

### S.J.L. CIVIL (25°) DE SANTIAGO

Cristóbal Eyzaguirre Baeza y José Miguel Huerta Molina, abogados, en calidad de mandatarios judiciales de **LATAM Airlines Group S.A.**, en autos caratulados "*AGRECU con LATAM Airlines Group S.A.*", rol C-8.903-2020, a S.S. respetuosamente decimos:

Interponemos recurso de reposición en contra de la resolución de 17 de julio de 2020 (folio N° 9), que rechazó dar cumplimiento a la suspensión decretada por el 2° Juzgado Civil de Santiago (causa rol C-8.553-2020) en reconocimiento de un procedimiento de reorganización extranjero principal, solicitada por esta parte por escrito de 11 de julio de 2020 (folio N° 8) al amparo de lo dispuesto en los artículos 311, 319 y 323 de la Ley 20.720.

La resolución recurrida estimó que no procedería dar cumplimiento en autos a la resolución del 2° Juzgado Civil de Santiago, atendido que el artículo 319 hace referencia a las "*acciones o procedimientos individuales*", por lo que el tenor literal de la norma excluiría su aplicación a las acciones de interés colectivo y de interés difuso de la Ley 19.496 ("LPC"). Sin embargo, para interpretar el alcance de esta norma es necesario tener presente que **la Ley 20.720 no define qué entiende por "***acciones o procedimientos individuales***"**. Ante la obscuridad del texto legal, las normas de interpretación del Código Civil disponen que "*se puede, para interpretar una expresión obscura de la ley, recurrir a su intención o espíritu, claramente manifestados en ella misma, o en <u>la historia fidedigna de su establecimiento</u>*" (art. 19 inc. 2°). Pues bien, la historia fidedigna del establecimiento de la Ley 20.720 no deja lugar a dudas en cuanto a que la expresión "*acciones o procedimientos individuales*" hace referencia a nociones propias del derecho concursal, sin que dicha expresión se relacione en modo alguno con las acciones de interés individual, colectivo y difuso del artículo 50 de la LPC. Para determinar el **origen de las normas sobre insolvencia transfronteriza** en nuestra Ley 20.720, basta consultar el Mensaje Presidencial, el cual señaló en la materia:

> "De la Insolvencia Transfronteriza. <u>Se incorpora la Ley Modelo de Insolvencia Transfronteriza de la Comisión de las Naciones Unidas para el Derecho Mercantil Internacional (Uncitral por sus siglas en inglés)</u> la que tiene por objeto establecer

mecanismos eficaces para la resolución de los casos de insolvencia transnacionales, en base a la cooperación entre los Estados, en busca de resolver bajo un procedimiento la insolvencia de las empresas multinacionales, entregando mayor seguridad juridica para el comercio y las inversiones"[1].

Existe así una absoluta dependencia de la regulación de nuestra Ley 20.720 en materia de insolvencia transfronteriza respecto de la Ley Modelo de la Convención de las Naciones Unidas para el Derecho Mercantil Internacional sobre la Insolvencia Transfronteriza (la "Ley Modelo"), a tal punto que nuestro artículo 319 es una copia casi textual del artículo 20 de la Ley Modelo[2], como se aprecia al comparar ambos textos:

| Ley Modelo, Artículo 20. Efectos del reconocimiento de un procedimiento extranjero principal. | Ley N° 20.720, artículo 319: Efectos del reconocimiento de un procedimiento extranjero principal. |
|---|---|
| 1. A partir del reconocimiento de un procedimiento extranjero que sea un procedimiento principal: | 1) A partir del reconocimiento de un procedimiento extranjero que sea un procedimiento principal, y durante el período en que se tramite el referido procedimiento: |
| a) Se paralizará la iniciación o la continuación de todas las <u>acciones o procedimientos individuales</u> que se tramiten respecto de los bienes, derechos, obligaciones o responsabilidades del deudor. | a) Se suspenderá el inicio o la continuación de todas las <u>acciones o procedimientos individuales</u> que se tramiten respecto de los bienes, derechos, obligaciones o responsabilidades del deudor. |

El legislador nacional buscó deliberadamente apegarse al texto de la Ley Modelo, ya que ello facilita su aplicación a nivel internacional, tal como señaló el asesor legislativo de la Superintendencia de Quiebras: "…*dado su origen internacional, es importante mantener la uniformidad de las denominaciones que se emplean, con el propósito de facilitar su aplicación entre las distintas legislaciones que las han adoptado*"[3]. En otras palabras, **la razón detrás de la adopción de la Ley Modelo fue contar con un texto que pudiera aplicarse de manera uniforme en distintos países, sin que se le diera un significado distinto en cada jurisdicción**. Es por ello que la Ley 20.720 en su Capítulo VII ("*De la insolvencia transfronteriza*") contiene la siguiente norma sobre interpretación:

Artículo 307.- **Interpretación**. En la interpretación del presente Capítulo **habrá de tenerse en cuenta su origen internacional y la necesidad de promover la uniformidad de su aplicación** y la observancia de la buena fe.

