# EXHIBIT 4

FOJA: 41 .-    cuarenta y
uno .-

NOMENCLATURA    : 1. [455]Audiencia de conciliación
JUZGADO    : 25 º Juzgado Civil de Santiago
CAUSA ROL    : C-8903-2020
CARATULADO    : AGRECU/LATAM AIRLINES GROUP S.A.

Santiago,   uno de Octubre de dos mil veinte

## AUDIENCIA DE CONCILIACIÓN

A la hora señalada por el Tribunal, se lleva a efecto el comparendo de conciliación decretado en autos, con la asistencia de: (i) don **Andrés Parra Vergara**, cédula nacional de identidad N° 7.450.020-K, en su calidad de presidente, representante legal y mandatario judicial de la demandante, **Asociación de Consumidores y Usuarios de Chile (Agrecu)**, rol único tributario N° 65.191.381-0, ambos domiciliados para estos efectos en Paseo Bulnes N° 79, oficina 125, comuna de Santiago; y (ii) don **José Miguel Huerta Molina**, cédula nacional de identidad N° 13.038.771-3; don **Javier Rodríguez Diez**, cédula nacional de identidad N° 16.360.293-8 y don **Álvaro Vives Martens**, cédula nacional de identidad N° 16.563.651-1, en su calidad de mandatarios judiciales de la demandada **Latam Airlines Group S.A.**, rol único tributario N° 89.862.200-2, todos domiciliados para estos efectos en Avenida Apoquindo N° 3.721, piso 14, comuna de Las Condes. Las Partes, acogiendo el llamado del Tribunal, han acordado conciliar el Juicio Colectivo, en los siguientes términos:

I.    **DEFINICIONES**

Las definiciones que a continuación se indican son utilizadas a lo largo de esta Conciliación. El uso de mayúsculas al inicio de una palabra, o de varias palabras de una expresión, es indicativo de que se trata de un término definido en esta Sección I. Las definiciones de esta Sección podrán ser indistintamente utilizadas en su género femenino o masculino, así como en número singular o plural, según corresponda, a lo largo de la Conciliación.

a.    **Agrecu o Demandante**: Asociación de Consumidores y Usuarios de Chile – Agrecu.

b.    **Beneficiario:** aquella persona natural o jurídica que reúna los siguientes requisitos copulativos:



i.    Haya comprado o compre un Pasaje para un Vuelo Elegible directamente a Latam, por medio de alguno de sus canales de venta presenciales o virtuales. En consecuencia, no es Beneficiario para efectos de esta Conciliación quien haya comprado un Pasaje a una agencia de viajes o portal web de venta de pasajes aéreos distinto a Latam. Se entiende que el comprador del Pasaje es el Beneficiario con prescindencia de la persona natural que aparece como pasajero en dicho documento.

ii.    Haya comprado un Pasaje para un Vuelo Elegible en canales presenciales ubicados en territorio chileno o a través del sitio web de Latam para Chile (https://www.latamairlines.com/cl/es o www.latam.com/es_cl).

iii.    No embarcó o no embarque el respectivo Vuelo Elegible a consecuencia de la reprogramación o cancelación del mismo por parte de Latam. No es Beneficiario quien, por cualquier causa: (a) canceló o cancele su reserva respecto de un vuelo que hasta ese momento no había sido reprogramado o cancelado por Latam, o (b) no embarcó o no embarque en un vuelo que fue efectuado o sea efectuado de acuerdo con su programación original. En tal caso, los eventuales derechos ante la cancelación de reserva o no embarque se encontrarán regulados por el respectivo Pasaje, sin que se vean alterados de modo alguno por esta Conciliación. Tampoco es Beneficiario quien sí embarcó un Vuelo Elegible no obstante su reprogramación por Latam.

iv.    No haya optado, antes de la Fecha de Implementación, por la reprogramación de su Vuelo Elegible o la emisión de un *Travel Voucher*, ya sea para efectos de canjearlo por Pasajes o servicios adicionales, o para solicitar un reembolso en dinero.

v.    Para efectos de esta Conciliación no será necesario que el Beneficiario pueda ser calificado como consumidor de acuerdo con lo dispuesto en la LPDC.

b.    **Billete, Pasaje o *Ticket***: conjunto de documentos que dan cuenta y hacen fe de la celebración y de las condiciones del contrato de transporte aéreo y control de equipaje, comprendiendo todos o algunos de los siguientes documentos: (i) las Condiciones del Contrato de Transporte Aéreo de Latam, disponibles en https://www.latamairlines.com/cl/es/ ; (ii) el documento "Información de su Compra" entregado por Latam; (iii) el billete electrónico registrado magnéticamente; (iv) las condiciones específicas aplicables a la tarifa pagada por el pasajero; (v) la tarjeta de embarque o *boarding pass*; y (vi) las comunicaciones y tarifas de contratación que se encuentren registradas ante las autoridades aeronáuticas en los países que lo requieran.

