1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x


In the Matter of:

LATAM AIRLINES GROUP S.A., et al.,      Main Case No.

          Debtors.                      20-11254-jlg


- - - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                March 31, 2021

                11:00 AM





B E F O R E:

HON. JAMES L. GARRITY, JR.

U.S. BANKRUPTCY JUDGE

1

2   Status Conference (Doc #40) Status Report (Doc #1499) Second

3   Status Report (Doc #1701)

4

5   Application for an Order Pursuant to 11 U.S.C. 363(b) and

6   105(a) for Authority to Perform and Make Payments Under Two

7   Ordinary Course Consulting Contracts with McKinsey & Company

8   Chile Ltda. (Doc #1592)

9

10  Debtors' Thirteenth Omnibus Objection (Non-Substantive) to

11  Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P.

12  3007 (Amended) (Doc #1886)

13

14  Debtors Fourteenth Omnibus Objection (Non-Substantive) to

15  Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P.

16  3007 (Equity Interests) (Doc #1887)

17

18  Debtors Fifteenth Omnibus Objection (Non-Substantive) to

19  Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P.

20  3007 (Duplicate Bondholder Claims) (Doc #1888)

21

22  Debtors' Sixteenth Omnibus Objection (Non-Substantive) to

23  Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P.

24  3007 (Duplicate) (Doc #1889)

25

1

2 Debtors Seventeenth Omnibus Objection (Non-Substantive) to

3 Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P.

4 3007 (No Liability) (Doc #1890)

5

6 Debtors Eighteenth Omnibus Objection (Non-Substantive) to

7 Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P.

8 3007 (No Liability) (Doc #1891)

9

10 Motion to Authorize the Debtors to Implement Certain

11 Transactions, Including Entry Into an Omnibus Amendment Deed

12 with Sapucaia Leasing Limited, PK AirFinance US, LLC., and PK

13 Air 1 LP (Doc #1973)

14

15 Motion to Authorize the Debtors to Implement Certain

16 Transactions, Including Entry Into Lease Agreements with

17 Wilmington Trust Company Solely in its Capacity as Trustee

18 [REDACTED] (Doc #1975)

19

20 Motion to Authorize the Debtors to Implement Certain

21 Transactions, Including Entry into Lease Amendment Agreements

22 with Bank of Utah [REDACTED] (Doc #1976)

23

24

25

1

2   Motion to Authorize the Debtors to Implement Certain

3   Transactions, Including Entry Into a Lease Amendment Agreement

4   with AWAS 5234 Trust [REDACTED] (Doc #1977)

5

6

7   Motion to Authorize the Debtors to Implement Certain

8   Transactions, Including Entry Into a Lease Amendment Agreement

9   with Aviator IV 3058, Limited (Doc #1978)

10

11   Application to Employ The Boston Consulting Group, Inc. and The

12   Boston Consulting Group UK LLP as Strategic Advisor to the

13   Debtors and Debtors-In-Possession Effective as of the

14   Engagement Date filed by Lisa M. Schweitzer on behalf of LATAM

15   Airlines Group S.A. (Doc #2029)

16

17

18

19

20   Transcribed by:  Linda Ferrara

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

1

2    A P P E A R A N C E S (All present by video or telephone):

3    CLEARY GOTTLIEB STEEN & HAMILTON, LLP

4            Attorneys for Debtors

5            One Liberty Plaza

6            New York, NY 10006

7

8    BY:    LUKE A. BAREFOOT, ESQ.

9            LISA M. SCHWEITZER, ESQ.

10           DREW KRAMER, ESQ.

11           THOMAS S. KESSLER, ESQ.

12           DOUGLAS A. GRETZ, ESQ.

13           RICHARD J. COOPER, ESQ.

14           KIMBERLY BLACK, ESQ.

15           THOMAS Q. LYNCH, ESQ.

16

17

18

19

20

21

22

23

24

25

```
 1
 2  TOGUT SEGAL & SEGAL LLP
 3        Attorneys for Debtors
 4        One Penn Plaza
 5        Suite 3335
 6        New York, NY 10119
 7
 8  BY:   KYLE J. ORTIZ, ESQ.
 9        ALBERT TOGUT, ESQ.
10        AMY ODEN, ESQ.
11
12
13  WHITE & CASE LLP
14        Attorneys for Ad Hoc Group of LATAM Bondholders
15        200 South Biscayne Boulevard
16        Suite 4900
17        Miami, FL 33131
18
19  BY:   JOHN K. CUNNINGHAM, ESQ.
20        RICHARD S. KEBRDLE, ESQ.
21
22
23
24
25
```

1

2  DECHERT LLP

3         Attorneys for Official Creditors' Committee

4         1095 Avenue of the Americas

5         New York, NY 10036

6

7  BY:   ALLAN S. BRILLIANT, ESQ.

8         DAVID A. HERMAN, ESQ.

9         YEHUDA GOOR, ESQ.

10        CRAIG P. DRUEHL, ESQ.

11

12

13  DORSEY & WHITNEY LLP

14         Attorneys for Elavon Financial Services - U.S. Bank

15         51 West 52nd Street

16         New York, NY 10019

17

18  BY:   SAMUEL S. KOHN, ESQ.

19

20

21

22

23

24

25

1

2   UNITED STATES DEPARTMENT OF JUSTICE

3          Office of the United States Trustee

4          201 Varick Street

5          Suite 1006

6          New York, NY 10014

7

8   BY:   BRIAN S. MASUMOTO, ESQ.

9

10

11  DAVIS POLK & WARDWELL LLP

12          Attorneys for Delta Airlines

13          450 Lexington Avenue

14          New York, NY 10017

15

16  BY:   LARA SAMET BUCHWALD, ESQ.

17          MARSHALL HUEBNER, ESQ.

18

19

20

21

22

23

24

25

1

2   DEBEVOISE & PLIMPTON LLP

3           Attorneys for McKinsey & Company

4           919 Third Avenue

5           New York, NY 10022

6

7   BY:    ERICA WEISGERBER, ESQ.

8           M. NATASHA LABOVITZ, ESQ.

9

10

11  BOSTON CONSULTING GROUP

12          Attorneys for LATAM Airlines Group S.A.

13          200 Pier 4 Blvd.

14          Boston, MA 02210

15

16  BY:    MARK ROSENTHAL, ESQ.

17

18

19  ALSTON & BIRD LLP

20          Attorneys for Qatar Airways Investment (UK) Ltd.

21          90 Park Avenue

22          New York, NY 10016

23

24  BY:    GERARD S. CATALANELLO, ESQ.

25

```
 1

 2  MILBANK LLP

 3          Attorneys for Wilmington Trust Company

 4          55 Hudson Yards

 5          New York, NY 10001

 6

 7  BY:   ANDREW HARMEYER, ESQ.

 8

 9

10  ORRICK HERRINGTON & SUTCLIFFE LLP

11          Attorneys for Scotiabank Chile

12          51 West 52nd Street

13          New York, NY 10019

14

15  BY:   EVAN HOLLANDER, ESQ.

16          RANIERO D'AVERSA, ESQ.

17

18

19  HOLLAND & KNIGHT LLP

20          Attorneys for Various Aircraft Lessors

21          31 West 52nd Street

22          New York, NY 10019

23

24  BY:   BARBRA R. PARLIN, ESQ.

25
```

1

2  CLIFFORD CHANCE

3          Attorneys for PK AirFrance

4          31 West 52nd Street

5          New York, NY 10019

6

7  BY:   ROBERT JOHNSON, ESQ.

8

9

10  LATAM AIRLINES GROUP

11          Attorney for Debtors

12          Plaza Oeste Avda. Americo Vespucio N 1501

13          Local BS-108 Boulevard Financiero

14          Cerillos

15          New York, NY

16

17  BY:   JUAN CARLOS MENCIO, ESQ.

18

19

20  LATAM AIRLINES GROUP SA

21          Attorney for the Debtors

22          One Liberty Plaza

23          New York, NY 10006

24

25  BY:   RAMIRO ALFONSIN BALZA, ESQ.

1

2  ALSO PRESENT:

3        KEVIN BARNES, Pro Se

4        ADAM GUI, Pro Se

5        JOHN ODENWELLER, FTI Consulting

6        ALEX DICHTER, McKinsey & Company

7        DMITRY KRIVIN, McKinsey & Company

8        JASON GUGGENHEIM, Boston Consulting Group, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  All right.  Good morning.  It's Judge

3   Garrity and we are here together in the LATAM Airlines Group

4   S.A. cases, case number 20-11254.

5          We have a number of matters on the calendar but to get

6   us started, Ms. Schweitzer or Mr. Barefoot, will one of you

7   take the lead?

8          MS. SCHWEITZER:  Sure.  Thank you, Your Honor.  Good

9   morning.  It's Lisa Schweitzer from Cleary Gottlieb, counsel to

10  the debtors and I can start with a short status conference

11  before we start the agenda, if that's all right.

12         THE COURT:  Terrific.  Thank you very much.

13         MS. SCHWEITZER:  Perfect.  So good morning and as you

14  noted, there is a substantial number of motions being presented

15  today and we're pleased to do so because it evidences the

16  progress that the debtors are continuing to make in their

17  bankruptcy cases.

18         First, with respect to the reconciliation of claims

19  that have been filed against the company, the debtors today are

20  presenting another round of omnibus objections and now,

21  following the Court's ruling at the last hearing on the ADR

22  procedures motion, the debtors also may turn to filing

23  objections to foreign claims as a next step.

24         In particular, today we're presenting objections that

25  object to 400 claims on the basis of duplication, amendment,

LATAM AIRLINES GROUP S.A., et al.                    14

1   that they're actually equity interests rather than claims and

2   other claims that the debtors have no liabilities due to

3   identical claims being filed against multiple debtors or that

4   they're not found in the debtors' books and records.

5           We've also filed procedural objections to fourteen

6   claims that will be heard at next month's omnibus hearing and

7   per the ADR order that's been granted by Your Honor, we're

8   preparing omnibus procedural objections to certain foreign

9   claims that will be filed in the coming weeks.

10          And in addition to filing these procedural objections,

11  we're continuing to perform substantive review and

12  reconciliation of a number of categories of claims including to

13  secured claims, claims for administrative expenses, and claims

14  relating to debt instruments and litigation claims in addition

15  to the other trade claims and ordinary course claims that have

16  been filed.

17          While the debtors continue to make progress on all of

18  these fronts, there remain to be a substantial number of claims

19  that have been filed against the debtors which have asserted

20  over 100 billion dollars in liabilities, such that additional

21  work does need to be done before the debtors will have a more

22  precise view on the total likely claims base that ultimately

23  will be allowed in their cases and as against the debtors.

24          The debtors also in addition to working on the claims

25  that have been filed, they continue to review their executory

1   contracts and negotiate with counterparties as they make

2   efforts towards streamlining their business and restructuring

3   certain contracts in anticipation of their plan of

4   reorganization and in furtherance of their restructuring

5   efforts generally.

6         On the fleet side, the debtors continue to refine

7   their fleet strategy and to negotiate with lessors and other

8   counterparties with respect to new or amended lease agreements

9   that will implement that strategy.

10         As Your Honor is aware, there are several motions up

11   for approval today for amendment of existing leases and the

12   debtors also continue to negotiate with other parties such that

13   we expect that there will be further lease amendments filed

14   both imminently and in the coming months for approval and as

15   well as the possibility that the debtors will further seek

16   rejection of other aircraft as they continue to refine and

17   implement their fleet strategy.  Those efforts all remain

18   ongoing.

19         The debtors also seek retention today of BCG or the

20   Boston Consulting Group as a strategic consultant in

21   furtherance of the development of their five-year business plan

22   which will ultimately serve as one of the cornerstones in their

23   development of the backbone of a plan of reorganization.

24         Work on the business plan is ongoing and we'll discuss

25   when we get to the retention application for BCG, there

1   continues to be significant uncertainty in the market on the

2   timing and shape of the recovery curve for passenger demand at

3   this time and other factors that will input into the business

4   plan, given the state of COVID infections, changing regulations

5   in different jurisdictions and other dynamic variables that

6   continue to exist at this time.

7         The debtors also more generally are continuing to

8   regularly communicate and work with various parties-in-interest

9   in these cases including without limitation are regular and

10  periodic communications and meetings with the unsecured

11  creditor committee advisors and the unsecured creditor

12  committee members on updates and developments in these cases.

13        We're happy to turn to the agenda unless the Court has

14  questions or any other party wants to be heard.

15        THE COURT:  No, I don't have any questions.  Is there

16  anyone else who would like to be heard on the matters that

17  relate to the status of the case?

18        MR. BRILLIANT:  Your Honor, Allan Brilliant on behalf

19  of the committee.  We have nothing at this time.

20        THE COURT:  All right.  Thank you.

21        All right.  Ms. Schweitzer, then why don't we continue

22  on with the agenda?

23        MS. SCHWEITZER:  Thank you, Your Honor.  I believe

24  Luke Barefoot is handling the first matter with respect to

25  McKinsey.

1           THE COURT:  All right.  Mr. Barefoot?

2           MR. BAREFOOT:  Good morning, Your Honor.  Luke

3    Barefoot from Cleary Gottlieb for the debtors.

4           The first agenda item, number one, is docket item

5    1588, the debtors' motion to perform and make payments under

6    two ordinary course consulting agreements with McKinsey &

7    Company Chile Ltda.

8           Your Honor, the motion concerns two separate

9    consulting arrangements, the first is styled the "Cost Synergy

10   engagement" which concerns a study that McKinsey understood for

11   the debtors concerning a joint business arrangement with

12   another airline and the second which is styled, "the XP

13   Service's engagement" concerns assistance that McKinsey

14   provided with improvements in LATAM's digital operations

15   including updating the customer experience and implementing

16   more cost effective digital interfaces in LATAM's customer

17   operations.

18          Your Honor, as the motion papers go to lengths to make

19   clear, both the debtors and McKinsey don't believe that any of

20   these services fall within the scope of Section 327 but rather

21   filed the motion for the avoidance of doubt and at the request

22   of McKinsey to ensure that any questions concerning disclosure

23   of connections to parties-in-interest were satisfied.

24          Your Honor, before turning to the resolution of

25   certain issues raised by the committee, I just would like to

1    introduce into the record and as each of the declarants' direct

2    testimony, the declarations that were filed in support of the

3    application.  First, the declaration of Dmitry Krivin, which

4    was attached to the motion as Exhibit B, the declaration of

5    Alex Dichter, attached to the motion as Exhibit C, the

6    declaration of Juan Carlos Mencio, attached to the motion as

7    Exhibit D and finally the supplemental declaration of Dmitry

8    Krivin, which was filed on March 11th at docket item 1979.

9    Each of these gentlemen are available on the line to answer any

10   questions that the Court may have but otherwise, we would

11   request that those declarations be entered into evidence as

12   their direct testimony.

13            THE COURT:  Does anyone wish to be heard with respect

14   to that request?  There being no response, I find good cause

15   for the relief requested.  The declarations are admitted as the

16   direct testimony of the declarants as set forth in Exhibits B,

17   C, and D to the application and the supplemental submission at

18   ECF 1979.  So those are in as a direct testimony.

19        (Dmitry Krivin declaration was hereby received into

20   evidence as Debtors' Exhibit B, as of this date.)

21        (Alex Dichter declaration was hereby received into

22   evidence as Debtors' Exhibit C, as of this date.)

23        (Juan Carlos Mencio was hereby received into evidence as

24   Debtors' Exhibit D, as of this date.)

25        (Dmitry Krivin supplemental declaration was hereby

1   received into evidence as Debtors' Exhibit Docket Item 1979, as

2   of this date.)

3              MR. BAREFOOT:  Thank you, Your Honor.  As I alluded

4   to, since the filing of the application, the debtors have

5   adjourned the hearing on the application twice, while they

6   continue discussions with counsel for the creditors' committee.

7   As a result of those discussions, the committee, the debtors

8   and McKinsey have agreed on a series of economic improvements

9   to the consulting arrangements from the debtors' perspective

10  that are set forth in a revised proposed order that was filed

11  on Monday at docket item 2077.  That should be item 1-D in Your

12  Honor's hearing binder.

13             THE COURT:  Okay.

14             MR. BAREFOOT:  And I would just propose to walk the

15  Court through the blackline reflecting those changes.

16             THE COURT:  All right.  Give me just one minute

17  please.  I'm sorry, Mr. Barefoot, what is the document in the

18  hearing binder is 1?

19             MR. BAREFOOT:  1-D as in David.

20             THE COURT:  D as in David.

21             MR. BAREFOOT:  It's docket item 2077, the notice of

22  revised order.

23             THE COURT:  Okay.  One second.

24             MR. BAREFOOT:  Your Honor, it may be actually in a

25  supplemental binder.

1          THE COURT:  All right.  One second.

2       (Pause)

3          THE COURT:  All right, Mr. Barefoot, I am in the 2077-

4   2, the blackline.

5          MR. BAREFOOT:  Exactly, Your Honor.

6          THE COURT:  Terrific.  Then let's walk through it.

7          MR. BAREFOOT:  Great.  Thank you, Your Honor.

8          So just in the precatory paragraph we added in a

9   reference to the supplemental declaration of Mr. Krivin that

10  was just entered into evidence.  Paragraph 1, the changes make

11  clear that the scope of authority and the payments contemplated

12  are limited pursuant to the agreement between the parties

13  that's reflected in this order.

14         Paragraph 2 adds a proviso that clarifies the scope of

15  indemnification.

16         Paragraphs 3 and 4 then reflect the substance of the

17  compromise and the reduction of the amounts contemplated to be

18  paid.  Specifically, the motion originally contemplated a

19  ceiling on payments pursuant to the XP contract of 14,715,000.

20  Pursuant to the agreement with the committee, that has been

21  reduced by 972,000, so that the new cap is 13,743,000.

22         With respect to the Cost Synergy contract, the new

23  payment amount will be 88,000, reflecting a reduction of

24  792,000.  In turn, in paragraph 4, those reduced amounts are

25  treated as allowed pre-petition general unsecured claims and

1  there is no prospect or ability to revisit the treatment of

2  those allowed pre-petition unsecured claims.

3           In paragraph 6, we've clarified that the invoices that

4  will be delivered will contain a detailed description of the

5  services provided, subject to the payment cap and then in

6  paragraph 10, some minor clarifications reflecting that to the

7  extent that contractors are employed by McKinsey, those

8  contractors' services will still be subject to the payment cap.

9           Finally, in paragraph 11, just a clarification that

10 all of the allowed pre-petition and other claims that have been

11 asserted by McKinsey Chile will only be payable pursuant to a

12 confirmed plan, an assumption order, or other order of the

13 Court and that aside from the allowed general unsecured claims,

14 all parties' rights, arguments and defenses are reserved with

15 respect to the other claims that have been filed in the case by

16 McKinsey.

17          Separately, Your Honor, the Office of the United

18 States Trustee did file a response at docket item 2066

19 indicating that it did not object to the relief sought in the

20 motion and that based on the United States Trustee's review, it

21 does appear that these are ordinary course service contracts.

22 The U.S. Trustee otherwise reserved its rights should the scope

23 of services be expanded in the future and there is a mechanism

24 in the order for allowing potential expansion of services.

25          And unless Your Honor has any questions, this revised

LATAM AIRLINES GROUP S.A., et al.                    22

1    proposed order does resolve all of the potential objections and

2    we would ask that the order be entered.

3              THE COURT:  All right.

4              Mr. Brilliant, do you wish to be heard or does someone

5    from the committee wish to be heard?

6              MR. HERMAN:  Your Honor, this is David Herman from

7    Dechert for the committee.  May I be heard?

8              THE COURT:  Yes, of course, Mr. Herman.

9              MR. HERMAN:  Thank you.  Your Honor, we're very

10   pleased to be able to have this application proceed on an

11   uncontested basis this morning and we appreciate very much the

12   hard work that professionals for the debtors and McKinsey put

13   in to address the committee's concerns as they're reflected in

14   the proposed order.

15             The committee's focus here has been on what services

16   are being paid for and whether they are past or future and pre-

17   petition or post-petition and as the application makes clear,

18   the two service contracts at issue were both entered into pre-

19   petition and McKinsey has been doing work for the debtors in

20   their businesses since the pre-petition period and so our work

21   was geared toward ensuring that the line between what's pre-

22   petition and what's post-petition was being drawn in the right

23   place.

