Richard J. Cooper
Lisa M. Schweitzer
Luke A. Barefoot
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LATAM Airlines Group S.A., *et al*., | Case No.: 20-11254 (JLG) |
| Debtors.[1] | Jointly Administered |
| | **Related Docket Nos. 1005, 1139, 1609, 1760, 2480, 2796, 3169 & 3204** |

**THE DEBTORS' STATEMENT IN FURTHER SUPPORT OF
THE DEBTORS' FOURTH MOTION FOR ENTRY OF AN ORDER
EXTENDING THE DEBTORS' EXCLUSIVE PERIODS IN WHICH
TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM-Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services LLC (30-1133972); Maintenance Service Experts LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services, Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); LATAM Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); ABSA Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corretora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33122.

LATAM Airlines Group S.A. ("LATAM Parent") and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors")[2] hereby submit this statement (the "Statement") in further support of the *Debtors' Fourth Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (ECF No. 3169, the "Fourth Exclusivity Motion")[3] and in response to the *Statement and Reservation of Rights of the Official Committee of Unsecured Creditors in Response to the Debtors' Fourth Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (ECF No. 3204, the "Committee's Statement").

## STATEMENT

1. First and foremost, no party has objected to the Debtors' request for a one-month extension of the Exclusivity Periods, and the Fourth Exclusivity Motion can proceed on an entirely uncontested basis. The Debtors' ability to secure a consensual extension from all parties-in-interest is, among other things, a reflection of the constructive, ongoing discussions regarding the Debtors' forthcoming plan of reorganization taking place between the Debtors and their major stakeholders. The Debtors recognize that the Official Committee of Unsecured Creditors (the "Committee") is a vital part of this process and have taken steps to ensure that the Committee has been involved with this process on multiple levels.

2. As set out in the Fourth Exclusivity Motion and the plan-related materials that the Debtors publicly released on September 9, 2021 (the "Disclosure Materials"), these

---

[2]  LATAM Parent, and its debtor and non-debtor subsidiaries and affiliates are collectively referred to herein as "LATAM".

[3]  All capitalized terms not defined herein shall have the meaning ascribed to them in the Fourth Exclusivity Motion.

2

discussions are the product of the Debtors' robust marketing process, which has included a number of stakeholders, including the Debtors' most significant claimholders, the Debtors' majority shareholders, and other potential new sources of capital, to solicit proposals for exit financing on the path towards exiting chapter 11. These various discussions have been productive, culminating in the receipt of several plan and exit proposals, each of which contemplate raising in excess of $5 billion through the issuance of new debt and equity in LATAM Parent, among other terms. Although the Debtors are in discussions with the parties regarding certain issues with their individual proposals, the receipt of these initial proposals is a concrete and positive development in these cases.

3. The Committee does not object to the Debtors' requested extension. *See* Committee's Statement ¶4. Rather, the Committee filed a Statement devoted to repeating its well-worn mantras regarding its purported concerns with the Debtors' plan process, including statements about the role of existing shareholders in these cases and its thoughts about an illustrative plan term sheet circulated several months ago. Although the Fourth Exclusivity Motion need not serve as a platform to engage on these potential issues raised (again) by the Committee—which claims are, at this stage, entirely premature and hypothetical—the Debtors write to respond to certain of the assertions in the Committee's Statement.

4. As detailed in the Fourth Exclusivity Motion and the Disclosure Materials, the Debtors have pursued a robust marketing process for exit financing and capital, negotiating more than sixty non-disclosure agreements with a number of stakeholders and many of the world's largest and most sophisticated distressed and airline investors. Contrary to the Committee's broad-brush assertion, the Debtors have not concentrated their efforts in this plan process on any particular group of stakeholders, but instead solicited interest from a large group

3

of stakeholders and other potential parties-in-interest, and have focused on ensuring that any exit strategy allows the Debtors to emerge with a sustainable capital structure, adequate liquidity, and the ability to successfully execute their business plan. Crucially, and as the Debtors have also made clear in the Disclosure Materials, any exit strategy will necessarily comply with the relevant requirements of the Bankruptcy Code and other applicable law, including Chilean law, in order for the plan to be confirmed and implemented consensually and expeditiously around the world. Such a consensual plan is ultimately to the benefit of all interested parties, including the unsecured creditors represented by the Committee. The Debtors are focused on crafting a plan that can be confirmed in the United States and implemented in Chile and hope that this goal will continue to be supported by diligent, collaborative efforts by all parties involved in the Chapter 11 Cases, including the Committee.[4]

