**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LATAM Airlines Group, S.A., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 20-11254 (JLG)<br><br>(Jointly Administered) |

**STATEMENT OF DELTA AIR LINES, INC. WITH RESPECT TO THE DEBTORS' FIFTH MOTION FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Delta Air Lines, Inc. ("Delta") respectfully submits this statement in support (this "Statement") of the *Debtors' Fifth Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 3363] (the "Debtors' Motion") and in response to the filings made in response thereto.[1]

**STATEMENT**

1. Delta supports the Debtors' request for an extension of their exclusive chapter 11 plan filing and solicitation periods through expiration of the applicable statutory periods.

2. Delta also supports the requests made by various parties in their Responses to commence comprehensive mediation immediately.[2] While many of the parties find themselves on opposite sides of various plan-related issues, including issues arising under Chilean law, Delta believes that the parties share the same desire to work hard, constructively, and in good faith to try to resolve any plan-related disputes through mediation.

---

[1] The Official Committee of Unsecured Creditors (the "Committee") filed a response [ECF No. 3392] (the "Committee Response"), which Banco del Estado de Chile joined [ECF No. 3408] (the "BancoEstado Joinder"), and the Parent Ad Hoc Claimant Group (the "Parent Ad Hoc Group") filed a separate limited objection [ECF No. 3394] (the "Parent Ad Hoc Group Objection" and, collectively with the foregoing, the "Responses").

[2] *See* Parent Ad Hoc Group Objection at ¶¶ 1-4, 10-14; *see also* Committee Response at ¶¶ 8-9; BancoEstado Joinder at ¶¶ 1-2.

3. Delta has expressed support for mediation repeatedly, has previously negotiated in good faith with all parties, and intends to continue to do so. To the extent that the Committee Response can be read to imply that Delta is unwilling to mediate,[3] that is simply not true. Indeed, Delta expressed support for mediation in correspondence sent to multiple parties, including the Committee, as recently as last week.

4. The mediation can and should begin promptly. Judge Gropper has already been appointed to serve as a mediator and is an experienced and highly regarded jurist with extensive cross-border insolvency expertise. He is available and willing to mediate as soon as the parties agree to, or the Court directs, further mediation and he is well acquainted with the issues that would be central to any plan-related disputes.

5. Additionally, the scope of the mediation should be broad enough to ensure its success. The widespread desire for broad plan mediation follows directly from the Court's guidance at the July 30, 2021 hearing, in which Your Honor encouraged the parties to "work towards getting a larger resolution of the issues as they relate to the equity holders."[4] The Court foretold the need to mediate and suggested that the parties work together toward a consensual resolution, rather than spend time and resources litigating. There will be many parties to the mediation, including parties that are geographically remote or multiple time zones away and, as such, the mediator should have substantial flexibility to deal with the parties and the issues in whatever ways he believes to be constructive under the circumstances.

---

[3] *See* Committee Response at ¶¶ 7-9.

[4] *See* 07/30/2021 Hr'g Tr. at 57:25-58:4; *see also id.* at 45:24-46:3 ("What is important is that [the mediation] would be a meaningful opportunity for people to begin to address those issues [relating to the standing motions], but as well as the other issues that are inevitably going to come up as it relates to the [equity holders]. It's a huge issue that is going to have to be dealt with."), 50:11-18 ("And so that yes, we can be looking at these issues [relating to the standing motions], but I see it as part of a bigger issue, and that is what the exit strategy is going to be as people are trying to put together a plan . . . . But I think that on some level they would be certainly related to the overall treatment of equity, of those equity holders in the case.").

2

6. Finally, in its limited objection, the Parent Ad Hoc Group suggests that Delta, Qatar, and Costa Verde are "insiders" seeking to reallocate value to themselves at the expense of the creditors.[5] Such a description is both legally and factually inaccurate.[6] As the Court made clear on the record during the July 30, 2021 hearing, it has not made any finding that any of these parties are "insiders," either statutorily or otherwise.[7] Moreover, Delta's right to nominate two directors to LATAM's nine-member board of directors does not constitute control. Pursuant to Delta's undertakings with the FNE (*Fiscalía Nacional Económica*), both directors nominated by Delta – neither of whom has any prior affiliation with Delta – are required to (1) meet the New York Stock Exchange's independence criteria with respect to Delta and (2) vote on LATAM board matters according to the best interests of LATAM, not Delta.[8]

---

[5] *See* Parent Ad Hoc Group Objection at ¶¶ 6-7, 9, 14.

[6] The reality is that Delta is neither a statutory insider (as it owns less than 20% of LATAM's outstanding common stock) nor a non-statutory insider based on its lack of control over LATAM prior to the filing of these chapter 11 proceedings. *See, e.g., N.J. Steel Corp. v. Bank of N.Y.*, 1997 WL 716911, at *5 (S.D.N.Y. Nov. 17, 1997) (listing factors evincing a creditor as a "non-statutory insider," including (1) attempting to influence decisions made by the debtors; (2) selecting new management; (3) attaining special access to premises or personnel; (4) serving as sole source of financial support; and (5) acting as a joint venture or prospective partner); *see also Statement of Delta Air Lines, Inc. in Support of the Debtors' Motion for an Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Grant Superpriority Administrative Expense Claims and (II) Granting Related Relief* [ECF No. 669] at ¶¶ 5-10.

[7] *See* 07/30/2021 Hr'g Tr. at 52:4-11.

[8] Delta responded to similar arguments at the DIP hearing, *see Statement of Delta Air Lines, Inc. in Support of the Debtors' Motion for an Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Grant Superpriority Administrative Expense Claims and (II) Granting Related Relief* [ECF No. 669] at ¶ 9; *see also* 08/05/2020 Hr'g Tr. at 72:8-12, and is prepared to respond to them if they are properly before the Court.

3

## **CONCLUSION**

7. Delta will continue to work in good faith to reach a consensual plan that both satisfies the Bankruptcy Code's confirmation requirements and complies with applicable Chilean law. For the foregoing reasons, Delta supports both the Debtors' Motion and the requests to mediate the plan-related issues.

Dated: New York, New York
October 25, 2021

DAVIS POLK & WARDWELL LLP

By: */s/ Lara Samet Buchwald*
Marshall S. Huebner
Lara Samet Buchwald
Adam L. Shpeen
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
marshall.huebner@davispolk.com
lara.buchwald@davispolk.com
adam.shpeen@davispolk.com

*Counsel for Delta Air Lines, Inc.*