Richard J. Cooper
Lisa M. Schweitzer
Luke A. Barefoot
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LATAM Airlines Group S.A., *et al.*, | Case No.: 20-11254 (JLG) |
| Debtors.[1] | Jointly Administered |
| | **Related Docket Nos. 3363, 3392, 3394 & 3408** |

# DEBTORS' REPLY IN FURTHER SUPPORT OF
# DEBTORS' FIFTH EXCLUSIVITY EXTENSION MOTION

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM-Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services LLC (30-1133972); Maintenance Service Experts LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services, Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); LATAM Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); ABSA Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corretora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33122.

LATAM Airlines Group S.A. ("LATAM Parent") and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors")[2], hereby submit this reply (the "Reply") in further support of *Debtors' Fifth Motion for Entry of an Order Further Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "Exclusivity Motion") (ECF No. 3363),[3] and respectfully state as follows:

## PRELIMINARY STATEMENT[4]

1. First and foremost, no party has raised a principled objection to the relief requested in the Exclusivity Motion, nor suggested that the Debtors have not established their entitlement to a further extension of the Exclusivity Periods. As evidenced by the Exclusivity Motion, the Debtors have continued to make significant progress over the past several weeks by engaging in ongoing discussions with various stakeholders, including the Creditors' Committee and the Parent Ad Hoc Claimant Group, regarding plan and exit structures. An extension of the Exclusivity Periods will allow those discussions to continue unimpeded by the material disruption that would be caused by the potential for multiple, competing plans of reorganization.

2. At best, the few responses filed to the Exclusivity Motion merely request that the Court direct the relevant parties to mediate certain issues asserted as being related to the ongoing plan negotiations. The Debtors do not believe that extending the Exclusivity Periods by another month should be conditioned in any way on an agreement to mediate. That said, to the extent parties conclude they are unable to continue to participate meaningfully in plan discussions without the involvement of a mediator, the Debtors are willing to consider that and—

---

[2] LATAM Parent, and its debtor and non-debtor subsidiaries and affiliates are collectively referred to as "LATAM".

[3] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Exclusivity Motion.

[4] Capitalized terms used in this Preliminary Statement shall have the meaning ascribed to them herein.

2

to that end—have already made a proposal to certain parties regarding a potential mediation, which would involve, at the appropriate time, each of the parties that filed responses to the Exclusivity Motion. The Debtors will continue to engage with the necessary parties to arrive at a consensual framework for prompt and productive mediation, separate from seeking the extension of exclusivity.

3.      As they consistently have made clear, the Debtors believe that the prompt and successful resolution of these Chapter 11 Cases is best achieved through a consensual plan of reorganization, a sentiment that is reinforced by certain responses filed. Achieving a consensual, confirmable plan of reorganization that may be effectively implemented in all relevant jurisdictions has been the Debtors' ultimate goal throughout these plan negotiations. Further to that goal, the Debtors and their advisors have engaged in various bilateral and multilateral discussions regarding the complex legal and structural issues that must be resolved as a predicate to the confirmation of any plan of reorganization, and have pushed all interested parties to work cooperatively and to embrace necessary compromise. Although the Debtors stand ready to carry those discussions into mediation, any such mediation will only be effective if all parties acknowledge the complexity of these issues and seriousness of the risk of protracted and value-destructive proceedings that could arise absent consensus and compromise, and if all parties commit time to engage in meaningful negotiations and dialogue to bridge gaps. Any lesser commitment would be a disservice to each party's constituency, as well as this Court and, ultimately, the Debtors' interest holders as a whole.

## FACTS RELEVANT TO THIS REPLY

4.      As explained in the Exclusivity Motion, the Debtors and their advisors have made significant progress towards a consensual plan of reorganization and financing

3

structure in a relatively short time. In May and June 2021, the Debtors entered into non-disclosure agreements and transmitted their confidential five-year business plan to certain qualified interested parties, followed by meetings with stakeholder advisors regarding the business plan and diligence requests.[5] In fact, on June 8, 2021, the Debtors participated in meetings regarding the Debtors' business plan with Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") and Evercore Group LLC, who then were representing a large individual creditor. The Debtors engaged in these meetings in order for parties to propose the terms of potential exit financing to support a chapter 11 plan.

