**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Case No. 20-11254 (JLG) |
| LATAM Airlines Group, S.A., *et al.*, | ) Chapter 11 |
| Debtors.¹ | ) (Jointly Administered) |
| | ) **Related Docket No. 4056** |

**STATEMENT OF COSTA VERDE AERONÁUTICA S.A. IN SUPPORT
OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
AND APPROVING THE DEBTORS' (A) ENTRY INTO AND PERFORMANCE
UNDER BACKSTOP AGREEMENTS AND (B) PAYMENT OF RELATED
FEES AND EXPENSES AND INCURRENCE OF CERTAIN INDEMNIFICATION
OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

Costa Verde Aeronáutica S.A. ("Costa Verde") hereby respectfully submits this statement in support of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Debtors' (A) Entry Into and Performance Under Backstop Agreements and (B) Payment of Related Fees and Expenses and Incurrence of Certain Indemnification Obligations, and*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM-Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services LLC (30-1133972); Maintenance Service Experts LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services, Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); LATAM Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); ABSA Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corretora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

*(II) Granting Related Relief* [ECF No. 4056] (the "Backstop Motion") and in response to certain objections thereto[2] and states as follows:[3]

1.  The objections to the Backstop Motion focus very little on the Backstop Shareholders Backstop Agreement (the "Shareholder BCA"), beyond casting an air of conspiracy around commitments that reflect one piece of a comprehensive restructuring that was the result of weeks of intensive, arm's-length negotiations in a court-ordered mediation. Nevertheless, the Objectors briefly attempt to find fault with the eight-month commitment by Costa Verde and the other Backstop Shareholders to provide the Debtors with approximately $1.773 billion in new capital through the New Convertible Notes Class B and ERO Rights Offering in exchange for no backstop or commitment fee.[4]

2.  The Backstop Shareholders are providing significant value to the Debtors' estates and in return are receiving only customary expense reimbursement and indemnification. Specifically, the Backstop Shareholders have committed to provide a significant amount of new money to support the Debtors' exit from bankruptcy. This commitment must be viewed in the broader context of the Debtors' cases: The Shareholder BCA is one part of the contribution of

---

[2]   Costa Verde hereby responds to (a) *The Objection of the Official Committee of Unsecured Creditors to the Debtor's Motion for Entry of an Order (I) Authorizing and Approving the Debtors' (A) Entry Into and Performance Under Backstop Agreements and (B) Payment of Related Fees and Expenses and Incurrence of Certain Indemnification Obligations, and (II) Granting Related Relief* [ECF No. 4289] (the "Committee Objection"), (b) the *Objection of Banco del Estado de Chile, in its Capacity as Indenture Trustee Under the Chilean Local Bonds Series A through D and Series E, to the Debtors' Motion . . .* [ECF No. 4293] (the "BancoEstado Objection"), and (c) *Objection of the Ad Hoc Group of Unsecured Claimants to the Debtors' Motion . . .* [ECF No. 4291] (the "Unsecured AHG Objection") (collectively, the "Objections," and the parties submitting such Objections, the "Objectors").

[3]   Capitalized terms not defined herein have the meanings ascribed to them in the Backstop Motion.

[4]   The Committee characterizes the subjection of the Convertible Notes Class B issuance to existing shareholders' preemptive rights as "technical (though not meaningful)" without any explanation or basis for that description. Committee Obj. ¶ 72. The Committee has provided no basis for the conclusion that the exercise of preemptive rights is "not meaningful."

the Backstop Shareholders, together with certain other shareholders, toward a solution for the Debtors' complex cross-border legal issues, including by waiving preemptive rights to enable a significant allocation of new convertible notes to creditors through the Convertible Notes Class A and Class C, and agreeing to vote at shareholder meetings to approve the capital raises contemplated by the Plan.[5]  The Commitment Creditors, as holders of approximately 70% of LATAM Parent's unsecured debt, are likewise a critical and integral part of the overall deal embodied in the RSA, and are committing to backstop approximately $3.7 billion in new money investments through the Convertible Notes Class C and ERO Rights Offering.

3. The Objectors attempt to deny the value provided by the Backstop Shareholders' commitments and suggest that the Court should rewrite the terms of the heavily negotiated Shareholder BCA to extract the minimal — and market-standard — expense reimbursement and protection via indemnity provided to the Backstop Shareholders thereunder.  For the reasons set forth herein, there is no justification for doing so.

