Hearing Date: February 10, 2022 at 11:00 a.m.

**ALSTON & BIRD LLP**
Gerard S. Catalanello
James J. Vincequerra
Geoffrey C. Williams
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Email:  Gerard.Catalanello@alston.com
        James.Vincequerra@alston.com
        Geoffrey.Williams@alston.com

*Attorneys for Qatar Airways Investments (UK) Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LATAM Airlines Group, S.A., *et al.*,<br><br>    Debtors. | Chapter 11<br>Case No. 20-11254 (JLG)<br><br>(Jointly Administered) |

**STATEMENT OF QATAR AIRWAYS INVESTMENTS (UK) LTD.
(I) IN SUPPORT OF THE DEBTORS' MOTION FOR
ENTRY OF AN ORDER (1) AUTHORIZING AND APPROVING
THE DEBTORS' (A) ENTRY INTO AND PERFORMANCE
UNDER BACKSTOP AGREEMENTS AND (B) PAYMENT OF RELATED
FEES AND EXPENSES AND INCURRENCE OF CERTAIN INDEMNIFICATION
OBLIGATIONS, AND (II) RESPONSE TO THE LIMITED OBJECTIONS
RAISED TO THE BACKSTOP SHAREHOLDER BACKSTOP AGREEMENT**

Qatar Airways Investments (UK) Ltd. ("**QAI**") respectfully submits this statement ("**Statement**") *(I) in Support of the Debtors' Motion for Entry of an Order (1) Authorizing and Approving the Debtors' (A) Entry Into and Performance Under the Backstop Agreements and (B) Payment of Related Fees and Expenses and Incurrence of Certain Indemnification Obligations, and (III) Granting Related Relief* [Dkt. No. 4056] (the "**Motion**"[1]) pursuant to sections 105(a),

---
[1] All capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion, Disclosure Statement and Plan, as the case may be.

363(b), 503(b)(1), and 507(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Bankruptcy Rules of the Southern District of New York (the "**Local Rules**"), *and (II) Response to the limited objections raised to the Backstop Shareholders Backstop Agreement*, and respectfully states as follows:[2]

### PRELIMINARY STATEMENT

1. Utilizing the same tired and factually tortured refrain, and seeking to once again improperly pre-litigate confirmation objections, the Objectors now come to this Court to undermine the Backstop Agreements, as they realize that these agreements, once approved, will serve as the foundation of the Debtors' Plan and successful emergence from chapter 11. An emergence that the Objectors simply want to derail at all costs and at all measures.

2. As a preliminary matter, QAI supports the Motion and joins in the *Debtors' Omnibus Brief In Further Support of Their Motion for Entry Of An Order (I) Authorizing And Approving The Debtors' (A) Entry Into And Performance Under Backstop Agreements And (B) Payment Of Related Fees and Expenses And Incurrence Of Certain Indemnification Obligations, And (II) Granting Related Relief*, filed contemporaneously herewith (the "**Debtors' Omnibus Brief**"). As explained by the Debtors, the relief sought in the Motion is necessary, appropriate and warranted under and pursuant to sections 105(a), 363(b), 503(b)(1), and 507(a)(2) of the Bankruptcy Code.

---

[2] Objections to the Motion were filed by the following parties (each an "**Objector**," and together the "**Objectors**"): Columbus Hill Capital Management L.P. ("**Columbus Hill**") [Dkt. No. 4184], the Ad Hoc Group of Unsecured Claimants (the "**Ad Hoc Group**") [Dkt. No. 4291], Banco del Estado de Chile ("**BancoEstado**") [Dkt. No. 4293] and the Official Committee of Unsecured Creditors (the "**Committee**") [Dkt. No. 4289] (each document an "**Objection**," and collectively the "**Objections**").

3. Further, the Objectors concede, as they must, that the Backstop Shareholders *are not* receiving any backstop or similar fee for committing to purchase almost $1.8 billion aggregate of the New Convertible Notes Class B and ERO Rights Offering, which commitment shall remain extant for up to ten (10) months. Without question, an extraordinary commitment by the Backstop Shareholders. Rather, the Objections, as they relate to the Backstop Shareholders Backstop Agreement, are limited to: (i) the Debtors' obligation to provide Backstop Shareholders Expense Reimbursement (*see* Section 3.1 of the Backstop Shareholders Backstop Agreement ), and (ii) the Debtors' specific indemnification obligations (*see* Section 8.1 of the Backstop Shareholders Backstop Agreement). These limited objections are entirely baseless, without merit and should be summarily overruled.

