# Exhibit 1

**Alfonsín Balza Declaration**

## Exhibit B

**Alfonsin Balza Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LATAM Airlines Group S.A., *et al.*, | Case No.: 20-11254 (JLG) |
| Debtors.[1] | Jointly Administered |

## DECLARATION OF RAMIRO ALFONSÍN BALZA
## IN SUPPORT OF THE BACKSTOP AGREEMENTS MOTION

I, Ramiro Alfonsín Balza, make this Declaration under 28 U.S.C. § 1746:

1.      I am the Chief Financial Officer of LATAM Airlines Group S.A. ("LATAM Parent"), a corporation organized under the laws of Chile, and one of the Debtors in the Chapter 11 Cases. I have been the Chief Financial Officer of LATAM Parent for the last five years, after working for more than twenty years in investment banking and in senior finance positions in the power utility sector. I also hold a degree in business administration from the Universidad Católica

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM-Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services LLC (30-1133972); Maintenance Service Experts LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services, Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); LATAM Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); ABSA Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corretora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33122.

Argentina. I am generally familiar with the day-to-day operations and affairs, books and records of LATAM Parent and its affiliates that have, together with the LATAM Parent, filed their voluntary petitions for relief on (i) May 26, 2020 (the "Initial Chapter 11 Cases") and (ii) July 7 and 9, 2020 (the "Additional Chapter 11 Cases" and, together with the Initial Chapter 11 Cases, the "Chapter 11 Cases") under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court"). LATAM Parent, together with its affiliates in the Chapter 11 Cases are referred to here as the "Debtors."

2. I submit this Declaration in support of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Debtors' (A) Entry into and Performance under Backstop Agreements and (B) Payment of Related Fees and Expenses and Incurrence of Certain Indemnification Obligations, and (II) Granting Related Relief* (the "Backstop Agreements Motion"). Capitalized terms that are used but not defined here have the same meaning as set forth in the Backstop Agreements Motion or, as applicable, in the Joint Plan of Reorganization of LATAM Airlines Group S.A., *et al.*, under Chapter 11 of the Bankruptcy Code, dated November 26, 2021 (as it may be supplemented or amended, the "Plan") or the related disclosure statement (as it may be supplemented or amended, the "Disclosure Statement").

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge gleaned during the course of my employment with the Debtors, my discussions with the Debtors' senior management, the Debtors' other employees, their advisors, including the Debtors' investment banker PJT Partners LP ("PJT") and financial advisor FTI Consulting ("FTI"), and my review of relevant documents and/or my opinion based upon my

2

experience. If called to testify, I would testify to each of the facts set forth here based on such personal knowledge, discussions, review of documents, and/or opinion.

4.  I am not being specifically compensated for this testimony other than through payroll payments received as part of my regular compensation for my position at LATAM Parent.

5.  On November 26, 2021, the Debtors entered into a Restructuring Support Agreement (the "RSA") and filed their proposed Plan and the related Disclosure Statement. The Plan reflects an agreement between the Debtors, the Parent GUC Ad Hoc Group (as signatories to the RSA, the "Commitment Creditors"),[2] the Backstop Shareholders,[3] Inversiones Costa Verde Ltda y Cia, en Comandita por Acciones and the Eblen Group.[4]

6.  The Commitment Creditors and the Backstop Shareholders (collectively, the "Backstop Commitment Parties") have committed to support the Debtors' restructuring and backstop $5.442 billion in new money investments.

7.  I believe that the Backstop Agreements are integral to the consummation of the Plan and are critical to the Debtors' ability to efficiently emerge from these Chapter 11 Cases.

---

[2]  The Parent GUC Ad Hoc Group consists of an ad hoc group of certain LATAM Parent creditors represented by Kramer Levin Naftalis & Frankel LLP and Evercore Group L.L.C. The Commitment Creditors are Aurelius, Barclays, Citigroup, Cross Ocean, Deutsche Bank, Grosvenor, Monarch, Olympus Peak, PSAM, Sculptor, Silver Point, Sixth Street, Strategic Value Partners, Third Point, and Varde.

[3]  The Backstop Shareholders consist of certain of the Debtors' large shareholders, comprising Costa Verde Aeronáutica S.A., Delta and Qatar, each as advised in their individual capacity by Greenhill & Co., LLC, and separately advised by Wachtell, Lipton, Rosen & Katz, Davis Polk & Wardwell LLP and Alston & Bird LLP, respectively. Delta, in its individual capacity, also has retained Perella Weinberg Partners, L.P. as its financial advisor, and Qatar, in its individual capacity, also has retained HSBC as its financial advisor.

[4]  The Eblen Group consists of Andes Aerea SpA, Inversiones Pia SpA and Comercial Las Vertientes.

3

8. The Plan and the contemplated restructuring embodied in the Plan, including (i) approximately USD $2.25 billion of new Exit Notes/Loan and an approximately USD $500 million revolving credit facility (collectively, the "New Exit Debt Financing"), (ii) the New Convertible Notes Offering and (iii) the ERO, represent the product of extensive good faith, arm's-length negotiations among the Debtors and their key stakeholders.

9. After exploring a number of restructuring proposals over the year and a half that these Chapter 11 Cases have been pending, the Debtors concluded that the comprehensive restructuring embodied in the Plan, including the New Exit Debt Financing, New Convertible Notes Offering and the ERO, represent the best alternative for the Debtors' emergence from Chapter 11.

10. I believe the transactions contemplated by the Plan provide the most favorable and certain path available to a successful and efficient exit from these Chapter 11 Cases and will thereby maximize the value of the Debtors' estates.

11. In light of the undertakings by the Backstop Commitment Parties, I believe that the Backstop Payments, the Expense Reimbursement and the Backstop Indemnification Obligations are reasonable and appropriately compensate the applicable Backstop Commitment Parties for their cost of capital and the assurances they are providing to the process.

12. The Backstop Payments, as applicable, the Expense Reimbursement and the Backstop Indemnification Obligations are essential components of the Backstop Agreements. Absent these obligations, the Backstop Commitment Parties would not have been willing to provide the commitments under the Backstop Agreements. Without assurance that the more than $8 billion in new money contemplated by the Plan is committed, I believe that the Debtors may be

4

unable to satisfy the Plan's cash payment obligations and finance the Reorganized Debtors' ongoing operations and capital needs after they emerge from Chapter 11.

        13.    I believe that the approval of the Backstop Agreements is necessary to effectuate the restructuring contemplated under the Plan, and is critical to preserving the Debtors' ability to emerge expeditiously from Chapter 11 with the necessary capital to preserve the Debtors' ongoing business.

        14.    In light of the benefits to the Debtors and their estates as a result of the commitment of capital to purchase the New Convertible Notes Class B, New Convertible Notes Class C and ERO, I believe that entry into the Backstop Agreements and incurrence of the related obligations, including the Expense Reimbursement and Backstop Indemnification Obligations is reasonable, appropriate, in the best interest of the Debtors' estates and should be approved by this Court.

        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: January 12, 2022  
Santiago, Chile

                                      Ramiro Alfonsín Balza  
                                      Chief Financial Officer  
                                      LATAM Airlines Group S.A.