# Exhibit 4

**PJT Supplemental Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LATAM Airlines Group S.A., *et al.*, | Case No.: 20-11254 (JLG) |
| Debtors.[1] | Jointly Administered |

## SUPPLEMENTAL DECLARATION OF BRENT HERLIHY
## IN SUPPORT OF THE BACKSTOP AGREEMENTS MOTION

I, Brent Herlihy, make this Declaration under 28 U.S.C. § 1746:

1. I submit this Declaration in further support of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Debtors' (A) Entry into and Performance under Backstop Agreements and (B) Payment of Related Fees and Expenses and Incurrence of Certain Indemnification Obligations, and (II) Granting Related Relief* (the "Backstop Agreements Motion") and the Reply to the Backstop Agreements Motion.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM-Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services LLC (30-1133972); Maintenance Service Experts LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services, Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); LATAM Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); ABSA Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corretora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33122.

2. I am a Managing Director in the Restructuring and Special Situations Group at PJT Partners LP ("PJT"), the investment banker to the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors").[2]

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gained throughout PJT's engagement by the Debtors; my discussions with the Debtors' senior management, other members of the PJT team, and the Debtors' other advisors; and my review of relevant documents and/or my opinion based upon my experience. If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.

4. I am not being specifically compensated for this testimony other than through payments received by PJT as a professional retained by the Debtors. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors.

5. Attached as Exhibit A are excerpts of my deposition testimony taken on January 31, 2021, with relevant portions highlighted. I adopt that testimony as part of my direct testimony on the Backstop Agreements Motion. Like all of my testimony, the testimony contained in Exhibit A was under oath and was true and correct to the best of my information, knowledge and belief.

---

[2] Capitalized terms that are used but not defined here have the same meaning as set forth in the Backstop Agreements Motion as defined below or, as applicable, in the Joint Plan of Reorganization of LATAM Airlines Group S.A., et al., under Chapter 11 of the Bankruptcy Code, dated November 26, 2021 (as it may be supplemented or amended, the "Plan") or the related disclosure statement (as it may be supplemented or amended, the "Disclosure Statement").

2

6. I wish to offer one additional opinion in response to the Declaration of the Creditors Committee's expert, Elizabeth LaPuma, with regard to a methodology that she labeled "Backstop Premium."

7. That methodology takes my "Implied Discount" methodology and subtracts the plan discount. This modification to the Implied Discount is flawed such that one can manipulate the structure of a backstop arrangement without altering the amount of consideration provided by the estate to the backstop party and achieve a desired Backstop Premium. One can even structure a backstop arrangement to provide the same amount of consideration to the backstop party without decreasing the cost to the estate and yet result in a Backstop Premium of zero.

8. In the chart below, I demonstrate how a backstop arrangement with a $300 million backstop fee on a $1 billion offering ("Illustrative Scenario 1") (which would result in a "Backstop Premium" of 25.7% under Ms. LaPuma's methodology) can be restructured ("Illustrative Scenario 2") to achieve a Backstop Premium of 0% while the amount of consideration to the backstop parties remains the same.[3]

9. Furthermore, adoption of Ms. LaPuma's Backstop Premium methodology could result in outcomes that conflict with the goal of maximizing value for the estate. "Illustrative Scenario 3" below includes a 5% backstop fee and a 10% discount, which results in a 5.6% Backstop Premium. In this case, the amount of consideration provided by the estate to the backstop parties is $139 million, significantly below the $417 million provided in Illustrative Scenario 2,

---

[3] In Illustrative Scenario 2, the stated fee is reduced from $300 million (30%) to zero. By increasing the discount from 10% to 35.7%, the Total Equity to Backstop Parties at Plan Value remains identical at $1.167 billion and the Implied Discount remains identical at 35.7%. Under Ms. LaPuma's methodology, however, the Backstop Premium drops from 25.7% to 0% solely by changing the form of the compensation to the backstop parties.

3

yet the Backstop Premium methodology would suggest that Illustrative Scenario 2 is superior because it has a lower Backstop Premium (0%).

## Illustrative Comparison Using Ms. LaPuma's Methodology

| $ in millions | Illustrative Scenario 1 | Illustrative Scenario 2 | Illustrative Scenario 3 |
|---|---|---|---|
| Total New Money Available Through Pro Rata Equity Allocation | $1,000 | $1,000 | $1,000 |
| (x) Backstop Parties Pro Rata Share | 75.0% | 75.0% | 75.0% |
| **New Money to Backstop Parties** | **$750** | **$750** | **$750** |
| Stated Fee on Total New Money Paid in Equity | 30.0% | 0% | 5% |
| **Fee Paid in Equity at Discount** | **$300** | **$0** | **$50** |
| Discount | 10.0% | 35.7% | 10.0% |
| Total Equity to Backstop Parties at Discount | $1,050 | $750 | $800 |
| (/) 1 - Discount | 90.0% | 64.3% | 90.0% |
| **Total Equity to Backstop Parties at Plan Value** | **$1,167** | **$1,167** | **$889** |
| Implied Discount for Backstop Parties | 35.7% | 35.7% | 15.6% |
| (Implied Discount is calculated as 1 minus new money divided by total equity to backstop parties at plan value) | | | |
| Cost to Estate Paid to Backstop Parties | $417 | $417 | $139 |
| Backstop Premium Under LaPuma Methodology (Calculated as Implied Discount Less Discount) | 25.7% | 0% | 5.6% |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: February 7, 2022
      New York, New York

*Brent Herlihy* (signature)
Brent Herlihy
Managing Director
PJT Partners LP

4