**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
In re:                                                  :
                                                        :   Case No. 20-11254 (JLG)
LATAM Airlines Group S.A., et al.,                      :   Chapter 11
                                                        :
                                      Debtors.¹         :   (Jointly Administered)
                                                        :
------------------------------------------------------- x
```

**ERRATA ORDER REGARDING MEMORANDUM DECISION ON CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF LATAM AIRLINES GROUP, S.A. *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

This matter having come up on the Court's own motion, it is hereby ORDERED:

1. The Court's Memorandum Decision on Confirmation of the Joint Plan of Reorganization of LATAM Airlines Group, S.A. *et al.* Under Chapter 11 of the Bankruptcy Code dated June 18, 2022 [Case No. 20-11254, ECF No. 5754] (the "Memorandum Decision"), is corrected in the manner described below:

   a. The citation on page 20 of the Memorandum Decision:

      Debtors Omnibus Reply ¶ 56 n.53.

   shall be corrected to read as follows:

      Debtors Omnibus Reply ¶ 108 n.53.

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corredora de Seguros Ltda. (N/A). For the purpose of these chapter 11 cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

b.  The following sentence beginning on page 20 of the Memorandum Decision and ending on page 21:

> As discussed below, the Court finds that TLA is insolvent because: (a) the TLA Claimholders have failed to satisfy their burden to demonstrate that the sum of TLA's debts exceeds the sum of its property at a fair valuation, *see* 11 U.S.C. § 101(32), and (b) in any event, the Debtors have set forth affirmative evidence demonstrating that TLA is insolvent under section 101(32).

shall be corrected to read as follows:

> As discussed below, the Court finds that TLA is insolvent because: (a) the TLA Claimholders have failed to satisfy their burden to demonstrate that the sum of TLA's property at a fair valuation exceeds the sum of its liabilities, *see* 11 U.S.C. § 101(32), and (b) in any event, the Debtors have set forth affirmative evidence demonstrating that TLA is insolvent under section 101(32) of the Bankruptcy Code.

c.  The following citation at the beginning of page 25 of the Memorandum Decision:

> *See* May 20, 2022 Hr'g Tr. – Public Session, 194:2-10.

shall be corrected to read as follows:

> *See* May 20, 2022 Hr'g Tr. – Public Session at 194:2-10.

d.  The following citation at the top of page 33 of the Memorandum Decision:

> *See* May 17, 2022 Hr'g Tr. – Public Session, 117:21-118:3; *see also id*. at 118:10 (admitting he did not calculate the proceeds from the sale of individual assets).

shall be corrected to read as follows:

> *See* May 17, 2022 Hr'g Tr. – Public Session at 117:21-118:3; *see also id*. at 118:10 (admitting he did not calculate the proceeds from the sale of individual assets).

e.  The following sentence at the top of page 40 of the Memorandum Decision:

> He also points to examples outside the aviation sector in an effort to purportedly discredit Mr. Edgar's methodology, noting that Starbucks's recent Form 10-K suggests that it is "balance-sheet" insolvent, yet trades a value of $133 billion. *Id.* ¶ 24.

shall be corrected to read as follows:

        He also points to examples outside the aviation sector in an effort to purportedly discredit Mr. Edgar's methodology, noting that Starbucks's recent Form 10-K suggests that it is "balance-sheet" insolvent, yet trades at a value of $133 billion. *Id.* ¶ 24.

    f.  The following sentences in the middle of page 41 of the Memorandum Decision:

        TLA is insolvent under the Balance Sheet Test because the sum of TLA's assets exceed the sum of its liabilities by approximately $360 million to $1.3 billion using year-end 2021 financial statements and March 2021 month-end statements, respectively. Edgar Decl. ¶ 11.

shall be corrected to read as follows:

        TLA is insolvent under the Balance Sheet Test because the sum of TLA's liabilities exceeds the sum of its assets by approximately $360 million to $1.3 billion using year-end 2021 financial statements and March 2021 month-end statements, respectively. Edgar Decl. ¶ 11.

