**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

------------------------------------------------------- x

In re:

LATAM Airlines Group S.A., et al.,

                                    Debtors.[1]

:    Case No. 20-11254 (JLG)
:    Chapter 11
:
:    (Jointly Administered)
:

------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER DENYING TLA CLAIMHOLDERS' MOTION TO CERTIFY APPEAL TO THE SECOND CIRCUIT

**A P P E A R A N C E S :**

PAUL HASTINGS LLP
*Counsel for the TLA Claimholders Group*
200 Park Avenue
New York, New York 10166
By:    Daniel A. Fliman, Esq.
         Christopher M. Guhin, Esq.
         Emily L. Kuznick, Esq.
         John F. Iaffaldano, Esq.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corredora de Seguros Ltda. (N/A). For the purpose of these chapter 11 cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

GIBSON, DUNN & CRUTCHER LLP
*Counsel for the TLA Claimholders
Group*
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
By:    Matthew D. McGill, Esq.

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
*Counsel for the Debtors and Debtors
in Possession*
One Liberty Plaza
New York, New York 10006
By:    Jeffrey A. Rosenthal, Esq.
       Lisa M. Schweitzer, Esq.
       David H. Herrington, Esq.
       Abena A. Mainoo, Esq.

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
*Counsel to the Parent Ad Hoc
Claimant Group*
1177 Avenue of the Americas
New York, New York 10036
By:    Kenneth H. Eckstein, Esq.
       Rachael L. Ringer, Esq.
       David E. Blabey Jr., Esq.
       Natan Hamerman, Esq.

WHITE & CASE LLP
*Attorneys for the Ad Hoc Group
of LATAM Bondholders*
1221 Avenue of the Americas
New York, New York 10020
By:    John K. Cunningham, Esq.
       Brian D. Pfeiffer, Esq.
       Gregory M. Starner, Esq.
       Joshua Weedman, Esq.
       Kathryn Sutherland-Smith, Esq.

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
By:    Richard S. Kebrdle, Esq.
       Varoon Sachdev, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

Before the Court is the motion of the TLA Claimholders for an order certifying their

appeal of the Court's Confirmation Order[3] and Opinion[4] confirming the Debtor's Plan[5] to the

United States Court of Appeals for the Second Circuit.[6] The Debtors oppose the Motion.[7] The

Parent GUC Ad Hoc Group and White & Case Ad Hoc Group of LATAM Bondholders filed

joinders in support of opposition to the Motion.[8] The TLA Claimholders filed an omnibus reply

to the Opposition and Joinders.[9]

The TLA Claimholders contend that pursuant to section 158(d)(2) of title 28 of the

United States Code (28 U.S.C. § 158(d)(2)) (the "**Judicial Code**"), the Court should certify their

---

[2]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed in the Plan and Confirmation Opinion (defined below). References here to "[ECF No.__]" are to documents filed on the electronic docket in these Chapter 11 Cases (Case No. 20-11254), unless indicated otherwise.

[3]    Order (I) Confirming Debtors' Joint Plan of Reorganization of LATAM Airlines S.A. Et. Al. Under Chapter 11 of the Bankruptcy Code and (II) Granting Related Relief [ECF No. 5754] (the "**Confirmation Order**").

[4]    Errata Order Signed on 7/7//2022 Re: Order Signed on 6/18/2022 Confirming Chapter 11 Plan, Ex. A (Corrected Memorandum Decision on Confirmation of the Joint Plan of Reorganization of LATAM Airlines Group, S.A. et al. Under Chapter 11 of the Bankruptcy Code) [ECF No. 5900] (the "**Confirmation Opinion**" or "**Opinion**").

[5]    Seventh Revised Joint Plan of Reorganization of LATAM Airlines Group S.A. et al. Under Chapter 11 of the Bankruptcy Code [ECF No. 5331] (the "**Plan**") (as may be revised, amended, restated, supplemented, altered or modified from time to time).

[6]    Request of the TLA Claimholders Group to Certify Appeal to United States Court of Appeals for the Second Circuit [ECF No. 5917] (the "**Motion**").

[7]    Debtors' Opposition to the Request of the TLA Claimholders Group to Certify Appeal to United States Court of Appeals for the Second Circuit [ECF No. 5997] (the "**Opposition**").

[8]    Statement in Support of Debtors' Opposition of the Request of the TLA Claimholders Group to Certify Appeal to United States Court of Appeals for the Second Circuit [ECF No. 6001]; Parent Ad Hoc Claimant Group's Objection to Request of the TLA Claimholders Group to Certify Appeal to United States Court of Appeals for the Second Circuit [ECF No. 5998] (the "**Parent GUC Ad Hoc Group Joinder**") (collectively, the "**Joinders**").

[9]    Omnibus Reply of the TLA Claimholder Group in Support of Their Request to Certify Appeal to United States Court of Appeals for the Second Circuit [ECF No. 6039] (the "**Reply**").

appeal to the Second Circuit because, in substance: (1) the appeal raises questions of law on which there is no controlling authority in this Circuit, or that are matters of public importance; (2) the appeal requires resolution of conflicting decisions on a question of law; or (3) an immediate appeal may materially advance the litigation. The Debtors disagree and contend that the Court should deny the Motion because, *inter alia*, the appeal rests on overturning this Court's holding that TLA is not solvent, which is a factual issue, not a question of law, and thus cannot support certification under the plain terms of section 158 of the Judicial Code.

For the reasons set forth below, the Court denies the Motion.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157, 158 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Legal Standard

"[C]ertification of an appeal is a procedural remedy reserved for exceptional circumstances in which guidance of the circuit courts of appeal is necessary." Tr. of Hr'g (Oct. 14, 2021), at 187:6-8, *In re Purdue Pharma L.P.*, Case No. 19-23649 (Bankr. S.D.N.Y.) ("***Purdue Pharma* Tr.**"). Section 158(d)(2)(A) of the Judicial Code provides that, the Court "shall certify" a direct appeal to the Court of Appeals when the judgment, order, or decree appealed:

> (i) involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) involves a question of law requiring resolution of conflicting decisions; or

      (iii) an immediate appeal from the judgment, order, or decree may materially
      advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A)(i)-(iii). Section 158(d)(2) is disjunctive—meaning the Court must

certify an appeal if any of the factors above are satisfied. *See Bullard v. Blue Hills Bank,* 575

U.S. 496, 508 (2015) ("Unlike § 1292(b), which permits certification only when three

enumerated factors suggesting importance are *all* present, § 158(d)(2) permits certification when

*any one* of several such factors exists") (emphasis added). Section 158(d)'s language is

mandatory; it directs that a bankruptcy court "shall" certify a direct appeal when one or more of

the statutory factors is present. *Homaidan v. Sallie Mae, Inc.*, 2020 WL 5668972, at \*2

(E.D.N.Y. Feb. 25, 2020) (certifying appeal following denial of certification by the bankruptcy

court). The relevant court of appeals may, in its discretion, decline to accept certification of a

direct appeal. *Weber v. United States Trustee*, 484 F.3d 154, 158 (2d Cir. 2007) (citing 28 U.S.C.

§ 158(d)(2)(A) (court of appeals have no jurisdiction unless it "authorizes the direct appeal of the

judgement, order, or decree")).

      "The focus of the statute is explicit: on appeals that raise controlling questions of law,

concern matters of public importance, and arise under circumstances where a prompt,

determinative ruling might avoid needless litigation," a court must certify a direct appeal. *Webe*r,

484 F.3d at 158. "Courts have held that public importance exists when the matter on appeal

'transcend[s] the litigants and involves a legal question the resolution of which will advance the

cause of jurisprudence to a degree that is usually not the case.'" *In re Sabine Oil & Gas Corp.,*

551 B.R. 132, 140 (Bankr. S.D.N.Y. 2016). "An appeal that impacts only the parties, and not the

public at large, is not a matter of public importance." *Id. See also Bullard,* 575 U.S. at 508

("While discretionary review mechanisms such as these 'do not provide relief in every case, they

serve as useful safety valves for promptly correcting serious errors' and addressing important

legal questions.") (citing *Mohawk Industries v. Carpenter,* 558 U.S. 100, 111 (2009)).

## The Motion

The TLA Claimholders contend their appeal satisfies all three subsections of section

158(d)(2)(A) of the Judicial Code and, thus, they are entitled to a direct appeal to the Second

Circuit. First, they say that the Second Circuit has not expressly resolved whether a plan may

classify claims as unimpaired while simultaneously failing to provide for the payment of PPI to

the holders of those claims. Motion at 2. They maintain that this is also an unresolved question of

"public importance." They assert that another issue that the Second Circuit has not addressed is

the appropriate methodology to determine solvency under section 101(32) of title 11 of the

United States Code (as amended, the "**Bankruptcy Code**"). *Id*. at 18. Second, they point to the

conflicting decisions throughout the country (and within this Circuit) addressing these questions.

*Id*. at 3. Third, the TLA Claimholders contend they have satisfied section 158(d)(2)(A)(iii) of the

Judicial Code because certification would enable prompt resolution of these important legal

issues, thereby avoiding the risk that their appeal is rendered equitably moot as the Debtors work

towards substantially consummating of the Plan. *Id*.

## Procedural History

On November 26, 2021, the Debtors filed the Disclosure Statement with Respect to the

Joint Plan of Reorganization of LATAM Airlines Group S.A., et al., Under Chapter 11 of the

Bankruptcy Code [ECF No. 3667] (as later amended and supplemented, the "**Disclosure

Statement**"). The TLA Claimholders filed an objection to the Disclosure Statement.[10] In that

objection, they contended the Plan was patently unconfirmable because: (i) TLA was solvent,

---

[10]    Objection of the TLA Claimholders Group to Approval of the Debtors' Disclosure Statement [ECF No. 4029]
(the "**Disclosure Statement Objection**").

Disclosure Statement Objection ¶ 23; (ii) the solvent debtor exception applies to the treatment of

TLA's claims, *id.* ¶¶ 24-26; and (iii) holders of unsecured claims of solvent debtors are entitled

to receive PPI, *id.* ¶¶ 27-29. On March 21, 2022, the Court entered an order approving the

Disclosure Statement, which dismissed the Disclosure Statement Objection as prematurely

raising Plan objections.[11]

On May 11, 2022, the Debtors filed the latest iteration of the Plan. The TLA

Claimholders filed an objection to the Plan.[12] Section one of the TLA Claimholders Objection

was organized as follows:

> I. The Plan Cannot be Confirmed Because the TLA Claims Are Not
> Unimpaired
>
> A. TLA's Solvency
>
> B. The Solvent Debtor Exception Applies to the Treatment of the
> TLA Claims
>
> C. Section 1124(1) and the Solvent Debtor Exception Dictate that
> the Plan Must Pay Postpetition Interest at the Contract Rate to
> Unimpair the TLA Claims
>
> D. The Equities Support Payment of Postpetition Interest at the
> Contract Rate

TLA Claimholders Obj., Table of Contents.

The Court held a three-day evidentiary hearing to consider confirmation of the Plan and

rule on the TLA Claimholders Objection, as well as other objections.[13] On June 18, 2022, this

---

[11]    Order Authorizing Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices, and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto [ECF No. 4728].

[12]    Objection of the TLA Claimholders Group to Confirmation of the Debtors' Proposed Plan [ECF No. 5175] (the "**TLA Claimholders Obj.**" or "**TLA Claimholders Objection**").

[13]    May 17, 2022 Hr'g Tr. [ECF No. 5511]; May 17, 2022 Hr'g Tr. (Sealed Portion) [not filed];  May 18, 2022 Hr'g Tr. [ECF No. 5499]; May 20, 2022 Hr'g Tr. [ECF No. 5513] (the "**May 20, 2022 Hr'g Tr. – Public Session**"); and May 20, 2022 Hr'g Tr. (Sealed Portion) [ECF No. 5662].

Court issued the Confirmation Opinion, as amended, and the Confirmation Order. The Court

held that the TLA Claimholders failed to satisfy their burden to demonstrate that TLA was

solvent and, in any event, that the Debtors had affirmatively demonstrated that TLA was

insolvent through their expert, Mr. Brock Edgar, who applied a Liquidation Analysis and

Balance Sheet test to demonstrate that the sum of TLA's liabilities exceeded its assets, at fair

valuation. Confirmation Opinion 32-42. It also reasoned that assuming *arguendo* that TLA was

insolvent, the common law solvent debtor exception survived codification of the Bankruptcy

Code through section 1129(a)(7) of the Bankruptcy Code, as relevant, not section 1124(1) and,

accordingly, that the TLA Claimholders would only be entitled to PPI at the federal judgment

rate, not their contract rate. *Id*. at 42-57. The Court reasoned as such after carefully considering

the TLA Claimholders Objection. *See*, *e.g*., TLA Claimholders Obj. ¶ 30 ("[a]s further

recognized by the Second Circuit, courts in this district, and other courts examining the issue, the

solvent debtor exception survived the enactment of the Bankruptcy Code."); ¶ 33 ("[t]he

Bankruptcy Code, settled principles of bankruptcy law, and applicable case law entitle holders of

unsecured claims of solvent debtors to receive PPI on their claims at the applicable contract rate

in order to be unimpaired.").

     On June 23, 2022, the TLA Claimholders filed a motion to stay the Confirmation Order,

pending their appeal[14] arguing, *inter alia*, that they could demonstrate a substantial possibility of

successfully arguing on appeal that the Confirmation Order improperly concluded that TLA was

insolvent and, thus, improperly concluded that the TLA Claimholders were not entitled to PPI on

---

[14]    Motion For (I) Stay Pending Appeal, Or Alternatively (II) Certain Injunctive Relief Pursuant To Rule 8007
[ECF No. 5787] (the "**TLA Claimholders Stay Motion**").

the TLA GUCs. *See* TLA Claimholders Stay Motion ¶¶ 36-40. The Court held a hearing on July 5, 2022 and denied the TLA Claimholders Stay Motion.[15]

On June 29, 2022, the TLA Claimholders timely appealed the Confirmation Order and Opinion.[16] The appeal is progressing on an expedited schedule in the District Court. Under the District Court's schedule, the TLA Claimholders' opening brief was due on July 18, opposition briefs are due on August 8, and a reply brief is due on August 15. Parent Ad Hoc Group Joinder ¶ 7.

On July 8, 2022, the TLA Claimholders filed the Motion. In it, the TLA Claimholders argue that the "principal issues on appeal are: (i) whether a creditor holding an unimpaired claim is entitled to payment in full under its contracts, including the [PPI] provided under the contract in exchange for being classified as unimpaired under section 1124(1) of the Bankruptcy Code; [and] (ii) whether a reorganization that passes value to shareholders must first repay creditors in full, including [PPI] at the rate provided for in the contract." Motion at 8. Put differently, the TLA Claimholders argue that the appeal must determine if an unsecured claim is unimpaired under section 1124(1) if it offers PPI at any rate lower than the contract rate. *See* Reply at 8-9. As set forth above, in their Plan objection, the TLA Claimholders contended they were entitled to contract-rate PPI because TLA was solvent and the solvent debtor exception applied to the TLA GUCs. Now, they claim their arguments on appeal do "not depend on the debtors' solvency"—*i.e.*, that as a matter of law, unsecured creditors are entitled to contract-rate PPI to be rendered unimpaired under section 1124(1). *See id.* at 8. The TLA Claimholders also proffer two

---

[15]    Bench Memorandum and Order Denting the TLA Claimholders' Motion for (I) A Stay of the Confirmation Order Pending Appeal and (II) Certain Injunctive Relief Pursuant to Rule 8007 [ECF No. 5918] (the "**TLA Claimholders Stay Opinion**").

[16]    Notice of Appeal [ECF No. 5766]; Appellant's Statement of Issues and Designation of Items to Be included in the Record on Appeal [ECF No. 5986].

additional issues on appeal: (i) how to reconcile the treatment of creditors who are unimpaired

through section 1124(1) versus section 1124(2); and (ii) the proper legal standard to assess

solvency. Motion at 17-18.

<u>**Discussion**</u>

***Whether the Appeal Involves a Question of Law for Which There is no Controlling Decision
of the Second Circuit or Involves a Matter of Public Importance***

Under section 158(d)(2)(A)(i) of the Judicial Code, this Court must certify a direct appeal

of an order if it "involves a question of law as to which there is no controlling decision . . . or

involves a matter of public importance." 28 U.S.C. § 158(d)(2)(A)(i). Under its plain terms, the

statute mandates that the order at issue raise a "question of law", not a question of fact, in order

for the Court to certify a direct appeal. *Id*. The TLA Claimholders' appeal raises threshold

factual questions, not legal questions, and, thus, certification is not warranted under section

158(d)(2)(A)(i). While they have recharacterized their Plan objection arguments to eliminate the

threshold factual question at issue—*i.e.*, whether TLA is insolvent under section 101(32) of the

Bankruptcy Code—the Court finds that TLA's solvency is necessarily an issue on appeal. As

explained below, the Court finds the TLA Claimholders have failed to demonstrate that this

Court should certify a direct appeal under section 158(d)(2)(A)(i) of the Judicial Code.

<u>*Whether the Appeal Involves a Question of Law*</u>

Throughout these Chapter 11 Cases, the TLA Claimholders have repeatedly contended

that the Plan should pay interest on the TLA GUCs at the rate set forth in their Debt Instruments.

They say that is so because the Plan classifies them as unimpaired and, because they contend

TLA is solvent, the solvent debtor exception requires such payment to render them unimpaired

under section 1124(1) of the Bankruptcy Code. The TLA Claimholders objected to the

Disclosure Statement on these grounds. *See*, *e.g.*, Disclosure Statement Objection ¶ 24 ("the

10

solvent debtor exception requires that unsecured creditors of a solvent debtor receive their full contractual rights, including [PPI] on their claims."). They maintained the same argument in their Plan objection. *See* TLA Claimholders Obj. (using a variant of "solvent" dozens of times); *see also id.* at 14 ("Section 1124(1) and the Solvent Debtor Exception Dictate that the Plan Must Pay Postpetition Interest at the Contract Rate to Unimpair the TLA Claims"). The Court considered the TLA Claimholders Objection and held that TLA was insolvent under section 101(32) of the Bankruptcy Code and that, even assuming *arguendo* it was solvent, the TLA Claimholders were only entitled to PPI at the federal judgment rate, in part, because the solvent debtor exception was embodied in section 1129(a)(7) of the Bankruptcy Code (which calls for interest payments "at the legal rate" by application of section 726(a)(5)), not section 1124(1). Confirmation Opinion at 42, 47-53. Based on those holdings, the TLA Claimholders argued this Court should stay the Confirmation Order pending their appeal because, *inter alia*, they had a substantial possibility of reversing the Court's holding that TLA was insolvent and that the "contractual default rate, rather than the federal judgment rate, applies for purposes of PPI on unimpaired claims of a solvent debtor." TLA Claimholders Stay Motion ¶ 38.

Accordingly, at each juncture of these Chapter 11 Cases, the TLA Claimholders' arguments in opposition to the Plan were predicated on the Court finding that TLA was solvent and, in turn, that the solvent debtor exception justified awarding PPI to the TLA GUCs at the contract rate. These arguments formed the crux of their Plan objection. Confirmation Opinion at 25 (describing TLA's solvency as the "lynchpin" of the TLA Claimholders Objection).

Now, rather than ground their Motion in the same arguments raised during confirmation, the TLA Claimholders contend, for the first time, that their appeal concerns a related, but distinctly different question: whether unsecured creditors require contract-rate PPI to unimpair

11

them under section 1124(1) as a matter of law (*i.e.*, irrespective of the debtor's solvency). *See,*
*e.g.*, Reply at 8 (disclaiming reliance on the "Debtors' solvency-first approach").[17]

The Debtors reject these arguments and say that the TLA Claimholders cannot and do not
raise a question of law. They say this is so because the threshold issue raised in the TLA
Claimholders Objection (and thus the issue before the Court at confirmation), was TLA's
solvency, and, assuming it was solvent, whether the solvent debtor exception operated through
section 1124(1) of the Bankruptcy Code to provide PPI on the TLA GUCs, and at what rate. *See*
Confirmation Opinion at 16 (citing TLA Claimholders Obj. ¶ 25); Opposition ¶¶ 26-28. The
Debtors argue that the TLA Claimholders now misrepresent the arguments in their Plan
objection by contending that they seek to appeal these issues separate and apart from whether
TLA is solvent—*i.e.*, that the question on review is whether unsecured claimants are entitled to
PPI to render their claims unimpaired, regardless of whether the debtor is solvent. The Debtors
claim the TLA Claimholders have shifted their target in order to conjure a legal issue for
certification. Opposition ¶¶ 27-28.

The Court finds that before doing so in the Motion, the TLA Claimholders failed to
meaningfully raise their now-evolved argument (*i.e.*, that solvency is not critical to finding that
unsecured creditors are entitled to contract rate PPI to unimpair them under section 1124(1) of

---

[17]    Indeed, the Motion contends that the "principal issues on appeal are":

> (i) whether a creditor holding an unimpaired claim is entitled to payment in full
> under its contracts, including the post-petition interest provided under the
> contract, in exchange for being classified as unimpaired under section 1124(1)
> of the Bankruptcy Code; (ii) whether a reorganization that passes value to
> shareholders must first repay creditors in full, including post-petition interest at
> the rate provided for in the contract.

Motion at 8; *see also id.* at 18 n.5 (claiming the Confirmation incorrectly "proceeds on the notion that solvency is a
necessary prerequisite for any entitlement to post-petition interest" and contending that Section 1124 "require[s] that
any creditor—of a solvent or insolvent debtor—that is not paid post-petition interest [be] treated as impaired"). The
solvency of TLA—a critical part of the TLA Claimholders' argument in their Plan objection and, indeed, throughout
the Chapter 11 Cases—now appears to be immaterial based on the Motion.

the Bankruptcy Code). The Court finds no basis to revisit its finding that TLA's solvency was

the lynchpin of the TLA Claimholders Objection. *See* Confirmation Opinion at 25. That is

because the questions they raised in their Plan objection were all predicated on a finding that

TLA was solvent (*e.g.*, they implicitly recognized that the solvent debtor exception cannot be

applied through *any* Bankruptcy Code provision—section 1124(1) or otherwise—unless a debtor

is solvent). Those arguments and conclusions, not those raised for the first time here, guide the

Court's assessment of the Motion. That is because the Court is bound by the actual "decisions,

judgments, orders, and decrees" that are the subject of the appeal and not any mischaracterization

of the arguments subject to the ruling. *See* 28 U.S.C. § 158(d)(1); *see also In re Nortel Networks

Corp. Secs. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("It is a well-established general rule that an

appellate court will not consider an issue raised for the first time on appeal.").

   Without relying on their new contentions in the Motion, the TLA Claimholders must

demonstrate they are entitled to a direct appeal based on "question[s] of law" at issue in the TLA

Claimholders Objection and, thus, at issue on appeal. Those questions all turn on whether or not

TLA is insolvent. The Court found that TLA was insolvent for the reasons set forth in the

Confirmation Opinion. *See* Confirmation Opinion at 25-42. Among other things, the Court found

that the TLA Claimholders' valuation expert, Mr. Dellepiane, did not capture all of TLA's

liabilities in his valuation methodologies and, thus, could not accurately determine if the fair

value of TLA's assets exceeded its liabilities under section 101(32) of the Bankruptcy Code. *Id*.

at 32-37. The Court finds TLA's solvency is a factual question for the reasons set forth in the

TLA Claimholders Stay Opinion:

>    As set forth in the Confirmation Opinion, while the TLA
> Claimholders objected to the Plan on some legal grounds (*e.g.*,
> whether and how the solvent debtor exception survived Congress'
> enactment of the Bankruptcy Code), that question need not be

answered unless and until the TLA Claimholders establish that TLA was solvent—a factual question governed on appeal by the more stringent clear error review.

TLA Claimholders Stay Opinion at 27. TLA's insolvency—a threshold factual issue—is key to the TLA Claimholders Objection and thus bars certification of a direct appeal because it is not a "question of law" under section 158(d)(2)(A)(i) of the Judicial Code. *See* 28 U.S.C. § 158(d)(2)(A)(i).

The TLA Claimholders contend that they "pressed" every issue advanced in the Motion (and on appeal) at the confirmation hearing, and, likewise, that the Court "passed upon" each in the Confirmation Opinion. *See* Reply at 3 (quoting *United States v. Harrell*, 268 F.3d 141, 146 (2d Cir. 2001) (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)). "A claim is 'pressed or passed upon' when it fairly appears in the record as having been raised or decided." *Harrell*, 268 F.3d at 146. A party has preserved an argument by "pressing" it if it "ma[kes] the argument to the . . . court before the court issue[s] the judgment being appealed." *Nat. Res. Def. Council v. EPA*, 19 F.4th 177, 183 n.2 (2d Cir. 2021). And an issue is "passed upon" if it is actually "decided" by the court below. *Harrell,* 268 F.3d at 146.

The Court finds this argument unavailing. This is because the TLA Claimholders' new contention that TLA's solvency is not key to their appeal is not something they raised in opposition to the Plan in any more than a perfunctory matter. At the confirmation hearing, the TLA Claimholders briefly argued that unsecured creditors are due PPI to render them unimpaired, regardless of the solvency of the debtor. Their argument relied on Judge Drain's bench ruling in *Empire Generating. See* May 20, 2022 Hr'g Tr.—Public Session at 172:20-173:1. As set forth below, Judge Drain has since reconsidered that position. That and other cases the TLA Claimholders contend support their argument that solvency is immaterial are

14

distinguishable for the reasons set forth below. The Court finds, in any event, that the TLA

Claimholders perfunctory argument relying on *Empire Generating* is not sufficient for the Court

to conclude they raised this issue at confirmation given that the thrust of their arguments relied

on the solvent debtor exception. *See Stanbury v. Mukasey*, 271 F. App'x 14, 15 (2d Cir. 2008)

("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation, are deemed waived.") (citing *Tolbert v. Queens Coll.*,

242 F.3d 58, 75 (2d Cir.2001)).

    Absent their new argument the Court finds they failed to raise at confirmation, the TLA

Claimholders are left with a threshold factual issue on appeal[18]–overturning this Court's finding

that TLA was insolvent and, thus, demonstrating that the TLA Claimholders are not entitled to

any PPI on the TLA GUCs. Insolvency is a question of fact and the findings of the Bankruptcy

Court in this regard will not be disturbed unless they are clearly erroneous. *See In re CIL Ltd.*,

582 B.R. 46, 104 (Bankr. S.D.N.Y. 2018) ("It is well settled that insolvency is a question of

fact.") (quotations omitted); *In re Die Fliedermaus LLC*, 323 B.R. 101, 106 (Bankr. S.D.N.Y.

2005) (same); *In re Tronox Inc.*, 429 B.R. 73, 98 (Bankr. S.D.N.Y. 2010) (same). As such, the

TLA Claimholders have not demonstrated their appeal concerns a "question of law" and, thus,

they have failed to demonstrate they are entitled to a direct appeal under section 158(d)(2)(A)(i).

*See* 28 U.S.C. § 158(d)(2)(A)(i).

---

[18]    At best, the solvency of TLA may be a mixed question of fact and law—*i.e.*, interpreting and applying section
101(32) of the Bankruptcy Code to TLA's assets and liabilities—but even mixed questions do not satisfy section
158(d)(2)(A)'s "question of law" requirement and, thus, cannot support certification. *See, e.g.*, *Mark IV Indus., Inc.
v. N.M. Env't Dep't*, 452 B.R. 385, 390 (S.D.N.Y. 2011) (denying certification where an issue "involve[d] mixed
questions of law and fact, rather than pure questions of law appropriate for direct appeal"); *see also Weber*, 484 F.3d
at 158 (reasoning that Congress intended section 158 of the Judicial Code to address "pure questions of law").

*Whether There is a Controlling Decision*
<u>*Of the Second Circuit or Supreme Court*</u>

The TLA Claimholders contend that the Court's analysis in the Confirmation Opinion demonstrates there is no controlling authority on the principal issue raised in their appeal: whether the Plan may simultaneously fail to provide PPI on the TLA GUCs and designate them as unimpaired. Motion at 10. They say that is so because the Court cites cases from the Fifth Circuit and Third Circuit to hold that the TLA GUCs were not impaired under section 1124(1) by the Plan's failure to pay PPI on those claims. *Id*. at 12; Confirmation Opinion at 23 (citing *Ultra Petroleum I*, 943 F.3d at 763; *In re PPI Enters. (US) Inc*., 324 F.3d at 201-02). They also point to the fact that the in-Circuit cases supporting the Court's reasoning are from lower courts and thus are not binding precedent. Motion at 12 (citing *53 Stanhope LLC*, 625 B.R. at 579; *In re Daffy's, Inc*., 2013 WL 1703267, at *19 (Bankr. S.D.N.Y. Apr. 17, 2013)).

The Debtors contend that the TLA Claimholders' argument misses the mark and confuses the relevant standard under section 158(d)(2)(A)(i) of the Judicial Code. They say this is so because the Court's fact-bound ruling does not raise or depend on a question of law as to which there is no controlling decision of the Second Circuit or Supreme Court that is required for certification. Opposition ¶ 26 (citing *Weber*, 484 F.3d at 157); *Weber*, 484 F.3d at 158 (observing that certification is intended for "a question of law not heavily dependent on the particular facts of a case").

The Court agrees. While the appellate court may grapple with whether the solvent debtor exception applies via section 1124(1) of the Bankruptcy Code (and the rate of interest at which unsecured creditors' claims against solvent debtors should be paid), these questions are "heavily dependent" on whether TLA is solvent. *Id*. Put simply, the Court cannot find any scenario where an appellate court would determine that the TLA Claimholders are entitled to PPI that does not

rest on a finding that TLA was solvent. Because the TLA Claimholders are unable to cite a threshold question of law raised in their Plan objection, the Court need not (and will not) consider whether the legal questions that follow—*e.g*., what constitutes impairment under section 1124(1) in the context of solvent debtors and the rate at which PPI, if any, must be paid—fall within the ambit of section 158(d)(2)(A)(i) of the Judicial Code.

> *Whether the Legal Issue Involves*
> *a Matter of Public Importance*

Section 158(d)(2)(A)(i) of the Judicial Code is disjunctive; a court within the Second Circuit will grant a direct appeal if it involves a question of law: (a) for "which there is no controlling decision"; or (b) that "involves a matter of public importance." 28 U.S.C. § 158(d)(2)(A)(i). The Court finds the TLA Claimholders have failed to demonstrate their appeal involves a matter of public importance under section 158(d)(2)(A)(i). *See id*.

The TLA Claimholders contend it is important for future litigants that the Second Circuit determine whether unimpaired creditors are entitled to PPI to unimpair their claims under section 1124(1) of the Bankruptcy Code. Motion at 13. They say that is so because, without such guidance, the Confirmation Opinion incentivizes debtors to treat claimants as unimpaired (and thus "disenfranchise" them) by paying them the full amount of their claims but declining to pay PPI. *Id*. Further, they contend that the Plan's treatment of the Debt Instruments' interest terms will have detrimental effects on the willingness of lenders to offer liquidity to distressed companies outside of bankruptcy. *Id*. at 14. They contend that until the Second Circuit resolves the questions raised by this appeal, courts in this Circuit (and critical capital markets) will lack clear guidance. *Id*.

The Debtors contend that the Court's conclusion that TLA was insolvent and, thus, not entitled to PPI on the TLA GUCs, is not a matter of public importance—at least not one that

rises to the level to support certifying the appeal to the Second Circuit. Opposition ¶ 33. They

say that is so because the appeal principally concerns only the TLA Claimholders and the

Debtors, and case law interpreting "public importance" requires more. *See id*. (citing *Mark IV*

*Indus.*, 452 B.R. at 388-89 ("[p]ublic importance exists when the matter on appeal transcends the

litigants and involves a legal question the resolution of which will advance the cause of

jurisprudence to a degree that is usually not the case.")).

      The Court finds this is not the unusual case that "transcends the litigants." *Mark IV*

*Indus.*, 452 B.R. at 388-89; *see also Mesabi Metallics Co. LLC v. B. Riley FBR Inc. (In re Essar*

*Steel Minn. LLC),* 2020 U.S. Dist. LEXIS 116888 (D. Del. July 1, 2020). For example, a matter

may be of public importance if it could impact a large number of jobs or other vital interests in a

community. *Jaffe v. Samsung Electronics Co. (In re Qimonda AG)*, 470 B.R. 374, 387–89 (E.D.

Va. 2012); *see also id*. at 388 (public importance must stem from "the substantial ramifications

that any decision will cause in the [] industry and for businesses in any industry that heavily rely

on [the issue]."). That is not the case here, as the TLA Claimholders' appeal principally concerns

only the TLA Claimholders and the Debtors. Further, the issues on appeal do not impact the vast

majority of chapter 11 cases, as solvent debtors arise from "exceedingly anomalous facts",

undermining any claim that litigants in the Second Circuit need clear guidance on whether (and

how much) PPI must be paid to creditors of solvent debtors to render them unimpaired under

section 1124(1) of the Bankruptcy Code. *See Ultra Petroleum I*, 943 F.3d at 758. To the extent

the TLA Claimholders contend their issues on appeal do not concern solvency—and thus

potentially impact more chapter 11 proceedings—this argument is absent from the TLA

Claimholders Objection and cannot support certification for the reasons set forth above.

***Whether a Direct Appeal Will Resolve Conflicting Decisions on a Question of Law***

The TLA Claimholders contend that the Court's holdings on its Plan objection give rise to four legal questions that conflict with other case law touching on impairment under section 1124 of the Bankruptcy Code: (1) whether a creditor is impaired by the denial of PPI, Motion at 14-15; (2) what interest rate should be applied to calculate PPI, if owed at all, *id*. at 15-17; (3) how to reconcile the treatment of creditors who are unimpaired through section 1124(1) and those unimpaired through section 1124(2), *id*. at 17-18; and (4) the proper "legal standard" to assess solvency of a debtor, *id*. at 18-19. Most of the case law the TLA Claimholders invoke to support "conflicting decisions" is outside of the Second Circuit. The Debtors contend that out-of-circuit law cannot support a finding of "conflicting decisions" under section 158(d)(2)(A)(ii) and, in any event, the TLA Claimholders' in-circuit case law is either inapposite or addresses legal issues not raised in the TLA Claimholders Objection. *See* Opposition ¶ 38.

For the reasons set forth above, these questions are not questions of law an appellate court will decide on appeal and, thus, they do not support certification of a direct appeal under section 158(d)(2)(A)(ii) of the Judicial Code. The Court finds that the TLA Claimholders did not contend in their Plan objection that unsecured creditors were entitled to contract-rate PPI to become unimpaired as a matter of law. Instead, they contended that TLA was solvent and the solvent debtor exception operated through section 1124(1) of the Bankruptcy Code. *See* Confirmation Opinion at 42-57; TLA Claimholders Obj. ¶¶ 24, 27, 28. Indeed, TLA's solvency has been a predicate for their Plan objection since they contended the Disclosure Statement was deficient. Disclosure Statement Objection ¶¶ 23-29. As such, the Court finds there is no basis for an appellate court to consider whether the TLA GUCs must be paid PPI to be rendered unimpaired outside of the context of TLA's solvency—the only basis in which they raised this

issue in their Plan objection.[19] And, further, as set forth above, the Court finds that solvency

under section 101(32) of the Bankruptcy Code is a question of fact, not law, and thus also

precludes certification under section 158(d)(2)(A)(ii). *See* 28 U.S.C. § 158(d)(2)(A)(ii).

Even if these "questions of law" raised by the TLA Claimholders qualified as such, they

have offered minimal support that the Confirmation Opinion conflicts with other case law on

these issues. Court finds that section 158(d)(2)(A)(ii) concerns "conflicting decisions" only

within the circuit in which the request for a direct appeal is raised—*i.e.*, here, the Second Circuit.

*In re Springfield Hosp. Inc.*, 618 B.R. 109, 119 (Bankr. D. Vt. 2020) ("conflicting decisions from

outside this circuit do not satisfy the criterion for certification"); *see also In re Gravel*, No. 11-

10112, 2019 WL 3783317, at *7 (Bankr. D. Vt. Aug. 12, 2019) ("conflicting decisions from

outside this circuit do not satisfy the criterion for certification under 28 U.S.C. §

158(d)(2)(A)(ii)"); *Weber*, 484 F.3d at 161 (finding no "conflict of such a nature that creates

uncertainty in the bankruptcy courts, as all three of the courts ***within this circuit*** to have

considered the question" have ruled the same) (emphasis added); 1 Collier on Bankruptcy ¶ 5.06

(16th ed. 2022) (conflict "would have to exist within the particular circuit"; "[i]t is unlikely that

conflicting decisions among circuits would qualify . . . ."). The TLA Claimholders have relied on

a bevy of out-of-circuit case law. *See*, *e.g.*, Motion at 14. The Court will not consider this case

law and, instead, will only assess whether in-circuit case law conflicts with the Confirmation

Opinion. The Court finds no conflict exists for the reasons set forth below.

---

[19]    Similarly, the Court finds that the TLA Claimholders' additional purported "question of law" to be resolved on appeal—*i.e.*, the alleged conflict between the treatment of creditors who are unimpaired through section 1124(1) and those who are unimpaired through section 1124(2)—was not raised in their Plan objection. Accordingly, there is no basis for an appellate court to consider this question and, thus, it cannot serve as a requisite question of law for this Court to certify a direct appeal.

*Whether There are Conflicting Decisions Concerning Whether a*
<u>*Creditor is Impaired by the Denial of PPI*</u>

In the Confirmation Opinion, the Court concluded that the TLA GUCs were not impaired

under the Plan by the denial of PPI because they received everything they were entitled to (*i.e.*,

payment in full plus pre-petition interest) in light of section 502(b)(2)'s ban on "unmatured

interest" (*e.g.*, PPI). Confirmation Opinion at 23. In doing so, the Court overruled the TLA

Claimholders Objection and further found that: (i) TLA was insolvent; and (ii) even assuming

*arguendo* TLA was solvent, the solvent debtor exception did not apply through section 1124(1).

*Id.* at 42-57; *see also* TLA Claimholder Obj. at Section I.B ("The Solvent Debtor Exception

Applies to the Treatment of the TLA Claims"), Section I.C ("Section 1124(1) and the Solvent

Debtor Exception Dictate that the Plan Must Pay Postpetition Interest at the Contract Rate . . .

."). In the Motion, the TLA Claimholders contend the Court's holdings conflict with *In re*

*Oneida Ltd.*, 351 B.R. 79 (Bankr. S.D.N.Y. 2006) ("***Oneida***") and *In re Empire Generating Co.*,

No. 19-23007- RDD (Bankr. S.D.N.Y. June 20, 2019) [ECF No. 175] ("***Empire Generating***").

Based on these cases, the TLA Claimholders contend there is an intra-circuit conflict regarding

whether a claim is impaired under section 1124 if a plan denies it PPI. Reply at 8.

The Court disagrees. *Empire Generating* and *Oneida* do not support certification of a

direct appeal because they do not stand for the proposition that a claim is impaired, as a matter of

law, under section 1124(1) if a plan denies it PPI. These cases neither create an intra-circuit

conflict with the Confirmation Opinion, nor eliminate the threshold factual issue of solvency that

bars certification under section 158(d)(2)(A)(i), as discussed above. At Plan confirmation and in

the Motion, the TLA Claimholders contend that in *Empire Generating*, Judge Drain rejected an

argument that PPI is only due when a debtor is solvent based on his reading of section 1124(1) of

the Bankruptcy Code and his experience formulating the legislative history of that section.

Motion at 8; May 20, 2022 Tr. – Public Session at 172:20-173:1. The TLA Claimholders,

however, fail to note that Judge Drain reversed his analysis in deciding *In re 53 Stanhope LLC*,

625 B.R. 573, 579 (Bankr. S.D.N.Y 2021) ("*53 Stanhope*")–which they recognized at the

Confirmation Hearing. May 20, 2022 Tr. – Public Session at 173:8-12 (The Court: "Before you

go on, Judge Drain revisited that view he expressed in the –Mr. Fliman: In the *Stanhope*

decision, he did, Your Honor."); *53 Stanhope LLC*, 625 B.R. at 580 ("I was at first surprised by

*Ultra Petroleum*'s holding, but, having considered its discussion of the legislative history

generally and the operation of the statute, I agree with it."). In *53 Stanhope*, Judge Drain

ultimately adopted the standard for impairment set forth in *Ultra Petroleum I*, where the Fifth

Circuit held that a claim is not impaired under a plan when it pays a claim in full (*i.e*., principal

and pre-petition interest) but disallows PPI under section 1124(1). *See Ultra Petroleum I*, 943

F.3d at 765; *53 Stanhope*, 625 B.R. at 579. This holding comports with "[d]ecisions from

bankruptcy courts across the country," and thus does not evidence conflicting decisions—in the

Second Circuit or otherwise. *See Ultra Petroleum I*, 943 F.3d at 763. Further, *Ultra Petroleum I*

and *53 Stanhope* only reached these holdings because the debtor in each case was solvent. *Ultra*

*Petroleum I*, 943 F.3d at 760 ("[t]hese bankruptcy proceedings arise from exceedingly

anomalous facts. The debtors entered bankruptcy insolvent and now are solvent."); *53 Stanhope*,

625 B.R. at 581.

 *Oneida* is factually distinguishable and grounded in inapposite case law. As such, like

*Empire Generating*, it neither demonstrates an intra-circuit legal conflict nor eliminates the

threshold solvency analysis with respect to whether PPI is required to unimpair an unsecured

claim under section 1124(1) of the Bankruptcy Code. *Oneida* is an insolvent debtor case in

which the court reasoned that an unsecured creditor with the "right to interest on its claim under

applicable non-bankruptcy law [] must be paid interest for the post-petition, as well as the

prepetition period" in order to be unimpaired under section 1124 of the Bankruptcy Code.

*Oneida*, 351 B.R. at 95-96. The Court recognizes that logic may appear to conflict with the

Court's holding in the Confirmation Opinion.[20] But the court in *Oneida* did not award PPI to the

objecting creditor because: (i) its claim was disputed; (ii) "[t]he wording of the [p]lan concerning

interest payments to [] general unsecured creditors [was] vague and possibly ambiguous"; and

(iii) it was unclear if the claim was actually interest-bearing at all. *Id*. at 96. Accordingly, the

court did not hold that unsecured creditors were entitled to PPI as a matter of law. In other

words, *Oneida* does not support the TLA Claimholders' new recitation on appeal that its

objection to the Plan was not premised on TLA's solvency. *See* Reply at 8 ("[c]ontrary to the

Debtors' solvency-first approach, *Empire* and *Oneida* did not depend on the debtors' solvency").

These distinctions demonstrate that *Oneida* is not in conflict with the Confirmation Opinion.

Further, the court in *Oneida* grounded its conclusion concerning impairment on *In re

Chateaugay*, a secured creditor case. *Oneida*, 351 B.R. at 96 (citing *In re Chateaugay,* 150 B.R.

529, 543 (Bankr. S.D.N.Y. 1993)). *In re Chateaugay* addressed the "interplay between sections

506(b) and 1124 of the Bankruptcy Code" and awarded PPI to an oversecured creditor under

section 506(b) in order to unimpair its claims under section 1124(2). 150 B.R. at 533, 543. In

doing so, the court recognized that section 506(b) "codified for the first time pre-Code case law

recognizing a *limited exception* to the general rule of disallowance of post-petition interest in the

case of oversecured creditors." *Id.* at 538 (emphasis added). The court in *Oneida* failed to

---

[20]    *See* Confirmation Opinion at 23 ("Because the Plan provides for payment of the TLA GUCs in full (*i.e.*,
principal and pre-petition interest) and the Bankruptcy Code itself disallows payment of PPI under section
502(b)(2), the claims are not impaired within the meaning of section 1124(1) the Bankruptcy Code.") (citing *Ultra
Petroleum I*, 943 F.3d at 763; *Wells Fargo Bank, N.A. v. The Hertz Corp (In re The Hertz Corp.)*, No. 20-11218,
2021 WL 6068390, at *11 (Bankr. D. Del. Dec. 22, 2021)).

consider how that "limited exception" under section 506(b)—applying on its terms only to oversecured creditors—could also be applied to unsecured creditors in the face of section 502(b)(2)'s unconditional bar on unmatured interest. As the Court reasoned in the Confirmation Opinion, case law assessing interest paid to oversecured creditors has no bearing here (*i.e.*, on the unsecured TLA GUCs) because section 506(b) *expressly* provides for interest—an allowance for which there is no express statutory equivalent for unsecured creditors, such as the TLA Claimholders, under section 1124(1) or otherwise. *See* Confirmation Opinion at 54-55.

Moreover, even if *Oneida* was not distinguishable from these Chapter 11 Cases on both legal and factual grounds, courts within the Second Circuit have not embraced its logic. The Court can locate no case law within the Second Circuit relying on *Oneida* as support for the contention that unsecured creditors are entitled to PPI to unimpair their claims under section 1124(1) of the Bankruptcy Code. Nor have the TLA Claimholders provided any. As such, even assuming *arguendo Oneida* was analogous, standing alone it hardly supports the TLA Claimholders' contention that the Confirmation Opinion created a "question of law requiring resolution of conflicting decisions." *See* 28 U.S.C. § 158(d)(2)(A)(ii); *see also Weber*, 484 F.3d at 161 (declining to consider direct appeal because the court "d[id] not perceive a conflict *of such a nature that creates uncertainty* in the bankruptcy courts") (emphasis added).

For these reasons, the Court finds that *Oneida* is not in conflict with the Confirmation Opinion and thus does not support a direct appeal under section 158(d)(2)(A)(ii) of the Judicial Code. Accordingly, the Court rejects the TLA Claimholders' contention that case law assessing impairment in the context of PPI does "not depend on the debtor's solvency." Reply at 8. In other words, the solvency of TLA was (and remains) the crux of their objection to the Plan and the focus of the case law they cited (and case law more generally concerning whether an

24

unsecured creditor is entitled to PPI to unimpair its claims under section 1124(1) of the

Bankruptcy Code). *Empire Generating* and *Oneida* are not to the contrary. Because the solvency

of TLA is a factual gating issue governing the TLA Claimholders' appeal, for the reasons set

forth above concerning section 158(d)(2)(A)(i) of the Judicial Code, it cannot serve as a basis for

this Court to certify a direct appeal under subsection (ii). *See* 28 U.S.C. § 158(d)(2)(A)(ii).

> Whether There are Conflicting Decisions on the Rate
> <u>of PPI that Must be Paid to Unimpair a Creditor</u>

In the Confirmation Opinion, the Court concluded that assuming *arguendo* TLA was

solvent (which the Court determined it was not), it would only be entitled to PPI "at the federal

judgment rate, not at the rate called for in their Debt Instruments." Confirmation Opinion at 47.

The TLA Claimholders contend this conclusion is at odds with other decisions within the Second

Circuit and thus dictates this Court certify a direct appeal. Motion at 15-16. They cite the

following allegedly "conflicting decisions" they contend award interest at the contract rate: *Urb.*

*Communicators PCS Ltd. P'ship v. Gabriel Cap., L.P.*, 394 B.R. 325, 340 (S.D.N.Y. 2008)

("***Urb. Communicators***"); Bench Ruling at Tr. 22-27 [ECF No. 2304], *Loral Space and*

*Commc'ns Ltd.*, No. 03-41710 (Bankr. S.D.N.Y. July 25, 2005) (Drain, J.) ("***Loral Space***");

*Puka Cap. Funding LLC v. L&N Twins Place LLC*, 2019 WL 5258096, at *6 (Bankr. S.D.N.Y.

Oct. 15, 2019) *vacated on other grounds* 2020 WL 7211235 (S.D.N.Y. Dec. 4, 2020) ("***L&N***

***Twins Place***"). Motion at 16; *see also* Reply at 9 (citing *In re General Growth Properties, Inc.*,

451 B.R. 323, 326–27 (Bankr. S.D.N.Y. 2011) ("***General Growth***")). The Debtors contend the

Court need not reach the merits of this argument because it is a "subsidiary issue" that is not at

issue on appeal unless, among other things, the TLA Claimholders determine TLA was solvent,

which the Court found they failed to do. *See* Opposition ¶ 42; *see also* Confirmation Opinion 32-

42.

The Court agrees that it need not reach the merits of the TLA Claimholders' argument because it only becomes dispositive if the TLA Claimholders can overcome the threshold factual issue that TLA is insolvent. Assuming *arguendo*, however, they could, the Court nevertheless finds these cases are distinguishable. Accordingly, they do not conflict with the Confirmation Opinion and cannot support certifying their direct appeal under section 158(d)(2)(A)(ii) of the Judicial Code. As set forth in the Confirmation Opinion, *Urb. Communicators*, like *In re Chateaugay*, assessed the interest rate to be applied to an oversecured creditors' claim under section 506(b) of the Bankruptcy Code. Confirmation Opinion at 54-55; *Urb. Communicators*, 394 B.R. at 338-340. The court in *Urb. Communicators* relied on *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959)–the Second Circuit's leading, pre-Bankruptcy Code, case setting forth the solvent debtor exception–to apply a contractual default rate to calculate the applicable interest due to an oversecured creditor. *Urb. Communicators*, 394 B.R. at 338-340 (citing *Ruskin*, 269 F.2d at 832). That has no bearing on the interest rate to calculate the PPI due to an *unsecured* creditor's claim against a solvent debtor, if any—the question raised by the TLA Claimholders and addressed by the Confirmation Opinion. *See* Confirmation Opinion at 54.

*L&N Twins Space* is not to the contrary, as it relies on *General Growth*,[21] which, like *Urb. Communicators*, concerns oversecured creditors and, in any event, *L&N Twins Space* was

---

[21]    The TLA Claimholders also contend that *General Growth* conflicts with the Confirmation Opinion's holding that the TLA Claimholders would only be entitled to PPI calculated at the federal judgment rate, assuming they had proved TLA was solvent. *See* Reply at 9 n.6. They contend it is immaterial that *General Growth* concerned an oversecured creditor because the court "made explicit that an oversecured creditor's statutory right was distinct from the 'court-created exception' that *all* creditors should receive contractual interest before there is a return to equity." *Id.* (quoting *General Growth*, 451 B.R. at 326). The Court finds that the TLA Claimholders misread *General Growth*. There, the court applied the "court-created" solvent debtor exception to interpret section 506(b)—the Bankruptcy Code's "statutory [exception]" to the disallowance of PPI for oversecured creditors. *General Growth*, 451 B.R. at 326. It did so because section 506(b) "does not specify an interest rate" from which to calculate PPI. *Id.* In other words, the "court-created" tool, via *Ruskin*, was needed to interpret an express statutory provision in the Bankruptcy Code. The Court finds that is inapplicable to the TLA Claimholders Objection and the Motion, because, here, there is no express statutory exception applicable to unsecured creditors to section 502(b)(2)'s ban on PPI. *See* Confirmation Opinion at 55 ("the Court finds that *Ruskin* provides a court-created tool from which a bankruptcy court can construe express allowances through express provisions of the Bankruptcy Code, like the interest rate used

reversed by the district court.[22] *L&N Twins Space,* 2019 WL 5258096, at *6; *see also*

Confirmation Opinion at 54 (distinguishing *Urb. Communicators* and *General Growth* and

finding that section 506(b) of the Bankruptcy Code does not support the TLA Claimholders'

argument). The Court is similarly not persuaded by Judge Drain's reasoning in *Loral Space* that

contract rate interest should be awarded on an unsecured claim because he subsequently reversed

his view in *53 Stanhope* based on the Fifth Circuit's decision in *Ultra Petroleum I. Loral Space*

Tr. at 37:11-15 and 41:21-24; *53 Stanhope LLC,* 625 B.R. at 580 (discussed above).

Accordingly, the Court finds that the Confirmation Opinion is not in conflict with any in-circuit

case law concerning the rate at which PPI should be awarded to unsecured creditors of solvent

debtors. As such, the TLA Claimholders have failed to demonstrate they are entitled to take their

appeal directly to the Second Circuit under section 158(d)(2)(A)(ii) of the Judicial Code.

> *Whether the Other Alleged*
> <u>*Conflicts Support Certification*</u>

The TLA Claimholders have failed to demonstrate the Confirmation Opinion conflicts

with in-circuit case law concerning the other questions of law they raise in the Motion and their

appeal. *See* Motion at 17-19. First, the TLA Claimholders contend that the Court's conclusion as

to the rate of PPI conflicts with other authority in this District between the treatment of creditors

who are unimpaired through section 1124(1) and those who are unimpaired through section

1124(2). *Id.* at 17-18. The Court agrees with the Debtors that this alleged conflict cannot advance

---

to calculate PPI due to oversecured creditors, without running afoul of *Siegel* and creating judicial exceptions to the
Bankruptcy Code's provisions").

[22]    *L&N Twins Place* also relies on a provision of Colliers to justify awarding PPI calculated at the contractual
default rate. 2019 WL 5258096, at *6 ("[t]he thinking behind th[e solvent debtor] exception is that creditors should
receive interest [in such circumstances] as compensation for the delay in the bankruptcy process.") (citing 4 Collier
on Bankruptcy ¶ 502.03[3][c] (16th ed. 2018)). But that section of Collier's does not support an award of contract-
rate PPI, as it suggests that PPI, if any is applicable, would be awarded at the federal judgment rate, as the Court
concluded in the Confirmation Opinion. *See* 4 Collier on Bankruptcy ¶ 502.03[3][c] (16th ed. 2018).

the TLA Claimholders' certification request, as they did not raise this issue in their Plan objection and thus likely cannot expect an appellate court to adjudicate it. *See* Objection ¶ 43. Moreover, the TLA Claimholders' current reliance on section 1124(2) of the Bankruptcy Code is curious given that they expressly argued that it was inapplicable. TLA Claimholders Objection ¶ 24 ("The stated maturities under the TLA Debt Instruments have passed, rendering reinstatement under section 1124(2) of the Bankruptcy Code inapplicable").

Next, the TLA Claimholders contend the Confirmation Opinion's "legal standard" to assess solvency implicates a further division of authority. Motion at 18-19. They say that is so because they claim the Court improperly credited the Liquidation Analysis and Balance Sheet Test applied by the Debtors' valuation expert, Mr. Brock Edgar, which demonstrated that the sum total of TLA's liabilities exceeded its assets and, thus, rendered TLA insolvent under section 101(32) of the Bankruptcy Code. Confirmation Opinion at 37-42. The Debtors maintain that the TLA Claimholders' argument is immaterial because the test for solvency is not an issue the TLA Claimholders seek to certify. Opposition ¶ 44. They also contend it is a meritless argument because the Court applied section 101(32) of the Bankruptcy Code, just as the TLA Claimholders did through their valuation expert, Mr. Santiago Dellepiane.

The Court agrees with the Debtors. The TLA Claimholders appear to take issue with the Court's (and Mr. Edgar's) factual methodology used to interpret section 101(32) of the Bankruptcy Code—*i.e.*, the Liquidation Analysis and Balance Sheet Test, not the relevant legal standard, section 101(32) of the Bankruptcy Code. And, as described above, questions of fact cannot warrant certification under section 158(d)(2)(A) of the Judicial Code. *See* 28 U.S.C. § 158(d)(2)(A)(i)-(ii).

28

### *Whether a Direct Appeal Will Materially Advance the Progress of the Case*

The Court must certify a direct appeal to the Second Circuit if doing so "may materially advance the progress of the case or proceeding in which the appeal is taken." 28 U.S.C. § 158(d)(2)(A)(iii). This Court is guided by *Weber* in applying this provision. 484 F. 3d at 158. In *Weber*, the Second Circuit found that a direct appeal would "materially advance" a case where, "[f]or instance, [] a bankruptcy court has made a ruling which, if correct, will essentially determine the result of future litigation." *Id*. The Court finds the TLA Claimholders have failed to meet this burden.

The parties appear to agree that post-confirmation issues in these Chapter 11 Cases should be quickly resolved. Indeed, they have agreed to expedite the TLA Claimholders' pending appeal before the District Court. The appeal will be fully submitted by August 15, 2022. *In re LATAM Airlines Grp*., S.A., No. 22-cv-5891 (S.D.N.Y. July 13, 2022) [ECF No. 9].

The TLA Claimholders contend their appeal must be swiftly resolved to undermine the Debtors' anticipated argument that the appeal will be equitably moot once the transactions underpinning the Plan begin to unfold in September 2022. *See* TLA Claimholders Stay Opinion at 12-13; *id*. at 12 ("The Debtors concede that the steps leading up to the consummation of the Plan may become irreversible with the commencement of the preemptive rights offering called for under the Plan"). As such, the TLA Claimholders contend that this Court should certify a direct appeal because doing so provides them the greatest chance the appeal will be decided on the merits before the Plan is substantially consummated. *See* Motion at 21. Indeed, the TLA Claimholders contend that, without a direct appeal, the losing party would simply appeal the district court's decision to the Second Circuit, which drags out the inevitable appellate process.

*Id.* They contend a direct appeal also provides the extra benefits of providing guidance in the Second Circuit concerning the "badly divided" legal issues set forth above. *Id.*

The Debtors contend that the TLA Claimholders have failed to demonstrate that a direct appeal will materially advance the Chapter 11 Cases. Opposition ¶ 46. They say that is so because the TLA Claimholders point only to their interest in quickly resolving their appeal—an interest of any appellant in a bankruptcy proceeding. *Id.* ¶ 47. The Debtors also contend the Court should deny the Motion because direct appeals of confirmation orders are inappropriate once a bankruptcy plan has been confirmed and substantially consummated. *Id.* Finally, the Debtors maintain that even assuming that a prompt resolution of their appeal satisfied section 158(d)(2)(A)(iii) of the Judicial Code, here, a direct appeal fails to advance that interest because the District Court may rule on the TLA Claimholders' appeal before the Second Circuit decides whether to accept the appeal. *See id.* ¶ 48.

The Court finds the TLA Claimholders have failed to satisfy their burden under section 158(d)(2)(A)(iii) of the Judicial Code. *See* 28 U.S.C. § 158(d)(2)(A)(iii).

First, they have not (and the Court finds they cannot) point to any question on appeal that will materially advance the Chapter 11 Cases or "essentially determine the result of future litigation." *See Weber*, 484 F.3d at 158. These Chapter 11 Cases have been pending for over two years, the Court confirmed a Plan with the support of the overwhelming majority of parties in interest, the Court declined to stay the Confirmation Order pending the TLA Claimholders' and another Plan objector's appeal, and the Debtors are preparing to soon take steps to substantially consummate the Plan. *See* Confirmation Opinion at 6-15; *see generally* TLA Claimholders Stay Opinion; A&P Ad Hoc Group Stay Opinion.[23] While the Plan will not be substantially

---

[23]    Memorandum and Order Denying Ad Hoc Group of Unsecured Claimants' Motion for a Stay Pending Appeal Pursuant to Rule 8007 [ECF No. 6043] (the "**A&P Ad Hoc Group Stay Opinion**").

consummated until September 2022 at the earliest,[24] the scope and duration of remaining

litigation in these Chapter 11 Cases is dwindling. In other words, certifying a direct appeal will

do little to materially advance the Chapter 11 Cases because of how far these cases have already

come and how close the Debtors are to making distributions under the Plan. *See Purdue Pharma*

Tr. at 198:21-22 (finding that section 158(d)(2)(A)(iii) "by its plain terms refers to advancing the

case, not advancing the appeal").

In contrast, bankruptcy courts find that a direct appeal materially advances a case when it

raises critical issues the resolution of which are necessary to support the development and

execution of a Plan. For example, in *In re Bernard L. Madoff Inv. Securities LLC*, Case No. 08-

1789 (Bankr. S.D.N.Y. 2008), the court certified a consensual direct appeal to settle the

definition and application of the term "net equity" under section 16(11) of the Securities Investor

Protection Act, 15 U.S.C. § 78(11) ("SIPA").[25] The *Madoff* proceedings involved over 15,000

customer claims totaling billions of dollars. *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R.

122, 124 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011). Defining each claimant's

"net equity" under SIPA was the "critical issue" for "distributing [] these astounding sums." *Id*.

The bankruptcy court assessed arguments concerning whether the "Net Investment" or "Final

Customer Statements" methods were appropriate under SIPA. *Id*. at 124-25. This threshold

question governed the distribution, *if any*, that each customer claim would receive under the

---

[24]    The Debtors claim *In re BGI, Inc.*, 504 B.R. 754 (Bankr. S.D.N.Y. 2014) ("*BGI*") mandates the Court deny the Motion. *See* Objection ¶¶ 46-47. They say that is so because the Court in *BGI* rejected a direct appeal because it concerned objections to a plan that was "confirmed and substantially consummated." *BGI*, 504 B.R. at 765. Here, in contrast, the Plan has not been substantially consummated. TLA Claimholders Stay Opinion at 12-13 (reasoning that the Plan will not be substantially consummated until September 2022, at the earliest, when the preemptive rights offering period begins). While *BGI* is thus not directly analogous, the Court finds it instructive because it cautions that direct appeals are less likely to materially advance the progress of a bankruptcy case the closer a plan is to going effective. *See BGI*, 504 B.R. at 765.

[25]    Court's Certification of Net Equity Order of March 8, 2010 For Immediate Appeal to the United States Court of Appeals Pursuant to 28 U.S.C. § 158(d)(2), *In re Bernard L. Madoff Inv. Securities LLC*, Case No. 08-1789 (Bankr. S.D.N.Y. 2008), ECF No. 2022 (the "**Madoff Certification Order**").

liquidation of a business entity formerly held by Mr. Madoff. In granting the direct appeal under section 158(d)(2) of the Judicial Code, the court found that a final determination of how to define "net equity" under SIPA would materially advance the progress of the proceeding. *Madoff Certification Order* ¶ 2.

Those kinds of concerns are not present here. Unlike in *Madoff*, the TLA Claimholders' appeal does not present questions that govern the amount of distribution to each of the Debtors' claimholders, let alone whether each claimholder is entitled to any distribution at all. Instead, the appeal principally concerns whether the TLA Claimholders—one subset of Holders of Allowed Class 6 Claims under the Plan—are entitled to PPI on the TLA GUCs in addition to cash equal to the full amount of their claims. *See* Plan § 3.2(f) (providing "[c]ash equal to the amount of such Allowed Class 6 Claim"). The TLA Claimholders' appeal does not directly impact the distributions to claimants in any of the other ten classes under the Plan. *See* Plan § 3.2. Accordingly, the Court finds the TLA Claimholders' appeal presents starkly narrower issues that do not impact the entire claims adjudication procedure like the issues behind the direct appeal in *Madoff*. Put simply, the Court finds *Madoff* emblematic of the "exceptional circumstances" where a direct appeal is appropriate—circumstances absent from the TLA Claimholders' appeal. *See* Purdue Pharma Tr. at 187:6-8.

Second, the Court finds the TLA Claimholders put too much stock in quickly resolving their appeal. Standing alone, the desire to accelerate an appeal is insufficient to support certification under section 158(d)(2)(A)(iii) of the Judicial Code. *See, e.g., In re Lehman Bros. Inc.*, 13 Civ. 5381(DLC), 2013 WL 5272937, at *5 (S.D.N.Y. Sept. 18, 2013) ("if the mere expectation of advancement to a circuit court was sufficient to establish material advancement, Section 158(d)(2)(A) would effectively eliminate the district court from the bankruptcy review

process altogether."); *In re Johns-Manville Corp.*, 449 B.R. 31, 34 (S.D.N.Y. 2011) (rejecting movant's argument that direct certification would be "quicker because it need only be heard by one court" as "[t]hat argument can be made in every case where there is an appeal involving a final judgment of the Bankruptcy Court.").

In any event, the Court finds it speculative that a direct appeal would expedite appellate review of the Confirmation Order and Opinion. As the Second Circuit has reasoned, "since district courts tend to resolve bankruptcy appeals faster than the courts of appeals. . . the cost in speed of permitting district court review will likely be small." *Weber*, 484 F.3d at 160. That possibility is heightened here given the expedited briefing schedule ordered by the district court. *In re LATAM Airlines Grp*., S.A., No. 22-cv-5891 (S.D.N.Y. July 13, 2022), ECF No. 9. The TLA Claimholders' pending appeal will be fully briefed in a matter of weeks. *Id*. A direct appeal would require a fresh round of briefing and argument, not to mention the time needed for the parties reach a schedule to do so. *In re Santiago-Monteverde*, No. 11-15494 JMP, 2014 WL 1301862, at *2 (S.D.N.Y. Mar. 25, 2014) (progress of appeal in district court weighs against certifying direct appeal). Further, because the Second Circuit may decline to hear the direct appeal even if this Court grants the Motion, it is possible the District Court rules on the TLA Claimholders' appeal before the Second Circuit even decides whether to exercise its discretion. *See* 28 U.S.C. § 158(d)(2)(A) (direct appeals require, *inter alia*, the court of appeals to "authorize" the request).

Third, for the reasons set forth in the preceding sections, the Court finds no merit in the TLA Claimholders' contention that certification of a direct appeal under section 158(d)(2)(A)(iii) of the Judicial Code is appropriate given the "badly divided" law governing their Plan objection.

Accordingly, the Court finds the TLA Claimholders have failed to demonstrate that a direct appeal will materially advance the progress of the Chapter 11 Cases and, thus, the Court denies the TLA Claimholders' request for a direct appeal under section 158(d)(2)(A)(iii).

## Conclusion

For the reasons set forth above, the Court denies the Motion.

IT IS SO ORDERED.

Dated: New York, New York
July 26, 2022

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge