UNITED STATES BANKRUPTCY COURT     NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LATAM Airlines Group S.A., *et al.*, | : | Case No. 20-11254 (JLG) |
| | : | |
| Reorganized Debtors.[1] | : | (Jointly Administered) |

-------------------------------------------------------------x

## MEMORANDUM DECISION SUSTAINING THE
## REORGANIZED DEBTOR'S NINETY-NINTH OMNIBUS OBJECTION

**A P P E A R A N C E S :**

TOGUT, SEGAL & SEGAL LLP
*Co-Counsel to the Reorganized Debtor*
One Penn Plaza, Suite 3335
New York, New York 10119

By:    Albert Togut, Esq.
       Kyle J. Ortiz, Esq.
       Jared C. Borriello, Esq.
       Eitan E. Blander, Esq.

---

[1] The "Reorganized Debtors" in these Chapter 11 Cases, along with each Reorganized Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM-Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services LLC (30-1133972); Maintenance Service Experts LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services, Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); LATAM Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); ABSA Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348); and Multiplus Corretora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Reorganized Debtors is: 6500 NW 22nd Street Miami, FL 33122.

PAUL HASTINGS LLP
*Counsel for the TLA Claimholders Group*
200 Park Avenue
New York, New York 10166

By:   Daniel A. Fliman, Esq.
      Emily L. Kuznick
      John F. Iaffaldano


**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**




**Introduction[2]**

Banco do Brasil S.A. ("Banco do Brasil") timely filed Proofs of Claim Nos. 3526 and 3731 against TAM Linhas Aéreas S.A. ("TLA") and Proof of Claim No. 3703 against LATAM Airlines Group S.A. ("LATAM Parent" or the "Reorganized Debtor")[3] (collectively, the "Banco do Brasil Claims") in these Chapter 11 Cases. Banco Bradesco S.A. ("Banco Bradesco" and, together with Banco do Brasil, the "Original Noteholders") timely filed Proof of Claim No. 3532 against TLA (the "Banco Bradesco Claim," and together with the Banco do Brasil Claims, the "Noteholder Claims"). Each claim is an unsecured claim that purportedly arises under the Brazilian law governed debt instrument (each a "Debt Instrument") that is annexed to the claim. The Original Noteholders calculated each claim in Brazilian Reais ("BRL"), which is the currency used in each

---

[2]   Capitalized terms not defined in the Introduction have the meanings ascribed to them herein. References to "ECF No. __" are references to the electronic docket in the main chapter 11 case, No. 20-11254.

[3]   Prior to entry of the *Order (I) Consolidating the Administration of Remaining Matters at the Lead Case; (II) Entering a Final Decree Closing the Affiliate Cases; and (III) Granting Related* Relief, ECF No. 7162, LATAM Parent and its affiliates in these Chapter 11 Cases were collectively referred to as the "Reorganized Debtors." Where applicable, the Reorganized Debtors' predecessors-in-interest are referred to as the "Debtors," and each a "Debtor."

relevant Debt Instrument, but they filed the claims in U.S. Dollars ("USD"), using the exchange rate set forth in the Brazilian Central Bank's official index (the "PTAX Rate").

The matter before the Court is the Reorganized Debtor's "non-substantive" objection to the Noteholder Claims, pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the "Objection").[4] The Reorganized Debtor does not challenge the validity of the Noteholder Claims or the amounts claimed therein, as asserted in BRL. However, it seeks an order (the "Proposed Order")[5] modifying and allowing the Noteholder Claims as claims in USD using the foreign exchange rate as of market open on the applicable Petition Date, as provided by Bloomberg Markets (the "Bloomberg Rate"), not the PTAX Rate. Objection ¶ 19.

The Original Noteholders do not currently hold the Noteholder Claims. They transferred the claims to parties that comprise an ad hoc creditor group in the Chapter 11 Cases (the "TLA Group"). The TLA Group filed a response to the Objection (the "Response").[6] The TLA Group contends that the Court should overrule the Objection and allow the Noteholder Claims in amounts that are larger than those reflected on the face of each claim, as filed, to include amounts for Post-Default Charges that the group asserts have accrued or are accruing against the Debtors under the Debt Instruments, and that the group maintains are included in the Noteholder Claims, as filed.

---

[4]    *Reorganized Debtor's Ninety-Ninth Omnibus Objection (Non-Substantive) to Claims Nos. 3526, 3532, 3703, and 3731 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow)*, ECF No. 7347. In support of the Objection, the Reorganized Debtor submits the *Declaration of Steven Bissell in Support of Reorganized Debtor's Ninety-Ninth Omnibus Objection (Non-Substantive) to Claims Nos. 3526, 3532, 3703, and 3731 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow)*.

[5]    A copy of the Proposed Order is annexed as Exhibit B to the Objection.

[6]    *Response to Omnibus Claims Objection*, ECF No. 7372. In support of the Response, the TLA Group submitted the *Declaration of Thiago Braga Junqueira Pursuant to 28 U.S.C. § 1746*, ECF No. 7374 (the "Junqueira Declaration") and the *Declaration of Daniel A. Fliman in Further Support of the TLA Claimholders Group's Response to Omnibus Claims Objection*, ECF No. 7373.

The TLA Group also asks the Court to direct the Reorganized Debtor to pay the Noteholder Claims in BRL, or in USD equivalents calculated using the PTAX Rate. The Reorganized Debtor filed a reply (the "Reply")[7] in further support of the Objection.

The Court conducted a hearing on the Objection.[8] For the reasons set forth herein, the Court sustains the Objection.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### Procedural History

On May 26, 2020 (the "Parent Petition Date"), LATAM Parent and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Initial Chapter 11 Cases"). On July 7 and 9, 2020, certain additional affiliates of LATAM Parent filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Subsequent Chapter 11 Cases" and, together with the Initial Chapter 11 Cases, the "Chapter 11 Cases"). TLA filed its voluntary chapter 11 petition on July 9, 2020 (the "TLA Petition Date" and, together with the Parent Petition Date, the "Petition Dates"). The Reorganized Debtors were authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

---

[7]   *Reorganized Debtor's Reply in Further Support of the Ninety-Ninth Omnibus Objection (Non-Substantive) to Claims Nos. 3526, 3532, 3703, and 3731*, ECF No. 7416.

[8]   *See Transcript Regarding Hearing Held on April 12, 2023*, ECF No. 7447 ("Tr.").

4

1108 of the Bankruptcy Code. On June 5, 2020, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "Creditors' Committee") in the Chapter 11 Cases.[9]

On November 26, 2021, the Reorganized Debtors filed the *Joint Plan of Reorganization of LATAM Airlines Group S.A. et al. Under Chapter 11 of the Bankruptcy Code*, ECF No. 3666 (as revised, amended or modified from time to time, the "Plan") and related *Disclosure Statement with Respect to the Joint Plan of Reorganization of LATAM Airlines Group S.A., et al., Under Chapter 11 of the Bankruptcy Code*, ECF No. 3667 (as revised, amended or modified from time to time, the "Disclosure Statement"). On March 21, 2022, the Court entered the *Order Authorizing the Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto*, ECF Nos. 4728, 4739, approving the Disclosure Statement filed at ECF No. 4777. On June 18, 2022, over the objection of the TLA Group[10] and other parties in interest, the Court entered the *Order (I) Confirming Debtors' Joint Plan of Reorganization of LATAM Airlines Group S.A. et. al. Under Chapter 11 of the Bankruptcy Code and (II) Granting Related Relief* (ECF No. 5754) (the "Confirmation Order").[11] On August 31, 2022, the United States District Court for the Southern District of New York affirmed the Confirmation Order. *Ad Hoc Grp. of Unsecured Claimants v. LATAM Airlines*

---

[9]    The United States Trustee did not solicit additional members for the Creditors' Committee.

[10]    *See Objection of the TLA Claimholders Group to Confirmation of the Debtors' Proposed Plan*, ECF No. 5175 (the "TLA Group Confirmation Objection"). The Debtors filed an omnibus reply to address the objections to confirmation. *See Memorandum of Law in Support of Confirmation and Omnibus Reply to Objections to Confirmation of the Plan of Reorganization of LATAM Airlines Group S.A., et al., Under Chapter 11 of the Bankruptcy Code*, ECF No. 5373 (the "Confirmation Reply").

[11]    The confirmed Plan is filed at ECF No. 5753.

*Group S.A. (In re LATAM Airlines Grp., S.A.)*, 643 B.R. 756 (S.D.N.Y. 2022). On December 14,

2022, the United States Court of Appeals for the Second Circuit unanimously affirmed the district

court order affirming the Confirmation Order. *See TLA Claimholders Grp. v. LATAM Airlines*

*Grp. S.A.* (*In re LATAM Airlines Grp. S.A.*), 55 F.4th 377 (2d Cir. 2022).

On November 3, 2022, the Reorganized Debtors filed the *Notice of (I) Occurrence of*

*Effective Date and (II) Final Deadlines for Filing Certain Claims*, ECF No. 7008, confirming that

all conditions precedent to the Effective Date set forth in Section 10.2 of the Plan have been

satisfied or waived pursuant to Section 10.3 of the Plan, such that the Plan was substantially

consummated, and the Effective Date occurred on November 3, 2022. The Creditors' Committee

was dissolved on the Effective Date. *See* Plan § 13.19. On December 14, 2022, the Court entered

the *Order (I) Consolidating the Administration of Remaining Matters at the Lead Case;*

*(II) Entering a Final Decree Closing the Affiliate Cases; and (III) Granting Related Relief*,

ECF No. 7162, consolidating the remaining claims resolution and other matters of the Reorganized

Debtors into this case of the Reorganized Debtor, LATAM Parent, and closing the cases of all

other Reorganized Debtors.

## **Applicable Legal Principles**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under

section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C.

§ 502(a). The filing of a proof of claim constitutes "prima facie evidence of the validity and

amount of the claim." Fed. R. Bankr. P. 3001(f). Section 502(b) sets forth the grounds for

disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and*

*Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 449 (2007). Section 502(b) prescribes

nine categories of claims which will be disallowed, including that "such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law for a reason

other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection

refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to

demonstrate the validity of the claim. *See, e.g.*, *Rozier v. Rescap Borrower Claims Tr. (In re

Residential Cap., LLC)*, No. 15-cv-3248, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016);

*Hasson v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 11-cv-8444, 2012 WL

1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y.

2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida, Ltd.*, No. 09-cv-2229, 2010 WL

234827 (S.D.N.Y. Jan. 22, 2010); *see also Travelers Cas. and Sur. Co. of Am.*, 549 U.S. at 449

("But even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except

to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)."

(quoting 11 U.S.C. § 502(b))).

## The Noteholder Claims

On September 24, 2020, the Court entered an order establishing deadlines for filing proofs

of claim in the Chapter 11 Cases.[12] Pursuant to that order, the Court set December 18, 2020, at

4:00 p.m., Eastern Time (the "General Bar Date"), as the deadline for each person or entity, not

including governmental units as defined in section 101(27) of the Bankruptcy Code, to file its

proofs of claim in the Chapter 11 Cases. On December 17, 2020, the Court entered an order

establishing a Supplemental Bar Date of February 5, 2021,[13] for certain specific, potential foreign

claimants not otherwise subject to the General Bar Date.

---

[12] *Order (I) Establishing Bar Dates for Filing Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Supplemental Relief*, ECF No. 1106.

[13] *Order Establishing Supplemental Bar Date for Filing Proofs of Claim Applicable Only to Those Claimants Listed on Exhibit I*, ECF No. 1503.

On December 18, 2020, the Original Noteholders timely filed the Noteholder Claims.  The Original Noteholders calculated the claims in BRL, which is the currency used in each Debt Instrument, but filed them in USD using the PTAX Rate to convert the BRL into USD.[14]  Each claim annexes (i) a copy of the relevant Debt Instrument, and (ii) an itemized statement of the amounts claimed under the Debt Instrument (the "Itemized Claim Statement").  The Court summarizes the Noteholder Claims below.

Banco do Brasil Claims

In Proofs of Claim Nos. 3526 and 3703, Banco do Brasil asserts claims against TLA (as issuer) and LATAM Parent (as guarantor) in the amounts of $198,469,501.43 and $194,245,029.93, respectively, allegedly arising under that certain *Cédula de Crédito Bancário*, dated April 22, 2020, and numbered 313.202.489 (the "CCB Claims").[15]

In Proof of Claim No. 3731, Banco do Brasil asserts a claim against TLA in the sum of $21,672,577.78, allegedly arising under that certain *Convênio para Antecipação de Recebiveis a Fornecedores de Produtos Ou Serviços Mediante Cessão de Direitos Creditórios*, dated October 2, 2018, and numbered 313.202.444 (the "Convenio Claim").

Banco Bradesco Claim

In Proof of Claim No. 3532, Banco Bradesco asserts a claim against TLA in the aggregate sum of "[n]ot less than $79,947,658.57," allegedly arising under that certain *Cédula de Crédito Bancário Empréstimo*, dated April 29, 2020, and numbered 351/3219142, and that certain *Cédula de Crédito Bancário Empréstimo*, dated May 7, 2020, and numbered 237/2372/0705 (the "Bradesco Claim").

---

[14]    The Original Noteholders filed Proof of Claim No. 3731 as a secured claim.  In the Objection, the Reorganized Debtor seeks to reclassify the claim as a general unsecured claim.  *See* Objection ¶ 21; Proposed Order, Ex. 1.  The TLA Group does not object to that relief.  The Court sustains the objection and reclassifies Proof of Claim No. 3731 as a general unsecured claim.

[15]    Proof of Claim No. 3703 is filed against LATAM Parent and arises from the same liabilities under the *Cédula de Crédito Bancário* as Proof of Claim No. 3526 filed against TLA.  Pursuant to the Objection, the Reorganized Debtor seeks to have both claims allowed.  Section 7.6 of the Plan is titled "Limitation on Recovery."  Under that section, a creditor holding an Allowed Claim (as defined under the Plan) is not entitled to receive any additional recovery due to the allowance of multiple claims against multiple debtors arising from co-liability under same instrument.  *See* Plan § 7.6.  Because the face amount of Proof of Claim No. 3526 exceeds the face amount of Proof of Claim No. 3703 against LATAM Parent, and because Allowed Claims against TLA are to be paid in full under the Plan, the Reorganized Debtor asserts, and the TLA Group does not deny, that the Plan caps the TLA Group's recovery on account of both claims at the allowed amount of Proof of Claim No. 3526.  *See* Objection ¶ 23 n.6.

On July 14, 2021, the Original Noteholders transferred their respective claims to members of the TLA Group.[16]  The members of the TLA Group hold those claims.

## The Objection

On February 7, 2023, the Reorganized Debtor timely filed the Objection.  In it, the Reorganized Debtor does not challenge the validity of the Noteholder Claims or the claim amounts as asserted in BRL in those claims.  However, it contends that the Noteholder Claims do not meet the standards for prima facie validity because they do not utilize the correct exchange rate in converting the BRL into the USD amounts asserted in the claims.  Accordingly, it seeks to "modif[y]" the Noteholder Claims by "correct[ing]" the foreign exchange rates that are referenced in those claims.  Objection ¶ 19.  The Reorganized Debtor requests that the USD values of the Noteholder Claims (now held by the members of the TLA Group) be modified on the Claims Register using the Bloomberg Rate as of market open on the applicable Petition Date.  It also asks that the Noteholder Claims, as modified, be allowed in those amounts, as set forth in the Proposed Order.  *Id.* ¶ 22.

## The Response

The TLA Group contends, and the Reorganized Debtor does not deny, that the Debt Instruments provide for payments to be made in Brazil and in Brazilian local currency and, therefore, do not dictate a particular currency conversion rate.  Response ¶ 11.  It asserts that the Original Noteholders provided USD amounts in the Noteholder Claims using the PTAX Rate only for "illustrative purposes" and "ease of reference" and that the Noteholder Claims are asserted,

---

[16]    *See Notice of Transfer of Claims Other Than for Security Pursuant to Bankruptcy Rule 3001(e)(2)*, ECF No. 2695 (transferring Claim No.3526); *Notice of Transfer of Claims Other Than for Security Pursuant to Bankruptcy Rule 3001(e)(2)*, ECF No. 2696 (transferring Claim No. 3731); *Notice of Transfer of Claims Other Than for Security Pursuant to Bankruptcy Rule 3001(e)(2)*, ECF No. 2697 (transferring Claim No. 3703); *Notice of Transfer of Claims Other Than for Security Pursuant to Bankruptcy Rule 3001(e)(2)*, ECF No. 2698 (transferring Claim No. 3532).

and should be allowed and paid, in BRL. *Id.* ¶¶ 2, 12. It maintains that to the extent the Court

finds that the exchange rate is relevant in fixing and allowing the Noteholder Claims, the Court

should apply the PTAX Rate reflected in those claims. *See id.* ¶¶ 2, 17-26.

The TLA Group also asserts, and the Reorganized Debtor does not deny, that each of the

Debt Instruments provides for the payment of (i) post-default rates of interest of 1% per month,

(ii) a 2% post-default late payment charge, and (iii) certain fees and expenses, including attorneys'

fees (collectively, the "Post-Default Charges"). The TLA Group contends that the commencement

of the Chapter 11 Cases triggered the accrual of those charges under the Debt Instruments, as

follows:

<u>Default Interest</u>

The TLA Group asserts that upon a default, including the bankruptcy filing by
LATAM Parent, the Banco do Brasil Claims began to accrue default interest at a
rate of 1% per month (the "Default Interest"). It argues that prepetition Default
Interest accrued for 44 days from the Parent Petition Date to the TLA Petition Date,
and includes interest accrued on the Late Payment Charges. It contends that the
CCB Claims and the Convenio Claim, as filed, include claims for Default Interest
that accrued from the Parent Petition Date through the TLA Petition Date in sums
of 15,419,545.43 BRL and 1,683,791.69 BRL, respectively,[17] and that those
amounts should be included in those claims, as allowed. Response ¶ 31. Those
amounts are not reflected on the face of the Itemized Claim Statement annexed to
each claim.

<u>Late Charges</u>

The TLA Group asserts that, as filed, each of the Banco do Brasil Claims and the
Bradesco Claim includes a 2% late payment charge (the "Late Payment Charges").
It contends that the Late Payment Charges purportedly included in Banco do Brasil
Claims and the Bradesco Claim were triggered and fully earned as of the Parent
Petition Date and the TLA Petition Date, respectively. Response ¶ 32. It maintains
that the claims, as filed, include claims for Late Payment Charges, as follows:
(a) 21,026,652.86 BRL for the CCB Claims; (b) 2,296,079.58 BRL for the

---

[17]    The TLA Group asserts that, using the PTAX Rate, the USD conversion of Default Interest as of the TLA Petition
Date is (i) $2,910,556.35 for the CCB Claims and (ii) is $317,828.47 for the Convenio Claim. Response ¶ 31 n.11.

Convenio Claim; and (c) 8,443,293.60 BRL for the Bradesco Claim;[18] and that those amounts should be included in those claims, as allowed.  *Id.*  Those amounts are not reflected on the face of the Itemized Claim Statement annexed to each claim.

<u>Collection Expenses</u>

The TLA Group asserts that the Noteholder Claims assert claims for "Collection Expenses," including fees charged by the group's counsel, advisors, and experts for services rendered in connection with the Chapter 11 Cases.[19]  Response ¶ 33.  It contends that the claims, as filed, include those expenses and that those amounts should be included in the Banco do Brasil Claims and the Bradesco Claim, as allowed.  *Id.*[20]  Those amounts are not reflected on the face of the Itemized Claim Statement annexed to each claim.

Although the Itemized Claim Statements annexed to the Noteholder Claims do not reflect or otherwise mention or account for any of the Post-Default Charges, the TLA Group asserts that the Noteholder Claims "are to be understood as including those amounts" because the charges accrued under the Debt Instruments, the Noteholder Claims "explicitly provide for payment of 'unpaid amounts due to the claimant'" under the relevant Debt Instruments, and the Original Noteholders annexed the relevant Debt Instruments to each of the claims.  Response ¶ 30; *see also id.* ¶ 3 (stating that the Noteholder Claims "are *prima facie* valid, and each of [the Post-Default Charges] is clearly and indisputably provided for in the Debt Instruments.").  In support of that argument, the TLA Group relies on *Plains Mktg., L.P. v. Bank of Am., N.A. (In re SemCrude, L.P.)*, 443 B.R. 472 (Bankr. D. Del. 2011).  It also asserts that, in its memorandum decision confirming

---

[18]    The TLA Group asserts that the USD conversion of Late Payment Charges as of the TLA Petition Date, using the PTAX Rate, (a) for the CCB Claims is $3,968,940.48; (b) for the Convenio Claim is $433,402.47; and (c) for the Bradesco Claim is $1,593,735.81.

[19]    The TLA Group says that the Debt Instruments each provide for a cap on collection expenses of 5% of the principal amount of the loans, and that it will not seek payment of any amounts exceeding such cap. Response ¶ 33 n.13.

[20]    The TLA Group submits that as the Collection Expenses were paid in USD, those amounts should be allowed in USD.  Response ¶ 33 n.15.

the Debtors' Plan (as modified, the "Plan Confirmation Decision"),[21] the Court recognized that the

TLA Group was asserting those amounts in the Noteholder Claims and that the Debtors have

recognized such amounts in their brief supporting Plan confirmation (the "Confirmation Brief").[22]

*See* Response ¶ 10.

In that light, the TLA Group contends that by asking the Court to modify and allow the

Noteholder Claims in reduced amounts based solely on the application of a different exchange rate

to the claims, the Objection asks the Court to "tacitly 'disallow'" the Post-Default Charges that it

says are included in the Noteholder Claims (although not reflected on the face of the claims or in

the Itemized Statement annexed to each claim).  Response ¶¶ 17, 27.  The TLA Group contends

that there are no grounds for disallowing those claims because the amounts attributable to claims

for the Post-Default Charges are provided for in Noteholder Claims through the annexed Debt

Instruments, that the Noteholder Claims are prima facie valid, and that the Reorganized Debtor

has not demonstrated any grounds for disallowing those amounts.

**The Reply**

The Reorganized Debtor argues that the Court should not direct that distributions on

account of the Noteholder Claims be paid in BRL or in USD converted using the PTAX Rate.  It

contends that the Plan dictates that the claims be converted into USD (and not be paid in the

currency of the underlying claims), that it further mandates application of the Bloomberg Rate,

and that the Objection seeks relief that is consistent with that mandate.  Reply ¶¶ 1, 8.  Moreover,

the Reorganized Debtor denies that the Noteholder Claims include claims for the Post-Default

---

[21]   *Memorandum Decision on Confirmation of the Joint Plan of Reorganization of LATAM Airlines Group, S.A. et al. Under Chapter 11 of the Bankruptcy Code*, ECF No. 5900.

[22]   *Memorandum of Law in Support of Confirmation and Omnibus Reply to Objections to Confirmation of the Plan of Reorganization of LATAM Airlines Group S.A., et al., Under Chapter 11 of the Bankruptcy Code*, ECF No. 5373.

Charges.  It argues that, in the Response, the TLA Group is raising "new" claims, and that the

Response is a thinly veiled attempt to amend the Noteholder Claims to assert those claims without

first obtaining leave of the Court to do so, as is required under the Plan and applicable law.  It

contends that the Court should not grant the TLA Group leave to amend the Noteholder Claims.

Reply ¶¶ 2, 13.

However, in its Response, the TLA Group does not seek to amend or otherwise modify the

Noteholder Claims.[23]  It contends that those claims are prima facie valid in amounts that include

the Post-Default Charges.  To resolve the Objection, in assessing whether to modify and allow the

Noteholder Claims as the Reorganized Debtor requests, the Court first considers whether the Plan

calls for Allowed Claims to be paid in USD and, if so, the appropriate exchange rate for converting

claims asserted in foreign currencies into USD.  Thereafter, the Court will consider whether the

Noteholder Claims, as filed by the Original Noteholders, include claims for Post-Default Charges

that the Reorganized Debtor has failed to challenge in its Objection and, as such, are prima facie

valid.

<u>**Discussion**</u>

<u>**Whether the Plan Calls for Payment of the Noteholder Claims in USD**</u>

The Plan classifies the Noteholder Claims as Class 6 Claims.[24]  Section 3.2(f) of the Plan

provides, in part, that such claims shall receive "[c]ash equal to the amount of such Allowed

Class 6 Claim [or] such other less favorable treatment as to which the Debtors and the Holder of

---

[23]   At oral argument, the TLA Group represented that any amendment of its claims was unnecessary because the "claims were properly asserted to begin with via the proofs of claim via the attachments thereto. Tr. at 59:12–17.  At no juncture did the TLA Group include a request to amend its claims in its papers.

[24]   Plan § 3.2(f)(i) ("Class 6 consists of General Unsecured Claims against Debtors other than LATAM Parent, Piquero Leasing Limited and LATAM Finance.").

such Allowed Class 6 Claim shall have agreed upon in writing." Plan § 3.2(f)(ii). Under the Plan,

the term "Cash" means

> lawful currency of the United States of America, including bank deposits, checks
> and other similar items, including any U.S. Dollar Equivalent.

Plan § 1.1 (definition of Cash). For these purposes, the term "U.S. Dollar Equivalent" means

> the amount of U.S. dollars obtained by converting any Claim not in U.S. dollars
> into U.S. dollars at the opening rate for the purchase of U.S. dollars as published in
> Bloomberg News (or, if Bloomberg News did not publish the rate or if such
> information is no longer available, such published sources as may be selected in
> good faith by the Debtors) on one of the following dates, as applicable: (i) with
> respect to an Allowed amount of a Claim or a Pro Rata share of Allowed Claims,
> the Petition Date; or (ii) with respect to a distribution on or after the Effective Date,
> one day before the date of such distribution.

*Id.* § 1.1 (definition of U.S. Dollar Equivalent).

Although the TLA Group contends that the Court should allow the Noteholder Claims in

BRL, it does not point to any provision in the Plan that requires the Debtors to make payments of

allowed claims in the currency of the underlying claim. There is no such provision. To the extent

the Plan provides the Reorganized Debtor with flexibility to pay allowed claims in the currency of

such claims, it is at the discretion of the Reorganized Debtor. *See, e.g.*, Plan §§ 7.5-7.7, 8.10, 8.12,

9.3, 9.5, 10.2, 10.4. The Noteholder Claims were reserved in USD.[25] Moreover, it is undisputed

that as of February 27, 2023, the Reorganized Debtor has reviewed and finally resolved 6,549 of

6,580 proofs of claims on the Debtors' claims register. Pursuant to the Plan, and as part of the

Debtors' claims reconciliation process, all of the thousands of proofs of claim asserted in a foreign

---

[25]    The Plan dictates that, "[o]n the Effective Date, the Disbursing Agent in coordination with [the Reorganized
Debtor] shall reserve in the Disputed Claims Reserve the amount of Cash and Plan Securities that the Reorganized
Debtors determine . . . would likely have been distributed to the Holders of all Disputed Claims if such Disputed
Claims had been Allowed on the Effective Date." Plan § 9.5(a). Furthermore, "[w]ith respect to all Disputed Claims
that are unliquidated or contingent and/or for which no dollar amount is asserted on a Proof of Claim, the Debtors will
reserve Cash equal to the amount reasonably determined by the Debtors or Reorganized Debtors." *Id.* In sum, the
Reorganized Debtor is required to reserve Cash in the Disputed Claims Reserve. In turn, the Disputed Claims must
be reserved in USD.

currency were converted to USD before being allowed, including over 1,500 claims in BRL that were converted into USD using the Bloomberg Rate.  Reply ¶ 3.

The Court rejects the TLA Group's assertion that, to the extent allowed, the Noteholder Claims should be paid in BRL, not in USD.

## Whether the Bloomberg Rate is the Proper Currency Exchange Rate

The Reorganized Debtor argues that the Court should modify the dollar amount of the Noteholder Claims on the claims register using the Bloomberg Rate as of market open on the applicable Petition Date.  Objection ¶ 19.  For Brazilian Reais, the applicable conversion rates are 1 USD = 5.4437 BRL for the Parent Petition Date and 1 USD = 5.3447 BRL for the Subsequent Petition Date.  They are the rates called for under the Plan, and the same rates the Debtors have used uniformly throughout the Chapter 11 Cases, for all foreign currency claims.[26]

Nonetheless, the TLA Group asserts that the Court should apply the PTAX Rate because it is the official index of the Brazilian Central Bank that represents the average rate of foreign exchange transactions that occurred in Brazil on a given date for a given currency, and it is the index most commonly used in Brazil in judicial discussions when the underlying agreements do not set forth a particular exchange rate.  *See* Junqueira Declaration ¶¶ 23-29; 31-33.  That might be true, but it is of no moment in this matter.  The Plan does not provide for the allowance of

---

[26]    *See Order Granting Debtors' Objection Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 to Claim Number 1031 Filed by WeWork Chile SpA (Reduce and Allow)*, ECF No. 3069 ¶ 4; *Order Granting Debtors' Objection to Claim No. 3951 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Reduce and Allow)*, ECF No. 3076 ¶ 8; *Order Granting Debtors' Ninety-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Satisfied and Modified)*, ECF No. 6960; *Order Granting Debtors' Ninety-First Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability, Satisfied and Modified)*, ECF No. 6953; *Amended Order (I) Correcting Exhibits to and Revising Order Granting Debtors' Eighty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability, Satisfied, Modified, Late Filed and Duplicate) and (II) Adjourning the Debtors' Eighty-Eighth Omnibus Objection Solely with Respect to Claim No. 1827 Filed by Visa International Service Association*, ECF No. 6582; *Order Granting Debtors' Eighty-Fifth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability, Satisfied and Modified)*, ECF No. 6580.

15

claims at the official index of the central bank of the country in whose currency a claim is denominated.  The TLA Group also asserts that, in the Objection, the Reorganized Debtor does not make any substantive arguments as to why the PTAX Rate is incorrect, or even assert that the Bloomberg Rate is more accurate or more widely accepted than the PTAX Rate.  Response ¶ 24. However, the Court dealt with this issue (without objection by the TLA Group) when it confirmed the Plan.  The Bloomberg Rate, not the PTAX Rate, is the exchange rate called for under the Plan.

At the hearing in regard to the Motion, the TLA Group also asserted that, in calculating the U.S. Dollar Equivalent of the Noteholder Claims in accordance with section 1.1 of the Plan, the Reorganized Debtor should apply the Bloomberg Rate in effect one day before the Noteholder Claims are satisfied because that distribution will be made after the Effective Date.  The Reorganized Debtor is not challenging the allowance of the Noteholder Claims.  The Court finds that, for purposes of calculating the U.S. Dollar Equivalent of the Noteholder Claims, it is appropriate to apply the Bloomberg Rate in effect as of the applicable Petition Date, irrespective of when the Debtor makes a distribution on account of such claims.  It is the rate called for under the Plan and the same rate the Debtors have applied to all foreign currency claims throughout the Chapter 11 Cases.

## Whether the Noteholder Claims Include Claims for the Post-Default Charges

The TLA Group asserts that the Noteholder Claims include claims for the Post-Default Charges because those charges accrued under the Debt Instruments, the Noteholder Claims explicitly provide for payment of unpaid amounts due to the claimant under the relevant Debt Instrument, and the Debt Instrument is annexed to each of the claims.  Response ¶ 30.  As support for that contention, the TLA Group relies on *In re SemCrude, L.P.*

In *In re SemCrude, L.P.*, Plains Marketing, L.P. ("Plains") was party to certain Purchase Agreements and Netting Agreements with the debtors. Plains asserted that the debtors breached the agreements. *In re SemCrude, L.P.*, 443 B.R. at 474–75. Plains timely filed seven proofs of claim against the debtors, in which it asserted its contract remedies under the agreements and its right to reclamation payments under section 503(b)(9) of the Bankruptcy Code. *Id.* at 475. Post-petition, Plains commenced an adversary proceeding against the debtors. Thereafter, it sought leave to amend the complaint in that action to assert its right of indemnity under the Netting Agreement from the debtors for attorneys' fees, litigation costs, and other damages. Alternatively, Plains sought leave to amend its proofs of claim to incorporate its claims for indemnity and breach of warranty in its timely filed claims. *Id.* at 475-76.

The debtors opposed the motion. They maintained that the claims which Plains sought to assert against them were "new" claims not included in Plain's timely filed proofs of claim. They argued that it would be pointless to grant Plains leave to assert them in the adversary proceeding because they were barred by the claims bar date and, as such, would not survive a motion to dismiss. *Id.* at 476 ("the Debtors argue that the Motion should be denied on the grounds of futility, undue prejudice, and undue delay"). The court granted the motion. In part, the court found that the additional claims were not "new" at all because Plains asserted them against the debtors in its proofs of claim. *Id.* at 478. In reaching that conclusion, the court found that (i) four of the seven proofs of claim included express references to the various contracts between Plains and the debtors, (ii) each of those claims attached a "Reservation of Rights" stating that "[t]his proof of claim is being filed as a contingent claim for the purpose of reserving any and all rights that Plains [] may have under the Bankruptcy Code, federal or state law and the various orders that the Bankruptcy Court has entered in this case," and (iii) Plains attached to such proofs of claim a list of specific

Purchase Agreements and Netting Agreements between Plains and the Debtors. *Id.* (alterations in original).

*In re SemCrude, L.P.* is not binding authority on this Court, and, in any event, it is distinguishable. In contrast to the claims at issue in *In re SemCrude, L.P.*, the Noteholder Claims list a specific set of principal and interest calculations due and owing as of the Petition Date, and they do not purport to include any additional claims (contingent or otherwise) based on any other rights contained within the Debt Instruments. Indeed, the reservation of rights language in the Brandesco Claim confirms that the claim, as filed, does not do so, as it purports to preserve Banco Brandeso's right to "file additional proofs of claim for additional claims which may be based upon the same . . . events or documents." Bradesco Claim Addendum ¶ 13.[27] None of the claims identify an event of default or asserts amounts for Default Interest, Late Charges, or Collection Costs. Moreover, the reservation of rights language in those claims is narrow. Each of the Banco Brasil Claims purports to reserve its right "to further amend this proof of claim" and "all of its rights under the Loan Agreement and applicable law." *See, e.g.*, Claim 3526 Statement at 1;[28] Claim 3703 Statement at 1;[29] Claim 3731 Statement at 1.[30] In the Bradesco Claim, Banco Bradesco reserves its right "to amend or supplement this Proof of Claim, in whole or in part, to assert all such claims to which it is entitled," to the extent that it "suffers any future damages, losses, or nonpayment in connection with its rights under the CCBs." Bradesco Claim Addendum ¶ 12. Moreover, the *In re SemCrude, L.P.* court did not grant Plains leave to assert the amended

---

[27] The *Addendum to Proof of Claim of Banco Bradesco S.A. in Connection with Its Unsecured Notes* (the "Bradesco Claim Addendum") is annexed to Proof of Claim No. 3532.

[28] The *Statement for Proof of Claim* (the "Claim 3526 Statement") is annexed to Proof of Claim No. 3526.

[29] The *Statement for Proof of Claim* (the "Claim 3703 Statement") is annexed to Proof of Claim No. 3703.

[30] The *Statement for Proof of Claim* (the "Claim 3731 Statement") is annexed to Proof of Claim No. 3731.

complaint solely based on its finding that four of the proofs of claim included claims for indemnity and breach of warranty.  It also determined that Plains had previously asserted those claims against the debtors in informal proofs of claim.  *In re SemCrude, L.P.*, 443 B.R. at 479.  It found that through the operation of (i) the original complaint, (ii) Plains's motion to intervene in various adversary proceedings initiated against the debtors by certain third parties, and (iii) Plains's objection to the debtors' reorganization plan, Plains had made sufficiently explicit its demands on the debtors for indemnification and damages for breach of warranty.  *Id.*  at 479-80.

Even with the attached Debt Instruments, the broad reservation of rights language in the Noteholder Claims is insufficient to state claim for the Post-Default Charges.  *Aristeia Cap., L.L.C. v. Calpine Corp. (In re Calpine Corp.)*, No. 07-cv-8493, 2007 WL 4326738, at *3, *5 (S.D.N.Y. Nov. 21, 2007) (rejecting an argument that the "catch-all language in the Original Claims and the attached Indentures put the Debtors on notice of the Conversion Right Claims" because "the Original Claims did not mention the Noteholders' conversion rights or any alleged breach of those rights"); *In re Residential Cap.*, 2015 WL 6734478, at *7 ("The Claim did not raise issues regarding whether GMACM failed to respond to any of the [claimants'] letters, let alone a letter triggering RESPA liability.  Nor does the Proof of Claim or the addendum even mention RESPA.  Thus, the [claimants'] newly asserted claims do not correct defects in the allegations in the Claim or describe the Claim in greater detail.  Rather, the [claimants] seek to assert new theories of relief based on a new, augmented scope of facts.").

The Court finds that, as filed, the Noteholder Claims do not include claims for the Post-Default Charges.

**Whether TLA Asserted an Informal Proof of Claim**

For the first time at oral argument, the TLA Group asserted that, in the event that the Court finds that the Noteholder Claims do not include claims for the Post-Default Charges, the Court should instead find that the TLA Group had asserted an informal claim.  Tr. at 60:16–25.  "The informal proof of claim is an equitable principle developed by courts to alleviate the harsh results of strict enforcement of the bar date."  *Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995) (citing *In re Mother Hubbard, Inc.*, 152 B.R. 189, 192 (Bankr. W.D. Mich. 1993); 8 Collier on Bankruptcy ¶ 3001.03 at 3001–14 (Lawrence P. King et al. eds., 15th ed. 1995)).  The doctrine "derives from the Second Circuit's holding that 'it is not essential that a document be styled a "proof of claim," or that it be filed in the form of a claim, if it fulfills the purposes for which the filing of proof is required.'"  *In re Egan*, 526 B.R. 111, 113 (Bankr. S.D.N.Y. 2015) (quoting *In re Lipman*, 65 F.2d 366, 368 (2d Cir. 1933)).  This Court has held that, without "a filing in this Court referencing the claim, no informal claim will be allowed."  *In re Drexel Burnham Lambert Grp.*, 129 B.R. 22, 27 (Bankr. S.D.N.Y. 1991).  That is, an informal claim must be evidenced by a document that serves as an informal proof of claim.  *See id.*  Moreover, "mere awareness by the debtor of a creditor's claim . . . is insufficient to establish an informal proof of claim."  *Id.*

In this Circuit, to qualify as an informal proof of claim, a document purporting to evidence such a claim must: (i) be timely filed with the bankruptcy court and become part of the judicial record; (ii) state the existence and the nature of the debt; (iii) state the amount of the claim against the estate; and (iv) evidence the creditor's intent to hold the debtor liable with the debt.  *See, e.g.*, *In re Residential Cap. LLC*, No. 12-12020, 2015 WL 2256683, at * 10 (Bankr. S.D.N.Y. May 11, 2015); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007); *Deutsche*

*Bank Nat'l Tr. Co. v. Cintron (In re Cintron)*, No. 16-20109, 2017 WL 521502, at *2 (Bankr.

D. Conn. Feb. 8, 2017); *In re St. James Mech., Inc.*, 434 B.R. 54, 63 (Bankr. E.D.N.Y. 2010).  The

party seeking to apply the doctrine bears the burden of proof.  *In re Dumain*, 492 B.R. 140, 149

(Bankr. S.D.N.Y. 2013).

In substance, the TLA Group asserts that its objection to Plan confirmation serves as its

informal proof of claim in these cases, and that the claim includes the Post-Default Charges.  *See*

Tr. at 52: 3-8 (citing to the TLA Group Confirmation Objection and asserting that the objection

put the Debtors on notice that its claim included "default interest [that] accrued pre-petition, the

late payment charge, and the legal fees as amounts that we provided notice to the [D]ebtors and to

everybody that we were asserting.").  It contends that in their Confirmation Reply in support of

Plan confirmation, the Debtors "acknowledged that we were asserting these amounts," and that the

Debtors used that opportunity to challenge "the substance of what we were asserting, noting that

they may very well contest the viability of that late payment charge in our legal fees." *Id.* at 52:8–

16.  It also asserts that in its Plan Confirmation Decision, the Court wrote that the TLA Group was

asserting claims that included the Post-Default Charges, as follows:

> The TLA Claimholders is an ad hoc group of creditors asserting unsecured claims
> aggregating approximately $300 million (the "TLA GUCs") against TLA.  TLA
> Claimholders Obj. § 20.  The claims are evidenced by certain debt instruments that
> are governed by Brazilian law.  The Debt instruments each provide  for the payment
> of: (i) interest at specified pre-default rates, (ii) post-default rates of interest of  1%
> per month, (iii) a 2% post-default late payment charge, and (iv) certain fees and
> expenses, including attorneys' fees. *Id.* ¶ 9.

Plan Confirmation Decision at 19 (footnote omitted); *see* Tr. at 52:17–53:4.  The Reorganized

Debtor denies that the informal claim doctrine applies herein.  The Court agrees.

The informal claim doctrine provides equitable relief to a creditor who has timely and

formally asserted a claim against a debtor, albeit not in a timely filed proof of claim.  *See In re*

*Dumain*, 492 B.R. at 149 ("The doctrine of informal proof of claim provides that a creditor's filing

of a document . . . which indicates, at a minimum, the basis for a claim and the creditor's intent to hold the estate liable, may constitute an informal proof of claim capable of being later amended by a formal proof of claim." (quoting *Robinson v. Novak (In re Dove House, Inc.)*, 233 B.R. 230, 232 (Bankr. D. Conn. 1999))). It is not applicable here because (i) the Original Noteholders timely filed only the Noteholder Claims, which do not include claims for the Post-Default Charges, and (ii) the TLA Group filed the TLA Group Confirmation Objection, which purports to include the claims for Post-Default Charges, only after the General Bar Date had elapsed. *See In re Residential Cap.*, 2015 WL 2256683, at *10 (rejecting application of the informal claim doctrine because the complaint was filed and became part of the record of the bankruptcy case only after the bar date passed). As of the General Bar Date, the Debtors were not on notice of the existence of a claim for Post-Default Charges, the nature of the alleged debt, or an intent to hold the Debtors liable for the Post-Default Charges. There is no basis in equity to treat the TLA Group Confirmation Objection as an informal proof of claim. The Court's summary review of the TLA Group's description of its claims in the TLA Group Confirmation Objection and the Debtors' discussion of those claims do not support the TLA Group's application of the informal claim doctrine. The Court did not recognize the claims for Post-Default Charges, and the Debtors' objection alone cannot provide a basis for applying the doctrine. *See In re Drexel Burnham Lambert Grp.*, 129 B.R. at 27; *see also In re Direct Access Grp., LLC*, No. 13-11780, 2015 WL 94556 (Bankr. S.D.N.Y. Jan. 6, 2015) ("Whatever the parameters of the informal proof of claim doctrine, . . . it has only been used to permit a party to rely on its own filings, not another entity's claim, as an 'informal proof of claim.'" (quoting *In re Houbigant, Inc.*, 190 B.R. at 187)).

### Conclusion

Based on the foregoing, the Court sustains the Objection.  The Reorganized Debtor is directed to SETTLE ORDER.

Dated: New York, New York
       May 19, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge