UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LATAM AIRLINES GROUP S.A., et al.,

           Debtors.

TM SOLUTIONS USA LLC,

           Plaintiff-Appellant,

– against –

LATAM AIRLINES GROUP S.A.,

           Defendant-Appellee.

**OPINION AND ORDER**

22-cv-8068 (ER)

Ramos, D.J.:

    This is an appeal from an August 31, 2022, Order of the Bankruptcy Court (Garrity, J), which granted the motion of LATAM Airlines Group S.A. ("LATAM") to dismiss the adversary proceeding filed by TM Solutions USA LLC ("TM Solutions"), and denied its motion to amend the complaint with prejudice. *See generally* Doc. 1; *see also* Bankr.Doc. 1; Bankr.Doc. 33.[1] In short, the complaint alleged that LATAM improperly "cancel[ed] tickets for flights that customers already paid for, without their consent, in order to resell them and enrich itself—all at the expense of stranded consumers." Bankr.Doc. 1 at 2.

    For the reasons set forth below, the Order of the Bankruptcy Court is AFFIRMED.

---

[1] References to "Bankr.Doc." refer to documents filed in the underlying adversary bankruptcy proceeding, *In Re LATAM Airlines Group, S.A., et al.*, No. 20-01207 (JLG), (Bankr. S.D.N.Y. 2020). References to "Doc." refer to documents filed in the instant appeal.

I.  **BACKGROUND**

   A. **Factual Background**[2]

Pedro Egusquiza ("Egusquiza"), the owner and manager of TM Solutions, and his colleague, Andres Guerrero ("Guerrero"), were scheduled to travel from Lima, Peru, to Miami, Florida for business meetings on February 19, 2020.[3] Bankr.Doc. 1 ¶¶ 1, 9, 11. Egusquiza's assistant, Talia Peschiera ("Peschiera"), purchased roundtrip tickets for both of them on February 14, 2020, which totaled $2,280. *Id.* ¶¶ 11, 12. The tickets were purchased through BudgetAir.com ("BudgetAir"), an online retailer through which LATAM sells its flights. *Id.* ¶ 13.

However, Peschiera inadvertently purchased the outbound[4] flights—those from Lima, Peru, to Miami—for the wrong date. *Id.* ¶ 11. To address the error, Peschiera contacted the customer service center of BudgetAir. *Id.* ¶ 13. The BudgetAir representative told Peschiera that replacement tickets for the flights were an additional $1,800, and that she could call LATAM to solve the problem. *Id.* When Peschiera called LATAM, however, she was instructed to call BudgetAir to resolve the problem. *Id.* ¶ 14. "Given the useless back-and-forth from one entity to the other, and after multiple calls, Peschiera proceeded to look for flights on the internet to replace the mistakenly

---

[2] The Federal Rules of Civil Procedure apply to the instant case pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. In reviewing dismissal of a complaint pursuant to Rule 12(b)(6), the Court takes as true all of the allegations contained in the complaint and draws all inferences in favor of the plaintiff. *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 145 (2d Cir. 2002). When considering a motion to dismiss for failure to state a claim, the Court may consider documents attached to the complaint as exhibits, as well as documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[3] They were scheduled to return on February 21, 2023. Bankr.Doc. 1 ¶ 11.

[4] While the complaint calls these flights the "inbound" flights, the airline policies make clear that the first segment in the itinerary is called the "outbound" flight. *Compare* Bankr.Doc. 1 ¶¶ 11, 21 *with* Bankr.Doc. 9-1 at 5 (stating that the first segment of a specified itinerary is understood to be the "outbound" flight).

purchased [] flights [from Lima to Miami]," with the presumption that Egusquiza and Guerrero could nevertheless utilize the tickets for the return trip originally booked through LATAM.  *Id.* ¶ 15.  Peschiera found replacement flights through American Airlines for $420 each, and she purchased them with Egusquiza's approval.  *Id.* ¶ 16.  When Peschiera informed LATAM and BudgetAir of the changes, *id.* ¶¶ 17, 19, she was not told "that this would be a problem, or that it would have any impact on the existing reservation," *id.* ¶ 18.

However, when Peschiera attempted to complete the check-in for Egusquiza and Guerrero's LATAM return flight from Miami to Lima, "there was no available reservation with the original LATAM reservation code."  *Id.* ¶ 20.  Thereafter, Peschiera contacted both LATAM and BudgetAir, which both informed her that "it is the policy of LATAM to cancel complete reservations ([i.e.,]the entire roundtrip) once a passenger does not board the [out]bound flight (a so-called 'no-show' policy)."[5]  *Id.* ¶ 21.  Peschiera asked to speak with supervisors at LATAM, but "they would not speak to her."  *Id.*  Neither TM

---

[5] The policy states as follows:

> The passenger must fly the flights or segments that make up the itinerary in consecutive order.  Based on the terms and conditions in the applicable legislation, the Carrier may deny boarding to a passenger who does not follow the order of the previously mentioned itinerary or if the passenger has not flown any of the segments indicated in the itinerary.  The passenger understands that by not flying any segments indicated in the itinerary, the entire [t]icket will be cancelled without any warning and the passenger will not have any right whatsoever to a refund unless the fare conditions of the [t]icket allow it.  As an example, and without this condition being limited to this specific case, if the passenger does not fly on the first segment that is specified in the itinerary (understood as the outbound flight), this passenger may not travel on any other segment (understood as the stopover flight or the inbound flight).

Doc. 9-1 at 4–5.  Additionally, the terms and conditions set forth by BudgetAir indicate that when customers "reserve or purchase Travel Products via our Services, additional terms and conditions from the [s]uppliers [] may apply."  Doc. 9-3 at 4.  LATAM attached these documents to its brief, *see generally* Doc. 9, and the Bankruptcy Court also discussed the policies in its Order, Bankr.Doc. 33 at 7–8.

3

Solutions nor its agents "t[old] LATAM that it could resell the return flights that had already been paid for by TM Solutions." *Id.* ¶ 25.

Thereafter, Peschiera proceeded to purchase new flights for Egusquiza and Guerrero. *Id.* ¶ 22. Unable to find direct flights, Peschiera purchased return tickets through Avianca—a separate airline—which connected through Bogota, Colombia, and added additional time to the trip. *Id.* ¶ 23. The cost of the new tickets from Miami to Lima was $1,526. *Id.*

TM Solutions sought to certify the action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and it proposed the following classes:

> All residents of the States of California, Florida, Massachusetts, New York, and the District of Columbia who purchased a roundtrip ticket with LATAM whose flights were cancelled by LATAM without their consent within the applicable limitations period.
>
> All residents of the State of Florida who purchased a roundtrip ticket with LATAM whose flights were cancelled by LATAM without their consent within the applicable limitations period.

*Id.* ¶¶ 29–30; *see also id.* ¶¶ 31–40.

The complaint set out the following four claims: (1) declaratory judgment; (2) a violation of the Montreal Convention for Unification of Certain Rules of International Carriage by Air ("Montreal Convention");[6] (3) unjust enrichment; and (4) a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Id.* ¶¶ 41–76. The Montreal Convention claim was withdrawn by TM Solutions in its opposition to LATAM's motion to dismiss. Bankr.Doc. 12 at

---

[6] In its motion to amend, TM Solutions indicated that it removed the cause of action brought under the Montreal Convention and sought to add a cause of action for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Bankr.Doc. 17 at 6; Bankr.Doc. 17-1 ¶¶ 92–108.

4

10 ("It seems, however, to be a case more akin to non-performance than delay. Therefore, TM Solutions withdraws Count II against LATAM.").

### B. Facts Asserted in Proposed Amended & Supplemented Complaint

The proposed amended and supplemented complaint adds an additional proposed plaintiff, Jazmin Torres, who purchased LATAM flights to the Galapagos Islands in June 2021. Bankr.Doc. 17-1 ¶¶ 25–27. The departure flight from New York to Guayaquil[7] was provided by JetBlue Airways ("JetBlue"), even though it was booked through LATAM. *Id.* ¶ 29. When Torres and her family arrived at the airport, she was told by a JetBlue representative that "she was too late because she needed to arrive at the airport six to eight hours before departure so the airline could process everyone due to COVID, and that even if she had a ticket, she could not check in." *Id.* ¶ 32. In other words, Torres and her family were not allowed to check into their JetBlue flight because they arrived at the airport too late.

A LATAM agent told Torres that "since she and her family had missed the departure flight, the rest of their trip was 'void'" pursuant to LATAM's no-show policy. *Id.* ¶¶ 35, 42. She was specifically told that it was not possible for her to use the return flights from her original reservation. *Id.* ¶ 37. Torres alleges that LATAM neither asked for her consent to cancel the returning flights, nor did she give her consent for LATAM to resell those flights. *Id.* ¶¶ 40, 41.

---

[7] The flight from New York to the Galapagos Islands included a stop in Guayaquil, Ecuador, prior to arriving at Baltra Island, Ecuador. Bankr.Doc. 17-1 ¶¶ 27–29.

5

### C. Procedural History

On May 26, 2020,[8] LATAM and several affiliated debtors commenced voluntary Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York. Bankr.Doc. 33 at 5.[9] Several months later, on August 18, 2020, TM Solutions commenced the adversary proceeding at issue here.[10] Bankr.Doc. 1. Shortly thereafter, LATAM moved to dismiss the adversary proceeding. Bankr.Doc. 7. TM Solutions opposed the motion, Bankr.Doc. 12, and LATAM replied, Bankr.Doc. 14.

Nearly a year later, on September 7, 2021, TM Solutions filed a motion to amend its complaint. Bankr.Doc. 17. LATAM opposed the motion, Bankr.Doc. 20, and TM Solutions replied, Bankr.Doc. 22. The Bankruptcy Court issued the Order dismissing the complaint and denying the motion to amend on August 31, 2022. Bankr.Doc. 33.

## II. DISCUSSION

### A. Standard of Review of Bankruptcy Court Judgments

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3).

---

[8] TM Solutions first sued LATAM in the United States District Court for the Southern District of Florida. *See* Doc. 1, No. 20-cv-21552 (JAL) (S.D. Fla. Apr. 13, 2020) ("the Florida Action"). However, when LATAM filed its Chapter 11 petition in the Bankruptcy Court for the Southern District of New York, the Florida Action was stayed. *See* Docs. 9, 12, No. 20-cv-21552 (JAL) (S.D. Fla. June 5, 2020). Thereafter, TM Solutions filed a proof of claim against LATAM in the Chapter 11 action. Bankr.Doc. 33 at 16.

[9] The Chapter 11 proceedings are available at bankruptcy docket No. 20-11254 (JLG) (Bankr. S.D.N.Y. 2020).

[10] The complaint mirrored the complaint filed in the Florida Action. *Compare* Bankr.Doc. 1 *with* Doc. 1, No. 20-cv-21552 (JAL) (S.D. Fla. Apr. 13, 2020).

6

A district court generally reviews the findings of fact of a bankruptcy court under a "clearly erroneous" standard, but conclusions of law are reviewed *de novo*. *See, e.g., Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988–89 (2d Cir. 1990); *Nova v. Premier Operations, Ltd. (In re Premier Operations)*, 294 B.R. 213, 217 (S.D.N.Y. 2003).

### B. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of

7

the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); see also *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]"). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers*, 282 F.3d at 152 (internal quotation marks omitted).

### C. Motion to Amend

Rule 15 allows a party to amend its complaint pursuant to the other party's written consent or the Court's leave. Fed. R. Civ. P. 15. Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *Holes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (internal quotation marks omitted)). This is a permissive standard since the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case. *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

8

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F. 2d 119, 123 (2d Cir. 1991)). To withstand a motion to dismiss, the plaintiff must allege sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The party opposing the motion to amend bears the burden of proving the claim's futility. *See, e.g.*, *Allison v. Clos-ette Too, L.L.C.*, 14 Civ. 1618 (LAK) (JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culberston*, 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted). In determining whether an amendment is futile, the court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006). Following this standard, courts accepts a plaintiff's factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Id.*; *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The trial court has broad discretion when ruling on a motion to amend, *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000), but generally, will not deny leave to amend based on futility unless the proposed amendment is clearly frivolous or legally insufficient, *see In re Ivan F. Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995) (citation omitted). Beyond these considerations, the Court does not need to consider the substantive merits of the plaintiff's claim on a motion to amend. *Id.*

9

### III. DISCUSSION

In its August 31, 2022, Order, the Bankruptcy Court dismissed TM Solutions' claims and denied its request to amend and supplement the complaint on the basis that amendment would be futile. *Id.* TM Solutions appealed.

**A. Dismissal**

***i.* Preemption**

As a preliminary matter, the Bankruptcy Court concluded that Plaintiff's claims for violation of the FDUTPA, unjust enrichment, and declaratory judgment are all preempted by the Airline Deregulation Act ("ADA"). Bankr.Doc. 33 at 23–25, 30–31, 33. Reviewing the claims *de novo*, the Court affirms the Bankruptcy Court's conclusions in this regard.

Federal law can preempt state law if Congress expresses its intent to preempt such law through explicit statutory language or, in the absence of explicit statutory language, if the state law regulates conduct in a field that Congress intended the federal government to occupy exclusively ("field preemption"), or if state law directly conflicts with federal law ("conflict preemption"). *See Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2d Cir. 2005). The key factor in determining whether a state law has been preempted is the intent of Congress. *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citation omitted). The determination that a state law is preempted under the field or conflict preemption theories is generally based on the implied manifestations of congressional intent. *Id.*

As relevant here, Congress enacted the ADA to "ensure that the States would not undo federal [airline] deregulation with regulation of their own" in 1978. *Morales v.*

10

*Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). It did so on the basis that competitive forces would best ensure "efficiency, innovation, and low prices," as well as quality air transportation services. *Id.* (citation omitted). In enacting the ADA, Congress included an explicit prohibition against the enforcement of any law "relating to rates, routes, or services" of any carrier. *Id.* at 378–79 (citation omitted); 49 U.S.C. § 41713(b)(1) (outlining that "States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route, or service of an air carrier that may provide air transportation under this subpart"). As the Bankruptcy Court noted, "the scope of the ADA's preemptive reach is not without limits," however. Bankr.Doc. 33 at 24. Specifically, while the "ADA's preemption prescription bars state-imposed regulation of air carriers," it nonetheless "allows room for court enforcement of contract terms set by the parties themselves." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995); *see also id.* at 230–35.

The Court affirms the Bankruptcy Court's determination that Plaintiff's claims for violation of the FDUTPA, unjust enrichment, and declaratory judgment are all preempted by the ADA and must therefore be dismissed. *See* Bankr.Doc. 33 at 23–25, 31, 33. The Court takes each claim in turn.

First, as the Bankruptcy Court concluded, Plaintiff's FDUTPA claims are clearly preempted by the ADA. In its order, it stated in relevant part:

> [T]he gravamen of Plaintiff's claims is that LATAM unfairly retains the price customers paid for air travel after cancelling a leg of their itinerary pursuant to the No-Show Policy, allowing the airline to resell the tickets and "net the price of a single flight twice." [ . . . ] Accepting these allegations as true (as the Court must), it is plain that an airline's failure to issue refunds for forfeited tickets "relate[s] to" prices charged by an air carrier and, thus, that claims based on those allegations are preempted by the ADA. *See* 49 U.S.C. § 41713(b)(1).

11

Bankr.Doc. 33 at 31 n.30. The text of the ADA makes that much clear. *See* 49 U.S.C. § 41713(b)(1).

In an attempt to circumvent the preemption standard, Plaintiff argues that "TM Solutions is not challenging LATAM's right to charge any particular rate," but rather, it asserts that it challenges "LATAM's deceptive and unfair scheme of cancelling flights for which it has received payment under an unconscionable No-Show Policy and then reselling the cancelled tickets . . . ." Doc. 8 at 29. In other words, recognizing that its claim is preempted if it pertains to rates, Plaintiff argues that its FDUTPA allegation is really about the *manner* in which it handles the itineraries of customers who do not appear for the first leg of their journey through its no-show policy. *See generally id.* However, as LATAM emphasizes, "claims that relate to services are also preempted." Doc. 9 at 43; *See* 49 U.S.C. § 41713(b)(1) ("[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or *service* of an air carrier[.]") (emphasis added). And in any event, the record—and more importantly, the complaint—make clear that Plaintiff's claim does indeed "relate[] to" *both* services and rates. *See* 49 U.S.C. § 41713(b)(1); *see, e.g.*, Bankr.Doc. 1 ¶ 68 ("LATAM's actions were unfair and deceptive in that they gouge the price for changing flights in such a way that forces consumers to purchase flights with other airlines when they cannot make one leg of their roundtrip reservation."). The text of the ADA regarding preemption thus clearly applies to the FDUTPA claim.

For similar reasons, the Court also agrees that the ADA similarly preempts TM Solutions' unjust enrichment claim. In regard to this claim, the Bankruptcy Court emphasized that TM Solutions sought "a determination that the No-Show Policy in the

12

Transport Agreement is unenforceable" pursuant to state law, rather than enforcement of a voluntarily undertaken contractual obligation—as would be permitted pursuant to the Supreme Court's opinion in *American Airlines, Inc. v. Wolens*. Bankr.Doc. 33 at 25; *see Wolens*, 513 U.S. at 222. Otherwise stated, the Bankruptcy Court concluded that TM Solutions' unjust enrichment claim *does not* fall under the exception set out in *Wolens* because it is a Florida common law challenge to LATAM's policies, rather than a claim for breach of the parties' "own self-imposed undertakings." *Wolens*, 513 U.S. at 228.

The Bankruptcy Court did not err when it concluded that the *Wolens* exception does not apply here. The asserted unjust enrichment claim amounts to a state-law challenge to pricing and services, rather than an effort to recover "solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* Given these circumstances, and because the ADA does not permit the enforcement of laws "related to a price, route, or service of an air carrier," the Court concludes that TM Solutions' unjust enrichment claim is also preempted. *See* 49 U.S.C. § 41713(b)(1).

Finally, the declaratory judgment claim is also preempted by the ADA. In this case, TM Solutions seeks a declaration that: (1) LATAM's no-show policy is "void and unenforceable" and (2) LATAM has an affirmative "duty to request a consumer's consent before cancelling paid trips." Bankr.Doc. 1 ¶ 47. As discussed above, such a challenge relates to LATAM's pricing and services and is thus preempted by the ADA. 49 U.S.C. § 41713(b)(1); *see also* Bankr.Doc. 33 at 33–34.

TM Solutions' arguments to the contrary are unavailing. It asserts, for example, that "the law of unconscionability," which underlies its declaratory judgment claim, "does not explicitly address airline rates or services," and, accordingly, the ADA does not

13

reach its claim. Doc. 8 at 31–32. However, the allegations in its complaint make clear that its unconscionability theory relates *directly* to pricing and services. Bankr.Doc. 1 ¶ 47. That the general "law of unconscionability does not explicitly address airline rates or services" is irrelevant here, where TM Solutions seeks to have a court declare that such law renders an airline's policy for setting and rates and carrying out services "void and unenforceable." Doc. 8 at 31–32; Bankr.Doc. 1 ¶ 47. The logic set forth by TM solutions would, in effect, render the ADA's preemption provision powerless. Indeed, it would allow any plaintiff to circumvent the provision by asserting that any abstract and un-applied version of a cause of action "does not *explicitly* address airline rates or services." Doc. 8 at 31 (emphasis added). However, the ADA makes clear that it reaches laws, regulations, or other provisions "having the force and effect of law related to a price, route or service of an air carrier," 49 U.S.C. § 41713(b)(1), and caselaw applying the statute holds that the clause "is properly afforded an extremely broad scope," *see, e.g.*, *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992).

       For these reasons, the Court agrees with the Bankruptcy Court's conclusion that TM Solutions' declaratory judgment claim is preempted by the ADA.

       *ii.* **Standing**

       Having concluded that TM Solutions' claims are preempted by the ADA, the Court affirms the Bankruptcy Court's judgment dismissing the complaint. The Court nevertheless briefly addresses LATAM's standing argument as to TM Solutions' deceptive and unfair trade practices claim.

14

In regard to the FDUTPA claim, the Bankruptcy Court concluded that TM Solutions lacked standing to pursue injunctive relief. Bankr.Doc. 33 at 17–21. It noted that "past purchase or use of an allegedly unfair or deceptive product or service *cannot give rise to injunctive relief because future harm is unlikely . . . .,*" *id.* at 18 (emphasis added), and further articulated that "Plaintiff has not alleged that it would suffer any future harm, imminent or otherwise," *id.* at 21.

Article III limits federal judicial power to the resolution of cases and controversies. U.S. Const. art. III, § 2. To satisfy this requirement: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be redressable. *Jewish People for the Betterment of Westhampton Beach v. Vill. Of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015). A plaintiff must demonstrate standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [it] is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *see also Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia*, 834 F.3d at 239 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).

Here, the Court agrees that TM Solutions lacks Article III standing to seek injunctive relief pursuant to the FDUTPA. *See* Bankr.Doc. 33 at 20–21. Indeed, TM solutions has not alleged any future harm. *See* Bankr.Doc. 1. Although the complaint

15

states that class members will "continue to purchase" LATAM's flights, Bankr.Doc. 1 ¶ 47, as the Bankruptcy Court noted, "there are no allegations whatsoever as to what future transactions or existing (but unfulfilled) flights with LATAM the Plaintiff itself anticipates boarding," Bankr.Doc. 33 at 21. Because TM Solutions has thus failed to show that it is "likely to be harmed again in the future in a similar way," it lacks standing to pursue injunctive relief pursuant to the FDUTPA.[11] *Nicosia*, 834 F.3d at 239.

### B. Amendment

As set forth above, TM Solutions sought to amend its complaint before the Bankruptcy Court. *See generally* Doc. 17. LATAM opposed the motion, Bankr.Doc. 20, and the Bankruptcy Court denied the request, Bankr.Doc. 33 at 35–42.

Pursuant to Rule 15, the Court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the [trial] court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Gayle v. Larko*, No. 18 Civ. 3773 (ER), 2019 WL 4450551, at *4 (S.D.N.Y. Sept. 17, 2019). Importantly, leave is unwarranted where "the problem with . . . [the] claims is 'substantive' and, thus, 'better pleading will not cure it.'" *Larko*, 2019 WL 4450551, at * 4 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In other words, leave to amend may be denied where it would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that

---

[11] Having concluded that the claims asserted in the complaint are preempted, and TM Solutions' claims for injunctive relief under the FDUTPA are non-justiciable, the Court will not assess whether they were otherwise sufficiently pleaded. *See* Doc. 9 at 22 (arguing that even if Plaintiff's claims were not preempted, Plaintiff still fails to plead them sufficiently).

16

granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.") (citations omitted).

For the reasons set forth herein, the Court agrees with the Bankruptcy Court's conclusion that amendment would be futile in this case. As set forth above, among the complaint's deficiencies are preemption and justiciability issues that prevent TM Solutions from asserting—and the Court from adjudicating—its claims as pleaded. Critically, the proposed amended complaint does not cure those issues.[12] *See generally* Doc. 17-1; *see also* Bankr.Doc. 33 at 38–42. Accordingly, TM Solutions' request to amend and supplement its complaint was appropriately denied by the Bankruptcy Court.

## IV. CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court is AFFIRMED in its entirety.

---

[12] The Bankruptcy Court correctly concluded that the additional proposed claim pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") is preempted by the ADA for the same reasons that TM Solutions' FDUTPA claim is preempted. Bankr.Doc. 33 at 40. Indeed, it is a state law claim that relates to how LATAM prices its flights and provides its services. 49 U.S.C. § 41713(b)(1); *see also* Bankr.Doc. 17-1 ¶¶ 92–109. Additionally, for the same reasons set forth above as to the FDUTPA, TM Solutions lacks standing to seek injunctive relief pursuant to the UTPCPL. *See* Bankr.Doc. 17-1 ¶ 93 (stating that TM Solutions seeks injunctive relief pursuant to the UTPCPL).

17

The Clerk of Court is respectfully directed to terminate the appeal, Doc. 1, docket this decision, and to close the case.

It is SO ORDERED.

Dated: July 25, 2023
New York, New York

EDGARDO RAMOS, U.S.D.J.

18