---

[1] BIBLIOTECA DEL CONGRESO NACIONAL, Historia de la Ley N° 20.720, p. 13 (Mensaje Presidencial).
[2] "El texto completo se encuentra disponible en castellano en http://www.uncitral.org/pdf/spanish/texts/insolven/1997-Model-Law-Insol-2013-Guide-Enactment-s.pdf
[3] BIBLIOTECA DEL CONGRESO NACIONAL, Historia de la Ley N° 20.720, p. 902 (Segundo informe comisiones unidas).

En este contexto, el estudio de los antecedentes que rodean a la Ley Modelo es decisivo para determinar el alcance de la expresión "*acciones o procedimientos individuales*" del artículo 319 de la Ley 20.720. Especialmente útil a este respecto es el documento "*Ley Modelo de la CNUDMI sobre la Insolvencia Transfronteriza: la Perspectiva Judicial*"[4], elaborado por el propio organismo que creó la Ley Modelo para orientar a los jueces en las distintas jurisdicciones donde se aplique dicha ley, y en la que se evidencia que la contraposición entre procedimientos "individuales" y "colectivos" atiende únicamente al hecho de si se busca o no una solución coordinada y global a dicha insolvencia para todos los acreedores interesados, como se consigna en los siguientes párrafos:

> "La Ley Modelo de la CNUDMI se elaboró de forma que solo fuera aplicable en determinados tipos de procedimientos de insolvencia. La Guía para la incorporación al derecho interno y la interpretación de la Ley Modelo indica que la idea de un procedimiento de insolvencia 'colectivo' se basa en la conveniencia de llegar a una solución coordinada y global para todas las partes interesadas en un procedimiento de insolvencia..."[5]

> "Al evaluar si un determinado procedimiento es colectivo a efectos de la Ley Modelo, una de las consideraciones fundamentales es determinar si en el procedimiento se tienen en cuenta prácticamente todos los bienes y las deudas del deudor, sin perjuicio de las prioridades y excepciones legislativas del país ni de la exclusión de determinados derechos de los acreedores garantizados en su ordenamiento jurídico"[6].

> "…cabe señalar que en el artículo 24 se utiliza el término 'intervenir' para referirse al supuesto de que el representante extranjero tome parte en alguna acción individual entablada ya sea por el deudor o contra el (en contraposición al supuesto del procedimiento colectivo de insolvencia)"[7].

A partir de estos textos, **resulta innegable que los términos "individual" y "colectivo" en la Ley 20.720 no guardan relación alguna con la distinción entre acciones de interés individual, de interés colectivo y de interés difuso descritas en la Ley 19.496, sino con distinciones propias de la legislación concursal**.

De lo dicho se desprende que, siguiendo el criterio de interpretación del artículo 19 inc. 2° del Código Civil, la historia fidedigna de la Ley 20.720 da cuenta que los términos "individual" y "colectivo" del art. 319 hacen referencia únicamente a tipos de procedimientos concursales, y no a las clasificaciones de la LPC. Esta forma de interpretación es tanto más decisiva si se considera que el artículo 307 de la Ley 20.720 establece la necesidad de

---

[4] El texto completo se encuentra disponible en castellano en http://www.uncitral.org/pdf/spanish/texts/insolven/Judicial-Perspective-2013-s.pdf

[5] Ley Modelo de la CNUDMI sobre la Insolvencia Transfronteriza: la Perspectiva Judicial, página 28, párrafo 71.

[6] Ley Modelo de la CNUDMI sobre la Insolvencia Transfronteriza: la Perspectiva Judicial, página 29, párrafo 72.

[7] Ley Modelo de la CNUDMI sobre la Insolvencia Transfronteriza: la Perspectiva Judicial, página 13, nota 41.

interpretar las normas sobre insolvencia transfronteriza teniendo en cuenta su origen internacional y la necesidad de promover la uniformidad de su aplicación. **La misma conclusión se alcanza en base al artículo 22 del Código Civil**, el cual dispone que:

> El contexto de la ley servirá para ilustrar el sentido de cada una de sus partes, de manera que haya entre todas ellas la debida correspondencia y armonía.
>
> Los pasajes obscuros de una ley pueden ser ilustrados por medio de otras leyes, particularmente si versan sobre el mismo asunto.

Siguiendo el **inciso 1°** de esta norma, cabe observar que la Ley 20.720 habla de "procedimientos colectivos" en otros pasajes, específicamente en su artículo 301, que señala: "*Definiciones. Para los fines de este Capítulo, se entenderá: a) Por 'procedimiento extranjero', el procedimiento colectivo, ya sea judicial o administrativo, incluido el de índole provisional…*". Como se puede apreciar, **la misma Ley 20.720 utiliza la expresión "procedimiento colectivo" para describir un tipo de procedimiento concursal, no un tipo de juicio de protección al consumidor**, lo que confirma la interpretación sostenida por esta parte[8]. Entender que este artículo hace referencia a las acciones de interés colectivo del art. 50 de la LPC trastocaría totalmente la definición de "procedimiento extranjero" para efectos de la quiebra transfronteriza.

El mismo artículo 22 del Código Civil muestra en su **inciso 2°** que no es posible recurrir a la LPC para interpretar los términos "procedimiento individual" y "procedimiento colectivo", ya que establece que es posible ilustrar los pasajes oscuros de una ley recurriendo a otras leyes "*particularmente si versan sobre el mismo asunto*", lo que no ocurre en el presente caso, donde se estaría interpretando el alcance de una expresión de la Ley de 20.720, sobre reorganización y liquidación, en base a las normas de protección del consumidor, es decir, en base a una ley que versa sobre un asunto completamente diverso.

Finalmente, considerando el elemento de interpretación relativo a la **intención del legislador (artículo 19 inc. 2° del Código Civil)** no se aprecia ninguna razón por la que la Ley 20.720 habría querido que no se suspendieran específicamente las acciones de interés colectivo y difuso de la LPC. Por el contrario, **la intención del legislador es administrar de forma equitativa y eficiente los intereses de todos los acreedores y facilitar la reorganización de la empresa en dificultades financieras**, como lo señala la misma Ley 20.720 en materia de insolvencia transfronteriza:

---

[8] Similarmente, el artículo 1 N° 11 de la Ley 20.345 (reformado por la Ley 20.720) señala: "*Procedimiento Concursal: procedimiento judicial o administrativo incoado en virtud de una resolución de liquidación o la presentación de proposiciones de acuerdo de reorganización y, en general, cualquier procedimiento ejecutivo patrimonial de carácter universal y **colectivo** que regule la administración y/o liquidación de los bienes de un deudor insolvente, así como el pago a los acreedores, conforme a la prelación legal*".

Artículo 299.- Finalidad. La finalidad del presente Capítulo es establecer <u>mecanismos eficaces para la resolución de los casos de insolvencia transfronteriza con miras a promover el logro de los objetivos siguientes:</u>
a) La cooperación entre los tribunales y demás organismos involucrados en los Procedimientos Concursales de Chile y de los Estados extranjeros que hayan de intervenir en casos de insolvencia transfronteriza;
b) Una mayor seguridad jurídica para el comercio y las inversiones;
c) <u>Una administración equitativa y eficiente de las insolvencias transfronterizas que proteja los intereses de todos los acreedores</u>, nacionales o extranjeros, y de las demás partes interesadas, incluido el Deudor;
d) La protección de los bienes del Deudor y la optimización de su valor, y
e) <u>Facilitar la reorganización de empresas en dificultades financieras</u>, a fin de proteger el capital invertido y de preservar el empleo.

En este contexto, no se aprecia por qué el legislador habría buscado que las acciones de interés colectivo y difuso de la LPC no siguieran el régimen general en materia de suspensión, poniendo en peligro los objetivos perseguidos por las reglas sobre insolvencia transfronteriza. Por el contrario, **el tenor literal de la Ley 20.720 dispone la suspensión de todos los juicios que afecten bienes del deudor**, tal como señala la doctrina nacional:

"Entre los efectos que provoca el reconocimiento si este es principal, son análogos a los efectos de una resolución de liquidación en el sentido de que <u>se suspenden las ejecuciones individuales y en general todos los juicios que afecten bienes del deudor</u> salvo que sea necesarios ´para preservar un crédito contra el deudor', esto es, para que no prescriban o caduquen las acciones en su contra (art. 319 N° 3) de la ley) o que se trate del inicio de un procedimiento concursal en contra del mismo deudor en Chile o de verificación de créditos en uno ya iniciado."[9]

El citado artículo 319 señala expresamente que se suspenden los procedimientos individuales que "*se tramiten respecto de los bienes, derechos, <u>obligaciones o responsabilidades del deudor</u>*", lo que inequívocamente comprende una acción como la deducida en autos, en la que se persigue la responsabilidad civil de nuestra representada.

**POR TANTO,**

**A S.S. respetuosamente pedimos:** tener por interpuesto recurso de reposición en contra de la resolución de 17 de julio de 2020 (folio N° 9), que rechazó dar cumplimiento a la suspensión decretada por el 2° Juzgado Civil de Santiago debido al reconocimiento en Chile de un procedimiento de reorganización extranjero principal, y en definitiva acogerlo, revocando la resolución recurrida, y en su reemplazo resolver dar cumplimiento a la

---

[9] PUGA, Juan Esteban, *Derecho Concursal. Del Procedimiento Concursal de Liquidación. Ley 20.720*, 4° edición actualizada, Editorial Jurídica de Chile, Santiago, 2014, p. 657.

suspensión de la presente causa, por todo el periodo que dure el procedimiento de reorganización extranjero principal.

**Otrosí:** en subsidio del recurso de reposición deducido en lo principal, y para el evento que este sea rechazado, apelamos para ante la Ilustrísima Corte de Apelaciones de Santiago en contra de la resolución de 17 de julio de 2020 (folio N° 9), que rechazó dar cumplimiento a la suspensión decretada por el 2° Juzgado Civil de Santiago debido al reconocimiento en Chile de un procedimiento de reorganización extranjero principal.

El recurso de apelación interpuesto se funda en el agravio que ocasiona a nuestra representada el que S.S. continúe con la tramitación de una causa que debe suspenderse de conformidad a la Ley 20.720, poniendo así en peligro los objetivos que dicha ley persigue en materia de insolvencia transfronteriza. La resolución recurrida es apelable, de conformidad a lo dispuesto en el art. 188 del Código de Procedimiento Civil, en la medida que altera la sustanciación regular del juicio al no dar cumplimiento a la resolución de suspensión dictada por el 2° Juzgado Civil de Santiago y, en consecuencia, al contravenir el art. 319 de la Ley 20.720. Los fundamentos de hecho y de derecho de la presente apelación y las peticiones formuladas son idénticos a aquellos expuestos al deducir el recurso de reposición, los que damos por expresamente reproducidos en este acto para todos los efectos legales.

Sírvase S.S.: tener por interpuesto recurso de apelación subsidiario en contra de la resolución de 17 de julio de 2020 (folio N° 9), que rechazó dar cumplimiento a la suspensión decretada por el 2° Juzgado Civil de Santiago debido al reconocimiento en Chile de un procedimiento de reorganización extranjero principal, y concederlo para ante la Iltma. Corte de Apelaciones de Santiago, con el objeto de que esa Iltma. Corte, conociéndolo, lo acoja en todas sus partes, enmiende la resolución recurrida y en su reemplazo dé cumplimiento a la suspensión de la presente causa, por todo el periodo que dure el procedimiento de reorganización extranjero principal.

**CRISTOBAL EYZAGUIRRE BAEZA**
Firmado digitalmente por CRISTOBAL EYZAGUIRRE BAEZA
Nombre de reconocimiento (DN): c=CL, st=REGIÓN METROPOLITANA DE SANTIAGO, l=Santiago, o=CLARO Y CIA, ou=SERVICIOS JURIDICOS, cn=CRISTOBAL EYZAGUIRRE BAEZA, email=cristobal.eyzaguirre@claro.cl
Fecha: 2020.07.22 19:38:38 -04'00'

**JOSE MIGUEL HUERTA MOLINA**
Firmado digitalmente por JOSE MIGUEL HUERTA MOLINA
Nombre de reconocimiento (DN): c=CL, st=REGIÓN METROPOLITANA DE SANTIAGO, l=Santiago, o=CLARO Y CIA, ou=SERVICIOS JURIDICOS, cn=JOSE MIGUEL HUERTA MOLINA, email=jmhuerta@claro.cl
Fecha: 2020.07.22 19:11:11 -04'00'