c.    **Conciliación**: este documento.



d. **Demanda Colectiva Pendiente:** la demanda interpuesta por Agrecu en contra de Latam, deducida con fecha 12 de junio de 2020, y tramitada ante el Tribunal bajo el rol N° C-8.903-2020.

e. **Demandada o Latam:** Latam Airlines Group S.A.

f. **Derecho Chileno:** cualquier disposición vinculante promulgada y publicada en la República de Chile, cualquiera sea su jerarquía normativa (constitucional, convencional, legal o reglamentaria). Para efectos de esta Conciliación, Derecho Chileno comprende tanto las disposiciones en sí mismas como su interpretación y aplicación por tribunales y órganos administrativos chilenos.

g. **Diferencia Tarifaria:** mayor valor de la tarifa de un nuevo Pasaje equivalente en comparación con el valor de la tarifa del Pasaje original.

h. **Entidades Relacionadas:** todas las personas naturales y jurídicas: (i) calificadas como relacionadas a Latam de conformidad a lo dispuesto en el artículo 100 de la Ley N° 18.045, de Mercado de Valores, (ii) accionistas de Latam o de sus personas relacionadas, y (iii) todos los representantes, administradores, ejecutivos y trabajadores de Latam o de sus personas relacionadas.

i. **Fecha de Implementación:** treinta días después de que el Tribunal certifique que la sentencia que apruebe esta Conciliación se encuentra firme o ejecutoriada.

j. **Informes de Implementación:** los reportes que presentará Latam dando cuenta del cumplimiento de esta Conciliación, regulados en los Párrafos a 4.

k. **Juicio Colectivo:** el proceso colectivo de protección de intereses colectivos y difusos de consumidores iniciado por Agrecu mediante la Demanda Colectiva Pendiente y tramitado ante el Tribunal bajo el Rol N°C-8.903-2020.

l. **LPDC:** la Ley N° 19.496 sobre Protección de los Derechos de los Consumidores, en su texto aplicable al Juicio Colectivo (luego de las modificaciones introducidas por la Ley N° 21.081, publicada en el Diario Oficial de 13 de septiembre de 2018, en lo que respecta a la tramitación de juicios para la protección de intereses colectivos y difusos de los consumidores, con arreglo al artículo 1° transitorio de dicha ley).

m. **Multa por Cambio:** valor monetario definido en la regulación de la tarifa comprada y que aplica al momento de realizar un cambio voluntario del Pasaje.

n. **Partes:** Agrecu y Latam.

o. **Periodo de Afectación por Pandemia Covid-19:** el periodo comprendido entre el 1 de marzo de 2020 y los quince días siguientes a la expiración del estado constitucional de excepción de catástrofe por causa de calamidad pública,



declarado mediante el Decreto Supremo N° 104 de 2020 (publicado en el Diario Oficial de 18 de marzo de 2020), con sus respectivas prórrogas.

p. **Proceso de Reorganización Concursal en E.E.U.U.:** procedimiento de reorganización seguido ante el Tribunal de Quiebras para el Distrito Sur de Nueva York bajo el N° 20-11254.

q. **Solicitud de Emisión:** el requerimiento, efectuado por un Beneficiario a Latam, para la emisión de un *Travel Voucher*.

r. **Solicitud de Reembolso:** el requerimiento, efectuado por un Beneficiario a Latam, para que se reembolse el monto indicado en un *Travel Voucher* emitido previamente a nombre de dicho Beneficiario.

s. *Travel Voucher*: el documento emitido por Latam a nombre de un Beneficiario, a solicitud de este último y durante la vigencia del Pasaje, con ocasión de la cancelación o la reprogramación de un Vuelo Elegible durante el Periodo de Afectación por Pandemia Covid-19. El *Travel Voucher* será representativo del monto total del Pasaje, o de la porción no utilizada del mismo, y podrá ser utilizado en los términos estipulados en esta Conciliación.

t. **Tribunal:** el Vigésimo Quinto Juzgado de Letras en lo Civil de Santiago.

u. **Tribunal de Insolvencia en E.E.U.U.:** el Tribunal de Insolvencia para el Distrito Sur de Nueva York, E.E.U.U. (o *Bankruptcy Court for the Southern District of New York*).

v. **Vuelo Elegible:** cualquier vuelo que cumpla copulativamente las siguientes condiciones:

  i. Operado o comercializado por Latam, Latam Airlines Chile, Latam Airlines Argentina, Latam Airlines Perú, Latam Airlines Colombia, Latam Airlines Ecuador, Latam Airlines Brasil o Latam Airlines Paraguay.

  ii. Al menos un aeropuerto situado en territorio chileno sea o haya sido origen, destino o escala del trayecto.

  iii. Programado originalmente para ser realizado durante el Periodo de Afectación por Pandemia Covid-19.

  iv. Haya sido (o sea en el futuro) reprogramado o cancelado por Latam. Se entenderá que un Vuelo Elegible ha sido reprogramado si es que, conservando su respectivo código de vuelo, su horario de salida original fue postergado por Latam en más de 31 minutos.

II.    **TERMINACIÓN DEL JUICIO COLECTIVO**



1.  Esta Conciliación comprende la totalidad de las pretensiones formuladas en la Demanda Colectiva Pendiente, en atención a los compromisos asumidos por Latam en las Secciones  a . En consecuencia, la Conciliación, de ser aprobada por el Tribunal, pondrá fin al Juicio Colectivo con fuerza de sentencia ejecutoriada, con efecto *erga omnes* en los términos establecidos por el artículo 54 de la LPDC, en relación con el artículo 53 de la LPDC.

2.  Agrecu –actuando en representación de todos los miembros de los intereses colectivos invocados en la Demanda Colectiva Pendiente– otorga a Latam, así como a todas las Entidades Relacionadas, un finiquito completo y definitivo de todas y cada una de las pretensiones que surjan de, o estén relacionadas a, la materia y los hechos descritos en la Demanda Colectiva Pendiente. Este finiquito es sin perjuicio del derecho de cada consumidor a efectuar reserva de derechos y demandar individualmente, de acuerdo con el procedimiento establecido en el párrafo segundo del Título IV de la LPDC, con arreglo a lo dispuesto en el artículo 52 inciso decimoprimero de la LPDC, en relación con los artículos 54, 54 A y 54 C del mismo cuerpo legal.

3.  Las Partes acuerdan esta Conciliación pues entienden (i) que Latam ha dado cumplimiento a las disposiciones pertinentes de la LPDC y el Código Aeronáutico respecto del cancelación o reprogramación de vuelos durante el Periodo de Afectación por Pandemia Covid-19; pero que, sin embargo, (ii) esta Conciliación contribuye a dar claridad a los Beneficiarios respecto de sus derechos.

4.  En virtud de lo anterior, las Partes acuerdan que la Conciliación no constituye reconocimiento de responsabilidad por parte de Latam, ni supone asumir la comisión de hechos u omisiones, ya sean atribuibles a Latam o las Entidades Relacionadas, que puedan ser calificados como infracciones a la LPDC, al Código Aeronáutico o en general al Derecho Chileno.

5.  En el mismo sentido, las Partes declaran que la Conciliación no supone un reconocimiento, por parte de Latam, de que alguna persona en Chile haya sufrido algún perjuicio –patrimonial, corporal, moral o de cualquier otra naturaleza– imputable a Latam en relación con la cancelación o la reprogramación de vuelos durante el Periodo de Afectación por Pandemia Covid-19.

6.  Latam se desiste de su solicitud de declaración de temeridad de la Demanda Colectiva Pendiente, presentada junto con la contestación con arreglo a lo dispuesto en el artículo 50 E de la LPDC. Agrecu acepta el desistimiento de dicha solicitud.

7.  Latam también se desistirá, a más tardar a la Fecha de Implementación, de:



a.  La apelación interpuesta en contra de la resolución de 19 de junio de 2020 (folio N° 5), que declaró admisible la Demanda Colectiva Pendiente, actualmente en tramitación ante la Ilma. Corte de Apelaciones de Santiago bajo el número de ingreso 10.221-2020 del libro Civil; y

b.  La apelación interpuesta en contra de la resolución de 17 de julio de 2020 (folio N° 9), que rechazó dar cumplimiento a la suspensión decretada por el 2° Juzgado Civil de Santiago en causal rol N° C-8.553-2020, actualmente en tramitación ante la Ilma. Corte de Apelaciones de Santiago bajo el número de ingreso 10.220-2020 del libro Civil.

2.  Agrecu se obliga a concurrir en los escritos de desistimiento de apelación mencionados en el párrafo precedente, manifestando expresamente su aceptación.

## III.    DERECHO ALTERNATIVO DE LOS BENEFICIARIOS

3.  Las Partes celebran esta Conciliación teniendo especialmente en cuenta:

a.  Que la crisis sanitaria causada por la pandemia Covid-19 ha provocado una situación sin precedentes para la industria aérea a nivel mundial, que ha propiciado la cancelación y la reprogramación de múltiples vuelos.

b.  Que dichas cancelaciones y reprogramaciones no han sido imputables a Latam, sino que se han debido a razones sanitarias, al cumplimiento de actos de autoridad y/o en general a la necesidad de adaptarse a una fuerza mayor sobreviniente como lo es la pandemia Covid-19.

c.  Que, sin embargo, la circunstancia de haberse reprogramado o cancelado el vuelo no exime transportista aéreo de otorgar al pasajero la opción de persistir en el contrato u obtener el reembolso del monto total pagado por el Billete o de la porción no utilizada, con arreglo a lo dispuesto en el Código Aeronáutico.

d.  Que Latam, con arreglo a lo dispuesto en el Código Aeronáutico, ha otorgado a los Beneficiarios el derecho alternativo, durante la vigencia de su Pasaje según se define en el Párrafo , a: (i) persistir en el contrato de transporte aéreo, reprogramando su viaje o (ii) solicitar la emisión de un *Travel Voucher*, que puede ser utilizado para adquirir Pasajes, servicios adicionales u obtener la devolución del dinero pagado. Ese derecho alternativo ha sido oportunamente informado a los clientes por distintos medios, incluyendo el sitio web: https://www.latam.com/es_cl/experiencia/coronavirus/.

e.  Que, como consecuencia del Proceso de Reorganización Concursal en E.E.U.U., iniciado el 26 de mayo de 2020, Latam quedó restringida de efectuar pagos que no fueran expresamente autorizados, incluyendo reembolsos a



clientes. Con respecto a los reembolsos a pasajeros, a Latam no se le otorgó autorización para realizar dichos pagos sino hasta el 30 de junio de 2020, fecha en la que el Tribunal de Insolvencia en E.E.U.U. emitió una orden, solicitada por Latam el mismo 26 de mayo de 2020, a fin de continuar cumpliendo una serie de obligaciones con sus clientes.

f.  Que durante el curso de los últimos meses Latam ha efectuado reembolsos de dinero en favor de aquellos clientes que así lo han solicitado, haciendo uso de *Travel Vouchers* emitidos al efecto. Estos reembolsos se han efectuado no obstante las circunstancias extraordinarias provocadas por la crisis sanitaria y su impacto en la situación financiera de la Latam.

g.  Que Agrecu, sin perjuicio de reconocer los puntos anteriores, estima que esta Conciliación es beneficiosa y justificada, en la medida que contribuye a dar claridad a los Beneficiarios respecto de sus derechos.

4.  Latam reconoce a los Beneficiarios el derecho alternativo a: (i) persistir en el contrato de transporte aéreo, solicitando la reprogramación de su viaje, o (ii) solicitar la emisión de un *Travel Voucher*, que pueda ser utilizado para adquirir Pasajes, pagar servicios adicionales u obtener la devolución de dinero, en los términos que se indican más adelante.

5.  El Beneficiario podrá ejercer este derecho alternativo mientras el Pasaje se encuentra vigente. En general, un Pasaje se encontrará vigente hasta doce meses después de la fecha de inicio del viaje original, sin perjuicio de los siguientes casos:

a.  Si el viaje original comenzaba entre el 1 de marzo de 2020 y el 31 de diciembre de 2020, el Pasaje estará vigente hasta el 31 de diciembre de 2021.

b.  Si el respectivo Pasaje indica expresamente una vigencia diversa.

c.  En el caso de Pasajes parcialmente utilizados (viajes ya iniciados), la vigencia estará definida por la estadía máxima que contempla la respectiva tarifa.

6.  Latam podrá implementar protocolos para verificar, en aquellos casos en los que la identidad del Beneficio no coincida con la del pasajero, que el ejercicio de los derechos conferidos por esta Conciliación por aquél no afecten indebidamente a éste.

A.    REPROGRAMACIÓN DEL VUELO



7.  El Pasaje para volar en un Vuelo Elegible quedará automáticamente abierto como consecuencia de su cancelación o reprogramación, permitiendo al

Beneficiario persistir en el contrato de transporte aéreo y reprogramar su viaje para una nueva fecha.

8. Si el Beneficiario decide reprogramar su viaje al mismo destino, no deberá pagar Multa por Cambio o por la eventual Diferencia Tarifaria debido a cambio en la fecha del vuelo. De existir mayores tasas de embarque o impuestos aplicables, el Beneficiario deberá pagar dicha diferencia.

9. Si el Beneficiario decide reprogramar su viaje a un destino diferente, no deberá pagar Multa por Cambio, pero sí deberá pagar la eventual Diferencia Tarifaria debido a cambio en el destino o eventuales mayores tasas de embarque o impuestos aplicables. Esta disposición es sin perjuicio de cualquier flexibilidad mayor establecida en el respectivo Pasaje.

10. La reprogramación del viaje estará siempre sujeta a que exista disponibilidad de vuelos en los sistemas de reserva.

11. El Beneficiario que opte por la reprogramación de su viaje obtendrá un Pasaje de la misma cabina y clase tarifaria que aquel originalmente adquirido. Lo anterior es sin perjuicio de que:

   a. La aeronave que opere el nuevo vuelo tenga una configuración diversa a la aeronave del vuelo original, en cuyo caso la reprogramación se realizará por Latam considerando la alternativa de cabina y clase tarifaria más próxima a las del Pasaje original.

   b. Si el Beneficiario desea cambiar de cabina o clase tarifaria, en cuyo caso deberá pagar las Diferencia Tarifarias aplicables.

12. En el evento que el nuevo vuelo: (i) sea reprogramado para una fecha durante el Periodo de Afectación por Pandemia Covid-19 y (ii) sea cancelado o reprogramado por Latam, el Beneficiario tendrá, respecto de dicho vuelo, el mismo derecho alternativo optar por la reprogramación o la emisión de un *Travel Voucher*, según se regula en esta Sección. Para efectos de esta disposición, también se considerarán Beneficiarios a quienes de otra forma se entenderían excluidos en virtud de la definición establecida en el punto de la Sección de esta Conciliación.

B.  EMISIÓN DE *TRAVEL VOUCHER*

13. Como alternativa frente a la reprogramación de su viaje, el Beneficiario podrá optar por la emisión de un *Travel Voucher* mediante el sitio web de Latam. Latam se compromete a emitir el *Travel Voucher* en favor del Beneficiario dentro de los 15 días siguientes a la recepción de la Solicitud de Emisión.



14. El *Travel Voucher* será emitido como un documento nominativo en favor del Beneficiario, equivalente al monto total pagado por el Pasaje o la porción no utilizada, según fuere el caso.

15. El *Travel Voucher* tendrá la mayor vigencia que resulte de las siguientes opciones:

    a. Hasta un año desde la fecha de su emisión.

    b. Hasta el 31 de diciembre de 2021.

16. El Beneficiario podrá utilizar el *Travel Voucher* para:

    a. Comprar Pasajes en vuelos comercializados y operados por Latam, Latam Airlines Chile, Latam Airlines Perú, Latam Airlines Colombia, Latam Airlines Ecuador, Latam Airlines Brasil y Latam Airlines Paraguay.

    b. Pagar servicios adicionales en vuelos comercializados y operados por Latam, Latam Airlines Chile, Latam Airlines Perú, Latam Airlines Colombia, Latam Airlines Ecuador, Latam Airlines Brasil y Latam Airlines Paraguay, tales como Multas por Reprogramación, Diferencias Tarifarias, exceso de equipajes, maletas adicionales, etcétera.

    c. Solicitar la devolución del dinero equivalente al monto del *Travel Voucher* mediante el procedimiento descrito en el Párrafo 25.

17. La utilización del *Travel Voucher* para la compra de Pasajes o el pago de servicios adicionales estará sujeta a las siguientes restricciones:

    a. El canje por servicios Latam solo cubrirá el pago de la tarifa neta. Las tasas e impuestos aplicables deberán ser pagados mediante otro medio de pago.

    b. El Beneficiario podrá canjear el *Travel Voucher* en Pasajes o servicios en favor de otra persona siempre y cuando cuente con la documentación necesaria para ello.

18. Por consideraciones de seguridad y eficiencia, Latam podrá implementar, durante la vigencia de esta Conciliación, medidas (como la billetera electrónica *Latam Wallet*) que complementen y/o reemplacen desde una perspectiva tecnológica la emisión del *Travel Voucher*. De implementarse una medida tecnológica que reemplace al *Travel Voucher*, ello en ningún caso afectará el derecho de los Beneficiarios de optar por: (i) el canje de Pasajes o servicios adicionales o (ii) la devolución del dinero equivalente al monto total del Pasaje, o de la porción no utilizada del mismo. Las disposiciones de esta Conciliación relativas al *Travel Voucher,* incluyendo aquellas referidas a vigencia y condiciones o restricciones de uso, se aplicarán analógicamente a dicha medida tecnológica alternativa como si se tratare del *Travel Voucher*.



C.    SOLICITUD DE REEMBOLSO

19. En el evento que el Beneficiario solicite la devolución del dinero equivalente al monto del *Travel Voucher*, la Solicitud de Reembolso deberá seguir el siguiente procedimiento:

   a. La Solicitud de Reembolso deberá ser presentada por el Beneficio mediante el sitio web de Latam.

   b. La Solicitud de Reembolso deberá proveer la información que Latam requiera al efecto, incluyendo el nombre completo del Beneficiario, su domicilio, su rol único tributario (o número equivalente), información de contacto (teléfono y correo electrónico) y datos pertinentes de la cuenta bancaria para efectuar la devolución, cuando corresponda.

   c. El Beneficiario será responsable de entregar información completa y fidedigna para proceder al reembolso, y deberá solicitar la corrección o complementación necesaria en el evento que la Solicitud de Reembolso no se encuentre completa, o exista algún error en ella que impida efectuar la devolución. El plazo establecido en la letra anterior solo empezará a correr una vez que la Solicitud de Reembolso se encuentre completa o enmendada.

20. Latam efectuará el Reembolso de acuerdo con el siguiente procedimiento:

   a. Latam se compromete a procesar la devolución dentro de un plazo máximo de 30 días contados desde la recepción de la Solicitud de Reembolso. Para estos efectos, se entenderá que Latam ha procesado la devolución oportunamente al poner los fondos a disposición del banco o emisor de tarjetas de crédito, según sea el medio de reembolso aplicable, dentro del plazo de 30 días. La fecha efectiva de abono de los fondos a la cuenta bancaria o a la tarjeta de crédito podrá variar dependiendo del banco o el emisor de la tarjeta de crédito y, en consecuencia, se encuentra fuera del ámbito de control de Latam.

   b. Latam efectuará la devolución mediante un solo pago (es decir, no será fraccionado en cuotas).

   c. La devolución se efectuará en pesos chilenos. En el evento que el monto del *Travel Voucher* esté expresado en dólares de los Estados Unidos de América u otra divisa, dicho monto se convertirá a pesos chilenos utilizando el tipo de cambio observado por el Banco Central de Chile del día en que se presentó la Solicitud de Reembolso.

   d. La devolución se efectuará:



i.   Si la compra fue realizada mediante una tarjeta de crédito y no han transcurrido más de diez meses desde la compra, mediante un abono a dicha tarjeta.

ii.  Si la compra fue realizada mediante transferencia bancaria, a la cuenta bancaria mediante la cual se efectuó la transferencia de compra.

iii. Si la compra fue efectuada en virtud de un convenio empresa mediante una orden de compra con cargo a una línea de crédito, por medio de la emisión de una nota de crédito.

iv.  En defecto de las opciones anteriores, mediante transferencia a la cuenta bancaria de que sea titular el Beneficiario y que indique en su Solicitud de Reembolso.

21. La Solicitud de Reembolso no comprende a pasajes comprados mediante Millas Latam Pass. En tales casos, el Beneficiario podrá solicitar la devolución de dichas Millas Latam Pass mediante la respectiva cuenta de socio.

## IV.    MEDIDAS DE INFORMACIÓN Y PUBLICIDAD

22. Latam deberá incluir en las ofertas y publicidades efectuadas desde la Fecha de Implementación y hasta el fin del Periodo de Afectación por Pandemia Covid-19:

a.   El nivel de flexibilidad con la que contará el pasajero para cambiar la fecha o el destino del Pasaje, indicando si procederá el pago de Multa por Cambio o Diferencia Tarifaria.

b.   El riesgo de cancelación o reprogramación de vuelos debido a, o con ocasión de la pandemia Covid-19.

23. Dependiendo de las características de cada pieza publicitaria u oferta, y en particular su extensión, el deber descrito en el párrafo precedente podrá ser cumplido indicando esta información de forma clara y visible en el hipervínculo al que reenvíe la publicidad.

24. Latam deberá informar a los pasajeros, ya sea mediante la correspondencia electrónica enviada con ocasión del proceso de *check-in* u otro medio adecuado, respecto de:

a.   Las medidas de seguridad implementadas por Latam, en beneficio de los pasajeros, con ocasión de la pandemia Covid-19.

b.   Trámites sanitarios o de otra índole que hayan dispuesto las autoridades chilenas para efectos del transporte aéreo de pasajeros con ocasión de la



pandemia Covid-19. Latam podrá cumplir esta obligación mediante uno o más hipervínculos a los sitios web de las autoridades pertinentes o a los actos de autoridad que establecen la procedencia de los referidos trámites sanitarios.

V.   **IMPLEMENTACIÓN DE LA CONCILIACIÓN**

25. Las Partes acuerdan que, atendidas las circunstancias del caso concreto, resulta preferible que Latam implemente directamente la totalidad de esta Conciliación. Las Partes estiman que esa es la mejor vía para lograr la transferencia efectiva de dinero a los Beneficiarios que opten por la Solicitud de Reembolso debido a, entre otras, las siguientes consideraciones:

   a.  El Código Aeronáutico y esta Conciliación confieren a los Beneficiarios un derecho alternativo, que no necesariamente va a traducirse en una Solicitud de Reembolso. Latam se encuentra en una mejor posición que un eventual tercero para efectos de responder ante el ejercicio de dicho derecho alternativo por parte del Beneficiario, sea que se traduzca en la reprogramación del vuelo, el canje del *Travel Voucher* por Pasajes o servicios adicionales, o la Solicitud de Reembolso.

   b.  Latam ya ha desarrollado e implementado, con antelación a la interposición de la Demanda Colectiva Pendiente, procedimientos para emitir *Travel Vouchers* y dar curso a Solicitudes de Reembolso. En contraste, la eventual selección y contratación de un tercero independiente –con el consiguiente diseño y ejecución de procedimientos por dicho tercero para efectos de llevar a cabo eventuales reembolsos– retrasaría la implementación de esta Conciliación, en perjuicio de los Beneficiarios.

26. A fin de implementar esta Conciliación, Latam podrá solicitar a los Beneficiarios: (i) el registro en una plataforma web, mediante la creación de una cuenta de usuario y (ii) la provisión de ciertos datos personales. Las medidas anteriores tendrán por objeto verificar que sean los Beneficiarios –y no terceras personas no autorizadas– quienes ejerzan los derechos reconocidos mediante esta Conciliación.

27. Latam dará cuenta al Tribunal de la implementación de la Conciliación mediante la presentación de tres Informes de Implementación. El primer Informe de Implementación será presentado seis meses después de la Fecha de Implementación. Los siguientes Informes de Implementación serán presentados cada seis meses.

28. Cada Informe de Implementación indicará, tanto respecto del periodo pertinente a dicho informe como respecto del total acumulado:



a.  El número y el equivalente monetario de las solicitudes de reprogramación de vuelos recibidas.

b.  El número y el monto en dinero de las Solicitudes de Emisión de *Travel Vouchers* recibidas.

c.  El número y el equivalente monetario de los *Travel Vouchers* emitidos.

d.  El tiempo de emisión de los *Travel Vouchers*, contados desde la recepción de la Solicitud de Emisión completa.

e.  El número y el equivalente monetario de los *Travel Vouchers* canjeados por Pasajes o servicios adicionales.

f.  El tiempo de los reembolsos de dinero, contados desde la recepción de la Solicitud de Reembolso completa.

g.  El número y el monto en dinero de los reembolsos cursados.

29. Latam incluirá en los Informes de Implementación información relativa a solicitudes de reprogramación de viajes, *Travel Vouchers* emitidos y canjeados y reembolsos cursados con anterioridad a la implementación de esta Conciliación, en la medida que ellos digan relación con vuelos cancelados o reprogramados durante el Periodo de Afectación por Pandemia Covid-19.

## VI.    COSTAS PROCESALES Y PERSONALES, Y OTROS GASTOS INCURRIDOS POR AGRECU CON OCASIÓN DEL JUICIO COLECTIVO

30. Latam reembolsará a Agrecu: (i) las costas procesales y personales incurridas por dicha asociación de consumidores y (ii) los gastos de investigación, análisis, preparación y difusión incurridos hasta esta fecha por dicha asociación de consumidores con ocasión del Juicio Colectivo. Las Partes avalúan las costas procesales y personales y los gastos de Agrecu en $ 37.000.000 (treinta y siete millones) de pesos. El pago deberá ser realizado por Latam a Agrecu dentro de los diez días siguientes a la Fecha de Implementación.

## VII.    MEDIDAS DE DIFUSIÓN

31. Un extracto del acta en la que conste esta Conciliación y su aprobación por el Tribunal será publicada en la forma prevista por la LPDC, en dos oportunidades, en cada una de ellas en los diarios La Tercera y El Mercurio de Santiago.

32. Las Partes incluirán un segmento relativo a la aprobación de esta Conciliación en sus respectivos sitios web. Ese segmento incluirá un resumen de los



principales aspectos de esta Conciliación e incluirá una copia del acta de Conciliación. Las Partes mantendrán el segmento relativo a la aprobación de esta Conciliación en sus respectivos sitios web a contar de la Fecha de Implementación y por un plazo de dieciocho meses.

33. Latam también comunicará la aprobación de esta Conciliación mediante publicaciones en la red social Twitter. Las publicaciones se efectuarán dos veces por semana, durante las seis semanas siguientes a la Fecha de Implementación.

## VIII.    DISPOSICIONES MISCELÁNEAS

34. Las Partes consienten en la Conciliación como un todo, encontrando cada una de las estipulaciones justificación en otra u otras, o en su conjunto.

35. En caso de que cualquier estipulación, párrafo o sección de esta Conciliación sea declarado nulo o ineficaz: (i) la validez y eficacia de las restantes estipulaciones, párrafos y secciones de la Conciliación no se verán afectadas o perjudicadas de forma alguna, y (ii) dicha estipulación, párrafo o sección será ineficaz solo en la medida de su invalidez o inejecutabilidad.

36. Los términos de esta Conciliación se encuentran sujetos a la condición suspensiva de ser aprobados por el Tribunal, con la excepción de los Párrafos 4 y 5 y de las Secciones VIII y IX.

37. Si esta Conciliación es rechazada por el Tribunal, no podrá ser invocada por las Partes o por terceros como medio de prueba, ni podrá ser considerada por el Tribunal, o por otro tribunal u órgano administrativo, como medio de prueba.

38. Todos los plazos expresados en días se entenderán de días hábiles, a menos que se exprese lo contrario. Para los efectos de esta Conciliación, los días hábiles excluyen los sábados, domingos y feriados nacionales. Si alguno de los plazos expresados en años o meses establecidos en esta Conciliación venciere en un día que no sea hábil, se entenderá automáticamente prorrogado para el día hábil siguiente.

39. Esta Conciliación se regirá en todas sus partes por las leyes sustantivas de la República de Chile.

40. Las Partes renuncian desde ya a todo recurso para impugnar una eventual resolución del Tribunal que apruebe esta Conciliación.

## IX.    PERSONERÍAS



41. La personería de Andrés Parra Vergara para representar a Agrecu consta en escritura pública de 2 de octubre de 2019, otorgada en la Notaría de San Miguel de don Sergio Arenas Benoni, cuya copia se acompaña en el presente acto. Latam renuncia a todo plazo para objetar u observar este documento.

42. La personería de José Miguel Huerta Molina, Javier Rodríguez Diez y Álvaro Vives Martens para representar a Latam consta en escritura pública de mandato judicial de fecha 7 de julio de 2020, otorgada en la Quinta Notaría de Santiago de don Patricio Raby Benavente, cuya copia digital con firma electrónica avanzada fue acompañada al proceso mediante el escrito de 11 de julio de 2020 (Folio N° 8).

En virtud de lo dispuesto en el artículo 53 B de la LPDC, las Partes someten la Conciliación al Tribunal para su aprobación.

En cuanto a la personería de don Andrés Parra Vergara, acompañada en el N° 47 del acta precedente y a la renuncia de Latam, se resuelve: téngase por acompañada, con citación, formando parte de la presente acta, que se puede visualizar en el siguiente link: http://fojas.cl/d.php?cod=not71swarenbeno&ndoc=123456796555 y que por razones informáticas no se puede incorporar a la carpeta electrónica, y téngase presente la renuncia de la demandada Latam.

En cuanto a la aprobación de la conciliación: **el Tribunal queda en resolver.**

Se deja constancia que la señora Coordinadora del Tribunal compareció a la presente audiencia como administradora de la videoconferencia.

Asimismo, se deja constancia que la señora Jueza de este Tribunal, con motivo de la forma de realización de la audiencia, firma digitalmente la presente acta.

Siendo las 11:45 horas, se pone término a la presente audiencia. csp

En **Santiago,** a uno de Octubre de dos mil veinte , se notificó por el estado diario, la resolución precedente.



Este documento tiene firma electrónica y su original puede ser validado en http://verificadoc.pjud.cl o en la tramitación de la causa.
A contar del 06 de septiembre de 2020, la hora visualizada corresponde al horario de verano establecido en Chile Continental. Para Chile Insular Occidental, Isla de Pascua e Isla Salas y Gómez restar 2 horas. Para más información consulte http://www.horaoficial.cl

SUSANA ELIZABETH RODRIGUEZ
MUÑOZ
Fecha: 01/10/2020 15:21:39