24             So with respect to the Cost Synergy contract, as Mr.

25   Barefoot mentioned, this is a contract by which McKinsey looked

LATAM AIRLINES GROUP S.A., et al.                    23

1   at -- Synergy is associated with a joint business arrangement

2   between LATAM and another airline.  Based on our review, as of

3   the filing of the application, all of the work under that

4   contract had been completed and this is the reason why in the

5   blackline, paragraph 1, you see that employment of McKinsey

6   Chile going forward, has been changed from being employed under

7   the service contracts, both of them, to being employed under

8   the XP Service contract.  In other words, there is no

9   employment left to be done under that contract.

10          In reviewing the materials and speaking with the

11  various professionals, the committee came to the view that

12  substantially or rather that the services at issue were induced

13  by the pre-petition company and not by the post-petition

14  debtor-in-possession and therefore, were properly treated as

15  pre-petition general unsecured claims.

16          McKinsey disagreed with our position and the parties

17  were able to reach a settlement which as Mr. Barefoot noted, is

18  reflected in the order.  Under the settlement, ten percent of

19  the original 880,000 sought will be treated as -- afforded

20  administrative priority status and may be paid.  The rest of it

21  which is 792,000, per paragraph 4, will be treated as an

22  allowed general unsecured claim.

23          With respect to the other contract, the XP Services

24  contract, as Mr. Barefoot mentioned, this is a contract under

25  which McKinsey assisted and continues to assist the company as

1  we understand it, in improving its digital operations and

2  customer experience.

3           In contrast to the Cost Synergy contract, the work on

4  this contract is ongoing and so the way the committee looked at

5  it, McKinsey is entitled to administrative priority status for

6  services provided post-petition but not for payments on account

7  of services provided pre-petition.

8           As the application and the supporting documents

9  indicate, the work on this contract was divided into a number

10 of different products which are referred to as MVPs.  With

11 respect to all but one of them, the committee did its diligence

12 and was comfortable that the work was performed entirely post-

13 petition.

14          With respect to the first MVP, there is a payment at

15 issue of about 1.215 million.  If the Court is interested, the

16 payment can be located on page 4 of Exhibit E of the

17 application.  It is a payment due on account of MVP 1.  The

18 section number is section 5.3.1.4(i) of the contract.

19          So although this payment became due post-petition, the

20 committee reached the view that the significant majority of

21 services for which the compensation was sought were rendered

22 pre-petition.

23          McKinsey disagreed with the committee and the parties

24 were able to reach a settlement which is also reflected in the

25 proposed order.  Under the settlement, twenty percent of that

1  1.215 million payment will be afforded administrative status

2  and paid, the remaining eighty percent which is 972,000, will

3  be treated as a pre-petition allowed general unsecured claim.

4  And that is why in paragraph 3 of the redline, the amount that

5  may be earned under the XP Service contract has been reduced

6  from 14,715,000 to 13,743,000.  That reduction of 972,000,

7  which is being treated as an unsecured claim.

8          So we think and this is a good deal for the estate, I

9  think Mr. Barefoot described it as an improvement to the terms

10  for the debtors.  It reduces the administrative expense burden

11  on the estate by a little under 1.8 million, across the two

12  contracts.  We also think it's a fair result to McKinsey as a

13  creditor and as an important contract counterparty to the

14  company and importantly, it enables the debtors to continue

15  working with McKinsey under the XP Service contract to continue

16  to improve its digital operations and customer experience.

17          Once again, we appreciate the good work that

18  professionals from McKinsey and the debtors, as well as the

19  Office of the United States Trustee did in working with us to

20  reach this settlement that's reflected in the revised order and

21  with those changes, we support entry of the proposed order.

22          THE COURT:  All right.  Thank you.

23          Ms. Weisgerber, do you wish to be heard?

24          MS. WEISGERBER:  Yes, Your Honor.  Good morning.

25          Erica Weisgerber from Debevoise & Plimpton on behalf

1    of McKinsey and I'm on the line with my colleague, Natasha

2    Labovitz, as well.

3           I just wanted to respond briefly to what Mr. Herman

4    just said.  As discussed by Mr. Barefoot, McKinsey has been

5    working with LATAM on important projects over the past year and

6    they've delivered tremendous value for the benefit of LATAM and

7    all of its stakeholders.

8           McKinsey worked with LATAM to prepare and file this

9    retention application, complete with full disclosures out of a

10   desire to be transparent and maximize its own disclosure in

11   these bankruptcy cases and also fully comply with the letter

12   and spirit of the law.

13          We disagree strongly with the committee's

14   characterization of the timing of the work performed by

15   McKinsey for both contracts.  McKinsey provided significant

16   post-petition work.  For the Cost Synergy contract, McKinsey

17   did and does have ongoing obligations under that contract which

18   continued well after the petition date including delivering its

19   actual report, meaning the ultimate work product during the

20   Chapter 11 case, as well as for the XP contract, McKinsey,

21   nearly all of the work was done post-petition.  There were only

22   two weeks of work that were pre-petition but nonetheless, the

23   committee sought a reduction in fees for that.

24          McKinsey, of course, continues to care deeply about

25   the success of LATAM and the project that it's been working on,

1  so it was able to reach a consensual resolution with the

2  committee to address their concerns and avoid further

3  distraction and cost of litigation for all parties involved,

4  particularly LATAM but our agreement to that resolution is by

5  no means a concession that the committee views of the

6  contracts' treatment is at all proper but nonetheless, Your

7  Honor, with that we request that you approve the application.

8           THE COURT:  All right.  Thank you.

9           Does the U.S. Trustee wish to be heard?

10           MR. MASUMOTO:  Good morning, Your Honor.  Brian

11  Masumoto for the Office of the United States Trustee.

12           Your Honor, as indicated in our response, we were well

13  aware of the extensive efforts of the committee and the

14  negotiations between the parties resulted in a resolution

15  that's reflected in the proposed revised order and accordingly,

16  based upon that revised order, the U.S. Trustee does not have

17  any objection to the order.

18           THE COURT:  All right.  Thank you.

19           Does anyone else wish to be heard with respect to this

20  matter?

21           MR. DICHTER:  Hi, this is Alex Dichter from McKinsey,

22  I wish to be heard briefly.

23           THE COURT:  All right.  Mr. Dichter?

24           MR. DICHTER:  All right.

25           THE COURT:  You understand this has been resolved.  I

LATAM AIRLINES GROUP S.A., et al.                    28

1  don't need to hear anything further about how much work was

2  done, when it was done, what the --

3          MR. DICHTER:  No, no, no, no, that's -- not at all,

4  it's a possible correction from an uninformed listener.

5          THE COURT:  Thank you.

6          MR. DICHTER:  I agreed with the counsel from Dechert's

7  summary of the economic resolution but if I heard him correctly

8  and I may not have because I am new to all of this, I thought

9  he said on the XP contract that twenty percent would be treated

10  as an administrative claim and paid with the rest pre-petition.

11  The agreement is the other way around and so I would just ask

12  that we check the record to make sure that his statement is

13  consistent with his summary of the economics which was indeed

14  correct.

15          THE COURT:  All right.

16          MR. HERMAN:  Your Honor, David Herman from Dechert.

17          Hopefully, I characterized it properly that the

18  economic resolution is reflected in the proposed order.  When I

19  said twenty percent, I was referring to twenty percent of the

20  particular payment due under the contract and not twenty

21  percent of the overall 14,715,000 that could be earned.

22  Hopefully, that was clear enough but in any case, the order

23  governs the agreement and the resolution between the parties is

24  reflected therein.

25          THE COURT:  All right.

1          MR. DICHTER:  Thank you.  Again, I am uninformed

2    listener.  I appreciate the correction.

3          THE COURT:  Terrific.  Thank you.

4          Anyone else wish to be heard?

5          THE COURT:  Okay.  I've had an opportunity to review

6    the application, as well as the declarations submitted in

7    support of the application.  I am pleased that the parties were

8    able to work out the differences and the issues that have been

9    set forth on the record and with that and with the modified

10   order, I grant the motion filed pursuant to Sections 363(b) and

11   105(a) for the authority to perform and make payments under the

12   McKinsey & Company ordinary course consulting contracts.  I

13   would ask Mr. Barefoot, that you submit that.  We'll review it.

14   We'll get it signed and entered.

15         MR. BAREFOOT:  Thank you very much, Your Honor.  I

16   would ask just as a convenience to the witnesses in connection

17   with this application, that they could be excused from the

18   hearing.

19         THE COURT:  Yes, of course and counsel with them, if

20   they would like to do that, as well.  So thank you, yes.

21         MR. BAREFOOT:  Thank you, Your Honor.  We'll submit

22   the order.

23         THE COURT:  Okay.  Thank you.

24         MR. BRILLIANT:  Your Honor, it's --

25         THE COURT:  Yes?

LATAM AIRLINES GROUP S.A., et al.                    30

1         MR. BRILLIANT:  And I'm going to drop as well and

2    leave Mr. Herman on, thank you, Your Honor, for allowing us to

3    drop at this time.

4         THE COURT:  All right.  Thank you, Mr. Brilliant.  No

5    problem.  Okay.

6         Mr. Barefoot or one of your colleagues?

7         MR. BAREFOOT:  Yes, Your Honor.  I believe Mr. Kramer

8    is handling the next item on the agenda.

9         THE COURT:  All right.  Mr. Kramer?

10         MR. KRAMER:  Good morning, Your Honor.  Drew Kramer,

11    Cleary Gottlieb, for the debtors.  Your Honor, along with my

12    colleague, Douglas Gretz, we will be presenting the debtors'

13    omnibus claims objections.  That's items 2 to 7 on the

14    uncontested portion of the agenda.  Those are dockets 1886

15    through 1891.

16         Each objection is supported by a declaration from the

17    debtors' professional, John Odenweller, at FTI.  Mr. Odenweller

18    is on the line, should Your Honor have any questions for him.

19         These claims objections are proceeding on an

20    uncontested basis, as claimants had thirty days to file a

21    response and the debtors have not received any.

22         We'll briefly go through each objection and of course

23    are available to answer any questions Your Honor might have.

24         THE COURT:  All right, thank you.

25         MR. KRAMER:  Thank you.  First, the thirteenth omnibus

1  objection is at ECF 1886 and tab 2 of your binder, and it

2  relates to amended claims.

3          Before moving forward with walking through the

4  objection, Your Honor, I'd like to move the declaration of John

5  Odenweller at FTI, which is attached to this objection, into

6  the record.

7          THE COURT:  Does anyone wish to be heard on that

8  request?

9          There being no response, your request is granted.

10     (Declaration of Mr. Odenweller at ECF 1886 was hereby

11 received into evidence as Debtors' Exhibit, as of this date.)

12         MR. KRAMER:  Thank you.  As set out in the objection

13 and accompanying FTI declaration, the debtors have objected to

14 each claim on Exhibit 1 to the proposed order on the grounds

15 that each has been amended.  Each claim corresponds to a

16 surviving claim also listed on Exhibit 1 that asserts the same

17 basis for the asserted liability and is marked by the claimant

18 as amending a previously filed proof of claim.  As such, the

19 prior claim has been superseded and should be disallowed.

20         Unless you have any questions, Your Honor, pursuant to

21 Rule 3007 and the claims procedures order, debtors' request

22 that each of the thirty amended claims listed on Exhibit 1 to

23 the proposed order be disallowed in full.

24         THE COURT:  Does anyone else wish to be heard?

25         There being no response, based upon the undisputed

1  facts set forth in support of the objection, I sustain the

2  objection, grant the relief requested; and please submit the

3  order.

4         MR. KRAMER:  We will, Your Honor.  Thank you.

5         The fourteenth omnibus objection is at ECF 1887 and

6  tab 3 of your binder.  And it relates to equity interest

7  claims.  Before moving forward with walking through this

8  objection, Your Honor, I'd like to move the declaration of John

9  Odenweller at FTI, which is attached to this objection, into

10  the record.

11         THE COURT:  Does anyone wish to be heard with respect

12  to that request?

13         There being no response, and for cause shown, the

14  request is granted.

15     (Declaration of Mr. Odenweller at ECF 1887 was hereby

16  received into evidence as Debtors' Exhibit, as of this date.)

17         MR. KRAMER:  Thank you.  As set out in the objection

18  and accompanying FTI declaration, the debtors have objected to

19  each claim on Exhibit 1 to the proposed order on the grounds

20  that each claim was filed by the holder of an equity interest

21  and asserts a claim based solely on ownership of equity

22  securities in one of the debtors.

23         Holders of equity such as stock do not have a claim

24  under the Code, but rather, simply an equity interest.

25         As such, unless Your Honor has any questions, pursuant

1   to Rule 3007 and the claims procedures order, the debtors

2   request that each of the two equity interest claims listed on

3   Exhibit 1 to the proposed order be disallowed in full.

4           THE COURT:  Is there anyone else who'd like to be

5   heard?

6           Seeing no response, based upon the undisputed facts

7   set forth set forth in support of the objection, I find that

8   there are grounds for the objection.  I sustain the objection,

9   grant the relief requested, and ask that you please submit an

10  order.

11          MR. KRAMER:  Yes, Your Honor, thank you.

12          THE COURT:  Thank you.

13          MR. KRAMER:  The third -- the fifteenth omnibus

14  objection is at ECF 1888 and tab 4 of your binder, and it

15  relates to duplicate bondholder claims.

16          Before moving forward with walking through the

17  objection, Your Honor, I'd like to move the declaration of John

18  Odenweller at FTI, which is attached to this objection, into

19  the record.

20          THE COURT:  Is there anyone else -- is there anyone

21  who'd like to be heard with respect to that request?

22          There being no response, and for cause shown, your

23  request is granted.

24      (Declaration of Mr. Odenweller at ECF 1888 was hereby

25  received into evidence as Debtors' Exhibit, as of this date.)

LATAM AIRLINES GROUP S.A., et al.          34

1           MR. KRAMER:  Thank you.  As set out in the objection

2    and accompanying FTI declaration, the debtors have objected to

3    each claim on Exhibit 1 to the proposed order on the grounds

4    that each claim is duplicative of the master bondholder claim.

5           Each claim corresponds to a surviving claim also

6    listed on Exhibit 1 that asserts the same purported liability

7    against the same debtor entity on behalf of the same claimant.

8           Though this objection -- through this objection, the

9    debtors seek to avoid the possibility of double recovery on the

10   same claim.  As such, Your Honor, unless you have any

11   questions, pursuant to Rule 3007 and the claims procedures

12   order, the debtors have requested that each of the four

13   duplicate bondholder claims listed on Exhibit 1 to the proposed

14   order, be disallowed in full.

15          THE COURT:  I have no questions.  Is there anyone else

16   who'd like to be heard?

17          There being no response, based upon the undisputed

18   facts set forth in support of the objection, I sustain the

19   objection, grant the relief requested, and ask that you please

20   submit the order.

21          MR. KRAMER:  Thank you, Your Honor.  I will now turn

22   the podium over to my colleague, Douglas Gretz, to present

23   items 5, 6, and 7 on the agenda.

24          THE COURT:  Thank you.

25          MR. GRETZ:  Good morning, Your Honor.  Douglas Gretz

LATAM AIRLINES GROUP S.A., et al.                    35

1    of Cleary Gottlieb, on behalf of the debtors.  Can Your Honor

2    hear me?

3              THE COURT:  I can.  Thank you, Mr. Gretz.

4              MR. GRETZ:  Thanks.  As my colleague Mr. Kramer noted,

5    I'll be presenting the next three omnibus claims objections,

6    which are items 5, 6, and 7 on the uncontested portion of the

7    agenda.

8              The first is the sixteenth omnibus objection, which is

9    at ECF 1889 and tab 5 of your binder, and it relates to

10   duplicate claims.  Before moving forward with walking through

11   the objection, I'd like to move the declaration of John

12   Odenweller at FTI, which is attached to this objection, into

13   the record.

14             THE COURT:  Is there anyone else -- is there anyone

15   who'd like to be heard with respect to that request?

16             There being no response, your request is granted.

17        (Declaration of Mr. Odenweller at ECF 1889 was hereby

18   received into evidence as Debtors' Exhibit, as of this date.)

19             MR. GRETZ:  Thank you, Your Honor.  I also want to

20   remind the Court that the debtors have adjourned this objection

21   with respect to a single claim, claim 2011, by The Cargo

22   Security Company, to next month's omnibus hearing.  The debtors

23   received approval from the Court before filing this

24   adjournment, which is on the docket at ECF 2049.

25             THE COURT:  All right.  Thank you.

1          MR. GRETZ:  You're welcome.  As set out in the

2    objection and the accompanying FTI declaration, the debtors

3    have objected to each claim on Exhibit 1 to the proposed order

4    on the grounds that each is a duplicate of another claim.

5          Each claim corresponds to a surviving claim, also

6    listed on Exhibit 1, that asserts the same purported liability

7    against the same debtor entity by the same claimant.  Through

8    this objection, the debtors seek to avoid the possibility of

9    double recovery on the same claim.

10          As such, Your Honor, unless you have any questions,

11    pursuant to Rule 3007 and the claims procedures order, the

12    debtors request that each of the eight remaining duplicate

13    claims listed on Exhibit 1 to the proposed order, again,

14    excluding claim 2011, which has been adjourned to next month's

15    omnibus hearing, be disallowed in full.

16          THE COURT:  Is there anyone else who'd like to be

17    heard on this matter?

18          There being no response, based upon the undisputed

19    facts set forth in support of the objection, I find that you've

20    established grounds for the requested relief.  I sustain the

21    objection with respect to each of the claims, with the

22    exception of claim 2011, that has -- the hearing on which has

23    been adjourned until next month.

24          If you'll please submit the order?

25          MR. GRETZ:  Thank you, Your Honor.  We'll do so -- we

1  will do so.

2          THE COURT:  Thank you.

3          MR. GRETZ:  Items 6 and 7 on the agenda concern two

4  omnibus claims objections that both relate to claims for which

5  the debtors assert, based on a review of the debtors' books and

6  records, that there's no liability owed, as set forth in the

7  claims.

8          They're split into two separate omnibus objections

9  because there are 355 claims total, and the claims procedures

10 order only authorizes the debtors to file omnibus objections up

11 to 250 claims at a time.

12         I'm happy to present these two omnibus claims

13 objections separately, or instead go through them both

14 together, whichever Your Honor prefers.

15         THE COURT:  Well, we can do them together.  So why

16 don't you go ahead.  I've got a couple of questions, but

17 let's -- we can do it together.  Why don't you proceed.

18         MR. GRETZ:  Okay.  Thank you, Your Honor.

19         The seventeenth omnibus objection is at ECF 1890 and

20 tab 6 of your binder; and the eighteenth omnibus objection is

21 at ECF 1891 and tab 7 of your binder.  Both relate to claims

22 for which the debtors assert, based on a review of the debtors'

23 books and records, that there is no liability owed, as set

24 forth in the claims.

25         Before moving forward with walking through these

LATAM AIRLINES GROUP S.A., et al.                    38

 1   objections, I'd like to move the declarations of John

 2   Odenweller at FTI, which are attached to the seventeenth and

 3   eighteenth omnibus objections, into the record.

 4          THE COURT:  Is there anyone who'd like to be heard

 5   with respect to that request?

 6          There being no response, for cause shown, the request

 7   is granted.

 8      (Declaration of Mr. Odenweller at ECF 1890 was hereby

 9   received into evidence as Debtors' Exhibit, as of this date.)

10      (Declaration of Mr. Odenweller at ECF 1891 was hereby

11   received into evidence as Debtors' Exhibit, as of this date.)

12          MR. GRETZ:  Thank you, Your Honor.

13          As set forth in the objections and the accompanying

14   FTI declarations, the debtors have objected to each claim on

15   Exhibit 1 to the proposed orders within the seventeenth and

16   eighteenth omnibus objections on the grounds that based on a

17   review of the debtors' books and records, there is no liability

18   owed as set forth in the claims, and the debtors have not

19   received any supporting documentation that would enable the

20   debtors to understand the claims' purported bases for

21   liability.

22          Through these objections, the debtors seek to avoid an

23   unwarranted recovery against the debtors to the detriment of

24   other similarly situated creditors.

25          Unless you have any questions, Your Honor, pursuant to

1  Rule 3007 and the claims procedures order, the debtors request

2  that each of the 250 claims listed on Exhibit 1 to the proposed

3  order accompanying the seventeenth omnibus objection, and that

4  each of the 105 claims listed on Exhibit 1 to the proposed

5  order accompanying the eighteenth omnibus objection be

6  disallowed in full.

7          THE COURT:  All right.  What's the difference between

8  a no-liability objection and a multiple-debtor-claim objection?

9          MR. GRETZ:  Your Honor, to be clear, the debtors are

10 asserting, with respect to these objections, that there is no

11 liability -- let me start over.

12         These claims -- some of these claims were improperly

13 filed against multiple debtors, and we do note this in each of

14 these objections.  But they also contradict the debtors' books

15 and records, and after careful review and consideration of the

16 information provided by the claimants, the debtors deny this

17 liability as to the debtors set forth in these claims.

18         So in our minds, it's six in one hand and a half-a-

19 dozen in the other.  And to be clear, the debtors are asserting

20 with respect to these objections, the basis for there being no

21 liability set forth in the claims is that for all 250 claims in

22 the seventeenth objection and a portion of the claims in the

23 eighteenth objection, is that they were filed against multiple

24 debtors and that these specific claims that we are objecting to

25 were brought against an incorrect debtor.

1           THE COURT:  Okay, but wait.  So they're brought

2   against -- but you're saying they're brought against an

3   incorrect debtor and there's no liability reflected in that

4   debtor's books and records?

5           MR. GRETZ:  That's right, Your Honor.

6           THE COURT:  All right.  That didn't jump out at me.  I

7   understand the distinction that you're making.  But it seems --

8   okay.

9           Is there anyone else who'd like to be heard with

10  respect to this matter?

11          All right, there being no response, based upon my

12  review of the evidence submitted in supported of the

13  objections, I sustain both objections at 1890 and 1891.  You'll

14  submit an order, please?

15          MR. GRETZ:  Thank you, Your Honor.  We'll do so.

16          I'll now turn the podium over to my colleague, Thomas

17  Lynch, to present the next item on the agenda.

18          THE COURT:  All right, thank you.

19          MR. LYNCH:  Good morning, Your Honor.  This is Thomas

20  Lynch of Cleary Gottlieb, on behalf of the debtors.  Can you

21  hear me, Your Honor?

22          THE COURT:  I can.  Thank you, Mr. Lynch.

23          MR. LYNCH:  Thank you, Your Honor.  The next item on

24  your agenda is agenda item number 8, the debtors' motion for an

25  order authorizing the debtors to implement certain

1  transactions, including entry into an omnibus amendment deed

2  with Sapucaia Leasing Limited; PK AirFinance US, LLC; and PK

3  Air 1 LP.  This is at docket number 1973.  The debtors filed

4  the motion on March 10th, 2021, and it is located at tab 8 of

5  your binder.

6          The debtors respectfully submit that the omnibus

7  amendment deed should be approved.  The debtors currently lease

8  three aircraft from Sapucaia Leasing Limited, who in turn, is

9  the borrower under certain loan agreements with PK AirFinance

10  US, LLC, as agent and security agent, and PK Air 1 LP, as

11  lender.

12          Exercising their business judgment, the debtors have

13  determined that entry into the omnibus amendment deed will

14  further their goal of right-sizing and restructuring their

15  fleet obligations.

16          The agreement is the product of arm's-length

17  negotiations and allows the debtors to realize considerable

18  savings by locking in a favorable power by the hour-based rent

19  for a period of time and a reduced monthly rent with an

20  extended repayment term.

21          The agreement also resolves certain claims in a manner

22  that the debtors believe is favorable to their estates, by

23  enumerating the categories of permissible claims while

24  preserving the debtors' ability to object to the amount of such

25  claims.

1      Entry into the omnibus amendment deed will give the

2  debtors the flexibility to manage their aircraft fleet when

3  they emerge from the Chapter 11 proceedings.

4      After filing the motion, the debtors received comments

5  from the ad hoc group of bondholders regarding the form of the

6  proposed order.  Based on those conversations the debtors filed

7  a notice of revised proposed orders at docket number 2058 on

8  March 24th, 2021.

9      Unless Your Honor has any questions at this time, the

10 debtors respectfully request that Your Honor approve the motion

11 and enter an order substantially in form of the revised

12 proposed order attached to docket number 2058.

13      THE COURT:  Is there anyone else who'd like to be

14 heard with respect to this matter?

15      All right, there being no response, I've reviewed the

16 papers.  I find good cause for the relief requested.  The

17 motion is granted.  You'll submit the order, please?

18      MR. LYNCH:  Thank you, Your Honor.  We will.

19      I'll now pass it off to my colleague, Kimberly Black,

20 to present the next item on the agenda.

21      THE COURT:  All right, Ms. Black?

22      MS. BLACK:  Thank you, Your Honor.  For the record,

23 Kimberly Black of Cleary Gottlieb, for the debtors.  Today I'm

24 presenting agenda item 9, which should also be tab 9 in your

25 binder.

1        This is the debtors' motion for an order authorizing

2   the debtors to implement certain transactions, including entry

3   into lease agreements with Wilmington Trust Company, solely in

4   its capacity as trustee, docket number 1975.

5        On June 24th, 2020, this Court approved the debtors'

6   rejection of seventeen pre-petition aircraft leases.  Since

7   then, the debtors have engaged in arm's-length negotiations

8   regarding the terms for re-leasing certain of their rejected

9   aircraft.

10       As a result of these discussions, the debtors and

11   Wilmington Trust Company, solely in its capacity as trustee,

12   have reached an agreement on new lease terms for eleven of the

13   previously rejected aircraft.  The new lease agreements were

14   filed as exhibits to the motion.

15       The new lease terms are fair and equitable and better

16   aligned with the debtors' future business plans.  The new lease

17   agreements will afford the debtors more flexibility to manage

18   their aircraft obligations when they emerge from Chapter 11 and

19   are in the best interests of the estate.

20       In addition, following the lease rejections,

21   Wilmington Trust Company and other parties-in-interest filed a

22   number of claims against LATAM Parent and certain of its debtor

23   affiliates.  In connection with the lease agreement

24   negotiations, the debtors and the claimants negotiated a

25   stipulation memorializing certain agreements regarding those

1  proofs of claim.

2        The stipulation is an important step, as the debtors

3  continue their efforts to reconcile the thousands of claims

4  filed against them.

5        After filing the motion, the debtors received informal

6  comments from the creditors' committee and ad hoc bondholder

7  group regarding the form of the proposed order.  Based on those

8  conversations, the debtors filed a notice of revised proposed

9  order at docket number 2034, and then a further notice of

10 revised proposed order at docket number 2058.

11       The motion is going forward on an uncontested basis,

12 so unless Your Honor has any questions at this time, the

13 debtors respectfully request that Your Honor approve the motion

14 and enter an order substantially in the form of the further

15 revised proposed order attached to docket number 2058.

16       THE COURT:  All right.  I don't have any questions.

17       Does anyone else wish to be heard on this matter?

18       There being no response, based upon the undisputed

19 facts set forth in support of the relief requested, I find that

20 the debtor has established cause for the requested relief.  The

21 motion is granted.  You'll submit the order, please.

22       MS. BLACK:  Thank you, Your Honor.

23       THE COURT:  Thank you.

24       MS. BLACK:  Next, I'm presenting -- next, I'm

25 presenting agenda item 10, which should be at tab 10 of your

1   binder.  This is the debtors' motion for an order authorizing

2   the debtors to implement certain transactions, including entry

3   into lease amendment agreements with Bank of Utah, docket

4   number 1976.

5        The debtors currently lease ten aircraft from the Bank

6   of Utah, solely in its capacity as owner-trustee.  After arm's-

7   length negotiations, the debtors and the lessor have reached an

8   agreement on lease amendments that will allow the debtors to

9   further their goal of restructuring their fleet obligations.

10        In particular, the lease amendments allow the debtors

11   to lock in favorable power by the hour rent for a period of

12   time, as well as reduce future rent for the remainder of the

13   lease terms.

14        The terms of the lease amendments are fair and

15   reasonable and represent a sound exercise of the debtors'

16   business judgment.  The amendments also settle certain claims

17   in a manner that the debtors believe are in the best interests

18   of the estate.  In particular, the lease amendments set out

19   categories of permissible claims as well as the priority

20   thereof, while preserving the debtors' right to object to the

21   amount of those claims.

22        After filing the motion, the debtors received informal

23   comments from the creditors' committee and ad hoc bondholder

24   group regarding the form of the proposed order.  Based on those

25   conversations, the debtors filed a notice of revised proposed

LATAM AIRLINES GROUP S.A., et al.                    46

1  order at docket number 2034, and then a further notice of
2  revised proposed order at docket number 2058.

3         The motion is going forward on an uncontested basis,
4  so unless Your Honor has any questions at this time, the
5  debtors respectfully request that Your Honor approve the motion
6  and enter an order substantially in the form of the further
7  revised proposed order attached to docket number 2058.

8         THE COURT:  Does anyone else wish to be heard with
9  respect to this matter?

10        There being no response, based upon the undisputed
11  facts set forth in support of the motion, I find that the
12  debtor has established grounds for the relief requested.  The
13  motion is granted.  You'll please submit the order.

14        MS. BLACK:  Thank you, Your Honor.  I will now hand it
15  back over to my colleague Thomas Lynch, who will be presenting
16  the next item on the agenda.

17        THE COURT:  All right, Mr. Lynch?

18        MR. LYNCH:  Good morning, again, Your Honor.  For the
19  record, this is Thomas Lynch of Cleary Gottlieb, on behalf of
20  the agenda -- on behalf of the debtors.

21        Next on the agenda is agenda item number 11, the
22  debtors' motion for an order authorizing the debtors to
23  implement certain transactions, including entry into a lease
24  amendment agreement with AWAS 5234 Trust.  This is at docket
25  number 1977.  The debtors filed the motion on March 10th, 2021;

 1  and it's located at tab 11 of your binder.

 2          The debtors respectfully submit that the lease

 3  amendment agreement should be approved.  The debtors currently

 4  lease one aircraft from AWAS 5234 Trust.  In exercising their

 5  business judgment, the debtors have determined that entry into

 6  the lease amendment agreement will further their goal of right-

 7  sizing and restructuring their fleet.

 8          The agreement is a product of arm's-length

 9  negotiations and allows the debtors to realize considerable

10  savings by locking in favorable power by the hour-based rent

11  for a period of time and reduced future rent for the remainder

12  of the lease.

13          The agreement also resolves certain claims in a manner

14  that the debtors believe is favorable to their estates by

15  enumerating the categories of permissible claims while

16  preserving the debtors' ability to object to the amount of such

17  claims.

18          Entry into the lease amendment agreement will give the

19  debtors the flexibility to manage their aircraft fleet when

20  they emerge from the Chapter 11 proceedings.

21          After filing the motion, the debtors received informal

22  comments from the creditors' committee and the ad hoc group of

23  bondholders regarding the form of the proposed order.  Based on

24  those conversations, the debtors filed a notice of revised

25  proposed orders at docket number 2034 and then a further notice

LATAM AIRLINES GROUP S.A., et al.                    48

1  of revised proposed orders at docket number 2058.

2          Unless Your Honor has any questions at this time, the

3  debtors respectfully request that Your Honor approve the motion

4  and enter an order substantially in the form of the further

5  revised proposed order attached to docket number 2058.

6          THE COURT:  I do not have any questions.

7          Does anyone else wish to be heard?

8          Based upon the undisputed facts set forth in support

9  of the motion, I find that the debtors have established grounds

10 for the requested relief.  The motion is granted.  You'll

11 submit the order.

12         MR. LYNCH:  Thank you, Your Honor.  We will.

13         THE COURT:  Thank you.

14         MR. LYNCH:  Turning to the next item on the agenda,

15 agenda item number 12, this is the debtors' motion for an order

16 authorizing the debtors to implement certain transactions,

17 including entry into a lease amendment agreement with Aviator

18 IV 3058 Limited.  This is docket number 1978.  The debtors

19 filed the motion on March 10th, 2021, and it should be located

20 at tab 12 of your binder.

21         THE COURT:  Thank you.

22         MR. LYNCH:  The debtors respectfully submit that the

23 lease amendment agreement should be approved.  The debtors

24 currently lease one aircraft from Aviator IV 3058, Limited.  In

25 exercising their business judgment, the debtors have determined

1    that entry into the lease amendment agreement will further

2    their goal of right-sizing and restructuring their fleet.

3            The agreement is a product of arm's-length

4    negotiations and allows the debtors to realize savings by

5    locking in a favorable power by the hour-based rent for a

6    period of time and a reduced future rent for the remainder of

7    the lease.

8            The agreement also resolves certain claims in a manner

9    that the debtors believe is favorable to their estates by

10   enumerating the categories of permissible claims while

11   preserving the debtors' ability to object to the amount of such

12   claims.

13           Entry into the lease amendment agreement will give the

14   debtors the flexibility to manage their aircraft fleet when

15   they emerge from the Chapter 11 proceedings.

16           Again, after filing the motion, the debtors received

17   informal comments from the unsecured creditors' committee and

18   the ad hoc group of bondholders regarding the form of the

19   proposed order.  Based on those conversations, the debtors

20   filed a notice of revised proposed orders at docket number 2034

21   and then a further notice of revised proposed orders at docket

22   number 2058.

23           Unless Your Honor has any questions at this time, the

24   debtors respectfully request that Your Honor approve the motion

25   and enter an order substantially in the form of the further

1  revised proposed order attached to docket number 2058.

2            THE COURT:  All right, thank you.

3            Does anyone else wish to be heard on this matter?

4            All right, I've had an opportunity to review the

5  application and I find that the facts submitted in support of

6  the application demonstrate that the relief -- the debtor is

7  entitled to the relief that the debtor is seeking.

8            The motion is granted; you'll submit the order,

9  please.

10            MR. LYNCH:  Thank you, Your Honor.  We will.

11            THE COURT:  Thank you.

12            MR. LYNCH:  And I will now pass it over to my

13  colleague Lisa Schweitzer who will address the next item on the

14  agenda.

15            THE COURT: All right.  Ms. Schweitzer?

16            MS. SCHWEITZER:  Thank you, Your Honor.  For the

17  record, Lisa Schweitzer from Cleary Gottlieb, for the debtors.

18  We're now turning to the one motion that's listed on the agenda

19  as a contested matter, which is the application to retain

20  Boston Consulting Group, or BCG.  This is the only contested

21  matter on the agenda today.

22            And by this application, as set forth in the

23  application, the debtors seek to retain Boston Consulting

24  Group, Inc. and Boston Consulting Group UK LLP, which we

25  together refer to as BCG, as a strategic advisor to the

1   debtors.

2         In particular, the debtors are proposing to engage BCG

3   for a discrete engagement related to the development of their

4   five-year business plan.  And as set forth in the engagement

5   letter and application, the debtors are seeking to have BCG

6   provide independent and objective external support to update

7   the debtors' five-year business plan and assist in the

8   refinement of the plan, and particularly including with a focus

9   on the five-year demand recovery for the debtors and an

10  assessment of the company's passenger revenue projections in

11  their five-year business plan.

12        The engagement contemplates a fixed fee under which

13  BCG also could develop additional support and materials and

14  provide testimony, if necessary or required by the debtors.

15        The debtors view this engagement of BCG as

16  complementary to and not duplicative of the work being done by

17  other advisors engaged in this case, including, without

18  limitation, PJT Partners and FTI, where the debtors have

19  determined they can benefit from the advice and opinions of

20  BCG, as they work to refine these specific aspects of their

21  five-year business plan and their projections, and particularly

22  given the current uncertainties in the airline passenger

23  markets.

24        As detailed in the application and the accompanying

25  declarations, including the declaration of Mr. Jason

LATAM AIRLINES GROUP S.A., et al.                    52

1    Guggenheim, who is a managing director and a senior partner at

2    BCG, BCG has expertise in both restructuring situations and

3    substantial experience in the airline industries that the

4    debtors believe will be invaluable to their efforts to

5    formulate this business plan and their projections and in

6    furtherance of their ultimate goal of developing a plan and

7    emerging from Chapter 11.

8            BCG serves as an advisor to ten -- seven of the ten

9    largest airline network carriers and eight of the top twenty

10   low-cost carriers.  BCG's TURN group also has substantial

11   experience in advising companies on business transformations,

12   including in bankruptcy cases such as Hertz and American

13   Airlines.

14           And the debtors propose to engage BCG under Bankruptcy

15   Code Section 328(a) on a fixed-fee arrangement for this limited

16   engagement.

17           We also note that in addition to the other

18   declarations supported in -- in support of the application from

19   Mr. Alfonsin and Mr. Guggenheim, at the request of the United

20   States Trustee, BCG provided a supplemental declaration of Mr.

21   Jason Guggenheim, and it was provided in response to certain

22   comments and clarifications sought by the United States

23   Trustee; and it clarifies the disclosures made in Mr.

24   Guggenheim's initial declaration with respect to its conflicts

25   database and certain investment funds that are disclosed in the

LATAM AIRLINES GROUP S.A., et al.                    53

1  first declaration.

2        No objections have been filed by the U.S. Trustee, the

3  creditor committee, or any party-in-interest in this case,

4  other than a limited objection filed by Mr. Adam Gui, G-U-I.

5        In this limited objection, Mr. Gui, who claims himself

6  as a purported LATAM shareholder, seeks clarification to three

7  points.  It doesn't seem that he actually objects to the

8  engagement of BCG, but just asks that information be provided

9  with respect to the fact that BCG will serve as a strategic

10 advisor to the company and the scope of its work; second of

11 all, that -- how it would work in comparison to PJT or FTI,

12 that it's not a duplicative engagement; and that third, had

13 raised some questions regarding BCG's engagements with Avianca

14 that were actually disclosed in Mr. Guggenheim's declaration.

15       And the debtors have filed a reply at ECF number 2070

16 and addressed all of these issues in their reply.  In

17 particular, these requests for information regarding the

18 additional disclosures or BCG's role and qualifications, are

19 actually in the original application papers and other

20 supporting declarations.

21       First, as we note, that and as is detailed in the

22 application, the declarations, and the engagement letter, the

23 debtors are seeking to retain BCG as a strategic advisor who

24 will directly assist the debtors in the formulation of their

25 five-year business plan, and particularly certain narrow

1  aspects of that plan.

2         Mr. Alfonsin, LATAM's chief financial officer who

3  signed the BCG application, is obviously well-aware of the

4  scope and the nature of the engagement, and it's pretty clear

5  from the face of the document submitted what that scope is.

6         Mr. Gui also has not challenged BCG's credentials

7  generally or their (sic) appropriateness of their engagement

8  for this role.  And we believe there's no serious challenge

9  that could be raised, in light of their substantial experience

10  as has been disclosed.

11         Second, as I disclosed earlier and I just made the

12  point, is that as is clear from the application and the

13  declarations, BCG has a unique wealth of experience in both

14  restructuring situations and in the airline industry.  And

15  those wealth of experience are relevant to BCG's engagement in

16  this limited mandate, to focus on the revenue -- projected

17  passenger revenue aspects of the debtors' five-year business

18  plan.

19         It's a discrete engagement.  It's being done at a

20  fixed-fee arrangement, and it's wholly prudent for the debtors,

21  and indeed, within their business judgment, given the current

22  state of the airline industry and uncertainty regarding the

23  recovery of passenger revenues over time, in light of the

24  current pandemic, for them to seek to engage an additional

25  outside strategic consultant to assist them in the development

1   of their plan.

2          Notably, again, no party-in-interest other than Mr.

3   Gui as a purported shareholder, has raised any concern

4   regarding BCG's role and their expertise and how they are

5   complementing FTI and PJT in their roles in these cases.

6          Finally, as there was a question raised with respect

7   to the work that BCG has done for Avianca or specifically

8   asking whether they're doing current work for Avianca, as

9   detailed in Mr. Guggenheim's declaration, BCG performed work

10  for Avianca in 2018 and 2020, such that they have provided the

11  disclosures that apparently are being sought.

12         There's no further disclosure that's required, in our

13  opinion, and there's no basis for the debtors to believe -- and

14  no other party-in-interest has raised a question or concern

15  regarding BCG's disinterestedness in this case or their ability

16  to properly advise LATAM with respect to this limited

17  engagement.

18         As such, the debtors respectfully request that Mr.

19  Gui's limited objection or request for clarification should be

20  overruled or found satisfied, and that they should not

21  otherwise prevent the approval of the application for the

22  engagement of BCG in this role.

23         As a matter of housekeeping, I would respectfully

24  request that the three declarations be moved into evidence.

25  It's Mr. Alfonsin's declaration and Mr. Guggenheim's initial

1  and supplemental declarations, which were submitted in support

2  of the application.

3          THE COURT:  All right.  Is there anyone who wishes to

4  be heard with respect to that request?

5          Being no response --

6          MR. GUI:  Your -- I apologize, Your Honor.  This is

7  Adam Gui.  I'd like to -- I'd like to be heard, if that's okay?

8          THE COURT:  On the request as to admitting the

9  declarations in as the direct testimony?

10          MR. GUI:  Oh, no, no.  Not that.

11          THE COURT:  Okay.  So I'm going to -- I'm going to

12  grant that.  So that means -- so the declarations are in.  That

13  is the direct testimony.

14      (Declaration of Mr. Alfonsin was hereby received into

15  evidence as Debtors' Exhibit, as of this date.)

16      (Declaration of Mr. Guggenheim was hereby received into

17  evidence as Debtors' Exhibit, as of this date.)

18      (Supplemental declaration of Mr. Guggenheim was hereby

19  received into evidence as Debtors' Exhibit, as of this date.)

20          THE COURT:  Is there anything, Ms. Schweitzer, that

21  you would like to add to what you've already presented to the

22  Court?

23          MS. SCHWEITZER:  Sure, Your Honor, thank you for

24  asking.

25          Unless Your Honor has any other further questions, I'm

LATAM AIRLINES GROUP S.A., et al.                    57

1   happy to cede the podium, other than to note that we obviously

2   respectfully request that the application be granted and the

3   order be entered.

4           THE COURT:  All right.  Is there anyone else who'd

5   like to be heard in support of the application?

6           Okay, then Mr. Gui?  And I hope I'm pronouncing your

7   last name correctly.

8           MR. GUI:  Yes, that's -- that's perfect.  Thank you

9   for hearing from me today.  I'm a retail shareholder, and I own

10  approximately 100,000 shares of LATAM Airlines' common stock.

11  I don't have any other interest in this case.

12          I agree with most of Ms. Schweitzer's

13  characterization.  But I do want to seek further clarification

14  on a few items.  And I do fully support the company getting the

15  help it needs to figure out a business plan for -- for such a

16  complex restructuring.

17          First, I still don't really understand why the company

18  needs so many people to help them with their business plan.  I

19  do know that BCG has a strong reputation and they certainly

20  seem qualified to help based on their credentials.  But the

21  company already has PJT and FTI and McKinsey, among others,

22  helping them.  So I'd just like to better understand what

23  exactly it is that BCG is going to do that the smart and hard-

24  working folks over at the other advisors are -- are not able

25  to.

1          And second, I asked whether BCG has any ongoing

2    contractual or ethical obligations to a competitor called

3    Avianca that could impact their work for the debtor.  I did see

4    that the company's lawyers, in their reply to my limited

5    objection, described this question as ill-founded, and said

6    that BCG did not disclose any current pending matters.

7          But I guess I just maybe don't understand

8    sophisticated lawyer-speak.  And if that's the case I

9    apologize.  But to me, that means BCG doesn't have a current

10   active engagement, but it doesn't preclude the possibility that

11   BCG has some tail obligations to Avianca based on their prior

12   engagements, which were as recent as 2020.  So I'd just like

13   some clarification on that.

14         And lastly, and I think perhaps most importantly, to

15   me as a shareholder, the CFO's affidavit in support of

16   retaining BCG described them as an investment banker.  And I

17   don't understand BCG to be offering their services in an

18   investment banking capacity today.  And I don't know if that

19   was just a mistake in the affidavit or if there was some

20   genuine misunderstanding on the CFO's part, because he is not a

21   signatory to the engagement letter.

22         But as a shareholder, it's very important to me that

23   the company's focused on getting the details right, especially

24   for a business that is as competitive and complicated as

25   running an airline.

LATAM AIRLINES GROUP S.A., et al.                    59

1        If it's a misunderstanding by the CFO about BCG's
2   role, I think that needs to be fixed.  And alternatively, if
3   it's just a mistake in the affidavit, I think that should be
4   fixed as well.

5        So that's all I have today, Your Honor.  Thank you for
6   hearing me.

7        THE COURT:  Okay, Ms. Schweitzer, why don't you start
8   with the last one first.

9        MS. SCHWEITZER:  Sure, thank you, Your Honor.

10       I believe we addressed it in the reply, but I'm happy
11   to address it again, which is that Mr. Gui seems to focus on a
12   statement in the affidavit which clearly makes clear that
13   they're engaging -- they're engaging BCG as a strategic
14   advisor, that in lieu of hiring them, that you might otherwise
15   hire another investment banker -- if we didn't say "investment
16   banker or strategic consultant", I'm not -- I guess everyone --
17   it's fair for him to raise if he has a question or concern.

18       But I don't think that there's any real question or
19   concern about some purported confusion on Mr. Alfonsin's part
20   as to the nature of the engagement or the services being
21   provided, where Mr. Alfonsin is a signatory to the application
22   and which itself attaches an engagement letter.

23       And obviously Mr. Alfonsin would be interfacing with
24   BCG in and of itself, with respect to the actual services being
25   provided.  So I'm happy -- I believe we had clarified that, but

1   I'm happy to clarify it in open court as well, that it's quite

2   clear that they are being engaged as a strategic advisor, and

3   the scope of their engagement is set forth in the engagement

4   letter and throughout.

5           THE COURT:  All right.  And I've had an opportunity to

6   review the engagement letter as well as all of the papers

7   submitted in support of and in opposition to the motion.

8           So Mr. Gui, I think and I find that based upon the

9   matters set forth in the reply and in the motion, I think it's

10  clear that BCG is being asked to provide strategic advisory

11  services, as you've recognized, in an area that they're quite

12  competent to provide services.  They've not been retained as an

13  investment banker.

14          And from my perspective, in reading lots and lots of

15  papers in this matter, I find that to the extent that there may

16  have been, apparently, a misuse of the term "investment banker"

17  it does not reflect -- from my perspective, it doesn't reflect

18  any misunderstanding on the part of Mr. Alfonsin or the debtors

19  as to what they're getting into through the retention of BCG.

20          So most respectfully, to the extent that that's still

21  part of an objection, most respectfully I'm going to overrule

22  that aspect of your objection.

23          Ms. Schweitzer, to the next point, please.

24          MS. SCHWEITZER:  Sure.  If we take them in reverse

25  order, I believe that Mr. Gui is also asking, it would appear,

1   for further disclosure with respect to details regarding prior

2   engagements between BCG and Avianca.  And I guess I'm not quite

3   sure specifically what he's looking for if they have

4   contractual or ethical obligations.

5           But I believe that BCG has complied with the

6   Bankruptcy Code requirements in terms of engaging -- in terms

7   of disclosing the nature and scope of these prior engagements

8   with Avianca and the fact that they are prior engagements and

9   not current pending engagements.

10          So I believe that they have met the proper disclosure

11  requirements and note that the United States Trustee and no

12  other party is raising concerns with the sufficiency of the

13  disclosure of those relationships.

14          THE COURT:  And you would agree, would you not, that

15  if there was a tail in some -- a tail end to the -- or

16  obligations due and owing, subsequent to the completion of the

17  services in 2018 or 2019, those would be matters that would

18  have to be disclosed, pursuant to the disclosure requirements

19  associated with the retention of professionals?

20          MS. SCHWEITZER:  I would generally agree with that.  I

21  would note maybe -- I have no idea, like if a party has a

22  continuing confidentiality obligation or something along that

23  line --

24          THE COURT:  Sure.

25          MS. SCHWEITZER:  -- there may be something like that,

1   that you would consider a tail obligation.  But I don't think

2   it's a tail work obligation.

3            THE COURT:  Yes.

4            MS. SCHWEITZER:  But certainly --

5            THE COURT:  Yeah.  I'm sorry -- I'm sorry to interrupt

6   you.  Your point is very, very well taken.  I thought it -- was

7   thinking more from a financial or strategic perspective.

8            MS. SCHWEITZER:  That's right.  If there was

9   continuing work strategy or monetary obligations, those would

10  typically be disclosed as part of the declaration.

11           THE COURT:  Right.  And I'm sat -- Mr. Gui, to the

12  extent that you have questions about that, I'm satisfied that

13  the disclosure made in the -- in the application, by Mr.

14  Guggenheim, is adequate.  And a part of that is, one, based

15  upon my review of what's in the application and what the

16  standards are; but also knowing that the creditors' committee

17  and the United States Trustee have focused very closely, no

18  doubt, on these matters.  Certainly the U.S. Trustee has been

19  heard as it relates to this matter.

20           So again, to the extent that that's still part of your

21  objection to the retention of BCG, I most respectfully overrule

22  it.

23           MS. SCHWEITZER:  Your Honor --

24           THE COURT:  Ms. Schweitzer?

25           MS. SCHWEITZER:  -- Lisa -- thank you, Your Honor.  I

LATAM AIRLINES GROUP S.A., et al.                    63

1  was just going to address his first point which is the last
2  point, which is Mr. Gui's raising the question or continuing to
3  raise the question why LATAM believes that it needs to engage
4  an additional outside advisor with respect to the development
5  of the business plan, where it has engaged other advisors for
6  other purposes, including FTI, which provides certain advice to
7  the debtor with respect to the claims or budgeting; and PJT,
8  which serves as an investment banker, and is, in that role,
9  providing advice with respect to certain aspects of the
10  company's restructuring, reorganization, and its business plan.

11          And as I had previously indicated, but I'm happy to
12  reiterate, that BC -- the company, particularly given the
13  industry, the nature of the industry, and the current situation
14  in the world, has determined, in its business judgment, that
15  it's appropriate to have a discrete engagement with BCG, given
16  their particular expertise in the airline industry and with
17  their footprint and their turnaround expertise to give them --
18  the company particular -- another strategic opinion or voice or
19  input with respect to the passenger revenue aspects of the
20  five-year plan.

21          So the debtors have determined that it is appropriate
22  and it isn't duplicative in a way that would be harmful or
23  unnecessary for the company, at this time.

24          THE COURT:  All right.  I've had an opportunity to
25  review, as I said, the application, as well as the agreements,

LATAM AIRLINES GROUP S.A., et al.                    64

1  et cetera.  And I am satisfied, that upon the matters set forth

2  in the application and in the reply, that the debtors have

3  demonstrated that there is a need for the unique type of

4  expertise that BCG brings to the table, so to speak, as it

5  relates to the strategic options available to the debtors in

6  turning around their business.

7        I note, as Mr. Gui has mentioned, there are a lot of

8  professionals that have been retained.  I'm satisfied, based

9  upon my review of the documents as well as listening to the

10 matters on the record today, that there will be no overlap,

11 there will be no duplication of efforts.  It's very clear that

12 BCG has a discrete -- very significant but discrete role as

13 they move forward -- the debtor moves forward in formulating an

14 exit strategy in these cases.

15       So to the extent, Mr. Gui, that was still a basis for

16 your objection, I most respectfully overrule the objection.

17       And with all of that, again, based upon my review of

18 the matters, I find that the debtors have established grounds

19 for the requested relief.  The motion is granted, and you'll

20 please submit an order, Ms. Schweitzer.

21       MS. SCHWEITZER:  Yes, Your Honor.  We'll submit one to

22 your chambers.

23       With that, I believe we've finished the agenda for

24 today, and we appreciate you taking the time this morning to

25 have these matters heard.

1          THE COURT:  All right, thank you.

2          Does anyone else need to be heard?

3          Okay, thank you all very much.  Have a good day.

4          IN UNISON:  Thank you, Your Honor.

5       (Whereupon these proceedings were concluded at 12:18 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X

 2                    E X H I B I T S

 3   DEBTORS'      DESCRIPTION           MARKED   ADMITTED

 4   B             Dmitry Krivin                    18

 5                 declaration

 6   C             Alex Dichter declaration         18

 7   D             Juan Carlos Mencio               18

 8   Docket Item

 9   1979          Dmitry Krivin                    19

10                 supplemental declaration

11   --            Declaration of Mr.               31

12                 Odenweller at ECF 1886

13   --            Declaration of Mr.               32

14                 Odenweller at ECF 1887

15   --            Declaration of Mr.               33

16                 Odenweller at ECF 1888

17   --            Declaration of Mr.               33

18                 Odenweller at ECF 1889

19   --            Declaration of Mr.               38

20                 Odenweller at ECF 1890

21   --            Declaration of Mr.

22                 Odenweller at ECF 1891           38

23   --            Declaration of Mr.               56

24                 Alfonsin

25   --            Declaration of Mr.               56
```

| 1 | Guggenheim | |
| 2 | -- Supplemental | 56 |
| 3 | declaration of Mr. | |
| 4 | Guggenheim | |
| 5 | | |
| 6 | | |

| 7 | RULINGS: | PAGE | LINE |
|---|---|---|---|
| 8 | Motion to authorize consulting | 29 | 8 |
| 9 | contracts with McKinsey & Company | | |
| 10 | Chile Ltda. is granted | | |
| 11 | Debtors' thirteenth omnibus objection | 32 | 17 |
| 12 | to claims is sustained. | | |
| 13 | Debtors' fourteenth omnibus objection | 33 | 24 |
| 14 | to claims is sustained. | | |
| 15 | Debtors' fifteenth omnibus objection | 34 | 9 |
| 16 | to claims is sustained. | | |
| 17 | Debtors' sixteenth omnibus objection | 36 | 11 |
| 18 | to claims is sustained for all claims | | |
| 19 | except 2011, which has been adjourned. | | |
| 20 | Debtors' seventeenth omnibus objection | 40 | 4 |
| 21 | to claims is sustained. | | |
| 22 | Debtors' | | |
| 23 | eighteenth omnibus objection to claims | | |
| 24 | is sustained. | | |
| 25 | | | |

| | | | |
|---|---|---|---|
| 1 | Motion to Authorize the Debtors to | 42 | 7 |
| 2 | Implement Certain Transactions, | | |
| 3 | Including Entry Into an Omnibus | | |
| 4 | Amendment Deed with Sapucaia Leasing | | |
| 5 | Limited, PK AirFinance US, LLC., and | | |
| 6 | PK Air 1 LP, granted. | | |
| 7 | Motion to Authorize the Debtors to | 44 | 12 |
| 8 | Implement Certain Transactions, | | |
| 9 | Including Entry Into Lease Agreements | | |
| 10 | with Wilmington Trust Company Solely | | |
| 11 | in its Capacity as Trustee, granted. | | |
| 12 | Motion to Authorize the Debtors to | 46 | 4 |
| 13 | Implement Certain Transactions, | | |
| 14 | Including Entry into Lease Amendment | | |
| 15 | Agreements with Bank of Utah, granted. | | |
| 16 | Motion to Authorize the Debtors to | 48 | 1 |
| 17 | Implement Certain Transactions, | | |
| 18 | Including Entry Into a Lease Amendment | | |
| 19 | Agreement with AWAS 5234 Trust, | | |
| 20 | granted. | | |
| 21 | Motion to Authorize the Debtors to | 50 | 24 |
| 22 | Implement Certain Transactions, | | |
| 23 | Including Entry Into a Lease Amendment | | |
| 24 | Agreement with Aviator IV 3058, | | |
| 25 | Limited, granted. | | |

1   Application to Employ The Boston                    64       9

2   Consulting Group, Inc. and The Boston

3   Consulting Group UK LLP as Strategic

4   Advisor to the Debtors and

5   Debtors-In-Possession Effective as of

6   the Engagement Date, granted.

1

2                          C E R T I F I C A T I O N

3

4    I, Linda Ferrara, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7       *Linda Ferrara*

8

9    _____

10   Linda Ferrara (CET-656)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  April 1, 2021

18

19

20

21

22

23

24

25

20-11254-jlg   Doc 2115   Filed 04/01/21   Entered 04/02/21 14:46:27   Main Document

LATAM AIRLINES GROUP S.A., et al.                Pg 71 of 83

Main Case No. 20-11254-jlg                                                March 31, 2021

## A

**ability (5)**
  21:1;41:24;47:16;
  49:11;55:15
**able (6)**
  22:10;23:17;
  24:24;27:1;29:8;
  57:24
**accompanying (8)**
  31:13;32:18;34:2;
  36:2;38:13;39:3,5;
  51:24
**accordingly (1)**
  27:15
**account (2)**
  24:6,17
**across (1)**
  25:11
**active (1)**
  58:10
**actual (2)**
  26:19;59:24
**actually (5)**
  14:1;19:24;53:7,
  14,19
**Ad (6)**
  6:14;42:5;44:6;
  45:23;47:22;49:18
**ADAM (3)**
  12:4;53:4;56:7
**add (1)**
  56:21
**added (1)**
  20:8
**addition (5)**
  14:10,14,24;
  43:20;52:17
**additional (5)**
  14:20;51:13;
  53:18;54:24;63:4
**address (5)**
  22:13;27:2;50:13;
  59:11;63:1
**addressed (2)**
  53:16;59:10
**adds (1)**
  20:14
**adequate (1)**
  62:14
**adjourned (5)**
  19:5;35:20;36:14,
  23;67:19
**adjournment (1)**
  35:24
**administrative (6)**
  14:13;23:20;24:5;
  25:1,10;28:10
**admitted (1)**
  18:15
**admitting (1)**
  56:8

**ADR (2)**
  13:21;14:7
**advice (3)**
  51:19;63:6,9
**advise (1)**
  55:16
**advising (1)**
  52:11
**advisor (8)**
  50:25;52:8;53:10,
  23;59:14;60:2;63:4;
  69:4
**advisors (4)**
  16:11;51:17;
  57:24;63:5
**advisory (1)**
  60:10
**affidavit (4)**
  58:15,19;59:3,12
**affiliates (1)**
  43:23
**afford (1)**
  43:17
**afforded (2)**
  23:19;25:1
**again (9)**
  25:17;29:1;36:13;
  46:18;49:16;55:2;
  59:11;62:20;64:17
**against (14)**
  13:19;14:3,19,23;
  34:7;36:7;38:23;
  39:13,23,25;40:2,2;
  43:22;44:4
**agenda (25)**
  13:11;16:13,22;
  17:4;30:8,14;34:23;
  35:7;37:3;40:17,24,
  24;42:20,24;44:25;
  46:16,20,21,21;
  48:14,15;50:14,18,
  21;64:23
**agent (2)**
  41:10,10
**agree (3)**
  57:12;61:14,20
**agreed (2)**
  19:8;28:6
**agreement (24)**
  20:12,20;27:4;
  28:11,23;41:16,21;
  43:12,23;45:8;
  46:24;47:3,6,8,13,
  18;48:17,23;49:1,3,
  8,13;68:19,24
**agreements (11)**
  15:8;17:6;41:9;
  43:3,13,17,25;45:3;
  63:25;68:9,15
**ahead (1)**
  37:16
**Air (3)**
  41:3,10;68:6

**Aircraft (13)**
  10:20;15:16;41:8;
  42:2;43:6,9,13,18;
  45:5;47:4,19;48:24;
  49:14
**AirFinance (3)**
  41:2,9;68:5
**AirFrance (1)**
  11:3
**airline (9)**
  17:12;23:2;51:22;
  52:3,9;54:14,22;
  58:25;63:16
**Airlines (6)**
  8:12;9:12;11:10,
  20;13:3;52:13
**Airlines' (1)**
  57:10
**Airways (1)**
  9:20
**ALBERT (1)**
  6:9
**ALEX (4)**
  12:6;18:5,21;
  27:21
**ALFONSIN (7)**
  11:25;52:19;54:2;
  56:14;59:21,23;
  60:18
**Alfonsin's (2)**
  55:25;59:19
**aligned (1)**
  43:16
**ALLAN (2)**
  7:7;16:18
**allow (2)**
  45:8,10
**allowed (7)**
  14:23;20:25;21:2,
  10,13;23:22;25:3
**allowing (2)**
  21:24;30:2
**allows (3)**
  41:17;47:9;49:4
**alluded (1)**
  19:3
**along (2)**
  30:11;61:22
**ALSTON (1)**
  9:19
**alternatively (1)**
  59:2
**although (1)**
  24:19
**amended (4)**
  15:8;31:2,15,22
**amending (1)**
  31:18
**amendment (19)**
  13:25;15:11;41:1,
  7,13;42:1;45:3;
  46:24;47:3,6,18;
  48:17,23;49:1,13;

**68:4,14,18,23**
**amendments (6)**
  15:13;45:8,10,14,
  16,18
**American (1)**
  52:12
**Americas (1)**
  7:4
**Americo (1)**
  11:12
**among (1)**
  57:21
**amount (5)**
  20:23;25:4;41:24;
  45:21;47:16;49:11
**amounts (2)**
  20:17,24
**AMY (1)**
  6:10
**ANDREW (1)**
  10:7
**anticipation (1)**
  15:3
**apologize (2)**
  56:6;58:9
**apparently (2)**
  55:11;60:16
**appear (2)**
  21:21;60:25
**application (37)**
  15:25;18:3,17;
  19:4,5;22:10,17;
  23:3;24:8,17;26:9;
  27:7;29:6,7,17;50:5,
  6,19,22,23;51:5,24;
  52:18;53:19,22;54:3,
  12;55:21;56:2;57:2,
  5;59:21;62:13,15;
  63:25;64:2;69:1
**appreciate (4)**
  22:11;25:17;29:2;
  64:24
**appropriate (2)**
  63:15,21
**appropriateness (1)**
  54:7
**approval (4)**
  15:11,14;35:23;
  55:21
**approve (6)**
  27:7;42:10;44:13;
  46:5;48:3;49:24
**approved (4)**
  41:7;43:5;47:3;
  48:23
**approximately (1)**
  57:10
**area (1)**
  60:11
**arguments (1)**
  21:14
**arm's- (1)**
  45:6

**arm's-length (4)**
  41:16;43:7;47:8;
  49:3
**around (2)**
  28:11;64:6
**arrangement (4)**
  17:11;23:1;52:15;
  54:20
**arrangements (2)**
  17:9;19:9
**aside (1)**
  21:13
**aspect (1)**
  60:22
**aspects (5)**
  51:20;54:1,17;
  63:9,19
**assert (2)**
  37:5,22
**asserted (3)**
  14:19;21:11;31:17
**asserting (2)**
  39:10,19
**asserts (4)**
  31:16;32:21;34:6;
  36:6
**assessment (1)**
  51:10
**assist (4)**
  23:25;51:7;53:24;
  54:25
**assistance (1)**
  17:13
**assisted (1)**
  23:25
**associated (2)**
  23:1;61:19
**assumption (1)**
  21:12
**attached (13)**
  18:4,5,6;31:5;
  32:9;33:18;35:12;
  38:2;42:12;44:15;
  46:7;48:5;50:1
**attaches (1)**
  59:22
**Attorney (2)**
  11:11,21
**Attorneys (12)**
  6:3,14;7:3,14;
  8:12;9:3,12,20;10:3,
  11,20;11:3
**authority (2)**
  20:11;29:11
**authorize (6)**
  67:8;68:1,7,12,16,
  21
**authorizes (1)**
  37:10
**authorizing (5)**
  40:25;43:1;45:1;
  46:22;48:16
**available (3)**

20-11254-jlg    Doc 2115    Filed 04/01/21    Entered 04/02/21 14:46:27    Main Document

LATAM AIRLINES GROUP S.A., et al.                    Pg 72 of 83

Main Case No. 20-11254-jlg                                                    March 31, 2021

18:9;30:23;64:5
**Avda (1)**
    11:12
**Avenue (4)**
    7:4;8:13;9:4,21
**Avianca (8)**
    53:13;55:7,8,10;
    58:3,11;61:2,8
**Aviator (3)**
    48:17,24;68:24
**avoid (4)**
    27:2;34:9;36:8;
    38:22
**avoidance (1)**
    17:21
**aware (2)**
    15:10;27:13
**AWAS (3)**
    46:24;47:4;68:19

**B**

**back (1)**
    46:15
**backbone (1)**
    15:23
**BALZA (1)**
    11:25
**Bank (4)**
    7:14;45:3,5;68:15
**banker (6)**
    58:16;59:15,16;
    60:13,16;63:8
**banking (1)**
    58:18
**bankruptcy (5)**
    13:17;26:11;
    52:12,14;61:6
**BARBRA (1)**
    10:24
**Barefoot (24)**
    13:6;16:24;17:1,2,
    3;19:3,14,17,19,21,
    24;20:3,5,7;22:25;
    23:17,24;25:9;26:4;
    29:13,15,21;30:6,7
**BARNES (1)**
    12:3
**base (1)**
    14:22
**based (26)**
    21:20;23:2;27:16;
    31:25;32:21;33:6;
    34:17;36:18;37:5,
    22;38:16;40:11;
    42:6;44:7,18;45:24;
    46:10;47:23;48:8;
    49:19;57:20;58:11;
    60:8;62:14;64:8,17
**bases (1)**
    38:20
**basis (9)**
    13:25;22:11;

30:20;31:17;39:20;
44:11;46:3;55:13;
64:15
**BC (1)**
    63:12
**BCG (40)**
    15:19,25;50:20,
    25;51:2,5,13,15,20;
    52:2,2,8,14,20;53:8,
    9,23;54:3,13;55:7,9,
    22;57:19,23;58:1,6,
    9,11,16,17;59:13,24;
    60:10,19;61:2,5;
    62:21;63:15;64:4,12
**BCG's (8)**
    52:10;53:13,18;
    54:6,15;55:4,15;59:1
**became (1)**
    24:19
**behalf (7)**
    16:18;25:25;34:7;
    35:1;40:20;46:19,20
**believes (1)**
    63:3
**benefit (2)**
    26:6;51:19
**best (2)**
    43:19;45:17
**better (2)**
    43:15;57:22
**billion (1)**
    14:20
**binder (14)**
    19:12,18,25;31:1;
    32:6;33:14;35:9;
    37:20,21;41:5;
    42:25;45:1;47:1;
    48:20
**BIRD (1)**
    9:19
**Biscayne (1)**
    6:15
**Black (7)**
    42:19,21,22,23;
    44:22,24;46:14
**blackline (3)**
    19:15;20:4;23:5
**Blvd (1)**
    9:13
**bondholder (5)**
    33:15;34:4,13;
    44:6;45:23
**Bondholders (4)**
    6:14;42:5;47:23;
    49:18
**books (6)**
    14:4;37:5,23;
    38:17;39:14;40:4
**borrower (1)**
    41:9
**BOSTON (9)**
    9:11,14;12:8;
    15:20;50:20,23,24;

69:1,2
**both (11)**
    15:14;17:19;
    22:18;23:7;26:15;
    37:4,13,21;40:13;
    52:2;54:13
**Boulevard (2)**
    6:15;11:13
**BRIAN (2)**
    8:8;27:10
**briefly (3)**
    26:3;27:22;30:22
**BRILLIANT (7)**
    7:7;16:18,18;22:4;
    29:24;30:1,4
**brings (1)**
    64:4
**brought (3)**
    39:25;40:1,2
**BS-108 (1)**
    11:13
**BUCHWALD (1)**
    8:16
**budgeting (1)**
    63:7
**burden (1)**
    25:10
**business (27)**
    15:2,21,24;16:3;
    17:11;23:1;41:12;
    43:16;45:16;47:5;
    48:25;51:4,7,11,21;
    52:5,11;53:25;54:17,
    21;57:15,18;58:24;
    63:5,10,14;64:6
**businesses (1)**
    22:20

**C**

**calendar (1)**
    13:5
**called (1)**
    58:2
**came (1)**
    23:11
**can (9)**
    13:10;24:16;35:1,
    3;37:15,17;40:20,22;
    51:19
**cap (3)**
    20:21;21:5,8
**capacity (5)**
    43:4,11;45:6;
    58:18;68:11
**care (1)**
    26:24
**careful (1)**
    39:15
**Cargo (1)**
    35:21
**CARLOS (3)**
    11:17;18:6,23

**carriers (2)**
    52:9,10
**CASE (11)**
    6:13;13:4;16:17;
    21:15;26:20;28:22;
    51:17;53:3;55:15;
    57:11;58:8
**cases (9)**
    13:4,17;14:23;
    16:9,12;26:11;
    52:12;55:5;64:14
**CATALANELLO (1)**
    9:24
**categories (5)**
    14:12;41:23;
    45:19;47:15;49:10
**cause (6)**
    18:14;32:13;
    33:22;38:6;42:16;
    44:20
**cede (1)**
    57:1
**ceiling (1)**
    20:19
**Cerillos (1)**
    11:14
**certain (26)**
    14:8;15:3;17:25;
    40:25;41:9,21;43:2,
    8,22,25;45:2,16;
    46:23;47:13;48:16;
    49:8;52:21,25;
    53:25;63:6,9;68:2,8,
    13,17,22
**certainly (3)**
    57:19;62:4,18
**cetera (1)**
    64:1
**CFO (1)**
    59:1
**CFO's (2)**
    58:15,20
**challenge (1)**
    54:8
**challenged (1)**
    54:6
**chambers (1)**
    64:22
**CHANCE (1)**
    11:2
**changed (1)**
    23:6
**changes (3)**
    19:15;20:10;25:21
**changing (1)**
    16:4
**Chapter (6)**
    26:20;42:3;43:18;
    47:20;49:15;52:7
**characterization (2)**
    26:14;57:13
**characterized (1)**
    28:17

**check (1)**
    28:12
**chief (1)**
    54:2
**Chile (5)**
    10:11;17:7;21:11;
    23:6;67:10
**claim (30)**
    23:22;25:3,7;
    28:10;31:14,15,16,
    18,19;32:19,20,21,
    23;34:3,4,4,5,5,10;
    35:21,21;36:3,4,5,5,
    9,14,22;38:14;44:1
**claimant (3)**
    31:17;34:7;36:7
**claimants (3)**
    30:20;39:16;43:24
**claims (83)**
    13:18,23,25;14:1,
    2,3,6,9,12,13,13,13,
    14,15,15,18,22,24;
    20:25;21:2,10,13,15;
    23:15;30:13,19;31:2,
    21,22;32:7;33:1,2,
    15;34:11,13;35:5,10;
    36:11,13,21;37:4,4,
    7,9,9,11,12,21,24;
    38:18;39:1,2,4,12,
    12,17,21,21,22,24;
    44:3;45:16,19,21;
    47:13,15,17;49:8,10,
    12;53:5;63:7;67:12,
    14,16,18,18,21,23
**claims' (1)**
    38:20
**clarification (5)**
    21:9;53:6;55:19;
    57:13;58:13
**clarifications (2)**
    21:6;52:22
**clarified (2)**
    21:3;59:25
**clarifies (2)**
    20:14;52:23
**clarify (1)**
    60:1
**clear (12)**
    17:19;20:11;
    22:17;28:22;39:9,
    19;54:4,12;59:12;
    60:2,10;64:11
**clearly (1)**
    59:12
**Cleary (8)**
    13:9;17:3;30:11;
    35:1;40:20;42:23;
    46:19;50:17
**CLIFFORD (1)**
    11:2
**closely (1)**
    62:17

**Code (3)**
  32:24;52:15;61:6
**colleague (8)**
  26:1;30:12;34:22;
  35:4;40:16;42:19;
  46:15;50:13
**colleagues (1)**
  30:6
**comfortable (1)**
  24:12
**coming (2)**
  14:9;15:14
**comments (6)**
  42:4;44:6;45:23;
  47:22;49:17;52:22
**Committee (25)**
  7:3;16:11,12,19;
  17:25;19:6,7;20:20;
  22:5,7;23:11;24:4,
  11,20,23;26:23;27:2,
  5,13;44:6;45:23;
  47:22;49:17;53:3;
  62:16
**committee's (3)**
  22:13,15;26:13
**common (1)**
  57:10
**communicate (1)**
  16:8
**communications (1)**
  16:10
**companies (1)**
  52:11
**Company (23)**
  9:3;10:3;12:6,7;
  13:19;17:7;23:13,
  25;25:14;29:12;
  35:22;43:3,11,21;
  53:10;57:14,17,21;
  63:12,18,23;67:9;
  68:10
**company's (4)**
  51:10;58:4,23;
  63:10
**comparison (1)**
  53:11
**compensation (1)**
  24:21
**competent (1)**
  60:12
**competitive (1)**
  58:24
**competitor (1)**
  58:2
**complementary (1)**
  51:16
**complementing (1)**
  55:5
**complete (1)**
  26:9
**completed (1)**
  23:4
**completion (1)**

**61:16**
**complex (1)**
  57:16
**complicated (1)**
  58:24
**complied (1)**
  61:5
**comply (1)**
  26:11
**compromise (1)**
  20:17
**concern (5)**
  37:3;55:3,14;
  59:17,19
**concerning (2)**
  17:11,22
**concerns (6)**
  17:8,10,13;22:13;
  27:2;61:12
**concession (1)**
  27:5
**concluded (1)**
  65:5
**conference (1)**
  13:10
**confidentiality (1)**
  61:22
**confirmed (1)**
  21:12
**conflicts (1)**
  52:24
**confusion (1)**
  59:19
**connection (2)**
  29:16;43:23
**connections (1)**
  17:23
**consensual (1)**
  27:1
**consider (1)**
  62:1
**considerable (2)**
  41:17;47:9
**consideration (1)**
  39:15
**consistent (1)**
  28:13
**consultant (3)**
  15:20;54:25;59:16
**CONSULTING (14)**
  9:11;12:5,8;15:20;
  17:6,9;19:9;29:12;
  50:20,23,24;67:8;
  69:2,3
**contain (1)**
  21:4
**contemplated (3)**
  20:11,17,18
**contemplates (1)**
  51:12
**contested (2)**
  50:19,20
**continue (11)**

**14:17,25;15:6,12,**
  16;16:6,21;19:6;
  25:14,15;44:3
**continued (1)**
  26:18
**continues (3)**
  16:1;23:25;26:24
**continuing (6)**
  13:16;14:11;16:7;
  61:22;62:9;63:2
**contract (22)**
  20:19,22;22:24,
  25;23:4,8,9,23,24,
  24;24:3,4,9,18;25:5,
  13,15;26:16,17,20;
  28:9,20
**contractors (1)**
  21:7
**contractors' (1)**
  21:8
**contracts (9)**
  15:1,3;21:21;
  22:18;23:7;25:12;
  26:15;29:12;67:9
**contracts' (1)**
  27:6
**contractual (2)**
  58:2;61:4
**contradict (1)**
  39:14
**contrast (1)**
  24:3
**convenience (1)**
  29:16
**conversations (5)**
  42:6;44:8;45:25;
  47:24;49:19
**cornerstones (1)**
  15:22
**correction (2)**
  28:4;29:2
**correctly (2)**
  28:7;57:7
**corresponds (3)**
  31:15;34:5;36:5
**Cost (7)**
  17:9,16;20:22;
  22:24;24:3;26:16;
  27:3
**counsel (4)**
  13:9;19:6;28:6;
  29:19
**counterparties (2)**
  15:1,8
**counterparty (1)**
  25:13
**couple (1)**
  37:16
**course (8)**
  14:15;17:6;21:21;
  22:8;26:24;29:12,
  19;30:22
**COURT (88)**

**13:2,12;16:13,15,**
  20;17:1;18:10,13;
  19:13,15,16,20,23;
  20:1,3,6;21:13;22:3,
  8;24:15;25:22;27:8,
  18,23,25;28:5,15,25;
  29:3,5,19,23,25;
  30:4,9,24;31:7,24;
  32:11;33:4,12,20;
  34:15,24;35:3,14,20,
  23,25;36:16;37:2,15;
  38:4;39:7;40:1,6,18,
  22;42:13,21;43:5;
  44:16,23;46:8,17;
  48:6,13,21;50:2,11,
  15;56:3,8,11,20,22;
  57:4;59:7;60:1,5;
  61:14,24;62:3,5,11,
  24;63:24;65:1
**Court's (1)**
  13:21
**COVID (1)**
  16:4
**CRAIG (1)**
  7:10
**credentials (2)**
  54:6;57:20
**creditor (4)**
  16:11,11;25:13;
  53:3
**creditors (1)**
  38:24
**Creditors' (7)**
  7:3;19:6;44:6;
  45:23;47:22;49:17;
  62:16
**CUNNINGHAM (1)**
  6:19
**current (8)**
  51:22;54:21,24;
  55:8;58:6,9;61:9;
  63:13
**currently (4)**
  41:7;45:5;47:3;
  48:24
**curve (1)**
  16:2
**customer (4)**
  17:15,16;24:2;
  25:16

**D**

**database (1)**
  52:25
**date (15)**
  18:20,22,24;19:2;
  26:18;31:11;32:16;
  33:25;35:18;38:9,
  11;56:15,17,19;69:6
**D'AVERSA (1)**
  10:16
**DAVID (5)**

**7:8;19:19,20;22:6;**
  28:16
**DAVIS (1)**
  8:11
**day (1)**
  65:3
**days (1)**
  30:20
**deal (1)**
  25:8
**DEBEVOISE (2)**
  9:2;25:25
**debt (1)**
  14:14
**debtor (12)**
  34:7;36:7;39:25;
  40:3;43:22;44:20;
  46:12;50:6,7;58:3;
  63:7;64:13
**debtor-in-possession (1)**
  23:14
**Debtors (142)**
  6:3;11:11,21;
  13:10,16,19,22;14:2,
  3,17,19,21,23,24;
  15:6,12,15,19;16:7;
  17:3,11,19;19:4,7;
  22:12,19;25:10,14,
  18;30:11,21;31:13;
  32:18,22;33:1;34:2,
  9,12;35:1,20,22;
  36:2,8,12;37:5,10,
  22;38:14,18,20,22,
  23;39:1,9,13,16,17,
  19,24;40:20,25;41:3,
  6,7,12,17,22;42:2,4,
  6,10,23;43:2,7,10,17,
  24;44:2,5,8,13;45:2,
  5,7,8,10,17,22,25;
  46:5,20,22,25;47:2,
  3,5,9,14,19,21,24;
  48:3,9,16,18,22,23,
  25;49:4,9,14,16,19,
  24;50:17,23;51:1,2,
  5,9,14,15,18;52:4,
  14;53:15,23,24;
  54:20;55:13,18;
  60:18;63:21;64:2,5,
  18;68:1,7,12,16,21;
  69:4
**debtors' (43)**
  14:4;17:5;18:20,
  22,24;19:1,9;30:12,
  17;31:11,21;32:16;
  33:25;35:18;37:5,
  22;38:9,11,17;39:14;
  40:24;41:24;43:1,5,
  16;45:1,15,20;46:22;
  47:16;48:15;49:1;
  51:7;54:17;56:15,17,
  19;67:11,13,15,17,
  20,22
**debtor's (1)**

20-11254-jlg    Doc 2115    Filed 04/01/21    Entered 04/02/21 14:46:27    Main Document

LATAM AIRLINES GROUP S.A., et al.    Pg 74 of 83

Main Case No. 20-11254-jlg    March 31, 2021

40:4
**Debtors-In-Possession (1)**
69:5
**DECHERT (3)**
7:2;22:7;28:16
**Dechert's (1)**
28:6
**declarants (1)**
18:16
**declarants' (1)**
18:1
**declaration (35)**
18:3,4,6,7,19,21,
25;20:9;30:16;31:4,
10,13;32:8,15,18;
33:17,24;34:2;35:11,
17;36:2;38:8,10;
51:25;52:20,24;53:1,
14;55:9,25;56:14,16,
18;62:10;67:3
**declarations (15)**
18:2,11,15;29:6;
38:1,14;51:25;
52:18;53:20,22;
54:13;55:24;56:1,9,
12
**deed (5)**
41:1,7,13;42:1;
68:4
**deeply (1)**
26:24
**defenses (1)**
21:14
**delivered (2)**
21:4;26:6
**delivering (1)**
26:18
**Delta (1)**
8:12
**demand (2)**
16:2;51:9
**demonstrate (1)**
50:6
**demonstrated (1)**
64:3
**deny (1)**
39:16
**DEPARTMENT (1)**
8:2
**described (3)**
25:9;58:5,16
**description (1)**
21:4
**desire (1)**
26:10
**detailed (4)**
21:4;51:24;53:21;
55:9
**details (2)**
58:23;61:1
**determined (2)**
41:13;47:5;48:25;
51:19;63:14,21

**detriment (1)**
38:23
**develop (1)**
51:13
**developing (1)**
52:6
**development (5)**
15:21,23;51:3;
54:25;63:4
**developments (1)**
16:12
**DICHTER (10)**
12:6;18:5,21;
27:21,21,23,24;28:3,
6;29:1
**difference (1)**
39:7
**differences (1)**
29:8
**different (2)**
16:5;24:10
**digital (4)**
17:14,16;24:1;
25:16
**diligence (1)**
24:11
**direct (6)**
18:1,12,16,18;
56:9,13
**directly (1)**
53:24
**director (1)**
52:1
**disagree (1)**
26:13
**disagreed (2)**
23:16;24:23
**disallowed (6)**
31:19,23;33:3;
34:14;36:15;39:6
**disclose (1)**
58:6
**disclosed (6)**
52:25;53:14;
54:10,11;61:18;
62:10
**disclosing (1)**
61:7
**disclosure (8)**
17:22;26:10;
55:12;61:1,10,13,18;
62:13
**disclosures (4)**
26:9;52:23;53:18;
55:11
**discrete (5)**
51:3;54:19;63:15;
64:12,12
**discuss (1)**
15:24
**discussed (1)**
26:4
**discussions (3)**

19:6,7;43:10
**disinterestedness (1)**
55:15
**distinction (1)**
40:7
**distraction (1)**
27:3
**divided (1)**
24:9
**DMITRY (5)**
12:7;18:3,7,19,25
**docket (26)**
17:4;18:8;19:1,11,
21;21:18;35:24;
41:3;42:7,12;43:4;
44:9,10,15;45:3;
46:1,2,7,24;47:25;
48:1,5,18;49:20,21;
50:1
**dockets (1)**
30:14
**document (2)**
19:17;54:5
**documentation (1)**
38:19
**documents (2)**
24:8;64:9
**dollars (1)**
14:20
**done (8)**
14:21;23:9;26:21;
28:2,2;51:16;54:19;
55:7
**DORSEY (1)**
7:13
**double (2)**
34:9;36:9
**doubt (2)**
17:21;62:18
**Douglas (3)**
30:12;34:22,25
**dozen (1)**
39:19
**drawn (1)**
22:22
**Drew (1)**
30:10
**drop (2)**
30:1,3
**DRUEHL (1)**
7:10
**due (5)**
14:2;24:17,19;
28:20;61:16
**duplicate (5)**
33:15;34:13;
35:10;36:4,12
**duplication (2)**
13:25;64:11
**duplicative (4)**
34:4;51:16;53:12;
63:22
**during (1)**

26:19
**dynamic (1)**
16:5

**E**

**earlier (1)**
54:11
**earned (2)**
25:5;28:21
**ECF (15)**
18:18;31:1,10;
32:5,15;33:14,24;
35:9,17,24;37:19,21;
38:8,10;53:15
**economic (3)**
19:8;28:7,18
**economics (1)**
28:13
**effective (2)**
17:16;69:5
**efforts (7)**
15:2,5,17;27:13;
44:3;52:4;64:11
**eight (2)**
36:12;52:9
**eighteenth (6)**
37:20;38:3,16;
39:5,23;67:23
**eighty (1)**
25:2
**Elavon (1)**
7:14
**eleven (1)**
43:12
**else (17)**
16:16;27:19;29:4;
31:24;33:4,20;
34:15;35:14;36:16;
40:9;42:13;44:17;
46:8;48:7;50:3;57:4;
65:2
**emerge (4)**
42:3;43:18;47:20;
49:15
**emerging (1)**
52:7
**Employ (1)**
69:1
**employed (3)**
21:7;23:6,7
**employment (2)**
23:5,9
**enable (1)**
38:19
**enables (1)**
25:14
**end (1)**
61:15
**engage (4)**
51:2;52:14;54:24;
63:3
**engaged (4)**

43:7;51:17;60:2;
63:5
**engagement (25)**
17:10,13;51:3,4,
12,15;52:16;53:8,12,
22;54:4,7,15,19;
55:17,22;58:10,21;
59:20,22;60:3,3,6;
63:15;69:6
**engagements (6)**
53:15;58:12;61:2,
7,8,9
**engaging (3)**
59:13,13;61:6
**enough (1)**
28:22
**ensure (1)**
17:22
**ensuring (1)**
22:21
**enter (5)**
42:11;44:14;46:6;
48:4;49:25
**entered (6)**
18:11;20:10;22:2,
18;29:14;57:3
**entirely (1)**
24:12
**entitled (2)**
24:5;50:7
**entity (2)**
34:7;36:7
**entry (17)**
25:21;41:1,13;
42:1;43:2;45:2;
46:23;47:5,18;
48:17;49:1,13;68:3,
9,14,18,23
**enumerating (3)**
41:23;47:15;49:10
**equitable (1)**
43:15
**equity (7)**
14:1;32:6,20,21,
23,24;33:2
**ERICA (1)**
9:7;25:25
**especially (1)**
58:23
**ESQ (24)**
6:8,9,10,19,20;7:7,
8,9,10,18;8:8,16,17;
9:7,8,16,24;10:7,15,
16,24;11:7,17,25
**established (5)**
36:20;44:20;
46:12;48:9;64:18
**estate (4)**
25:8,11;43:19;
45:18
**estates (3)**
41:22;47:14;49:9
**et (1)**

64:1
**ethical (2)**
58:2;61:4
**EVAN (1)**
10:15
**everyone (1)**
59:16
**evidence (17)**
18:11,20,22,23;
19:1;20:10;31:11;
32:16;33:25;35:18;
38:9,11;40:12;
55:24;56:15,17,19
**evidences (1)**
13:15
**Exactly (2)**
20:5;57:23
**except (1)**
67:19
**exception (1)**
36:22
**excluding (1)**
36:14
**excused (1)**
29:17
**executory (1)**
14:25
**exercise (1)**
45:15
**Exercising (3)**
41:12;47:4;48:25
**Exhibit (31)**
18:4,5,7,20,22,24;
19:1;24:16;31:11,14,
16,22;32:16,19;33:3,
25;34:3,6,13;35:18;
36:3,6,13;38:9,11,
15;39:2,4;56:15,17,
19
**Exhibits (2)**
18:16;43:14
**exist (1)**
16:6
**existing (1)**
15:11
**exit (1)**
64:14
**expanded (1)**
21:23
**expansion (1)**
21:24
**expect (1)**
15:13
**expense (1)**
25:10
**expenses (1)**
14:13
**experience (8)**
17:15;24:2;25:16;
52:3,11;54:9,13,15
**expertise (5)**
52:2;55:4;63:16,
17;64:4

**extended (1)**
41:20
**extensive (1)**
27:13
**extent (6)**
21:7;60:15,20;
62:12,20;64:15
**external (1)**
51:6

**F**

**face (1)**
54:5
**fact (2)**
53:9;61:8
**factors (1)**
16:3
**facts (8)**
32:1;33:6;34:18;
36:19;44:19;46:11;
48:8;50:5
**fair (4)**
25:12;43:15;
45:14;59:17
**fall (1)**
17:20
**favorable (7)**
41:18,22;45:11;
47:10,14;49:5,9
**fee (1)**
51:12
**fees (1)**
26:23
**few (1)**
57:14
**fifteenth (2)**
33:13;67:15
**figure (1)**
57:15
**file (4)**
21:18;26:8;30:20;
37:10
**filed (32)**
13:19;14:3,5,9,16,
19,25;15:13;17:21;
18:2,8;19:10;21:15;
29:10;31:18;32:20;
39:13,23;41:3;42:6;
43:14,21;44:4,8;
45:25;46:25;47:24;
48:19;49:20;53:2,4,
15
**filing (10)**
13:22;14:10;19:4;
23:3;35:23;42:4;
44:5;45:22;47:21;
49:16
**finally (3)**
18:7;21:9;55:6
**Financial (3)**
7:14;54:2;62:7
**Financiero (1)**

11:13
**find (11)**
18:14;33:7;36:19;
42:16;44:19;46:11;
48:9;50:5;60:8,15;
64:18
**finished (1)**
64:23
**First (13)**
13:18;16:24;17:4,
9;18:3;24:14;30:25;
35:8;53:1,21;57:17;
59:8;63:1
**five-year (9)**
15:21;51:4,7,9,11,
21;53:25;54:17;
63:20
**fixed (3)**
51:12;59:2,4
**fixed-fee (2)**
52:15;54:20
**FL (1)**
6:17
**fleet (10)**
15:6,7,17;41:15;
42:2;45:9;47:7,19;
49:2,14
**flexibility (4)**
42:2;43:17;47:19;
49:14
**focus (4)**
22:15;51:8;54:16;
59:11
**focused (2)**
58:23;62:17
**folks (1)**
57:24
**following (2)**
13:21;43:20
**footprint (1)**
63:17
**foreign (2)**
13:23;14:8
**form (10)**
42:5,11;44:7,14;
45:24;46:6;47:23;
48:4;49:18,25
**formulate (1)**
52:5
**formulating (1)**
64:13
**formulation (1)**
53:24
**forth (22)**
18:16;19:10;29:9;
32:1;33:7,7;34:18;
36:19;37:6,24;38:13,
18;39:17,21;44:19;
46:11;48:8;50:22;
51:4;60:3,9;64:1
**forward (10)**
23:6;31:3;32:7;
33:16;35:10;37:25;

44:11;46:3;64:13,13
**found (2)**
14:4;55:20
**four (1)**
34:12
**fourteen (1)**
14:5
**fourteenth (2)**
32:5;67:13
**fronts (1)**
14:18
**FTI (17)**
12:5;30:17;31:5,
13;32:9,18;33:18;
34:2;35:12;36:2;
38:2,14;51:18;
53:11;55:5;57:21;
63:6
**full (6)**
26:9;31:23;33:3;
34:14;36:15;39:6
**fully (2)**
26:11;57:14
**funds (1)**
52:25
**further (20)**
15:13,15;27:2;
28:1;41:14;44:9,14;
45:9;46:1,6;47:6,25;
48:4;49:1,21,25;
55:12;56:25;57:13;
61:1
**furtherance (3)**
15:4,21;52:6
**future (6)**
21:23;22:16;
43:16;45:12;47:11;
49:6

**G**

**Garrity (1)**
13:3
**geared (1)**
22:21
**general (5)**
20:25;21:13;
23:15,22;25:3
**generally (4)**
15:5;16:7;54:7;
61:20
**gentlemen (1)**
18:9
**genuine (1)**
58:20
**GERARD (1)**
9:24
**given (5)**
16:4;51:22;54:21;
63:12,15
**goal (5)**
41:14;45:9;47:6;
49:2;52:6

**Good (15)**
13:2,8,13;17:2;
18:14;25:8,17,24;
27:10;30:10;34:25;
40:19;42:16;46:18;
65:3
**GOOR (1)**
7:9
**Gottlieb (8)**
13:9;17:3;30:11;
35:1;40:20;42:23;
46:19;50:17
**governs (1)**
28:23
**grant (5)**
29:10;32:2;33:9;
34:19;56:12
**granted (20)**
14:7;31:9;32:14;
33:23;35:16;38:7;
42:17;44:21;46:13;
48:10;50:8;57:2;
64:19;67:10;68:6,11,
15,20,25;69:6
**Great (1)**
20:7
**Gretz (15)**
30:12;34:22,25,
25;35:3,4,19;36:1,
25;37:3,18;38:12;
39:9;40:5,15
**grounds (10)**
31:14;32:19;33:8;
34:3;36:4,20;38:16;
46:12;48:9;64:18
**Group (19)**
6:14;9:11,12;
11:10,20;12:8;13:3;
15:20;42:5;44:7;
45:24;47:22;49:18;
50:20,24,24;52:10;
69:2,3
**guess (3)**
58:7;59:16;61:2
**GUGGENHEIM (9)**
12:8;52:1,19,21;
56:16,18;62:14;67:1,
4
**Guggenheim's (4)**
52:24;53:14;55:9,
25
**GUI (16)**
12:4;53:4,5;54:6;
55:3;56:6,7,10;57:6,
8;59:11;60:8,25;
62:11;64:7,15
**G-U-I (1)**
53:4
**Gui's (2)**
55:19;63:2

**H**

half-a- (1)
39:18
hand (2)
39:18;46:14
handling (2)
16:24;30:8
happy (7)
16:13;37:12;57:1;
59:10,25;60:1;63:11
hard (1)
22:12
hard- (1)
57:23
HARMEYER (1)
10:7
harmful (1)
63:22
hear (3)
28:1;35:2;40:21
heard (34)
14:6;16:14,16;
18:13;22:4,5,7;
25:23;27:9,19,22;
28:7;29:4;31:7,24;
32:11;33:5,21;
34:16;35:15;36:17;
38:4;40:9;42:14;
44:17;46:8;48:7;
50:3;56:4,7;57:5;
62:19;64:25;65:2
hearing (11)
13:21;14:6;19:5,
12,18;29:18;35:22;
36:15,22;57:9;59:6
help (3)
57:15,18,20
helping (1)
57:22
hereby (13)
18:19,21,23,25;
31:10;32:15;33:24;
35:17;38:8,10;56:14,
16,18
HERMAN (9)
7:8;22:6,6,8,9;
26:3;28:16,16;30:2
HERRINGTON (1)
10:10
Hertz (1)
52:12
Hi (1)
27:21
himself (1)
53:5
hire (1)
59:15
hiring (1)
59:14
Hoc (6)
6:14;42:5;44:6;
45:23;47:22;49:18
holder (1)
32:20

Holders (1)
32:23
HOLLAND (1)
10:19
HOLLANDER (1)
10:15
Honor (82)
13:8;14:7;15:10;
16:18,23;17:2,8,18,
24;19:3,24;20:5,7;
21:17,25;22:6,9;
25:24;27:7,10,12;
28:16;29:15,21,24;
30:2,7,10,11,18,23;
31:4,20;32:4,8,25;
33:11,17;34:10,21,
25;35:1,19;36:10,25;
37:14,18;38:12,25;
39:9;40:5,15,19,21,
23;42:9,10,18,22;
44:12,13,22;46:4,5,
14,18;48:2,3,12;
49:23,24;50:10,16;
56:6,23,25;59:5,9;
62:23,25;64:21;65:4
Honor's (1)
19:12
hope (1)
57:6
Hopefully (2)
28:17,22
hour (1)
45:11
hour-based (3)
41:18;47:10;49:5
housekeeping (1)
55:23
Hudson (1)
10:4
HUEBNER (1)
8:17

I

idea (1)
61:21
identical (1)
14:3
ill-founded (1)
58:5
imminently (1)
15:14
impact (1)
58:3
implement (12)
15:9,17;40:25;
43:2;45:2;46:23;
48:16;68:2,8,13,17,
22
implementing (1)
17:15
important (4)
25:13;26:5;44:2;

58:22
importantly (2)
25:14;58:14
improperly (1)
39:12
improve (1)
25:16
improvement (1)
25:9
improvements (2)
17:14;19:8
improving (1)
24:1
Inc (3)
12:8;50:24;69:2
including (19)
14:12;16:9;17:15;
26:18;41:1;43:2;
45:2;46:23;48:17;
51:8,17,25;52:12;
63:6;68:3,9,14,18,23
incorrect (1)
39:25;40:3
indeed (2)
28:13;54:21
indemnification (1)
20:15
independent (1)
51:6
indicate (1)
24:9
indicated (2)
27:12;63:11
indicating (1)
21:19
induced (1)
23:12
industries (1)
52:3
industry (5)
54:14,22;63:13,13,
16
infections (1)
16:4
informal (4)
44:5;45:22;47:21;
49:17
information (3)
39:16;53:8,17
initial (2)
52:24;55:25
input (2)
16:3;63:19
instead (1)
37:13
instruments (1)
14:14
interest (5)
32:6,20,24;33:2;
57:11
interested (1)
24:15
interests (3)

14:1;43:19;45:17
interfaces (1)
17:16
interfacing (1)
59:23
interrupt (1)
62:5
into (43)
16:3;18:1,11,19,
21,23;19:1;20:10;
22:18;24:9;31:5,11;
32:9,16;33:18,25;
35:12,18;37:8;38:3,
9,11;41:1,13;42:1;
43:3;45:3;46:23;
47:5,18;48:17;49:1,
13;55:24;56:14,16,
19;60:19;68:3,9,14,
18,23
introduce (1)
18:1
invaluable (1)
52:4
Investment (9)
9:20;52:25;58:16,
18;59:15,15;60:13,
16;63:8
invoices (1)
21:3
involved (1)
27:3
issue (3)
22:18;23:12;24:15
issues (3)
17:25;29:8;53:16
item (20)
17:4,4;18:8;19:1,
11,11,21;21:18;30:8;
40:17,23,24;42:20,
24;44:25;46:16,21;
48:14,15;50:13
items (5)
30:13;34:23;35:6;
37:3;57:14
IV (3)
48:18,24;68:24

J

JASON (3)
12:8;51:25;52:21
JOHN (8)
6:19;12:5;30:17;
31:4;32:8;33:17;
35:11;38:1
JOHNSON (1)
11:7
joint (2)
17:11;23:1
JUAN (3)
11:17;18:6,23
Judge (1)
13:2

judgment (6)
41:12;45:16;47:5;
48:25;54:21;63:14
jump (1)
40:6
June (1)
43:5
jurisdictions (1)
16:5
JUSTICE (1)
8:2

K

KEBRDLE (1)
6:20
KEVIN (1)
12:3
Kimberly (2)
42:19,23
KNIGHT (1)
10:19
knowing (1)
62:16
KOHN (1)
7:18
Kramer (13)
30:7,9,10,10,25;
31:12;32:4,17;33:11,
13;34:1,21;35:4
KRIVIN (6)
12:7;18:3,8,19,25;
20:9
KYLE (1)
6:8

L

LABOVITZ (2)
9:8;26:2
LARA (1)
8:16
largest (1)
52:9
last (4)
13:21;57:7;59:8;
63:1
lastly (1)
58:14
LATAM (16)
6:14;9:12;11:10,
20;13:3;23:2;26:5,6,
8,25;27:4;43:22;
53:6;55:16;57:10;
63:3
LATAM's (3)
17:14,16;54:2
law (1)
26:12
lawyers (1)
58:4
lawyer-speak (1)
58:8

**lead (1)**
13:7
**lease (33)**
15:8,13;41:7;43:3,
12,13,15,16,20,23;
45:3,5,8,10,13,14,18;
46:23;47:2,4,6,12,
18;48:17,23,24;49:1,
7,13;68:9,14,18,23
**leases (2)**
15:11;43:6
**Leasing (3)**
41:2,8;68:4
**leave (1)**
30:2
**left (1)**
23:9
**lender (1)**
41:11
**length (1)**
45:7
**lengths (1)**
17:18
**lessor (1)**
45:7
**Lessors (2)**
10:20;15:7
**letter (7)**
26:11;51:5;53:22;
58:21;59:22;60:4,6
**Lexington (1)**
8:13
**liabilities (2)**
14:2,20
**liability (11)**
31:17;34:6;36:6;
37:6,23;38:17,21;
39:11,17,21;40:3
**Liberty (1)**
11:22
**lieu (1)**
59:14
**light (2)**
54:9,23
**likely (1)**
14:22
**limitation (2)**
16:9;51:18
**limited (14)**
20:12;41:2,8;
48:18,24;52:15;53:4,
5;54:16;55:16,19;
58:4;68:5,25
**line (6)**
18:9;22:21;26:1;
30:18;61:23;67:7
**Lisa (4)**
13:9;50:13,17;
62:25
**listed (10)**
31:16,22;33:2;
34:6,13;36:6,13;
39:2,4;50:18

**listener (2)**
28:4;29:2
**listening (1)**
64:9
**litigation (2)**
14:14;27:3
**little (1)**
25:11
**LLC (3)**
41:2,10;68:5
**LLP (12)**
6:2,13;7:2,13;
8:11;9:2,19;10:2,10,
19;50:24;69:3
**loan (1)**
41:9
**Local (1)**
11:13
**located (4)**
24:16;41:4;47:1;
48:19
**lock (1)**
45:11
**locking (3)**
41:18;47:10;49:5
**looked (2)**
22:25;24:4
**looking (1)**
61:3
**lot (1)**
64:7
**lots (2)**
60:14,14
**low-cost (1)**
52:10
**LP (3)**
41:3,10;68:6
**Ltd (1)**
9:20
**Ltda (2)**
17:7;67:10
**Luke (2)**
16:24;17:2
**Lynch (15)**
40:17,19,20,22,23;
42:18;46:15,17,18,
19;48:12,14,22;
50:10,12

**M**

**MA (1)**
9:14
**majority (1)**
24:20
**makes (2)**
22:17;59:12
**making (1)**
40:7
**manage (4)**
42:2;43:17;47:19;
49:14
**managing (1)**

52:1
**mandate (1)**
54:16
**manner (4)**
41:21;45:17;
47:13;49:8
**many (1)**
57:18
**March (5)**
18:8;41:4;42:8;
46:25;48:19
**MARK (1)**
9:16
**marked (1)**
31:17
**market (1)**
16:1
**markets (1)**
51:23
**MARSHALL (1)**
8:17
**master (1)**
34:4
**MASUMOTO (3)**
8:8;27:10,11
**materials (2)**
23:10;51:13
**matter (13)**
16:24;27:20;
36:17;40:10;42:14;
44:17;46:9;50:3,19,
21;55:23;60:15;
62:19
**matters (10)**
13:5;16:16;58:6;
60:9;61:17;62:18;
64:1,10,18,25
**maximize (1)**
26:10
**may (9)**
13:22;18:10;
19:24;22:7;23:20;
25:5;28:8;60:15;
61:25
**maybe (2)**
58:7;61:21
**McKinsey (36)**
9:3;12:6,7;16:25;
17:6,10,13,19,22;
19:8;21:7,11,16;
22:12,19,25;23:5,16,
25;24:5,23;25:12,15,
18;26:1,4,8,15,16,
20,24;27:21;29:12;
57:21;67:9
**meaning (1)**
26:19
**means (3)**
27:5;56:12;58:9
**mechanism (1)**
21:23
**meetings (1)**
16:10

**members (1)**
16:12
**memorializing (1)**
43:25
**MENCIO (3)**
11:17;18:6,23
**mentioned (3)**
22:25;23:24;64:7
**met (1)**
61:10
**Miami (1)**
6:17
**might (2)**
30:23;59:14
**MILBANK (1)**
10:2
**million (3)**
24:15;25:1,11
**minds (1)**
39:18
**minor (1)**
21:6
**minute (1)**
19:16
**mistake (2)**
58:19;59:3
**misunderstanding (3)**
58:20;59:1;60:18
**misuse (1)**
60:16
**modified (1)**
29:9
**Monday (1)**
19:11
**monetary (1)**
62:9
**month (1)**
36:23
**monthly (1)**
41:19
**months (1)**
15:14
**month's (3)**
14:6;35:22;36:14
**more (5)**
14:21;16:7;17:16;
43:17;62:7
**morning (12)**
13:2,9,13;17:2;
22:11;25:24;27:10;
30:10;34:25;40:19;
46:18;64:24
**most (6)**
57:12;58:14;
60:20,21;62:21;
64:16
**motion (49)**
13:22;17:5,8,18,
21;18:4,5,6;20:18;
21:20;29:10;40:24;
41:4;42:4,10,17;
43:1,14;44:5,11,13,
21;45:1,22;46:3,5,

11,13,22,25;47:21;
48:3,9,10,15,19;
49:16,24;50:8,18;
60:7,9;64:19;67:8;
68:1,7,12,16,21
**motions (2)**
13:14;15:10
**move (4)**
31:4;32:8;33:17;
35:11;38:1;64:13
**moved (1)**
55:24
**moves (1)**
64:13
**moving (5)**
31:3;32:7;33:16;
35:10;37:25
**much (5)**
13:12;22:11;28:1;
29:15;65:3
**multiple (3)**
14:3;39:13,23
**multiple-debtor-claim (1)**
39:8
**MVP (2)**
24:14,17
**MVPs (1)**
24:10

**N**

**name (1)**
57:7
**narrow (1)**
53:25
**NATASHA (2)**
9:8;26:1
**nature (4)**
54:4;59:20;61:7;
63:13
**nearly (1)**
26:21
**necessary (1)**
51:14
**need (4)**
14:21;28:1;64:3;
65:2
**needs (4)**
57:15,18;59:2;
63:3
**negotiate (3)**
15:1,7,12
**negotiated (1)**
43:24
**negotiations (7)**
27:14;41:17;43:7,
24;45:7;47:9;49:4
**network (1)**
52:9
**New (21)**
6:6;7:5,16;8:6,14;
9:5,22;10:5,13,22;
11:5,15,23;15:8;

20:21,22;28:8;43:12,
13,15,16
**next (17)**
13:23;14:6;30:8;
35:5,22;36:14,23;
40:17,23;42:20;
44:24,24;46:16,21;
48:14;50:13;60:23
**no-liability (1)**
39:8
**nonetheless (2)**
26:22;27:6
**Notably (1)**
55:2
**note (7)**
39:13;52:17;
53:21;57:1;61:11,
21;64:7
**noted (3)**
13:14;23:17;35:4
**notice (10)**
19:21;42:7;44:8,9;
45:25;46:1;47:24,
25;49:20,21
**number (32)**
13:4,5,14;14:12,
18;17:4;24:9,18;
40:24;41:3;42:7,12;
43:4,22;44:9,10,15;
45:4;46:1,2,7,21,25;
47:25;48:1,5,15,18;
49:20,22;50:1;53:15
**NY (13)**
6:6;7:5,16;8:6,14;
9:5,22;10:5,13,22;
11:5,15,23

## O

**object (6)**
13:25;21:19;
41:24;45:20;47:16;
49:11
**objected (5)**
31:13;32:18;34:2;
36:3;38:14
**objecting (1)**
39:24
**objection (55)**
27:17;30:16,22;
31:1,4,5,12;32:1,2,5,
8,9,17;33:7,8,8,14,
17,18;34:1,8,8,18,
19;35:8,11,12,20;
36:2,8,19,21;37:19,
20;39:3,5,8,8,22,23;
53:4,5;55:19;58:5;
60:21,22;62:21;
64:16,16;67:11,13,
15,17,20,23
**objections (25)**
13:20,23,24;14:5,
8,10;22:1;30:13,19;

35:5;37:4,8,10,13;
38:1,3,13,16,22;
39:10,14,20;40:13,
13;53:2
**objective (1)**
51:6
**objects (1)**
53:7
**obligation (3)**
61:22;62:1,2
**obligations (9)**
26:17;41:15;
43:18;45:9;58:2,11;
61:4,16;62:9
**obviously (3)**
54:3;57:1;59:23
**ODEN (1)**
6:10
**ODENWELLER (14)**
12:5;30:17,17;
31:5,10;32:9,15;
33:18,24;35:12,17;
38:2,8,10
**Oeste (1)**
11:12
**off (1)**
42:19
**offering (1)**
58:17
**Office (4)**
8:3;21:17;25:19;
27:11
**officer (1)**
54:2
**Official (1)**
7:3
**omnibus (32)**
13:20;14:6,8;
30:13,25;32:5;
33:13;35:5,8,22;
36:15;37:4,8,10,12,
19,20;38:3,16;39:3,
5;41:1,6,13;42:1;
67:11,13,15,17,20,
23;68:3
**Once (1)**
25:17
**One (18)**
6:4;11:22;13:6;
15:22;17:4;19:16,
23;20:1;24:11;30:6;
32:22;39:18;47:4;
48:24;50:18;59:8;
62:14;64:21
**ongoing (5)**
15:18,24;24:4;
26:17;58:1
**only (4)**
21:11;26:21;
37:10;50:20
**open (1)**
60:1
**operations (4)**

17:14,17;24:1;
25:16
**opinion (2)**
55:13;63:18
**opinions (1)**
51:19
**opportunity (4)**
29:5;50:4;60:5;
63:24
**opposition (1)**
60:7
**options (1)**
64:5
**order (74)**
14:7;19:10,22;
20:13;21:12,12,24;
22:1,2,14;23:18;
24:25;25:20,21;
27:15,16,17;28:18,
22;29:10,22;31:14,
21,23;32:3,19;33:1,
3,10;34:3,12,14,20;
36:3,11,13,24;37:10;
39:1,3,5;40:14,25;
42:6,11,12,17;43:1;
44:7,9,10,14,15,21;
45:1,24;46:1,2,6,7,
13,22;47:23;48:4,5,
11,15;49:19,25;50:1,
8;57:3;60:25;64:20
**orders (6)**
38:15;42:7;47:25;
48:1;49:20,21
**ordinary (4)**
14:15;17:6;21:21;
29:12
**original (2)**
23:19;53:19
**originally (1)**
20:18
**ORRICK (1)**
10:10
**ORTIZ (1)**
6:8
**others (1)**
57:21
**otherwise (4)**
18:10;21:22;
55:21;59:14
**out (9)**
26:9;29:8;31:12;
32:17;34:1;36:1;
40:6;45:18;57:15
**outside (2)**
54:25;63:4
**over (9)**
14:20;26:5;34:22;
39:11;40:16;46:15;
50:12;54:23;57:24
**overall (1)**
28:21
**overlap (1)**
64:10

**overrule (3)**
60:21;62:21;64:16
**overruled (1)**
55:20
**owed (3)**
37:6,23;38:18
**owing (1)**
61:16
**own (2)**
26:10;57:9
**ownership (1)**
32:21
**owner-trustee (1)**
45:6

## P

**page (2)**
24:16;67:7
**paid (5)**
20:18;22:16;
23:20;25:2;28:10
**pandemic (1)**
54:24
**papers (5)**
17:18;42:16;
53:19;60:6,15
**paragraph (10)**
20:8,10,14,24;
21:3,6,9;23:5,21;
25:4
**Paragraphs (1)**
20:16
**Parent (1)**
43:22
**Park (1)**
9:21
**PARLIN (1)**
10:24
**part (7)**
58:20;59:19;
60:18,21;62:10,14,
20
**particular (8)**
13:24;28:20;
45:10,18;51:2;
53:17;63:16,18
**particularly (5)**
27:4;51:8,21;
53:25;63:12
**parties (8)**
15:12;20:12;
23:16;24:23;27:3,
14;28:23;29:7
**parties' (1)**
21:14
**parties-in-interest (3)**
16:8;17:23;43:21
**partner (1)**
52:1
**Partners (1)**
51:18
**party (3)**

16:14;61:12,21
**party-in-interest (3)**
53:3;55:2,14
**pass (2)**
42:19;50:12
**passenger (6)**
16:2;51:10,22;
54:17,23;63:19
**past (2)**
22:16;26:5
**Pause (1)**
20:2
**payable (1)**
21:11
**payment (9)**
20:23;21:5,8;
24:14,16,17,19;25:1;
28:20
**payments (5)**
17:5;20:11,19;
24:6;29:11
**pending (2)**
58:6;61:9
**Penn (1)**
6:4
**people (1)**
57:18
**per (2)**
14:7;23:21
**percent (7)**
23:18;24:25;25:2;
28:9,19,19,21
**Perfect (2)**
13:13;57:8
**perform (3)**
14:11;17:5;29:11
**performed (3)**
24:12;26:14;55:9
**perhaps (1)**
58:14
**period (5)**
22:20;41:19;
45:11;47:11;49:6
**periodic (1)**
16:10
**permissible (4)**
41:23;45:19;
47:15;49:10
**perspective (4)**
19:9;60:14,17;
62:7
**petition (5)**
22:17,19,22;
24:13;26:18
**Pier (1)**
9:13
**PJT (5)**
51:18;53:11;55:5;
57:21;63:7
**PK (7)**
11:3;41:2,2,9,10;
68:5,6
**place (1)**

22:23
**plan (22)**
15:3,21,23,24;
16:4;21:12;51:4,7,8,
11,21;52:5,6;53:25;
54:1,18;55:1;57:15,
18;63:5,10,20
**plans (1)**
43:16
**Plaza (3)**
6:4;11:12,22
**please (12)**
19:17;32:2;33:9;
34:19;36:24;40:14;
42:17;44:21;46:13;
50:9;60:23;64:20
**pleased (3)**
13:15;22:10;29:7
**PLIMPTON (2)**
9:2;25:25
**PM (1)**
65:5
**podium (3)**
34:22;40:16;57:1
**point (5)**
54:12;60:23;62:6;
63:1,2
**points (1)**
53:7
**POLK (1)**
8:11
**portion (3)**
30:14;35:6;39:22
**position (1)**
23:16
**possibility (4)**
15:15;34:9;36:8;
58:10
**possible (1)**
28:4
**post- (1)**
24:12
**post-petition (7)**
22:17,22;23:13;
24:6,19;26:16,21
**potential (2)**
21:24;22:1
**power (4)**
41:18;45:11;
47:10;49:5
**pre- (3)**
22:16,18,21
**precatory (1)**
20:8
**precise (1)**
14:22
**preclude (1)**
58:10
**prefers (1)**
37:14
**prepare (1)**
26:8
**preparing (1)**

14:8
**pre-petition (12)**
20:25;21:2,10;
22:20;23:13,15;24:7,
22;25:3;26:22;
28:10;43:6
**PRESENT (5)**
12:2;34:22;37:12;
40:17;42:20
**presented (2)**
13:14;56:21
**presenting (8)**
13:20,24;30:12;
35:5;42:24;44:24,
25;46:15
**preserving (4)**
41:24;45:20;
47:16;49:11
**pretty (1)**
54:4
**prevent (1)**
55:21
**previously (3)**
31:18;43:13;63:11
**prior (5)**
31:19;58:11;61:1,
7,8
**priority (3)**
23:20;24:5;45:19
**Pro (2)**
12:3,4
**problem (1)**
30:5
**procedural (3)**
14:5,8,10
**procedures (7)**
13:22;31:21;33:1;
34:11;36:11;37:9;
39:1
**proceed (2)**
22:10;37:17
**proceeding (1)**
30:19
**proceedings (4)**
42:3;47:20;49:15;
65:5
**product (4)**
26:19;41:16;47:8;
49:3
**products (1)**
24:10
**professional (1)**
30:17
**professionals (5)**
22:12;23:11;
25:18;61:19;64:8
**progress (2)**
13:16;14:17
**project (1)**
26:25
**projected (1)**
54:16
**projections (3)**

51:10,21;52:5
**projects (1)**
26:5
**pronouncing (1)**
57:6
**proof (1)**
31:18
**proofs (1)**
44:1
**proper (2)**
27:6;61:10
**properly (3)**
23:14;28:17;55:16
**propose (2)**
19:14;52:14
**proposed (37)**
19:10;22:1,14;
24:25;25:21;27:15;
28:18;31:14,23;
32:19;33:3;34:3,13;
36:3,13;38:15;39:2,
4;42:6,7,12;44:7,8,
10,15;45:24,25;46:2,
7;47:23,25;48:1,5;
49:19,20,21;50:1
**proposing (1)**
51:2
**prospect (1)**
21:1
**provide (4)**
51:6,14;60:10,12
**provided (12)**
17:14;21:5;24:6,7;
26:15;39:16;52:20,
21;53:8;55:10;
59:21,25
**provides (1)**
63:6
**providing (1)**
63:9
**proviso (1)**
20:14
**prudent (1)**
54:20
**purported (6)**
34:6;36:6;38:20;
53:6;55:3;59:19
**purposes (1)**
63:6
**pursuant (11)**
20:12,19,20;
21:11;29:10;31:20;
32:25;34:11;36:11;
38:25;61:18
**put (1)**
22:12

**Q**

**Qatar (1)**
9:20
**qualifications (1)**
53:18

**qualified (1)**
57:20
**quite (3)**
60:1,11;61:2

**R**

**raise (2)**
59:17;63:3
**raised (6)**
17:25;53:13;54:9;
55:3,6,14
**raising (2)**
61:12;63:2
**RAMIRO (1)**
11:25
**RANIERO (1)**
10:16
**rather (4)**
14:1;17:20;23:12;
32:24
**reach (2)**
23:17;24:24;
25:20;27:1
**reached (3)**
24:20;43:12;45:7
**reading (1)**
60:14
**real (1)**
59:18
**realize (2)**
41:17;47:9;49:4
**really (1)**
57:17
**reason (1)**
23:4
**reasonable (1)**
45:15
**received (21)**
18:19,21,23;19:1;
30:21;31:11;32:16;
33:25;35:18,23;38:9,
11,19;42:4;44:5;
45:22;47:21;49:16;
56:14,16,19
**recent (1)**
58:12
**recognized (1)**
60:11
**reconcile (1)**
44:3
**reconciliation (2)**
13:18;14:12
**record (12)**
18:1;28:12;29:9;
31:6;32:10;33:19;
35:13;38:3;42:22;
46:19;50:17;64:10
**records (6)**
14:4;37:6,23;
38:17;39:15;40:4
**recovery (6)**
16:2;34:9;36:9;

38:23;51:9;54:23
**redline (1)**
25:4
**reduce (1)**
45:12
**reduced (6)**
20:21,24;25:5;
41:19;47:11;49:6
**reduces (1)**
25:10
**reduction (4)**
20:17,23;25:6;
26:23
**refer (1)**
50:25
**reference (1)**
20:9
**referred (1)**
24:10
**referring (1)**
28:19
**refine (3)**
15:6,16;51:20
**refinement (1)**
51:8
**reflect (3)**
20:16;60:17,17
**reflected (9)**
20:13;22:13;
23:18;24:24;25:20;
27:15;28:18,24;40:3
**reflecting (3)**
19:15;20:23;21:6
**regarding (13)**
42:5;43:8,25;44:7;
45:24;47:23;49:18;
53:13,17;54:22;55:4,
15;61:1
**regular (1)**
16:9
**regularly (1)**
16:8
**regulations (1)**
16:4
**reiterate (1)**
63:12
**rejected (2)**
43:8,13
**rejection (2)**
15:16;43:6
**rejections (1)**
43:20
**relate (3)**
16:17;37:4,21
**related (1)**
51:3
**relates (6)**
31:2;32:6;33:15;
35:9;62:19;64:5
**relating (1)**
14:14
**relationships (1)**
61:13

re-leasing (1)
43:8
relevant (1)
54:15
relief (14)
18:15;21:19;32:2;
33:9;34:19;36:20;
42:16;44:19;20;
46:12;48:10;50:6,7;
64:19
remain (2)
14:18;15:17
remainder (3)
45:12;47:11;49:6
remaining (2)
25:2;36:12
remind (1)
35:20
rendered (1)
24:21
rent (8)
41:18,19;45:11,
12;47:10,11;49:5,6
reorganization (3)
15:4,23;63:10
repayment (1)
41:20
reply (6)
53:15,16;58:4;
59:10;60:9;64:2
report (1)
26:19
represent (1)
45:15
reputation (1)
57:19
request (30)
17:21;18:11,14;
27:7;31:8,9,21;
32:12,14;33:2,21,23;
35:15,16;36:12;38:5,
6;39:1;42:10;44:13;
46:5;48:3;49:24;
52:19;55:18,19,24;
56:4,8;57:2
requested (12)
18:15;32:2;33:9;
34:12,19;36:20;
42:16;44:19,20;
46:12;48:10;64:19
requests (1)
53:17
required (2)
51:14;55:12
requirements (3)
61:6,11,18
reserved (2)
21:14,22
resolution (7)
17:24;27:1,4,14;
28:7,18,23
resolve (1)
22:1

resolved (1)
27:25
resolves (3)
41:21;47:13;49:8
respect (33)
13:18;15:8;16:24;
18:13;20:22;21:15;
22:24;23:23;24:11,
14;27:19;32:11;
33:21;35:15,21;
36:21;38:5;39:10,
20;40:10;42:14;
46:9;52:24;53:9;
55:6,16;56:4;59:24;
61:1;63:4,7,9,19
respectfully (15)
41:6;42:10;44:13;
46:5;47:2;48:3,22;
49:24;55:18,23;
57:2;60:20,21;
62:21;64:16
respond (1)
26:3
response (19)
18:14;21:18;
27:12;30:21;31:9,
25;32:13;33:6,22;
34:17;35:16;36:18;
38:6;40:11;42:15;
44:18;46:10;52:21;
56:5
rest (2)
23:20;28:10
restructuring (10)
15:2,4;41:14;45:9;
47:7;49:2;52:2;
54:14;57:16;63:10
result (3)
19:7;25:12;43:10
resulted (1)
27:14
retail (1)
57:9
retain (3)
50:19,23;53:23
retained (2)
60:12;64:8
retaining (1)
58:16
retention (6)
15:19,25;26:9;
60:19;61:19;62:21
revenue (4)
51:10;54:16,17;
63:19
revenues (1)
54:23
reverse (1)
60:24
review (17)
14:11,25;21:20;
23:2;29:5,13;37:5,
22;38:17;39:15;

40:12;50:4;60:6;
62:15;63:25;64:9,17
reviewed (1)
42:15
reviewing (1)
23:10
revised (20)
19:10,22;21:25;
25:20;27:15,16;42:7,
11;44:8,10,15;45:25;
46:2,7;47:24;48:1,5;
49:20,21;50:1
revisit (1)
21:1
RICHARD (1)
6:20
right (42)
13:2,11;16:20,21;
17:1;19:16;20:1,3;
22:3,22;25:22;27:8,
18,23,24;28:15,25;
30:4,9,24;35:25;
39:7;40:5,6,11,18;
42:15,21;44:16;
45:20;46:17;50:2,4,
15;56:3;57:4;58:23;
60:5;62:8,11;63:24;
65:1
right- (1)
47:6
rights (2)
21:14,22
right-sizing (2)
41:14;49:2
ROBERT (1)
11:7
role (7)
53:18;54:8;55:4,
22;59:2;63:8;64:12
roles (1)
55:5
ROSENTHAL (1)
9:16
round (1)
13:20
Rule (5)
31:21;33:1;34:11;
36:11;39:1
ruling (1)
13:21
RULINGS (1)
67:7
running (1)
58:25

S

SA (3)
9:12;11:20;13:4
same (9)
31:16;34:6,7,7,10;
36:6,7,7,9
SAMET (1)

8:16
SAMUEL (1)
7:18
Sapucaia (3)
41:2,8;68:4
sat (1)
62:11
satisfied (5)
17:23;55:20;
62:12;64:1,8
savings (3)
41:18;47:10;49:4
saying (1)
40:2
Schweitzer (25)
13:6,8,9,13;16:21,
23;50:13,15,16,17;
56:20,23;59:7,9;
60:23,24;61:20,25;
62:4,8,23,24,25;
64:20,21
Schweitzer's (1)
57:12
scope (9)
17:20;20:11,14;
21:22;53:10;54:4,5;
60:3;61:7
Scotiabank (1)
10:11
Se (2)
12:3,4
second (6)
17:12;19:23;20:1;
53:10;54:11;58:1
Section (4)
17:20;24:18,18;
52:15
Sections (1)
29:10
secured (1)
14:13
securities (1)
32:22
Security (2)
35:22;41:10
Seeing (1)
33:6
seek (8)
15:15,19;34:9;
36:8;38:22;50:23;
54:24;57:13
seeking (3)
50:7;51:5;53:23
seeks (1)
53:6
seem (2)
53:7;57:20
seems (2)
40:7;59:11
SEGAL (2)
6:2,2
senior (1)
52:1

separate (1)
17:8;37:8
Separately (2)
21:17;37:13
series (1)
19:8
serious (1)
54:8
serve (2)
15:22;53:9
serves (2)
52:8;63:8
service (6)
21:21;22:18;23:7,
8;25:5,15
Services (18)
7:14;17:20;21:5,8,
23,24;22:15;23:12,
23;24:6,7,21;58:17;
59:20,24;60:11,12;
61:17
Service's (1)
17:13
set (27)
18:16;19:10;29:9;
31:12;32:1,17;33:7,
7;34:1,18;36:1,19;
37:6,23;38:13,18;
39:17,21;44:19;
45:18;46:11;48:8;
50:22;51:4;60:3,9;
64:1
settle (1)
45:16
settlement (5)
23:17,18;24:24,
25;25:20
seven (1)
52:8
seventeen (1)
43:6
seventeenth (6)
37:19;38:2,15;
39:3,22;67:20
several (1)
15:10
shape (1)
16:2
shareholder (5)
53:6;55:3;57:9;
58:15,22
shares (1)
57:10
short (1)
13:10
shown (3)
32:13;33:22;38:6
sic (1)
54:7
side (1)
15:6
signatory (2)
58:21;59:21

**signed (2)**
  29:14;54:3
**significant (4)**
  16:1;24:20;26:15;
  64:12
**similarly (1)**
  38:24
**simply (1)**
  32:24
**single (1)**
  35:21
**situated (1)**
  38:24
**situation (1)**
  63:13
**situations (2)**
  52:2;54:14
**six (1)**
  39:18
**sixteenth (2)**
  35:8;67:17
**sizing (1)**
  47:7
**smart (1)**
  57:23
**solely (5)**
  32:21;43:3,11;
  45:6;68:10
**someone (1)**
  22:4
**sophisticated (1)**
  58:8
**sorry (3)**
  19:17;62:5,5
**sought (6)**
  21:19;23:19;
  24:21;26:23;52:22;
  55:11
**sound (1)**
  45:15
**South (1)**
  6:15
**speak (1)**
  64:4
**speaking (1)**
  23:10
**specific (2)**
  39:24;51:20
**Specifically (3)**
  20:18;55:7;61:3
**spirit (1)**
  26:12
**split (1)**
  37:8
**stakeholders (1)**
  26:7
**standards (1)**
  62:16
**start (4)**
  13:10,11;39:11;
  59:7
**started (1)**
  13:6

**state (2)**
  16:4;54:22
**statement (2)**
  28:12;59:12
**STATES (10)**
  8:2,3;21:18,20;
  25:19;27:11;52:20,
  22;61:11;62:17
**status (5)**
  13:10;16:17;
  23:20;24:5;25:1
**step (2)**
  13:23;44:2
**still (5)**
  21:8;57:17;60:20;
  62:20;64:15
**stipulation (2)**
  43:25;44:2
**stock (2)**
  32:23;57:10
**strategic (13)**
  15:20;50:25;53:9,
  23;54:25;59:13,16;
  60:2,10;62:7;63:18;
  64:5;69:3
**strategy (5)**
  15:7,9,17;62:9;
  64:14
**streamlining (1)**
  15:2
**Street (5)**
  7:15;8:4;10:12,21;
  11:4
**strong (1)**
  57:19
**strongly (1)**
  26:13
**study (1)**
  17:10
**styled (2)**
  17:9,12
**subject (2)**
  21:5,8
**submission (1)**
  18:17
**submit (17)**
  29:13,21;32:2;
  33:9;34:20;36:24;
  40:14;41:6;42:17;
  44:21;46:13;47:2;
  48:11,22;50:8;64:20,
  21
**submitted (6)**
  29:6;40:12;50:5;
  54:5;56:1;60:7
**subsequent (1)**
  61:16
**substance (1)**
  20:16
**substantial (5)**
  13:14;14:18;52:3,
  10;54:9
**substantially (6)**

  23:12;42:11;
  44:14;46:6;48:4;
  49:25
**substantive (1)**
  14:11
**success (1)**
  26:25
**sufficiency (1)**
  61:12
**Suite (3)**
  6:5,16;8:5
**summary (2)**
  28:7,13
**superseded (1)**
  31:19
**supplemental (9)**
  18:7,17,25;19:25;
  20:9;52:20;56:1,18;
  67:2
**support (19)**
  18:2;25:21;29:7;
  32:1;33:7;34:18;
  36:19;44:19;46:11;
  48:8;50:5;51:6,13;
  52:18;56:1;57:5,14;
  58:15;60:7
**supported (3)**
  30:16;40:12;52:18
**supporting (3)**
  24:8;38:19;53:20
**Sure (7)**
  13:8;28:12;56:23;
  59:9;60:24;61:3,24
**surviving (3)**
  31:16;34:5;36:5
**sustain (5)**
  32:1;33:8;34:18;
  36:20;40:13
**sustained (6)**
  67:12,14,16,18,21,
  24
**SUTCLIFFE (1)**
  10:10
**Synergy (6)**
  17:9;20:22;22:24;
  23:1;24:3;26:16

**T**

**tab (11)**
  31:1;32:6;33:14;
  35:9;37:20,21;41:4;
  42:24;44:25;47:1;
  48:20
**table (1)**
  64:4
**tail (5)**
  58:11;61:15,15;
  62:1,2
**ten (4)**
  23:18;45:5;52:8,8
**term (2)**
  41:20;60:16

**terms (8)**
  25:9;43:8,12,15;
  45:13,14;61:6,6
**Terrific (3)**
  13:12;20:6;29:3
**testimony (7)**
  18:2,12,16,18;
  51:14;56:9,13
**Thanks (1)**
  35:4
**therefore (1)**
  23:14
**therein (1)**
  28:24
**thereof (1)**
  45:20
**thinking (1)**
  62:7
**Third (3)**
  9:4;33:13;53:12
**thirteenth (2)**
  30:25;67:11
**thirty (2)**
  30:20;31:22
**Thomas (4)**
  40:16,19;46:15,19
**Though (1)**
  34:8
**thought (2)**
  28:8;62:6
**thousands (1)**
  44:3
**three (4)**
  35:5;41:8;53:6;
  55:24
**throughout (1)**
  60:4
**timing (2)**
  16:2;26:14
**today (12)**
  13:15,19,24;15:11,
  19;42:23;50:21;
  57:9;58:18;59:5;
  64:10,24
**together (5)**
  13:3;37:14,15,17;
  50:25
**TOGUT (2)**
  6:2,9
**top (1)**
  52:9
**total (2)**
  14:22;37:9
**toward (1)**
  22:21
**towards (1)**
  15:2
**trade (1)**
  14:15
**transactions (10)**
  41:1;43:2;45:2;
  46:23;48:16;68:2,8,
  13,17,22

**transformations (1)**
  52:11
**transparent (1)**
  26:10
**treated (7)**
  20:25;23:14,19,
  21;25:3,7;28:9
**treatment (2)**
  21:1;27:6
**tremendous (1)**
  26:6
**Trust (8)**
  10:3;43:3,11,21;
  46:24;47:4;68:10,19
**Trustee (16)**
  8:3;21:18,22;
  25:19;27:9,11,16;
  43:4,11;52:20,23;
  53:2;61:11;62:17,
  18;68:11
**Trustee's (1)**
  21:20
**turn (7)**
  13:22;16:13;
  20:24;34:21;40:16;
  41:8;52:10
**turnaround (1)**
  63:17
**turning (4)**
  17:24;48:14;
  50:18;64:6
**twenty (6)**
  24:25;28:9,19,19,
  20;52:9
**twice (1)**
  19:5
**two (9)**
  17:6,8;22:18;
  25:11;26:22;33:2;
  37:3,8,12
**type (1)**
  64:3
**typically (1)**
  62:10

**U**

**UK (3)**
  9:20;50:24;69:3
**ultimate (2)**
  26:19;52:6
**ultimately (2)**
  14:22;15:22
**uncertainties (1)**
  51:22
**uncertainty (2)**
  16:1;54:22
**uncontested (6)**
  22:11;30:14,20;
  35:6;44:11;46:3
**under (18)**
  17:5;23:3,6,7,9,18,
  24;24:25;25:5,11,15;

20-11254-jlg Doc 2115 Filed 04/01/21 Entered 04/02/21 14:46:27 Main Document

LATAM AIRLINES GROUP S.A., et al. Pg 82 of 83

Main Case No. 20-11254-jlg

March 31, 2021

26:17;28:20;29:11;
32:24;41:9;51:12;
52:14
**understood (1)**
17:10
**undisputed (7)**
31:25;33:6;34:17;
36:18;44:18;46:10;
48:8
**uninformed (2)**
28:4;29:1
**unique (2)**
54:13;64:3
**UNISON (1)**
65:4
**UNITED (10)**
8:2,3;21:17,20;
25:19;27:11;52:19,
22;61:11;62:17
**unless (13)**
16:13;21:25;
31:20;32:25;34:10;
36:10;38:25;42:9;
44:12;46:4;48:2;
49:23;56:25
**unnecessary (1)**
63:23
**unsecured (10)**
16:10,11;20:25;
21:2,13;23:15,22;
25:3,7;49:17
**unwarranted (1)**
38:23
**up (2)**
15:10;37:10
**update (1)**
51:6
**updates (1)**
16:12
**updating (1)**
17:15
**upon (14)**
27:16;31:25;33:6;
34:17;36:18;40:11;
44:18;46:10;48:8;
60:8;62:15;64:1,9,17
**Utah (3)**
45:3,6;68:15

**V**

**value (1)**
26:6
**variables (1)**
16:5
**Varick (1)**
8:4
**Various (3)**
10:20;16:8;23:11
**Vespucio (1)**
11:12
**view (4)**
14:22;23:11;

24:20;51:15
**views (1)**
27:5
**voice (1)**
63:18

**W**

**wait (1)**
40:1
**walk (2)**
19:14;20:6
**walking (5)**
31:3;32:7;33:16;
35:10;37:25
**wants (1)**
16:14
**WARDWELL (1)**
8:11
**way (3)**
24:4;28:11;63:22
**wealth (2)**
54:13,15
**weeks (2)**
14:9;26:22
**WEISGERBER (4)**
9:7;25:23,24,25
**welcome (1)**
36:1
**well-aware (1)**
54:3
**West (4)**
7:15;10:12,21;
11:4
**what's (4)**
22:21,22;39:7;
62:15
**Whereupon (1)**
65:5
**whichever (1)**
37:14
**WHITE (1)**
6:13
**WHITNEY (1)**
7:13
**who'd (9)**
33:4,21;34:16;
35:15;36:16;38:4;
40:9;42:13;57:4
**wholly (1)**
54:20
**Wilmington (5)**
10:3;43:3,11,21;
68:10
**wish (15)**
18:13;22:4,5;
25:23;27:9,19,22;
29:4;31:7,24;32:11;
44:17;46:8;48:7;
50:3
**wishes (1)**
56:3
**within (3)**

17:20;38:15;54:21
**without (2)**
16:9;51:17
**witnesses (1)**
29:16
**words (1)**
23:8
**work (28)**
14:21;15:24;16:8;
22:12,19,20;23:3;
24:3,9,12;25:17;
26:14,16,19,21,22;
28:1;29:8;51:16,20;
53:10,11;55:7,8,9;
58:3;62:2,9
**worked (1)**
26:8
**working (6)**
14:24;25:15,19;
26:5,25;57:24
**world (1)**
63:14

**X**

**XP (8)**
17:12;20:19;23:8,
23;25:5,15;26:20;
28:9

**Y**

**Yards (1)**
10:4
**year (1)**
26:5
**YEHUDA (1)**
7:9
**York (13)**
6:6;7:5,16;8:6,14;
9:5,22;10:5,13,22;
11:5,15,23

**0**

**02210 (1)**
9:14

**1**

**1 (22)**
19:18;20:10;23:5;
24:17;31:14,16,22;
32:19;33:3;34:3,6,
13;36:3,6,13;38:15;
39:2,4;41:3,10;68:6,
16
**1.215 (2)**
24:15;25:1
**1.8 (1)**
25:11
**10 (3)**
21:6;44:25,25

**100 (1)**
14:20
**100,000 (1)**
57:10
**10001 (1)**
10:5
**10006 (1)**
11:23
**10014 (1)**
8:6
**10016 (1)**
9:22
**10017 (1)**
8:14
**10019 (4)**
7:16;10:13,22;
11:5
**10022 (1)**
9:5
**10036 (1)**
7:5
**1006 (1)**
8:5
**10119 (1)**
6:6
**105 (1)**
39:4
**105a (1)**
29:11
**1095 (1)**
7:4
**10th (3)**
41:4;46:25;48:19
**11 (10)**
21:9;26:20;42:3;
43:18;46:21;47:1,
20;49:15;52:7;67:17
**11th (1)**
18:8
**12 (3)**
48:15,20;68:7
**12:18 (1)**
65:5
**13,743,000 (2)**
20:21;25:6
**14,715,000 (3)**
20:19;25:6;28:21
**1501 (1)**
11:12
**1588 (1)**
17:5
**17 (1)**
67:11
**1886 (3)**
30:14;31:1,10
**1887 (2)**
32:5,15
**1888 (2)**
33:14,24
**1889 (2)**
35:9,17
**1890 (2)**
37:19;38:8;40:13

**1891 (4)**
30:15;37:21;
38:10;40:13
**1973 (1)**
41:3
**1975 (1)**
43:4
**1976 (1)**
45:4
**1977 (1)**
46:25
**1978 (1)**
48:18
**1979 (1)**
18:8,18;19:1
**1-D (1)**
19:11,19

**2**

**2 (4)**
20:4,14;30:13;
31:1
**200 (2)**
6:15;9:13
**201 (1)**
8:4
**2011 (4)**
35:21;36:14,22;
67:19
**20-11254 (1)**
13:4
**2018 (2)**
55:10;61:17
**2019 (1)**
61:17
**2020 (3)**
43:5;55:10;58:12
**2021 (4)**
41:4;42:8;46:25;
48:19
**2034 (4)**
44:9;46:1;47:25;
49:20
**2049 (1)**
35:24
**2058 (10)**
42:7,12;44:10,15;
46:2,7;48:1,5;49:22;
50:1
**2066 (1)**
21:18
**2070 (1)**
53:15
**2077 (2)**
19:11,21
**2077- (1)**
20:3
**24 (2)**
67:13;68:21
**24th (2)**
42:8;43:5
**250 (3)**

37:11;39:2,21
**29 (1)**
  67:8

## 3

**3 (3)**
  20:16;25:4;32:6
**3007 (5)**
  31:21;33:1;34:11;
  36:11;39:1
**3058 (3)**
  48:18,24;68:24
**31 (2)**
  10:21;11:4
**32 (1)**
  67:11
**327 (1)**
  17:20
**328a (1)**
  52:15
**33 (1)**
  67:13
**33131 (1)**
  6:17
**3335 (1)**
  6:5
**34 (1)**
  67:15
**355 (1)**
  37:9
**36 (1)**
  67:17
**363b (1)**
  29:10

## 4

**4 (8)**
  9:13;20:16,24;
  23:21;24:16;33:14;
  67:20;68:12
**40 (1)**
  67:20
**400 (1)**
  13:25
**42 (1)**
  68:1
**44 (1)**
  68:7
**450 (1)**
  8:13
**46 (1)**
  68:12
**48 (1)**
  68:16
**4900 (1)**
  6:16

## 5

**5 (3)**
  34:23;35:6,9

**5.3.1.4i (1)**
  24:18
**50 (1)**
  68:21
**51 (2)**
  7:15;10:12
**5234 (3)**
  46:24;47:4;68:19
**52nd (4)**
  7:15;10:12,21;
  11:4
**55 (1)**
  10:4
**56 (1)**
  67:2

## 6

**6 (5)**
  21:3;34:23;35:6;
  37:3,20
**64 (1)**
  69:1

## 7

**7 (6)**
  30:13;34:23;35:6;
  37:3,21;68:1
**792,000 (2)**
  20:24;23:21

## 8

**8 (3)**
  40:24;41:4;67:8
**88,000 (1)**
  20:23
**880,000 (1)**
  23:19

## 9

**9 (4)**
  42:24,24;67:15;
  69:1
**90 (1)**
  9:21
**919 (1)**
  9:4
**972,000 (3)**
  20:21;25:2,6