5.      To that end, the Committee's particular focus in its Statement on the Debtors' Illustrative Plan of Reorganization Term Sheet (the "Illustrative Term Sheet") as a criticism of the Debtors' process is misplaced. As the Committee acknowledges, the Illustrative Term Sheet—which was distributed to parties several months ago—was designed to be an indicative proposal to initiate the plan and exit funding marketing process that is now underway, and not the sole or exclusive path forward. Committee's Statement ¶¶ 5, 14. That process already has yielded multiple proposals, which are the subject of ongoing, productive discussions.[5] These discussions, and the proposals that they generate, effectively supersede the Illustrative Term Sheet, rendering the Committee's narrative largely irrelevant.

---

[4]     Although the Committee claims that they have "limited access to the Debtors' strategic planning and intentions," its advisors have been engaged in numerous regular and continuing discussions with the Debtors and their professionals throughout this process.

[5]     The Debtors' receipt of multiple proposals also belies the Committee's claim—also months' old—that the Illustrative Term Sheet would not result in a productive plan and exit funding negotiation process because it was unlikely that creditors would support such a plan structure. Committee's Statement ¶ 9.

4

6. Further, the Committee's claim that the Illustrative Term Sheet reflects the Debtors' goal of "giv[ing] all of the equity upside from the pandemic recovery to [existing] equity holders," Committee Statement ¶ 2, is yet further spin on the Debtors' intention divorced from the facts. As the Court recalls, under Chilean law, existing shareholders of a Chilean corporation have preemptive rights to purchase, in cash, their pro rata portion of any additional shares that are issued in connection with, relevantly, a stock issuance before the corporation is authorized to allocate the shares to others.[6] Although the Illustrative Term Sheet contemplated compliance with Chilean law, it also contemplated further waivers and assignments that would permit the Debtors to conduct a rights offering for unsecured creditors (a fact the Committee concedes). Committee's Statement ¶ 6, n.2. The Illustrative Term Sheet also did not include any specific allocations, valuations or other specific plan terms, such that it is premature at best for the Committee to allege that the Debtors intend to propose a plan that violates the absolute priority rule.[7] Indeed, the Debtors' structure, although merely illustrative, was specifically designed to provide unsecured creditors an opportunity to participate in any "equity upside." *Id*. ¶ 2.

7. More importantly, as explained above and as the Committee is well aware, the Debtors' plan and exit funding process is ongoing, and the Committee's concerns regarding an unfiled plan are both premature and purely hypothetical. The Debtors are committed to formulating a plan of reorganization that is in the best interests of their stakeholders, fully complies with all applicable law (including the Bankruptcy Code and Chilean law) and can

---

[6] For the avoidance of doubt, under the Illustrative Term Sheet, any shareholders that elect to exercise their preemptive rights would purchase such shares at plan value, which the Committee explicitly acknowledges. Committee's Statement ¶ 6, n.2.

[7] Of course, as the Committee well knows, the absolute priority rule is not a rule of universal application. It takes effect only where a plan is not accepted by all classes of impaired creditors. *See* 11 U.S.C. 1129 (b)(1).

5

readily be implemented in the United States and the jurisdictions where the Debtors operate. Notwithstanding the Committee's continued efforts to develop a negative spin about the intentions and objectives of the Debtors, similar to the robust process that has been followed throughout these cases, the Debtors and their management, in consultation with their independent directors, have focused on proposing a plan of reorganization that complies with all applicable laws, builds stakeholder consensus in these cases, and avoids prolonged litigation that would only serve to enrich professionals rather than the actual creditors and shareholders. The extension of the Exclusivity Periods, which is unopposed, will enable the Debtors to continue their ongoing orderly process to formulate such a plan.

**CONCLUSION**

WHEREFORE, for the reasons set forth in the Fourth Exclusivity Motion and this Statement, the Debtors request that the Court enter an order extending (i) the Filing Exclusivity Periods through and including October 15, 2021 and (ii) the Soliciting Exclusivity Periods through and including December 15, 2021.

| | | |
|---|---|---|
| Dated: | September 20, 2021<br>New York, New York | */s/ Lisa M. Schweitzer*<br>Richard J. Cooper<br>Lisa M. Schweitzer<br>Luke A. Barefoot<br>Thomas S. Kessler<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel to the Debtors and Debtors-in-Possession* |