5. Subsequently, on June 30, 2021, Kramer Levin filed its notice to appear on behalf of an ad hoc group of financial institutions and hedge funds holding certain claims against or interests in LATAM Parent purchased postpetition (the "Parent Ad Hoc Claimant Group") (ECF No. 2634), after which it started to appear and participate in the cases on behalf of that group. Although the Parent Ad Hoc Claimant Group has not yet filed an updated Rule 2019 statement, the Debtors understand the group composition has changed since the notice filed in June, though it continues to comprise various funds that have purchased claims on the secondary claims trading market, including a significant portion of which have been purchased in recent months.[6]

---

[5]     *See Debtors' Fourth Motion for Entry of an Order Further Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (ECF No. 3169) ¶ 24.

[6]     The Parent Ad Hoc Claimant Group have, at times, attempted to cast themselves as the dominant, or even controlling, voice of LATAM Parent creditors, even going so far as to suggest that this Court should craft a bespoke remedy to allow it (and only it) to file a competing plan of reorganization. *See* the *Parent Ad Hoc Claimant Group's Limited Objection to Debtors' Fifth Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "LATAM Parent Claimholders' Objection") (ECF No. 3394) at 3 n.4. To be sure, the precise composition of the Parent Ad Hoc Claimant Group has been in material flux throughout their brief involvement as a distinct constituent group. *Compare* the *Statement of the Parent Ad Hoc Claimant Group in Support of the Unsecured Creditors' Committee's Standing Motion*s (ECF No. 2737) at ¶ 1 (reflecting holdings of approximately $5.5 billion in claims as of July 16, 2021) *with* the LATAM Parent Claimholders' Objection at ¶ 1 (referring to an aggregate of "in excess of $4 billion" as of October 21, 2021). Moreover, as mentioned below, Parent Ad Hoc Claimant Group has yet to propose a plan structure that could be

6. At the July 30, 2021 Omnibus Hearing, the Court ordered a mediation to discuss the motions filed by the Creditors' Committee (ECF Nos. 2531 and 2532, the "Standing Motions"), and indicated that it may be appropriate, at a later time, to engage in mediation concerning certain other potential issues.[7] On August 17, 2021, the Debtors filed a *Notice of Presentment of Proposed Order Appointing Mediator and Establishing Procedures for Mediation* (the "Mediation Procedures") (ECF No. 2962), which sought the appointment of Hon. Allan L. Gropper (Ret.) as mediator and approval of procedures related to the proposed mediation of the Standing Motions, providing for a basis to expand the mediation at a later date if necessary.[8] The Court entered an order approving the Mediation Procedures on August 31, 2021 (ECF No. 3060). In the following weeks, the Debtors, along with the Designated Parties (as defined in the Mediation Procedures to include the Parent Ad Hoc Claimant Group) proceeded to mediate the Standing Motions, with sessions occurring at various times in September and October 2021.[9] At the time the Court raised the possibility of mediation, the Debtors still had not yet received an initial exit financing proposal from the Parent Ad Hoc Claimant Group or other parties.

7. Indeed, for the first time on August 20, 2021, the Parent Ad Hoc Claimant Group presented a proposed plan and exit financing structure to the Debtors (approximately eleven weeks after their advisors first received the Debtors' business plan). Within five days, the Debtors provided their initial feedback, including a high-level issues list. The Debtors continued

---

readily confirmed and implemented. *See infra* at ¶ 7. In any event, no single group of creditors at an individual Debtor is entitled to unilaterally direct the prosecution of a complex, integrated restructuring that involves dozens of Debtors and thousands, if not tens of thousands, of stakeholders.

[7] *See* July 30, 2021 Hr'g Tr. 50:5–23.

[8] *See* Mediation Procedures.

[9] On October 15, 2021, Judge Gropper filed a statement indicating the mediation had not been successful (ECF No. 3371).

5

to engage with the Parent Ad Hoc Claimant Group and other parties on proposals received and other plan related issues. Although the Debtors sought to organize in-person meetings, those meetings only first occurred a few weeks ago and, due to scheduling issues, parties were only available for a few days at a time, and only ready to come in-person for two sessions. Further, although the Debtors' negotiations to date have yielded progress, no party has yet made a proposal that the Debtors, in the exercise of their fiduciary duties, can support. Rather, as the Debtors have communicated to the parties, each of the various proposals received to date creates material levels of implementation risk, and is too narrowly focused on allocating value to the proposal's authors. As such, the Debtors have continued to advance negotiations in an effort to move parties to more feasible proposals, but given that the prior exclusivity extension was for only one month, the Debtors have filed the Exclusivity Motion to provide further time to develop a consensual plan or other alternative path.

8.    Two statements were filed regarding the Exclusivity Motion: the LATAM Parent Claimholders' Objection and the *Statement of the Official Committee of Unsecured Creditors Regarding Debtors' Fifth Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof and Granting Related Relief* (the "UCC Statement" and, together with the LATAM Parent Claimsholders' Objection, the "Responses") (ECF No. 3392).[10] Irrespective of how the Responses were styled, none directly opposed the relief requested in the Exclusivity Motion on

---

[10] Over twenty-four hours after the deadline to file a response to the Exclusivity Motion, Banco del Estado de Chile filed a short statement joining certain of the Creditors' Committee's requests but did not take any position with respect to the Exclusivity Motion or the relief requested therein. (ECF No. 3408).

6

principle; rather, at most, they seek to condition a further extension on more fulsome mediation of certain issues, which appear directed at advancing their own parochial interests.[11]

### REPLY

9.     As the Debtors have reiterated through their various requests for extension of the Exclusivity Periods, the Chapter 11 Cases are complex both due to the size and scope of the Debtors' operations as well as their global nature—which necessarily implicates applicable law in the Debtors' home jurisdictions that must be taken into consideration and synthesized with the Debtors' obligations under the U.S. Bankruptcy Code.  Crafting a plan that can be confirmed by this Court and implemented in the myriad locations where the Debtors operate (as it must for the Debtors to emerge from these Chapter 11 Cases), will require a sophisticated, comprehensive structure that addresses the applicable legal and regulatory frameworks and ensures that all stakeholders' interests are adequately represented and that the Debtors are poised to succeed upon emergence.

10.     The Debtors believe that extending the Exclusivity Periods by another month is warranted without condition.  The Debtors have worked to negotiate with their various stakeholders and, in parallel, consider all potential plans that would both be confirmable in the Chapter 11 Cases and implementable in all relevant jurisdictions.  The Debtors are surprised at the strident and vitriolic tone of the LATAM Parent Claimholders' Objection.  The Debtors have not repeatedly refused to mediate plan issues; indeed, barely two months have passed since the Parent Ad Hoc Claimant Group even made their first proposal, and the parties met in person for

---

[11]  *See* LATAM Parent Claimsholders' Objection ¶ 14 ("[G]iven the various benefits mediation can provide during this time, the Parent Ad Hoc Group objects to a further extension *unless the Debtors and their majority insider shareholders agree, or the Court directs the parties, to go to mediation* on these plan-related shareholder issues." (emphasis added)); UCC Statement ¶ 9 ("[T]he Committee does not formally object to the Debtors' extension request.").

7

the first time only a few weeks ago. Similarly, the Debtors are not unduly beholden to their shareholders, nor are they trying to develop a plan that would unduly favor any one constituency. Parties may disagree on the operational risks and value destruction that could potentially befall the Debtors (and therefore to all their stakeholders) if the Debtors are unable to propose a plan that complies with the Bankruptcy Code and other applicable law, but the existence of Chilean corporate requirements that would apply to the implementation of any restructuring plan is not a new issue. Indeed, it was raised and discussed at length in the context of the approval of the Debtors' DIP financing last summer, well before the members of the Parent Ad Hoc Claimant Group purchased most if not all of their current claims positions and became parties-in-interest in these cases. Any suggestion that the cases have lingered too long without resolution falls flat, particularly where the Parent Ad Hoc Claimant Group has only acquired positions, organized themselves, and taken an active role in the cases in the last few months, and discussions have only begun in earnest in recent weeks.

11. At all times, the Debtors' focus has been on securing a consensual approach that satisfies all applicable legal requirements and not, as some have suggested, on any individual group's treatment under such a structure. That process began with a broad solicitation of interest from potential interested parties even before the Parent Ad Hoc Claimant Group was formed and appeared,[12] and, more recently, has involved negotiations with major stakeholders, including principals and advisors, and has led to multiple, in-person meetings in the past several

---

[12] *See supra* at 4. The broad-based marketing efforts highlighted by the Debtors in the Exclusivity Motion and other related filings, *see e.g.*, ECF Nos. 3363, belie the Creditors' Committee's premature claim that the ultimately proposed plan will not be the product of a sufficiently robust "market check." *See* UCC Statement ¶¶ 7–9. The Creditors' Committee's suggestion that the Debtors have refused to engage interested parties with respect to funding in these Chapter 11 Cases is similarly undermined by the Debtors' marketing efforts with respect to Tranche B financing, produced three proposals after the Debtors engaged approximately forty-five parties with a prepared process letter to solicit potential interest. ECF No. 3243 at ¶¶ 24–25.

8

weeks alone. As documented more fully in the Exclusivity Motion, these efforts demonstrate the Debtors' heavy focus on achieving a successful reorganization, which (together with the other factors discussed in the Exclusivity Motion) justify extending the Exclusivity Periods.

12. The Parent Ad Hoc Claimant Group implies that these past weeks have been unproductive, or that the Debtors' ability to engage has been "handcuffed" by the complexity of the multi-jurisdictional issues at stake.[13] Although the Debtors do not believe it would be productive to engage in a debate regarding the value of negotiation, there can be no dispute that the Debtors' effort to drive discussion among their stakeholders groups has helped crystalize the nature of the parties' current disputes and has resulted in competing proposals that are less diametrically opposed than they were only a few weeks ago (though none have emerged as a consensus path forward).[14] Regardless of the amount or nature of claims or other interest held by any party or any group, all parties must negotiate in good faith, and no one stakeholder group should dictate plan terms that unduly favor their own self-interest over other creditors and stakeholders. To the extent that stakeholders propose to engage in mediation, they should do so only with a sincere commitment to engage on the complex legal and economic issues at play, rather than as a quick box-checking exercise before launching full-on litigation in these cases.

13. As discussed above, the Debtors have provided a proposal to the Designated Parties (as defined in the Mediation Procedures) to promptly mediate certain issues raised in the Responses. Certain of the Responses attempt to cast the Debtors as resistant to mediation, but, as evidenced by their proposal and as discussed herein, the Debtors have no

---

[13]    *See* LATAM Parent Claimholders' Objection ¶¶ 3, 7.

[14]    The progress made thus far also underscores the reasonableness of the Debtors' preference for an initial round of direct negotiation between the parties as a predicate to engaging the services of a mediator, in contrast to the Parent Ad Hoc Claimant Group's misleading suggestion that the Debtors have somehow flatly refused to consider mediation. *See* LATAM Parent Claimholders' Objection ¶¶ 2, 10.

opposition to engaging in a streamlined mediation process to determine whether the relevant parties' current disputes can be resolved or narrowed to the extent the parties refuse to advance discussions otherwise.

14. Although the Debtors have now proposed a framework for mediation, the success of that process will depend on the willingness of all parties to actively participate in the process, including to compromise and work constructively toward consensus. In the absence of that commitment, the risk is too great that mediation will simply be a rehash of the parties' prior negotiation and will serve as a prelude to value destructive litigation that would only serve to harm all the Debtors' stakeholders.

15. The Debtors are hopeful that the ongoing discussions regarding the timing and nature of further mediation will conclude shortly, and that the resulting mediation will be conducted expeditiously and in good faith by all constituents involved. Given the ongoing nature of those discussions, the Debtors submit it would be premature for any one party to unilaterally propose or dictate the timing or scope of any mediation, and would respectfully request that the Court defer any such requests until the parties' discussions regarding mediation have concluded (to the extent they have not done so by the time of the October 28 hearing).

[*The remainder of this page is left blank intentionally*]

## CONCLUSION

WHEREFORE, for the reason set forth herein the Debtors respectfully request that this Court (a) overrule any objections to the Exclusivity Motion, (b) enter an order granting the relief requested in the Exclusivity Motion and (c) grant such other and further relief as is just and proper.

Dated: October 25, 2021
      New York, New York

/s/ Lisa M. Schweitzer
Richard J. Cooper
Lisa M. Schweitzer
Luke A. Barefoot
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*