4. ***The expense reimbursement and indemnification provisions of the Shareholder BCA are reasonable***.  The Objectors take aim at the expense reimbursement and indemnification provisions of the Shareholder BCA, claiming they are unreasonable.  These provisions were bargained for as part of the Shareholder BCA, and are standard and customary in this District.  *See, e.g.*, Order Authorizing (I) the Debtors Entry into the Backstop Commitment Agreement and (II) Payment of Related Fees and Expenses ¶ 5, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 12, 2020), ECF No. 1806 (providing for payment of fees of

---

[5]  Costa Verde's affiliate Inversiones Costa Verda Ltda y Cia en Comandita Por Acciones, as well as Andes Area SpA, Inversiones Pia SpA and Comercial Las Vertientes, are also shareholders of LATAM Parent and parties to the RSA, and have likewise committed to vote in favor of capital raises at shareholder meetings, along with other commitments memorialized in the RSA.

backstop parties and indemnification); Order (I) Authorizing Debtors to (A) Enter Into Backstop Purchase Agreement, (B) Pay Specified Payment and Related Expenses, (C) Provide Indemnification to Certain Parties and (II) Granting Related Relief ¶¶ 5-9, *In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RDD) (Bankr. S.D.N.Y. Sept. 20, 2017), ECF No. 443 (same); Order Granting Debtors' Motion for an Order Pursuant to Bankruptcy Code Sections 105(a), 363 and 365, Bankruptcy Rule 6006, and Local Bankruptcy Rules 6006-1 and 9013-1 (I) Authorizing the Debtors to Assume the Restructuring Support Agreement, (II) Authorizing the Debtors to (A) Assume the Backstop Agreement, (B) Pay the Backstop Commitment Fee, and (C) Incur Certain Indemnification Obligations, and (III) Granting Related Relief ¶¶ 9-13, *In re Roust Corp.*, No. 16-23786 (RDD) (Bankr. S.D.N.Y. Jan. 10, 2017), ECF No. 40 (same); Order Authorizing and Approving the Debtors' (I) Entry Into and Performance Under the Backstop Commitment Agreement, (II) Payment of Related Fees and Expenses, and (III) Incurrence of Certain Indemnification Obligations ¶¶ 12-14, *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 23, 2014), ECF No. 509 (same).  Of note, the Objectors cite no case law for the proposition that a party providing a backstop or equity commitment should not receive this basic consideration.

5. Moreover, the Objectors' concerns about unlimited costs under the reimbursement provision are misplaced:  The Shareholder BCA expense reimbursement provision is limited to "the *reasonable* and documented fees, expenses, disbursements and other costs."  Shareholder BCA § 3.1 (emphasis added).

6. Nor is there any basis for the assertion that indemnification should be limited to claims arising out of the Shareholder BCA itself.  *See, e.g.*, BancoEstado Obj. ¶ 51.  Indemnification need not and should not be strictly limited to claims arising from the backstop

-4-

agreement, as the agreement concerns transactions that are interrelated with the plan and post-confirmation transactions. Accordingly, courts in this District have frequently approved of indemnification clauses in backstop agreements covering matters extending beyond the backstop agreement, including the plan, RSA, and even chapter 11 proceedings. *See, e.g.*, Debtors' Motion for Entry of an Order Authorizing (I) The Debtors Entry Into the Backstop Commitment Agreement and (II) Payment of Related Fees and Expenses Ex. B § 8.1, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Mar. 13, 2020), ECF No. 1579 (indemnification for claims relating to "this Agreement, the Plan or the transactions contemplated hereby and thereby"); Notice of Filing of Amended Backstop Agreement Ex. A § 10(a), *In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RDD) (Bankr. S.D.N.Y. Sept. 18, 2017), ECF No. 434 (including indemnification for claims related to "the Restructuring Documents, the Plan . . . [and] the Chapter 11 Cases" among other matters); Order Authorizing and Approving the Debtors' (I) Entry Into and Performance Under the Backstop Commitment Agreement, (II) Payment of Related Fees and Expenses, and (III) Incurrence of Certain Indemnification Obligations Ex. 1 First Am. § 2(i), *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 23, 2014), ECF No. 509 (indemnification clause covering "this Agreement, the RSA, the Chapter 11 Proceedings" and claims relating to "the Plan," among other matters).

7.  In the absence of any basis to establish that these commonplace indemnity and expense reimbursement provisions are out of the ordinary, the Committee makes the unusual argument that because the Backstop Shareholders were interested in investing in LATAM and may believe that the investment is financially beneficial, they are not entitled even to reimbursement and indemnification. This logic would apply to every backstop and equity

commitment agreement: It can be assumed that investors are economically rational actors and thus any party that agrees with a debtor to provide an equity commitment is interested in the equity. But an interest in investing, and even a belief that one may eventually profit from such an investment, does not lead to the conclusion that such a party will make a long-term commitment to purchase equity on any terms whatsoever, with no compensation or protection.[6]

8. The Shareholder BCA was the subject of significant negotiation, the result of which is that the Backstop Shareholders are making an eight-month commitment, providing the Debtors with certainty through what is expected to be a contested confirmation process, followed by regulatory and court approvals and shareholder votes to be held in Chile. Such a commitment requires diligence, work by both principals and professionals, and commitment of capital with some level of risk. While the Debtors' performance appears to be on an upward trajectory with cause for optimism, the times continue to be very uncertain, and these commitments provide the Debtors with a level of protection from declines in performance. *See* Decl. of Brent Herlihy in Support of the Backstop Agreements Motion ¶ 36 [ECF No. 4065] (citing benefit of "certainty needed to exit Chapter 11, even if the COVID-19 pandemic extends longer than currently projected"); *accord id.* ¶ 24 (describing benefits of commitments and risks faced by Debtors).

9. For the reasons set forth in the Debtors' omnibus reply to the Objections filed substantially concurrently herewith (the "Debtors' Reply"), the Objectors have not demonstrated that the Court should apply the entire fairness standard to the Shareholder BCA, the key terms of which were negotiated in an extensive mediation involving third-party creditors. But in any event, even that stricter standard of review is easily met: The undisputed evidence has

---

[6] *See, e.g.*, Shareholder BCA § 8.5 ("The provisions of this Article VII ["Indemnification and Contribution"] are an integral part of the transactions contemplated by this Agreement and without these provisions the Backstop Parties would not have entered into this Agreement.").

demonstrated that the Shareholder BCA was negotiated at arm's length and assessed by the Debtors' audit committee composed of independent directors, and the terms provide significant benefit to the Debtors at little cost.  The Objectors have not established a basis to deprive the Backstop Shareholders of the standard, and very basic, compensation in the form of reimbursement and indemnification that was bargained for among the parties and that accompanies essentially every commitment of this sort.

10. ***The legal challenge to the indemnification provision to the Shareholder BCA raised by BancoEstado is not applicable***.  BancoEstado has asserted that the indemnification provision of the Shareholder BCA is unenforceable under Chilean law because it could be construed to cover claims against certain LATAM directors associated with Costa Verde for alleged misconduct as LATAM directors.  In the circumstances, the Court need not interpret Chilean securities law to resolve this issue.  Taking BancoEstado's legal contentions as true for the sake of argument, *if* the Shareholder BCA proposed to provide indemnification for directors' alleged misconduct in their roles as LATAM directors, that would indeed be problematic.  But the terms of the Shareholder BCA, including the indemnification clause, are expressly intended to cover the Backstop Parties acting *in their capacities as such*, not LATAM directors in their respective capacities as such.  *See* Shareholder BCA § 4.8 (acknowledging that each Backstop Party "is acting solely in the capacity of an arm's length contractual counterparty" with respect to transactions contemplated by Shareholder BCA "and not as financial advisor or a fiduciary to, or an agent of, the Company or any of the other Debtors").

11. Moreover, it is tautological that the Debtors cannot provide an indemnification that they cannot provide under applicable law.  Nor do the Backstop Shareholders expect the Debtors to violate the law, or intend to do so themselves.  If the indemnification is not

enforceable under Chilean law as to any of the associated persons or entities contemplated by the agreement, that is a risk that the Backstop Shareholders are taking, and not a reason to disapprove the agreement.

*   *   *

For the foregoing reasons and the reasons stated in the Backstop Motion and the Debtors' Reply, Costa Verde respectfully requests that the Court grant the Backstop Motion and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: February 7, 2022<br>New York, New York | Respectfully submitted,<br><br>*/s/ Richard G. Mason*<br>Richard G. Mason<br>John R. Sobolewski<br>Angela K. Herring<br>WACHTELL, LIPTON, ROSEN & KATZ<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Facsimile: (212) 403-2000<br>Email: RGMason@wlrk.com<br>          JRSobolewski@wlrk.com<br>          AKHerring@wlrk.com<br><br>*Counsel for Costa Verde Aeronáutica S.A.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of February 2022, a true and correct copy of the foregoing *Statement of Costa Verde Aeronáutica S.A. in Support of Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Debtors' (A) Entry Into and Performance Under Backstop Agreements and (B) Payment of Related Fees and Expenses and Incurrence of Certain Indemnification Obligations, and (II) Granting Related Relief* was filed with the Court's CM/ECF system and served on all parties registered to receive such notice in the above-captioned case.

*/s/ Richard G. Mason*
Richard G. Mason