4. The economic benefits provided to the Backstop Commitment Parties, including the Backstop Payments (to the Commitment Creditors) and Backstop Shareholder Expense Reimbursement (to the Backstop Shareholders), are not only customary in other backstop commitment agreements approved in courts in this and other districts, but are also intended to compensate the Backstop Commitment Parties for the material financial risk they are undertaking to aid the Debtors in their restructuring efforts. Risks that are pronounced in these cases considering the amount of the backstop commitments, their duration and the uncertainty inherent in such a long commitment in the airline industry during this COVID-19 era.

5. Most importantly, the Backstop Shareholders Backstop Agreement and the Commitment Creditors Backstop Agreement are the product of an extensive mediation conducted under the supervision of the Honorable Allan L Gropper (ret.) and are essential to effectuating the global deal embodied in the Plan that consensually resolves complex and novel issues arising under the Bankruptcy Code and Chilean law. Absent approval of the Backstop Agreements, the

settlement achieved by these major stakeholders will be in grave peril and, with it, the Debtors' chances of successful emergence from these chapter 11 cases.

## RELEVANT BACKGROUND

6. QAI is a wholly owned subsidiary of Qatar Airways Group Q.C.S.C. ("**QA Group**"), a company incorporated under the laws of and wholly owned by the State of Qatar.[3] Accordingly, both QA Group and QAI are instrumentalities of a foreign state, thereby qualifying them both as a foreign state under the Foreign Sovereign Immunities Act (the "**FSIA**"). *See* 28 U.S.C. § 1603(a).

7. QAI is a holding company incorporated under the laws of the United Kingdom, which since 2016 has been the beneficial owner of approximately 9.9% of the stock of LATAM Parent.

8. QAI is one of the Backstop Shareholders who, together with the other Backstop Shareholders, have agreed to backstop the full $1.373 billion offering of New Convertible Notes Class B and $400 million of the $800 million ERO Rights Offering as contemplated by the Plan.

## RESPONSE TO CERTAIN LIMITED OBJECTIONS RAISED BY THE OBJECTORS

### I. QAI Is Not An "Insider" Of The Debtors.

9. It is beyond credible dispute that QAI is not an "insider" of the Debtors. QAI, as a holder of 9.9% equity interest in LATAM Parent, falls well below the statutory threshold to be considered an "insider" of the Debtors pursuant to the express provisions of Bankruptcy Code. *See* 11 U.S.C. § 101(2)(A). Nor does QAI have the requisite control over the Debtors to be considered a non-statutory insider.

---

[3] Additionally, QA Investments Limited and QA Investments 2 Limited, both Jersey company subsidiaries of QA Group, serve as Tranche C DIP Lenders (the "**QA DIP Lenders**").

4

10. Thus, the Objectors' baseless *ad nauseam* assertions that QAI is an "insider" are inconsistent with the facts and should be rejected by the Court. *See, e.g., In re Caremerica, Inc.*, 409 B.R. 737, 753 (Bankr. E.D.N.C. 2009) ("[T]he mere labeling of transferees as insiders is not enough to establish a reasonable inference of insider status."), *In re LMI Legacy Holdings, Inc.*, Case No. 13-12098 (CSS), 2017 Bankr. LEXIS 1150, at *26-27 (Bankr. D. Del. Apr. 27, 2017) (the trustee's "blanket assertion of insider status . . . fail[ed] to specify exactly what aspect of section 101(31)(B)" was applicable and thus failed to establish a party was an insider).[4]

11. Accordingly, the Objectors' contention that the Backstop Shareholders Backstop Agreement must be analyzed under the entire fairness standard is plain wrong and the business judgment rule instead applies. In that regard, as set forth in the Motion and in the Debtors' Omnibus Brief, the Debtors clearly show that entry into the Backstop Shareholders Backstop Agreement was a prudent exercise of their business judgment consistent with the Debtors' fiduciary duties to creditors and stakeholders and, as such, should be approved by this Court. *See, e.g.*, Motion at ¶¶ 32-36; Debtors' Omnibus Brief at ¶¶ 10-17.

12. Assuming *arguendo*, that the Court were to apply the heightened entire fairness standard, the result would be the same. As detailed in the Motion and in the Debtors' Omnibus Brief, the Debtors entry into the Backstop Shareholders Backstop Agreement is the result of a "fair process" and provides for a "fair" price to the Debtors under the circumstances and, therefore, this standard too has been satisfied. *See, e.g.,* Motion at ¶¶ 38-39; Debtors' Omnibus Brief at ¶¶ 88-94.

---

[4] The Court likewise previously found that the Tranche C DIP Lenders (*i.e.*, inclusive of the QA DIP Lenders) did not "misuse[] their status as shareholders" and that there was "no evidence that they engaged in fraud or collusion, or attempted to take gross advantage of other bidders which is the typical misconduct giving rise to a finding of bad faith." *Memorandum Decision On Debtors' Motion For An Order(I) Authorizing The Debtors To (A) Obtain Post-Petition Financing And (B) Grant Super-Priority Administrative Expense Claims And (II) Granting Related Relief* [Dkt. No. 1056].

5

**II.    The Backstop Shareholders Expense Reimbursement Is Reasonable And Appropriate.**

13.    In relevant part, the Backstop Shareholders Backstop Agreement provides at Section 3.1 as follows:

> Whether or not the transactions contemplated hereunder are consummated, ***the Debtors agree to pay the reasonable and documented fees, expenses, disbursements and other costs*** (excluding travel, meal or entertainment expense, except as otherwise agreed in writing by the Company) incurred by each of the Backstop Parties in connection with the Chapter 11 Cases, including, but not limited to, attorneys', financial advisors', consultants' and agents fees incurred by the Backstop Parties, whether prior to or after the execution of this Agreement and whether prior to or after consummation of the Plan (collectively, the "**Expense Reimbursement**").

Backstop Shareholders Backstop Agreement § 3.1 (emphasis supplied).

14.    The Objectors blatantly ignore the fact that, by the express terms of the Backstop Shareholders Backstop Agreement, the Debtors' obligation to reimburse the Backstop Shareholders is limited to professional fees and expenses that are "***reasonable and documented.***" The Debtors have appropriately, and consistent with regularly accepted practice in this district and others, built into the agreement protection to ensure that their expense reimbursement obligations to the Backstop Shareholders are reasonable and warranted under these circumstances. *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 12, 2020) [Dkt. No. 1806] (authorizing the Debtors to reimburse all fees and expenses in connection with the negotiation thereof and incur indemnification obligations); *In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RDD) (Bankr. S.D.N.Y. Sept. 20, 2017) [Dkt. No. 443] (same); *In re Roust Corp.*, No. 16-23786 (RDD) (Bankr. S.D.N.Y. Jan. 10, 2017) [Docket No. 40] (same); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 23, 2014) [Dkt No. 509] (same); *In re KIT digital, Inc.*, Case No. 13-11298 (REG) (Bankr. S.D.N.Y. June 17, 2013) (approving restructuring support agreement on grounds that it was a sound exercise of the debtors' reasonable business judgment); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. June 4, 2013)

(same); *In re Gen. Mar. Corp.*, Case No. 11-15285 (MG) (Bankr. S.D.N.Y. Apr. 2, 2012) (same); *In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Sept. 17, 2010) (same); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 17, 2010) (same); *see also In re Terrestar Networks Inc.*, Case No. 10-15446 (SHL) (Bankr. S.D.N.Y. Dec. 22, 2010) (approving backstop commitment agreement on grounds that it was a sound exercise of debtors' reasonable business judgment); *In re Premier Int'l Holdings Inc.*, Case No. 09-12019 (Bankr. D. Del. Dec. 18, 2009) (approving fees and expenses contemplated in an Equity Commitment Agreement and the Common Stock Term Sheet as reasonable and accorded the status of administrative expense claims).

15. The Objectors question the validity of the Backstop Shareholders Backstop Agreement because the investment is allegedly one that the Backstop Shareholders "have vigorously sought." *See* Committee Objection at ¶ 4. Tellingly, the Objectors concede that the Backstop Shareholders Backstop Agreement "does not call for a backstop fee." *Id*. It would be remiss for any Objector to overlook the substantial cost saving that the Debtors realized by the Backstop Shareholders' decision to forego what would otherwise serve as compensation commensurate with their risk undertaking.

16. Even more, the Objectors conveniently ignore that the Backstop Shareholders are inherently taking on greater risk, as each Backstop Party has agreed to purchase, at par, on a several and not joint basis, its Backstop Commitment Percentage of the Unsubscribed New Convertible Notes Class B **at the same price** as offered to Eligible Equity Holders pursuant to the New Convertible Notes Preemptive Rights Offering Procedures up to the New Convertible Notes Class B Backstop Commitment. *See* Backstop Shareholders Backstop Agreement at *2. For comparison, in other bankruptcy cases in this district where similar structures have been proposed,

7

the party who provided the backstop is typically given an exclusive right to buy **at a discount**, which is not the case here. *See, e.g., In re Pac. Drilling S.A.*, 2018 Bankr. LEXIS 3024, at *10 (Bankr. S.D.N.Y. Oct. 1, 2018) (approving backstop fee while acknowledging that the party who provided the backstop is customarily given an exclusive right to buy at a discount).

17. Obtaining a backstop commitment was critical to establish the feasibility of the Plan and to avoid the possibility of a substantial loss of time and expense soliciting and confirming a plan that is thereafter never consummated. Given that substantial benefits provided by the Backstop Commitment Parties' respective commitments under the Backstop Agreements are actual and necessary costs for maximizing the value of the Debtors' estates and enhancing creditor recoveries, the Objections should be overruled and the reasonable and documented fees and expenses of the Backstop Shareholders should be accorded administrative expense priority under section 503(b) of the Bankruptcy Code in accord with common practice.

**III.    The Backstop Indemnification Obligations Are Reasonable And Appropriate.**

18. The indemnification obligations in favor of the Backstop Shareholders in section 8.1 of the Backstop Shareholders Backstop Agreement are customary and more than reasonable here given the amount and prolonged duration of the backstop commitments.

19. Significantly, the scope of the indemnity is limited in that it only covers claims and litigation arising out of or in connection with the Backstop Shareholders Backstop Agreement, the Plan and the transactions contemplated thereunder. Moreover, the indemnity includes the expected carve-outs for bad faith, willful misconduct and gross negligence.

20. Therefore, the indemnity is appropriately tailored for the purposes of the Backstop Shareholders Backstop Agreement and should be approved.

8

**CONCLUSION**

21. For the reasons set forth above, and as more particularly explained in the Motion and in the Debtors' Omnibus Brief, the QAI respectfully requests that the Court overrule all of the Objections and grant the relief requested in the Motion.

Dated: February 7, 2022
New York, New York

                                   **ALSTON & BIRD LLP**

                                   By:    */s/ Gerard S. Catalanello*
                                            Gerard S. Catalanello
                                            James J. Vincequerra
                                            Geoffrey C. Williams
                                            90 Park Avenue
                                            New York, NY 10016
                                            Telephone: (212) 210-9400
                                            Gerard.Catalanello@alston.com
                                            James.Vincequerra@alston.com
                                            Geoffrey.Williams@alston.com

                                            *Attorneys for Qatar Airways Investments (UK) Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused to be served true and correct copies of the foregoing *STATEMENT OF QATAR AIRWAYS INVESTMENTS (UK) LTD. (I) IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (1) AUTHORIZING AND APPROVING THE DEBTORS' (A) ENTRY INTO AND PERFORMANCE UNDER BACKSTOP AGREEMENTS AND (B) PAYMENT OF RELATED FEES AND EXPENSES AND INCURRENCE OF CERTAIN INDEMNIFICATION OBLIGATIONS, AND (II) RESPONSE TO THE LIMITED OBJECTIONS RAISED TO THE BACKSTOP SHAREHOLDER BACKSTOP AGREEMENT* by filing such with the Court's CM/ECF system.

*/s/ Gerard S. Catalanello*
Gerard S. Catalanello

LEGAL02/41398323v7