    g.  The following sentence beginning at the bottom of page 41 and ending at the top of page 42 of the Memorandum Decision:

        Moreover, courts regularly employ balance sheet tests to determine insolvency, *i.e.*, whether the sum of an entity's assets exceeds the sum of its liabilities. *See, e.g.*, *In re PTM Techs., Inc.*, 2013 WL 4519306, at *6 ("the Bankruptcy Code defines insolvency using the balance sheet test, not cash flow. The test for whether a debtor is solvent is whether the debts of such entity are less than its assets, at fair valuation"); *In re Uhlmeyer*, 67 B.R. 977, 980 (Bankr. D. Ariz. 1986) ("Insolvency is determined by use of § 101[32] of the Code, the so-called balance sheet test: Debtor is insolvent if the sum of her debts is greater than her assets at fair valuation"); *see also* 2 Collier on Bankruptcy P 101.32 (16th ed. 2022) ("the Code definition of insolvency is essentially a balance sheet test").

shall be corrected to read as follows:

        Moreover, courts regularly employ balance sheet tests to determine insolvency, *i.e.*, whether the sum of an entity's liabilities exceed the sum of its assets. *See, e.g.*, *In re PTM Techs., Inc.*, 2013 WL 4519306, at *6 ("the Bankruptcy Code defines insolvency using the balance sheet test, not cash flow. The test for whether a debtor is solvent is whether the debts of such entity are less than its assets, at fair valuation"); *In re Uhlmeyer*, 67 B.R. 977, 980 (Bankr. D. Ariz. 1986) ("Insolvency is determined by use of § 101[32] of the Code, the so-called balance sheet test: Debtor is insolvent if the sum of her debts is greater than her assets at fair valuation"); *see also* 2 Collier on Bankruptcy P 101.32 (16th ed. 2022) ("the Code definition of insolvency is essentially a balance sheet test").

    h.  The following citation in the middle of page 45 of the Memorandum Decision:

*Compare In re Ultra Petroleum Corp.*, 624 B.R. 178, 198-199 (Bankr. S.D. Tex. 2020) ("*Ultra Petroleum II*") (contract rate) and *In re Mullins*, 633 B.R. 1, 19-20 (Bankr. D. Mass. 2021) (state judgment rate), *with Hertz*, 2021 WL 6068390, at *16 (federal judgment rate) and *In re PG&E Corp.*, 610 B.R. 308 (Bankr. N.D. Cal. 2019) (same).

shall be corrected to read as follows:

*Compare In re Ultra Petroleum Corp.*, 624 B.R. 178, 198-199 (Bankr. S.D. Tex. 2020) ("*Ultra Petroleum II*") (contract rate) and *In re Mullins*, 633 B.R. 1, 19-20 (Bankr. D. Mass. 2021) (state judgment rate), *with Hertz*, 2021 WL 6068390, at *16 (federal judgment rate) and *In re PG&E Corp.*, 610 B.R. 308 (Bankr. N.D. Cal. 2019) (same).

    i.  The following citation in footnote 55 on page 57 of the Memorandum Decision:

*See* TLA Claimholders Supplemental Objection ¶¶ 1-7.

shall be corrected to read as follows:

*See* TLA Claimholders Suppl. Obj. ¶¶ 1-7.

    j.  The following sentence in the middle of page 60 of the Memorandum Decision:

It contends that the Plan violates the preemptive rights of LATAM Parent's shareholders over stock, and securities convertible into stock, because it offers Class B Notes and new LATAM Parent shares underlying the notes to the RSA Shareholders on better terms than it offers to existing LATAM Parent shareholders. *See id.* ¶¶ 1, 8, 27; Ried Decl. at 3, 5.

shall be corrected to read as follows:

It contends that the Plan violates the preemptive rights of LATAM Parent shareholders over stock, and securities convertible into stock, because it offers Class B Notes and new LATAM Parent shares underlying the notes to the RSA Shareholders on better terms than it offers to existing LATAM Parent shareholders. *See id.* ¶¶ 1, 8, 27; Ried Decl. at 3, 5.

    k.  The following sentence in the middle of page 61 of the Memorandum Decision:

It maintains that the Plan violates Chilean law because it does not call for LATAM Parent to obtain an appraisal of the Allowed General Unsecured Class 5 Claims at fair market value, or for LATAM Parent's shareholders, by a vote of at least two-thirds of all shares, to approve both the issuance of the shares to

4

creditors in exchange for their claims, and the valuation of such claims. *See* Columbus Hill Obj. ¶¶ 1, 16, 28-33; Ried Decl. at 17-18, 36-37.

shall be corrected to read as follows:

It maintains that the Plan violates Chilean law because it does not call for LATAM Parent to obtain an appraisal of the Allowed General Unsecured Class 5 Claims at fair market value, or for LATAM Parent shareholders, by a vote of at least two-thirds of all shares, to approve both the issuance of the shares to creditors in exchange for their claims, and the valuation of such claims. *See* Columbus Hill Obj. ¶¶ 1, 16, 28-33; Ried Decl. at 17-18, 36-37.

l. The following sentence in the middle of page 62 of the Memorandum Decision:

The Court first considers Columbus Hill's assertion that the Plan violates the LATAM Parent's shareholders' preemptive rights over stock and securities convertible into stock pursuant to the Class B Notes.

shall be corrected to read as follows:

The Court first considers Columbus Hill's assertion that the Plan violates the LATAM Parent shareholders' preemptive rights over stock and securities convertible into stock pursuant to the Class B Notes.

m. The following sentence beginning at the bottom of page 64 and ending on the top of page 65 of the Memorandum Decision:

It maintains that Chilean courts and regulators will look through the form of the transactions and in focusing on their substance, will hold the Debtors to the standards applicable to the issuance of new shares to LATAM Parent's creditors in exchange for, in part, non-cash consideration–i.e., unsecured claims against LATAM Parent. *See id.* ¶¶ 31-33.

shall be corrected to read as follows:

It maintains that Chilean courts and regulators will look through the form of the transactions and in focusing on their substance, will hold the Debtors to the standards applicable to the issuance of new shares to LATAM Parent creditors in exchange for, in part, non-cash consideration–i.e., unsecured claims against LATAM Parent. *See id.* ¶¶ 31-33.

n. The following sentence at the bottom of page 66 of the Memorandum Decision:

It says that is so because existing LATAM Parent shareholders must pay the full-face value of the Class A Notes and Class C Notes entirely in cash to exercise their preemptive rights to acquire new LATAM Parent stock, but would receive

>   shares worth significantly less than the amount of cash paid, while the notes not acquired by the LATAM Parent shareholders will be offered to Holders of Allowed General Unsecured Class 5 Claimson substantially more favorable terms (both in terms of the form of consideration and the value of the consideration being provided by the creditors), all in violation of Chilean law. *See* Columbus Hill Obj. ¶ 18.

shall be corrected to read as follows:

>   It says that is so because existing LATAM Parent shareholders must pay the full face value of the Class A Notes and Class C Notes entirely in cash to exercise their preemptive rights to acquire new LATAM Parent stock, but would receive shares worth significantly less than the amount of cash paid, while the notes not acquired by the LATAM Parent shareholders will be offered to Holders of Allowed General Unsecured Class 5 Claims on substantially more favorable terms (both in terms of the form of consideration and the value of the consideration being provided by the creditors), all in violation of Chilean law. *See* Columbus Hill Obj. ¶ 18.

o.  The following sentence at the middle of page 68 of the Memorandum Decision:

>   It also provides that the Debtors will deliver any notes that remain available after the expiration of the preemptive offering period to the Class 5 unsecured creditors in full satisfaction and settlement of those claims. *See id.*

shall be corrected to read as follows:

>   It also provides that the Debtors will deliver any notes that remain available after the expiration of the preemptive rights offering period to the Class 5 unsecured creditors in full satisfaction and settlement of those claims. *See id.*

p.  The following citation in footnote 70 of page 69 of the Memorandum Decision:

>   Third Contador Decl. ¶¶ 11-12.

shall be corrected to read as follows:

>   *Id.* ¶¶ 11-12.

q.  The following sentence on the bottom of page 77 of the Memorandum Decision:

>   The A&P Ad Hoc Group asserts that the Plan provides the Commitment Creditors with unprecedented value in comparison to other *pari passu* Holders of the Allowed General Unsecured Class 5 Claims (the "Non-Commitment Creditors"), and that the Plan's economics disclose that the Backstop Fees are disproportionately high compared to the risks the Commitment Creditors are assuming in providing the Commitment Creditor Backstop Agreement.

shall be corrected to read as follows:

> The A&P Ad Hoc Group asserts that the Plan provides the Commitment Creditors with unprecedented value in comparison to other *pari passu* Holders of the Allowed General Unsecured Class 5 Claims (the "Non-Commitment Creditors"), and that the Plan's economics disclose that the Backstop Fees are disproportionately high compared to the risks the Commitment Creditors are assuming in providing the backstop under the Commitment Creditors Backstop Agreement.

r. The following citation on page 86 of the Memorandum Decision:

> *Id.* ¶ 34 n.42 (quoting Jan 29, 2022 Alfonsín Dep. Tr. at 96:14–97:22.).

shall be corrected to read as follows:

> *Id.* ¶ 34 n.42 (quoting Jan. 29, 2022 Alfonsín Dep. Tr. at 96:14-97:22).

s. The following citation in the middle of page 113 of the Memorandum Decision:

> *Id.* at 13, 15.

shall be corrected to read as follows:

> *Id.* at 13, 15; *see also* Reply to U.S. Trustee Suppl. Obj. ¶ 20.

t. The following citation beginning on the bottom of page 120 to the top of page 121 of the Memorandum Decision:

> *See In re Stations Holding Co., Inc.,* Case No. 02-10882 (Bankr. D. Del. Sept. 30, 2002) Order Granting Motion of the United States Trustee Pursuant to Sections 1125(b) and 1126(d) and (e) of the Bankruptcy Code to Designate All Persons Who Executed Post-Petition Lockup Agreements and to Direct that Their Ballots Not be Counted, and/or for Sanctions or Other Relief [ECF No. 177], and *In re NII Holdings, Inc.,* Case No. 02-11505 (Bankr. D. Del. Oct. 25, 2002) Order dated October 25, 2002) [ECF No. 367].

shall be corrected to read as follows:

> *See In re Stations Holding Co., Inc.,* Case No. 02-10882 (Bankr. D. Del. Sept. 30, 2002) Order Granting Motion of the United States Trustee Pursuant to Sections 1125(b) and 1126(d) and (e) of the Bankruptcy Code to Designate All Persons Who Executed Post-Petition Lockup Agreements and to Direct that Their Ballots Not be Counted, and/or for Sanctions or Other Relief [ECF No. 177], and *In re NII Holdings, Inc.,* Case No. 02-11505 (Bankr. D. Del. Oct. 25, 2002), Order dated October 25, 2002 [ECF No. 367].

u.  The following sentence at the top of page 122 of the Memorandum Decision:

> Moreover, it is undisputed that only forty-five of the ninety-five Allowed General Unsecured Class 5 Claims originally subject to the Plan Support Provisions, voted to accept the Plan.

shall be corrected to read as follows:

> Moreover, it is undisputed that only forty-one of the ninety-five Allowed General Unsecured Class 5 Claims originally subject to the Plan Support Provisions, voted to accept the Plan.

2. Future references to the Memorandum Decision shall be to the Memorandum Decision as corrected hereby, a copy of which is attached hereto as Exhibit A.

Dated: New York, New York
       July 7, 2022

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge